R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555
Fax: (609) 921-2181
Attorneys for BRRAM, Inc.,
Ms. Holly Bussey, Mr. William Lynch,
Mr. Richard Delello, Ms. Julie Power,
Mr. John Giacobetti, Mrs. Jennifer
Giacobetti, Ms. Deborah Leamann,
Ms. Caroline Bondi, Ms. Delores
Brienza, and Mr. Richard Wayne

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, MS. HOLLY BUSSEY, MR. WILLIAM LYNCH, MR. RICHARD DELELLO, MS. JULIE POWER, MR. JOHN GIACOBETTI and MRS. JENNIFER GIACOBETTI, MS. DEBORAH LEAMANN, MS. CAROLINE BONDI, MS. DELORES BRIENZA, and MR. RICHARD WAYNE, | : <br> : <br> : No. 15-2393 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
|          Plaintiffs/Appellants, | : APPELLANTS' |
| v. | : MEMORANDUM <br> : IN OPPOSITION TO FAA |
| UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA), MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, FRONTIER AIRLINES, INC., | : MOTION FOR SUMMARY <br> : AFFIRMANCE <br> : <br> : <br> : <br> : |
|          Defendants/Appellees. | : |

Table of Contents

Page

1.   The FAA's motion is filed pursuant to LAR 27.4 and IOP 10.6 which provide in relevant part as follows: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   Summary list of "substantial question[s]" presented in this appeal:  . . . . . . 2

3.   Brief procedural history: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4.   The District Court's May 19, 2015 Order . . . . . . . . . . . . . . . . . . . . . . . . . 5

5.   The FAA's motion and memorandum fail to address the core issues  . . . . . 6

6.   The FAA memorandum misstates the plaintiffs' complaint . . . . . . . . . . . . 7

7.   The FAA is wrong to characterize their complaint as presenting a challenge to an FAA final order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8.   None of the cases FAA cites reviewed FAA inaction  . . . . . . . . . . . . . . . . 8

9.   FAA orders adopting an Environmental Assessment or other NEPA decisions in a publicly announced order are reviewed in the courts of appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10.  FAA's failure to publicly issue the Ops Specs amendment means that it was never "issued" to start the 60-day time period for appeal  . . . . . . . . 11

11.  FAA's "about face" from publicly acknowledging its duty to comply with NEPA to its current negation of NEPA implementation . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Table of Authorities

Page

CASES

*Avia Dynamics, Inc. v. FAA*, 641 F.3d 516 (D. C. 2011) . . . . . . . . . . . . . . . . . . 12

*Bellocchio v. NJDEP*, __ Fed Appx. ___, 2014 WL 1345663 (3rd Cir.
March 24, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Citizens for Responsible Area Growth v. Adams*, 477 F. Supp. 994
(D.N.H. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*City of Atlanta v. United States*, 531 F. Supp. 506 (N.D. Ga 1982) . . . . . . . . . . 11

*City of Irving, Tex. v. FAA*, 529 F. Supp. 17 (N.D. Tex. 1981) . . . . . . . . . . . . 11

*Fla. Manufactured Hous. Ass'n v. Cisneros*, 53 F.3d 1565 (11th Cir. 1995) . . . . 12

*Fleming v. U.S. Dept. Of Transp.*, 348 Fed. Apx. 736 (3d Cir. 2009) . . . . . . . . . 9

*Foman v. Davis*, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hanley v. Kleindienst*, 471 F.2d 823 ( 2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . 11

*Jones v. United States*, 625 F.3d 827 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 9

*Lesser v. City of Cape May*, 110 F.Supp.2d 303 (D.N.J. 2000) . . . . . . . . . . . . . 5

*Richards-Gebaur Airport v. FAA*, 251 F.3d 1178 (8th Cir.2002) . . . . . . . . . . . . 9

*State of Illinois ex rel Scott v. Butterfield*, 396 F. Supp. 632 (N.D. Ill. 1975) . . . 10

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616
(7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Virginians for Dulles v. Volpe*, 541 F.2d 442 (4th Cir., 1976) . . . . . . . . . . . . . . 11

## STATUTES

42 U.S.C. § 4321 et seq. ............................................. 2

49 U.S.C. § 41109 ................................................... 3

## RULES

LAR 27.4 ........................................................... 1

IOP 10.6 ........................................................... 1

List of Exhibits Attached

Exhibit 1:     Frontier Airline's September 19, 2012 notification to begin scheduled service from Trenton New Jersey (TTN), submitted to the District Court August 18, 2014 in Case 3:14-cv-02686.

Exhibit 2:     Federal Aviation Administration "Operations Specifications," HQ Revision 04b, Digitally signed by Dale Snider, 2012.09.25, submitted to the District Court August 18, 2014 in Case 3:14-cv-02686.

Exhibit 3:     United States District Court Order in Civil Action No. 14-cv-2686 (PGS) filed May 19, 2015 by Peter G. Sheridan, U.S.D.J. dismissing the Complaint and denying motion to amend the Complaint

Exhibit 4:     United States District Court Order in Civil Action No. 14-cv-2686 (PGS), Court's Opinion on Motion to Dismiss, May 18, 2015 (transcribed)

Exhibit 5:     BRRAM, Inc., et al., First Amended Complaint, filed November 20, 2014 in the District Court in Case 3:14-cv-02686

Exhibit 6:     FAA Regional Administrator FAA Eastern Region, Manny Weiss, June 9, 2008, "Order Withdrawing Finding of No Significant Impact/Record of Decision (FONSI/ROD) dated February 23, 2006 for the Trenton-Mercer Airport (TTN) Terminal Replacement and Other Projects in the Capital Improvement Program"

The plaintiffs/appellants Bucks Residents for Responsible Airport Management, Inc. (BRRAM), and the 10 named individuals, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard Wayne, hereby respond to and oppose the defendant United States Federal Aviation Administration's (FAA) motion for summary affirmance of the order of the United States District Court of New Jersey, filed May 19, 2015, dismissing the BRRAM complaint and holding that the BRRAM motion to amend the complaint was thereby rendered moot. In answer to the FAA's motion, served on June 22, 2014, the plaintiffs/appellants state as follows:

1. The FAA's motion is filed pursuant to LAR 27.4 and IOP 10.6 which provide in relevant part as follows:

> A party may move for summary action affirming, enforcing, vacating, ... [etc.] a judgment or order on the ground that no substantial question is presented ... Summary action will be taken "if it clearly appears that no substantial question is presented or that subsequent precedent or change in circumstances warrants such action...."

As we demonstrate in this memorandum, the appeal filed by BRRAM presents the Circuit Court with "substantial questions" which necessitate full briefing, argument and decision on the merits.

2.  Summary listing of "substantial question[s]" presented in this appeal:

A.  Whether the District Court has subject matter jurisdiction to compel the FAA to review the environmental and safety impacts of the "business decision" by Frontier Airlines to increase the frequency of flights at the Trenton Mercer Airport (TTN) far beyond the two flights per week permitted by the FAA in a private and unpublished Operations Specifications (Ops Specs) amendment accomplished by an exchange of private emails?  And whether an Ops Specs amendment approval granted by the FAA may be considered "issued" if the FAA never published the Ops Specs amendment or provided "public notice"?

B.  Whether the District Court erred by dismissing the appellant's complaint and declaring that such dismissal thereby renders plaintiffs' Motion to Amend the Complaint as "moot" without the court considering whether the amended complaint successfully cured any alleged  defects in the original complaint and pleaded causes of action for which the District Court, not this Court, has subject matter jurisdiction?

C.  Whether the District Court has subject matter jurisdiction to order the FAA to comply with the National Environmental Policy Act (NEPA) 42 U.S.C. § 4321, et seq. and to review the environmental and safety impacts of Frontier Airlines' exponential expansion in the frequency of flights at TTN far in excess of

the two flights per week approved by the FAA in an unpublished Ops Specs amendment?

D. Whether enactment of the Air Line Deregulation Act of 1978, 49 U.S.C. § 41109, prevents the FAA from complying with the requirements of the NEPA such that the FAA has no authority to review the safety and environmental impacts caused by Frontier's exponential increases in the frequency of flights at TTN far beyond the two flights per week permitted in the unpublished Ops Specs amendment?

E. Whether the Air Line Deregulation Act impliedly repealed NEPA as applied to the FAA in these circumstances?

F. Whether the FAA's approval of Frontier Airline's request for an Ops Specs amendment seeking FAA permission to initiate two flights per week at TTN in a private and unpublished exchange of emails over a one week period in 2012 constitutes a "final order" appealable solely to the Circuit Court of Appeals within 60 days of the date of the private and unpublished email?

G. Whether it is arbitrary and capricious for the FAA to construe the Ops Specs amendment limiting Frontier to two flights per week at TTN as *sub silentio* granting further authorization for Frontier to expand such usage without the FAA engaging in any safety or environmental review of the impacts of any such

3

increase in frequency of flights?

H.   Whether the award of substantial Federal funds to Mercer County, New Jersey, the owner/operator of TTN, for the enhancement and expansion of airport runway capacity at TTN for the purpose of attracting a "low fare/high-frequency" (LF/HF) commercial air carrier (Frontier Airlines) constitutes a "major federal action significantly affecting the environment" and thereby triggers a duty for the FAA pursuant to the NEPA to consider the environment impacts associated with such air port construction and enhancement projects?

I.   Whether the FAA is bound  by its 2008 "Record of Decision" (ROD) stating that if Mercer County were to attract another  LF/HF commercial air carrier (Frontier Airlines) this would likely trigger the requirements for the FAA to prepare an "Environmental Impact Statement" (EIS)  due to the cumulative noise impacts associated with a substantial increase in the usage of the airport?

3.   Brief procedural history:  On November 20, 2014, the plaintiffs/appellants, BRRAM, Inc., et al., filed a motion with the United States District Court for the District of New Jersey to amend their complaint (1) to add three Pennsylvania municipalities in Bucks County, the Township of Lower Makefield, Upper Makefield Township, and Yardley Borough, as co-plaintiffs and (2) to clarify that their complaint is **not** directed at any action taken by the FAA

4

but at its **inaction**. This inaction is the FAA's failure to conduct any safety or

environmental analysis, as required by the NEPA, of the exponential increase in

flights by Frontier Airlines at the TTN beyond the two flights per week as

requested and as approved by the FAA in a private exchange of unpublished

emails in September 2012 that did not come to light until they were included as

exhibits to the FAA's motion brief dated August 14, 2014. These are attached

hereto as Exhibits 1 and 2.

4. By order dated May 19, 2015, the District Court of New Jersey granted

the FAA's motion to dismiss BRRAM's original complaint and declared that the

plaintiff appellants' motion to amend that complaint was thereby rendered "moot."

Exhibit 3. This decision is procedurally backwards. The District Court rendered

no ruling or opinion with respect to the proposed amended complaint, other than

its asserted mootness. Exhibit 4 is the opinion. As a result, the District Court

never considered the merits of the amended complaint and whether it cured any

alleged defects in the original complaint. When a motion to amend a complaint is

pending, the reviewing court must consider the adequacy of the amended

complaint as a substitute for the original complaint. *Lesser v. City of Cape May*,

110 F.Supp.2d 303 (D.N.J. 2000), quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962):

> If the underlying facts or circumstances relied upon by a
> plaintiff may be a proper subject of relief, he ought to be
> afforded an opportunity to test his claims on the merits.
> In the absence of any apparent or declared reasons such
> as ... the futility of amendment, etc., the leave [to amend]
> should, as the rules require, be "freely given."

A copy of the amended complaint is included as Exhibit 5.

    5. The FAA's motion and  memorandum fail to address the core issues as

repeatedly explained in appellant's amended complaint.  The FAA prefers to

attack the original complaint and to mischaracterize it as an untimely appeal of the

FAA's approval of the Ops Specs amendment of September 25, 2012 in which the

FAA permitted Frontier to make exactly two flights per week at TTN.  A copy of

the unpublished Ops Specs amendment request is Exhibit 1, and the FAA email

approval is included at Exhibit 2.  This amendment does not even imply or suggest

that any further operations are authorized.  The amended complaint expressly

clarified that the plaintiffs do not challenge that Ops Specs amendment which has

de minimis environmental impact.   Rather, the amended complaint was directed at

the FAA's failure to conduct any review or issue any order with respect to the

impacts from the exponential increase in flights by Frontier Airlines in excess of

the two flights per week as requested by Frontier and as quickly approved by the

FAA.  The amended complaint also addressed the FAA failure to conduct any

6

NEPA environmental review of the Federally funded TTN construction projects intended to attract high frequency airport usage. The FAA's memorandum fails to address whether the amended complaint remedies the alleged jurisdictional defects in the original complaint.

6. The FAA memorandum misstates the plaintiffs' complaint as follows: "Plaintiffs asserted that the FAA violated the [NEPA] by allegedly failing to perform a comprehensive environmental impact analysis, including a noise analysis, *before approving Frontier's expansion of operations at Trenton Airport*." p.2 of FAA memorandum, italics added. But there is no FAA decision "approving Frontier's expansion of operations;" as the FAA concedes, it has taken no action to review "Frontier's expansion of operations." This inaction is the core of the plaintiffs' case as clarified and expressed in their motion to amend the complaint. The only FAA action was its decision to approve of Frontier Airlines emailed request for permission to initiate exactly 2 flights per week at TTN, and that is all that the FAA reviewed and approved. There is no FAA "order" within any logical or legal meaning of that word.

7. The FAA is wrong when it asserts that it opposed plaintiffs' motion to amend "on the grounds that the amendment would be futile because regardless of how plaintiffs characterize their complaint, at bottom, it presented a challenge to

an FAA final order...." Memo at 3-4. This is demonstrably untrue and the FAA knows it. To repeat, there is no FAA order addressing the enormous increase in flights by Frontier Airlines at TTN far beyond the nominal two flights per week approved by the FAA which BRRAM expressly declined to challenge in their amended complaint. In response to the plaintiffs' motion to amend, the FAA made the incredible argument that the Airline Deregulation Act of 1978 divested it of any legal authority to review the environmental or safety impacts caused by Frontier Airlines' dramatic increase in flights at TTN. The FAA can't have it both ways, asserting in this motion brief that plaintiffs are challenging an order "approving Frontier's expansion of service" after the FAA asserted in court that it has no legal authority to review Frontier's expansion of service.

8. None of the cases cited by the FAA addresses the core issues in this case: Notably, whether the District Court has jurisdiction to review FAA **inaction** – its failure to conduct any safety or environmental reviews as mandated by NEPA of the Frontier Airlines' expansion of operations far beyond the two flights per week in its approved Ops Specs amendment. Every case cited by the FAA involved challenges to FAA action, the adequacy of FAA implementation of the NEPA as set forth in a formal "Record of Decision" (ROD) order. For example:

*Bellocchio v. NJDEP*, __ Fed Appx. ___, 2014 WL 1345663 (3rd Cir. March 24,

8

2015) was filed in District Court to contest the adequacy of the FAA's EIS

regarding airport expansion projects. There was a final ROD and an EIS

implementing NEPA, thus jurisdiction properly resided solely with the Court of

Appeals, as the court held. Similarly *Jones v. United States*, 625 F.3d 827 (5th Cir.

2010) involved a challenge to a final FAA order disposing of the plaintiff's

claims of Civil Rights violations that were thoroughly aired by the FAA and

resolved in a final order. In *Fleming v. U.S. Dept. Of Transp.*, 348 Fed. Apx. 736

(3d Cir. 2009) the court held that judicial review of "the underlying FAA

proceedings" supporting a final order reposed jurisdiction to review that order in

the Circuit Court. And *St. John's United Church of Christ v. City of Chicago*, 502

F.3d 616 (7th Cir. 2007) was another challenge to the adequacy of the EIS issued

by the FAA after multiple public hearings. Finally, *Richards-Gebaur Airport v.*

*FAA*, 251 F.3d 1178 (8th Cir.2002) involved judicial review of the FAA's issuance

of a Categorical Exclusion from filing an EIS which the FAA issued on the basis

of a record of public participation over a 2 year period. In short, literally every

case cited by the FAA involved challenges to FAA actions which followed well-

settled procedures for implementing NEPA. Not one of the cases cited by the

FAA dealt with the threshold issue in this case: Whether the District Court has

jurisdiction to review the FAA's refusal to initiate review of the environmental or

safety impacts of Frontier Airlines' increase in the frequency of flights at the

Trenton Mercer Airport far beyond the number of flights approved by the FAA in

an unpublished Ops Specs amendment.

 9. Both the FAA and the District Court failed to recognize this basic

distinction: Where the FAA has implemented the NEPA and publicly issued an

order adopting an Environmental Assessment (EA) or other NEPA decision – such

as "Finding of No Significant Impact" (FONSI) or a Categorical Exclusion or an

EIS – in a publicly announced  order, then jurisdiction to review how well the

FAA has implemented NEPA resides exclusively in the courts of appeal .  But

where there is no NEPA implementation – due to the FAA's failure to review the

impacts of an airline's exponential increase in flights at an airport -- then

jurisdiction to review such "non-action" resides in the District Court.  Put simply,

where agency inaction is the issue, jurisdiction lies with the District Court.  A

consistent line of precedent going back to the early days of NEPA upholds this

principle.  District Courts have subject matter jurisdiction to review non-

implementation of NEPA by the FAA and to order compliance.  This principle

was aptly stated in *State of Illinois ex rel Scott v. Butterfield*, 396 F. Supp. 632,

635 (N.D. Ill. 1975) in which the District Court asserted jurisdiction to compel the

FAA to prepare an EIS to review "the uncontrolled increase in aircraft operations,

noise, and air pollution at O'Hare International Airport in violation of the

[NEPA]," citing *Hanley v. Kleindienst*, 471 F.2d 823 ( 2d Cir. 1972).   Other cases

upholding the same result include:  *City of Atlanta v. United States*, 531 F. Supp.

506 (N.D. Ga 1982) (wherein the FAA successfully defended its position that it

must comply with the NEPA even if doing so delays airport construction);

*Virginians for Dulles v. Volpe*, 541 F.2d 442, 445 (4th Cir., 1976) ("We hold that

the FAA's acquiescence in the vastly expanded use of the airports requires an

impact statement ...This increased use will have a significant impact on the

environment..."); *City of Irving, Tex. v. FAA*, 529 F. Supp. 17, 27-34 (N.D. Tex.

1981) (District court had jurisdiction to determine if an EIS was required);

*Citizens for Responsible Area Growth v. Adams*, 477 F. Supp. 994 (D.N.H. 1979)

(District Court had jurisdiction to order a preliminary injunction until the FAA

complied with NEPA).   The absence of more recent reported cases doubtless

reflects the general pattern of federal agencies implementing NEPA.

        10.  Even if the plaintiffs were challenging the Ops Specs amendment

granted to Frontier Airlines, the FAA's failure to publicly issue the Ops Specs

amendment means that it was never "issued" for purpose of starting the 60-day

time period for appeal of such order.  The Frontier Airlines' Ops Specs

amendment was never made public, never announced, never posted on the FAA's

11

website, never published in any newspaper, not even announced in the Federal

Register. Thus, it follows that no FAA order was ever "issued" to the public,

including notably to the appellants. This point was driven home in *Avia*

*Dynamics, Inc. v. FAA*, 641 F.3d 516, 520-521 (D. C. 2011) ("Section 46110(a)

requires that a petition be filed within 60 days of the date the order is issued,

which we read to mean that the filing period begins to run on the date the order is

officially made public...."), citing *Fla. Manufactured Hous. Ass'n v. Cisneros*, 53

F.3d 1565, 1574 (11th Cir. 1995) ("[T]he verb issue clearly refers to an act of

public announcement ... [T]he private communication about which the petitioner

knew nothing does not constitute an order for purposes of the 60 day rule.")

Therefore, the time for petitioning the Circuit Court has never run.

11. Yet another issue of concern is the FAA's unexplained "about face"

from publicly acknowledging its duty to comply with NEPA to its current negation

of NEPA implementation. On June 9, 2008, the FAA issued "ORDER

WITHDRAWING Finding of No Significant Impact/Record of Decision

(FONSI/ROD) dated February 23, 2006 for the Trenton-Mercer Airport (TTN)

Terminal Replacement and Other Projects in the Capital Improvement Program"

(2008 Order). In this 2008 Order, the FAA responded to Mercer County's

decision to forgo proposed expansion of TTN because Southwest Airlines,

12

predecessor to Frontier Airlines, withdrew its plan to use TTN.  This 2008 Order

was the reason BRRAM, et al., agreed to dismissal of their petition to the Third

Circuit for judicial review of the 2006 FONSI/ROD.  The 2008 Order provided

that if TTN were to expand its facilities in order to attract another high frequency

air carrier, an EIS probably would be required.  Specifically the 2008 Order stated

in relevant part as follows:

> The analysis of Build Alternative 2 [airport expansion to
> accommodate high frequency service] revealed that
> alternative would likely cause sufficient noise impacts
> that would require the preparation of an Environmental
> Impact Statement (EIS).

A copy of the 2008 Order is included as Exhibit 6.  The FAA has made no attempt

to explain its 180° reversal of position.  See: *Citizens for Responsible Airport*

*Growth*, 477 F. Supp. at 1005-1006: "FAA's decision reflects an unexplained

'about-face' of its own.  It's November 1978 letter concurs ... with respect to the

need for an EIS ... The June 1979 Negative Declaration reversed the earlier

conclusion that the runway expansion must be assessed to satisfy NEPA ... Insofar

as [FAA] abandons, without explanation, its prior statement that an EIS is

required, it is unreasonable."  The same logic applies here.

Conclusion:  Much as the FAA misled the District Court, the FAA is

misleading this court into believing that the plaintiffs are challenging the Ops

Specs amendment authorizing Frontier Airlines to make exactly 2 flights per week at Trenton Mercer Airport. This is untrue. Simply by reading the plaintiffs' amended complaint it is obvious that we are challenging the failure of the FAA to issue any order or conduct any environmental or safety review of the impacts of Frontier Airlines quantum and unauthorized increase in flights at Trenton Mercer Airport. In short, this case involves very serious issues of national importance concerning adherence with NEPA, public safety and protection of the environment. The FAA is contending that it has no duty or legal authority to review the impacts of any increase in flights at an airport in New Jersey with the injured parties in the neighboring state, Pennsylvania. This unprecedented abdication of responsibility by the FAA cannot be allowed to continue.

The FAA motion for summary affirmance should be denied, and a briefing schedule issued in due course.

Respectfully submitted,

POTTER AND DICKSON

_____/s/_____
R. William Potter
Attorneys for Plaintiffs-Appellants

Dated: July 2, 2015.

14

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 4 of 17 PageID: 170

# FRONTIER

Frontier Airlines, Inc.    P 720-374-7400    www.frontierairlines.com
7001 Tower Road
Denver, Colorado 80249

September 19, 2012

Dale Snider
Flight Standards District Office
1201 Columbia Road, Suite 101
Plainfield, IN. 46168-7582
Tel: (317) 837-4473

Subject:    Scheduled Airbus service from TTN.

Dear Mr. Snider,

Please accept this letter as notification that Frontier Airlines intends to begin scheduled service from Trenton New Jersey (TTN).

Service is scheduled to begin on November 16, 2012 utilizing the Airbus A320 series aircraft.

| Route | Departs | Arrives | Frequency | Aircraft |
|-------|---------|---------|-----------|----------|
| 316 MCO-TTN | 07:25 | 09:50 | Friday | A320 series |
| 317 TTN-MCO | 12:55 | 18:35 | Friday | A320 series |

Please accept this as Frontier Airlines official letter of request to add Trenton New Jersey (TTN) to the Frontier Airlines Operations Specifications C070 airports as a Regular (R) and Alternate (A) airport.

Sincerely,

Jim Colburn
Director of Operations

Cc:    J. Colburn    K. Elkin    J. Bendoraitis    D. Diehl    C. Van Leuven
       J. Taras     B. Westgate   J. Carlson      J. Ward

*A whole different animal."*

Exhibit 1

U.S. Department
of Transportation
Federal Aviation
Administration

**Operations Specifications**

HQ Control: 07/25/2001
HQ Revision:    04b

**C070 - Airports Authorized for Scheduled Operations**

a.  The certificate holder is authorized to conduct scheduled passenger and cargo operations between the regular, refueling, and provisional airports specified in the following table. Except for alternate airports, the certificate holder shall not use any other airport in the conduct of scheduled passenger and cargo operations. The certificate holder shall maintain a list of alternate airports which can be used and shall not use any alternate airport unless it is suitable for the type of aircraft being used and the kind of operation being conducted.

b.  The following definitions shall apply:

Regular Airport. An airport approved under scheduled service in a community as the regular stop to that community.

Refueling Airport. An airport approved as an airport to which flights may be dispatched only for refueling.

Provisional Airport. An airport approved for use by an air carrier for the purpose of providing scheduled service to a community when the regular airport serving that community is not available.

Alternate Airport. An airport at which no aircraft may land if a landing at the intended airport becomes inadvisable.

NOTE: Refueling and provisional airports are not applicable to Part 135 operations;
R – Regular, F – Refueling, A = Alternate, and P = Provisional

The complete Airports Authorized for Scheduled Operations table begins on the next page.

Frontier Airlines, Inc.                    C070-1                    Certificate No.: FILA001Y

Exhibit 2

**U.S. Department of Transportation**
**Federal Aviation Administration**

**Operation Specifications**

## Airports Authorized for Scheduled Operations

| Location AIRPORTS | Provisional | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| | | A-318 | A-319 | A-320 |
| ABILENE/REGIONAL, TX, UNITED STATES, KABI | N/A | A | A | A |
| ACAPULCO, MEXICO, MMAA | N/A | A | A | A |
| AKRON-CANTON REGIONAL/OH, UNITED STATES, KCAK | N/A | A,R | A,R | A,R |
| ALBANY INTERNATIONAL, NY, UNITED STATES, KALB | N/A | A | A | A |
| ALBUQUERQUE/INTL, NM, UNITED STATES, KABQ | N/A | A,R | A,R | A,R |
| ALEXANDRIA/INTL, LA, UNITED STATES, KAEX | N/A | A,R | A,R | A,R |
| ALLENTOWN/LEHIGH VALLEY INTL, PA, UNITED STATES, KABE | N/A | A,R | A,R | A,R |
| AMARILLO INTL, TX, UNITED STATES KAMA | N/A | A | A | A |
| ANCHORAGE/MERRIDORF AFB,AK, ALASKA, (U.S.) PAED | N/A | A | A | A |
| ANCHORAGE/INTL, AK, ALASKA, (U.S.) PANC | N/A | A,R | A,R | A,R |
| ATLANTA/HARTSFIELD-JACKSON ATLANTA INTL, GA, UNITED STATES, KATL | N/A | A,R | A,R | A,R |
| ATLANTIC CITY/INTL, NJ, UNITED STATES, KACY | N/A | A | A | A |
| AUGUSTA/AUGSTA REGIONAL AT BUSH FIELD, GA, UNITED STATES, KAGS | N/A | A | A | A |
| AUSTIN/BERGSTROM INTERNATIONAL, TX, UNITED STATES, KAUS | N/A | A,R | A,R | A,R |
| BAKERSFIELD/MEADOWS FIELD, CA, UNITED STATES, KBFL | N/A | A | A | A |
| BALTIMORE-WASHINGTON INTL, THURGOOD MARSHALL, MD, UNITED STATES, KBWI | N/A | A,R | A,R | A,R |
| BANGOR/INTL, ME, UNITED STATES KBGR | N/A | A | A | A |
| BATON ROUGE METROPOLITAN/RYAN FIELD,LA, UNITED STATES, KBTR | N/A | A,R | A,R | A,R |
| BEAUMONT/PORT ARTHUR/JACK BROOKS REGIONAL, TX, UNITED STATES, KBPT | N/A | A | A | A |
| BELLEVILLE/SCOTT AFB/MIDAMERICA, IL, UNITED STATES, KBLV | N/A | A | A | A |

Frontier Airlines, Inc.     C070-2     Certificate No.: FTLA006EY

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 8 of 17 PageID: 174

U.S. Department
of Transportation
Federal Aviation
Administration                    Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
| Location | Provisional | A-318 | A-319 | A-320 |
|---|---|---|---|---|
| BELLINGHAM/INTL, WA., UNITED STATES; KBLI | N/A | A,R | A,R | A,R |
| BILLINGS LOGAN INTL,MT., UNITED STATES; KBIL | N/A | A | A | A |
| BLOOMINGTON/NORMAL/CENTRAL ILLINOIS REGIONAL, IL., UNITED STATES; KBMI | N/A | A,R | A,R | A,R |
| BOISE AIR TERMINAL/GOWEN FLD ,ID., UNITED STATES; KBOI | N/A | A,R | A,R | A,R |
| BOSTON/GENERAL E.L.LOGAN INTL, MA., UNITED STATES; KBOS | N/A | A,R | A,R | A,R |
| BOZEMAN/GALLATIN FIELD, MT., UNITED STATES; KBZN | N/A | A,R | A,R | A,R |
| BRADLEY INTL AIRPORT WINDSOR LOCKS, CT., UNITED STATES; KBDL | N/A | A | A | A |
| BRANSON AIRPORT, UNITED STATES; KBBG | N/A | A,R | A,R | A,R |
| BUFFALO NIAGARA INTL AIRPORT, NY., UNITED STATES; KBUF | N/A | A | A | A |
| BULLHEAD CITY/LAUGHLIN/BULLHEAD INT'L, AZ. UNITED STATES; KIFP | N/A | A | A | A |
| CANCUN, MEXICO; MMUN | N/A | - | A,R | A,R |
| CASPER/NATRONA COUNTY INTL, WY., UNITED STATES; KCPR | N/A | A | A | A |
| CHARLOTTE/DOUGLAS INTL,NC., UNITED STATES; KCLT | N/A | A | A | A |
| CHATTANOOGA/LOVELL FIELD, TN., UNITED STATES; KCHA | N/A | A | A | A |
| CHEYENNE/REGIONAL/JERRY OLSON FIELD,WY., UNITED STATES; KCYS | N/A | A | A | A |
| CHICAGO/CHICAGO-MIDWAY INTL,IL., UNITED STATES; KMDW | N/A | A,R | A,R | A,R |
| CHICAGO/O'HARE INTL, IL., UNITED STATES; KORD | N/A | A,R | A,R | A,R |
| CINCINNATI/NORTHERN KENTUCKY INTL, OH., UNITED STATES; KCVG | N/A | A,R | A,R | A,R |
| CLEVELAND CLEVELAND-HOPKINS INTL,OH., UNITED STATES; KCLE | N/A | A,R | A,R | A,R |
| COLORADO SPRINGS/CITY OF COLORADO SPRINGS MUNI., CO., UNITED STATES; KCOS | N/A | A,R | A,R | A,R |
| COLUMBIA METROPOLITAN,SC., UNITED STATES; KCAE | N/A | A | A | A |
| COLUMBIA REGIONAL,MO., UNITED STATES; KCOU | N/A | A | A | A |

U.S. Department
of Transportation
Federal Aviation
Administration                    Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
| Location | Provisional | A-318 | A-319 | A-320 |
|---|---|---|---|---|
| COLUMBUS/PORT COLUMBUS INTL, OH., UNITED STATES: KCMH | N/A | A | A | A |
| COZUMEL, MEXICO; MMCZ | N/A | · | A,R | A,R |
| CULIACAN, MEXICO; MMCL | N/A | A | A | A |
| DALLAS/DALLAS-LOVE FIELD,TX., UNITED STATES: KDAL | N/A | A | A | A |
| DALLAS-FORT WORTH/INTL,TX., UNITED STATES: KDFW | N/A | A,R | A,R | A,R |
| DAYTON/JAMES M. COX DAYTON INTL, OH., UNITED STATES: KDAY | N/A | A,R | A,R | A,R |
| DAYTONA BEACH/INTL., FL., UNITED STATES; KDAB | N/A | A | A | A |
| DENVER INTERNATIONAL, CO., UNITED STATES; KDEN | N/A | A,R | A,R | A,R |
| DES MOINES INTL,IA., UNITED STATES; KDSM | N/A | A,R | A,R | A,R |
| DETROIT/METROPOLITAN WAYNE COUNTY, MI., UNITED STATES: KDTW | N/A | A,R | A,R | A,R |
| DUBUQUE REGIONAL,IA., UNITED STATES; KDBQ | N/A | A | A | A |
| DULUTH/INTL, MN., UNITED STATES; KDLH | N/A | A | A | A |
| DURANGO/INTL, MEXICO; MMDO | N/A | A | A | A |
| EL PASO/INTL, TX., UNITED STATES; KELP | N/A | A | A | A |
| EUGENE/MAHLON SWEET FIELD,OR, UNITED STATES; KEUG | N/A | A | A | A |
| EVANSVILLE REGIONAL,IN., UNITED STATES; KEVV | N/A | A | A | A |
| EVERETT/SNOHOMISH COUNTY- PAINE FIELD, WA., UNITED STATES; KPAE | N/A | A | A | A |
| FAIRBANKS/EIELSON AFB,AK., ALASKA (U.S.); PAEI | N/A | A | A | A |
| FAIRBANKS/INTL,AK., ALASKA (U.S.); PAFA | N/A | A,R | A,R | A,R |
| FARGO/HECTOR INTL,ND., UNITED STATES; KFAR | N/A | A | A | A |
| FARMINGTON/ FOUR CORNERS REGIONAL, NM, UNITED STATES; KFMN | N/A | A | A | A |
| FLINT/BISHOP INTL,MI., UNITED STATES; KFNT | N/A | A | A | A |
| FORT COLLINS/LOVELAND MUNI, CO. UNITED STATES; KFNL | N/A | A | A | A |

Frontier Airlines, Inc.                    C078-4                    Certificate No.: F3LAB08Y

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

## AIRPORTS

| Location | Provisional | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| | | A-318 | A-319 | A-320 |
| FORT LAUDERDALE/FORT LAUDERDALE-HOLLYWOOD INTL, FL, UNITED STATES: KFLL | N/A | A,R | A,R | A,R |
| FORT MYERS/SOUTHWEST FLORIDA AIRPORT, FL, UNITED STATES: KRSW | N/A | A,R | A,R | A,R |
| FORT WAYNE INTERNATIONAL, IN, UNITED STATES: KFWA | N/A | A | A | A |
| FRESNO/YOSEMITE INTERNATIONAL, CA, UNITED STATES: KFAT | N/A | A | A | A |
| GAINESVILLE REGIONAL, FL, UNITED STATES: KGNV | N/A | A | A | A |
| GRAND JUNCTION REGIONAL, CO, UNITED STATES: KGJT | N/A | A | A | A |
| GRAND RAPIDS/GERALD R. FORD INTL, MI, UNITED STATES: KGRR | N/A | A,R | A,R | A,R |
| GREEN BAY/AUSTIN STRAUBEL, WI, UNITED STATES: KGRB | N/A | A,R | A,R | A,R |
| GUADALAJARA, MEXICO: MMGL | N/A | A | A | A |
| GULFPORT/GULFPORT-BILOXI INTL, MS, UNITED STATES: KGPT | N/A | A | A | A |
| HARRISBURG/HARRISBURG INTL, PA, UNITED STATES: KMDT | N/A | A | A | A |
| HOUSTON/GEORGE BUSH INTERCONTINENTAL, TX, UNITED STATES: KIAH | N/A | A,R | A,R | A,R |
| HOUSTON/WILLIAM P. HOBBY, TX, UNITED STATES: KHOU | N/A | A,R | A,R | A,R |
| INDIANAPOLIS INTL, IN, UNITED STATES: KIND | N/A | A,R | A,R | A,R |
| ISLIP/LONG ISLAND MACARTHUR, NY, UNITED STATES: KISP | N/A | A,R | A,R | A,R |
| JACKSON HOLE (WY), UNITED STATES: KJAC | N/A | R | R | R |
| JACKSON/EVERS INTL AIRPORT, MS, UNITED STATES: KJAN | N/A | A | A | A |
| JACKSONVILLE INTL, FL, UNITED STATES: KJAX | N/A | A | A | A |
| KANSAS CITY/INTL, MO, UNITED STATES: KMCI | N/A | A,R | A,R | A,R |
| KENAI/KENAI MUNI, ALASKA (U.S.): KENA | N/A | A | A | A |
| KINGSTON/NORMAN MANLEY, JAMAICA: MKJP | N/A | A | A | A |
| KNOXVILLE/MCGHEE TYSON, TN, UNITED STATES: KTYS | N/A | A | A | A |
| LA CROSSE MUNI, WI, UNITED STATES: KLSE | N/A | A | A | A |

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

## AIRPORTS

| Location | Provisional | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| | | A-318 | A-319 | A-320 |
| LA PAZ/INTERNATIONAL, MEXICO; MMLP | N/A | A | A | A |
| LAFAYETTE/REGIONAL, LA., UNITED STATES; KLFT | N/A | A | A | A |
| LANSING/CAPITAL REGION INTL., MI., UNITED STATES; KLAN | N/A | A | A | A |
| LARAMIE/REGIONAL, WY., UNITED STATES; KLAR | N/A | A | A | A |
| LAS VEGAS/MCCARRAN INTL, NV., UNITED STATES; KLAS | N/A | A,R | A | A |
| LIBERIA/DANIEL ODUBER INTL., COSTA RICA; MRLB | N/A | A,R,F | A,R,F | A,R |
| LIHUE/LIHUE, HI., UNITED STATES; PHLI | N/A | A,R | A,R | A,M |
| LITTLE ROCK/ADAMS FIELD A.R., UNITED STATES; KLIT | N/A | A,R | A,R | A,M |
| LONG BEACH/DAUGHERTY FIELD CA., UNITED STATES; KLGB | N/A | A,M | A,M | A,M |
| LORETO, MEXICO; MMLT | N/A | A | A | A |
| LOS ANGELES/INTL, CA., UNITED STATES; KLAX | N/A | A | A | A |
| LOUISVILLE/STANDIFORD,KY., UNITED STATES; KSDF | N/A | A,R | A,R | A,R |
| MACON/MIDDLE GEORGIA REGIONAL,GA., UNITED STATES; KMCN | N/A | A,R | A,R | A,R |
| MADISON/DANE COUNTY REGIONAL TRUAX FIELD,WI., UNITED STATES; KMSN | N/A | A,R | A,R | A,M |
| MANAGUA/AUGUSTO CESAR SANDINO, NICARAGUA; MNMG | N/A | A | A | A |
| MANCHESTER/MANCHESTER INTL, UNITED STATES; KMHT | N/A | A | A | A |
| MAZATLAN, MEXICO; MMMZ | N/A | A,R | A,R | A,R |
| MEDFORD/MEDFORD INTL., OR., UNITED STATES; KMFR | N/A | A | A | A |
| MELBOURNE/INTL., FL., UNITED STATES; KMLB | N/A | A | A | A |
| MEMPHIS/INTL., TENN., UNITED STATES; KMEM | N/A | A | A | A |
| MERIDA, MEXICO; MMMD | N/A | - | A | A |
| MEXICO CITY/BENITO JUAREZ INTL, MEXICO; MMMX | N/A | A | A | A |

| U.S. Department of Transportation Federal Aviation Administration | Operations Specifications | | | | | | |

**AIRPORTS**

| Location | Provisional | AIRCRAFT AUTHORIZED | | | |
|---|---|---|---|---|---|
| | | A-318 | A-319 | A-320 |
| MIAMI INTL, FL, UNITED STATES KMIA | N/A | A | A | A |
| MILWAUKEE GENERAL MITCHELL INTL, WI, UNITED STATES KMKE | N/A | A,R | A,R | A,R |
| MINNEAPOLIS-ST PAUL/WOLD CHAMBERLAIN, MN, UNITED STATES KMSP* | N/A | A,R | A,R | A,R |
| MOBILE REGIONAL, AL, UNITED STATES KMOB | N/A | A | A | A |
| MOLINE/QUAD CITY INTL, IL, UNITED STATES KMLI | N/A | A | A | A |
| MONROE/MONROE REGIONAL, LA, UNITED STATES KMLU | N/A | A | A | A |
| MONTEGO BAY/SANGSTER, JAMAICA, MKJS | N/A | - | A,R | A,R |
| MONTGOMERY REGIONAL (DANNELLY FIELD), AL, UNITED STATES KMGM | N/A | A | A | A |
| MONTROSE REGIONAL, CO, UNITED STATES KMTJ | N/A | A | A | A |
| MOSES LAKE/GRANT CO. INTL, WA, U.S., UNITED STATES KMWH | N/A | A | A | A |
| NASHVILLE INTL, TN, UNITED STATES KBNA | N/A | A | A | A |
| NEW ORLEANS INTL-LOUIS ARMSTRONG, LA, UNITED STATES KMSY | N/A | A,R | A,R | A,R |
| NEW YORK/JOHN F. KENNEDY INTL, NY, UNITED STATES KJFK | N/A | A,R | A,R | A,R |
| NEW YORK/LA GUARDIA, NY, UNITED STATES KLGA | N/A | A | A | A |
| NEWARK/LIBERTY INTL, NJ, UNITED STATES KEWR | N/A | A | A | A |
| NEWBURGH/STEWART INTL NY, UNITED STATES KSWF | N/A | A,R | A,R | A,R |
| NEWPORT NEWS/WILLIAMSBURG INTL, VA, UNITED STATES KPHF | N/A | A | A | A |
| NORTH PLATTE/REGIONAL, NE, UNITED STATES KLBF | N/A | A | A | A |
| OAKLAND/METROPOLITAN OAKLAND INTL, CA, UNITED STATES KOAK | N/A | A | A | A |
| OGDEN/MUNICIPAL/UT, UNITED STATES KOGD | N/A | A | A | A |
| OKLAHOMA CITY/WILL ROGERS WORLD, OK, UNITED STATES KOKC | N/A | A,R | A,R | A,R |
| OMAHA/EPPLEY AIRFIELD, NE, UNITED STATES KOMA | N/A | A,R | A,R | A,R |
| ONTARIO INTL, CA, UNITED STATES KONT | N/A | A | A | A |

Premier Airlines, Inc.        C070-7        Certificate No.: F3LA98KY

U.S. Department
of Transportation
Federal Aviation
Administration　　　　Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| ORLANDO/INTL.,FL., UNITED STATES: KMCO | N/A | A,R | A,R | A,R |
| ORLANDO/SANFORD INTL, FL., UNITED STATES: KSFB | N/A | A | A | A |
| PALM SPRINGS/REGIONAL,CA, UNITED STATES: KPSP | N/A | A,R | A,R | A,R |
| PANAMA CITY/TOCUMEN INTL., PANAMA: MPTO | N/A | A | A | A |
| PEORIA/GENERAL DOWNING - PEORIA INTL, IL., UNITED STATES: KPIA | N/A | A | A | A |
| PHILADELPHIA/INTL, PA., UNITED STATES: KPHL | N/A | A,R | A,R | A,R |
| PHOENIX/MESA GATEWAY, AZ., UNITED STATES: KIWA | N/A | A | A | A |
| PHOENIX/SKY HARBOR INTL., AZ., UNITED STATES: KPHX | N/A | A,R | A,R | A,R |
| PITTSBURGH INTL AIRPORT, PA., UNITED STATES: KPIT | N/A | A,R | A,R | A,R |
| POCATELLO/REGIONAL,ID., UNITED STATES: KPIH | N/A | A | A | A |
| PORT-AU-PRINCE/INTL, HAITI: MTPP | N/A | A | A | A |
| PORTLAND/INTL. JETPORT,ME. UNITED STATES: KPWM | N/A | A | A | A |
| PORTLAND/INTL. OR., UNITED STATES: KPDX | N/A | A,R | A,R | A,R |
| PORTSMOUTH/INTL. AT PEASE, NH., UNITED STATES: KPSM | N/A | A | A | A |
| PROVIDENCE/THEODORE FRANCIS GREENE STATE,RI., UNITED STATES: KPVD | N/A | A | A | A |
| PROVO MUNICIPAL AIRPORT, UT, UNITED STATES: KPVU | N/A | A | A | A |
| PUEBLO MEMORIAL, CO., UNITED STATES: KPUB | N/A | A | A | A |
| PUERTO VALLARTA, MEXICO: MMPR | N/A | A,R | A,R | A,R |
| PUNTA CANA, DOMINICAN REPUBLIC: MDPC | N/A | - | A,R | A,R |
| RALEIGH/DURHAM,NC., UNITED STATES: KRDU | N/A | A | A | A |
| REDMOND/ROBERTS FIELD,FR., UNITED STATES: KRDM | N/A | A | A | A |
| RENO/TAHOE INTL, NV., UNITED STATES: KRNO | N/A | A | A | A |
| RICHMOND/INTL, VA., UNITED STATES: KRIC | N/A | A | A | A |

Frontier Airlines, Inc.　　　　　C070-8　　　　　Certificate No.: F3LA008Y

U.S. Department of Transportation
Federal Aviation Administration

Operations Specifications

## AIRPORTS

| Location | Provisional | A-318 | A-319 | A-320 |
|---|---|---|---|---|
| | | AIRCRAFT AUTHORIZED | | |
| ROCHESTER INTL, MN., UNITED STATES KRST | N/A | A | A | A |
| ROCKFORD/CHICAGO/ROCKFORD INTL, IL., UNITED STATES KRFD | N/A | A-3 | A-3 | A-3 |
| ROCK SPRINGS/SWEETWATER COUNTY WY., UNITED STATES KRKS | N/A | A | A | A |
| ROSWELL INTL AIR CENTER, NM., UNITED STATES KROW | N/A | A | A | A |
| SACRAMENTO INTERNATIONAL AIRPORT, CA., UNITED STATES KSMF | N/A | A-R | A-R | A-R |
| SACRAMENTO MATHER AIRPORT, CA., UNITED STATES KMHR | N/A | A | A | A |
| CALZ/ZACHARY FIELD,OR, UNITED STATES KSLE | N/A | A | A | A |
| SALINA,MUNI,KS, UNITED STATES KSLN | N/A | A | A | A |
| SALT LAKE CITY,ATL,UT., UNITED STATES KSLC | N/A | A-R | A-R | A-R |
| SAN ANTONIO INTL, TX., UNITED STATES KSAT | N/A | A | A | A |
| SAN DIEGO-SAN DIEGO INTL-LINDBERGH FIELD, CA, UNITED STATES KSAN | N/A | A-R | A-R | A-R |
| SAN FRANCISCO INTL, CA., UNITED STATES KSFO | N/A | A-R | A-R | A-R |
| SAN JOSE DEL CABO, MEXICO-MMSD | N/A | A-R | A-R | A-R |
| SAN JOSE INTL, CA., UNITED STATES KSJC | N/A | A-R | A | A |
| SAN JOSE/SAN JUAN SANTAMARIA INTL...COSTA RICA-MROC | N/A | A- | A-R | A-R |
| SAN PEDRO SULA-LA MESA INTL, HONDURAS-MHLM | N/A | A | A | A |
| SAN SALVADOR-EL SALVADOR INTL, EL SALVADOR-MSLP | N/A | A | A | A |
| SANTA ANA/JOHN WAYNE ARPT ORANGE COUNTY CA., UNITED STATES KSNA | N/A | R | R | R |
| SANTO DOMINGO-LAS AMERICAS INTL, DOMINICAN REPUBLIC-MDSD | N/A | A | A | A |
| SARASOTA-BRADENTON,FL, UNITED STATES KSRQ | N/A | A | A | A |
| SAVANNAH/HILTON HEAD INTL, GA, UNITED STATES KSAV | N/A | A | A | A |
| SCOTTSBLUFF-WESTERN NEBRASKA REGIONAL/WILLIAM B. HEILIG FIELD, NE., UNITED STATES KBFF | N/A | A | A | A |

U.S. Department
of Transportation
Federal Aviation
Administration                    Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| SEATTLE/BOEING FIELD/KING COUNTY INTL., WA., UNITED STATES: KBFI | N/A | A | A | A |
| SEATTLE/SEATTLE-TACOMA INTL., WA., UNITED STATES: KSEA | N/A | A,R | A,R | A,R |
| SHREVEPORT/REGIONAL,LA., UNITED STATES: KSHV | N/A | A | A | A |
| SIOUX FALLS/JOE FOSS FIELD, SD., UNITED STATES: KFSD | N/A | A | A | A |
| SOUTH BEND/MICHIANA RGNAL, IN., UNITED STATES: KSBN | N/A | A,R | A,R | A,R |
| SPOKANE/INTL., WA., UNITED STATES: KGEG | N/A | A,R | A,R | A,R |
| SPRINGFIELD/ABRAHAM LINCOLN CAPITAL, IL., UNITED STATES: KSPI | N/A | A | A | A |
| SPRINGFIELD/BRANSON NATIONAL, MO., UNITED STATES: KSGF | N/A | A | A | A |
| ST. LOUIS/LAMBERT-ST. LOUIS INTL., MO., UNITED STATES: KSTL | N/A | A,R | A,R | A,R |
| ST. PETERSBURG/CLEARWATER INTL., FL., UNITED STATES: KPIE | N/A | A | A | A |
| STOCKTON/STOCKTON METROPOLITAN, CA., UNITED STATES: KSCK | N/A | A | A | A |
| SYRACUSE/HANCOCK INTL.,NY., UNITED STATES: KSYR | N/A | A | A | A |
| TALLAHASSEE REGIONAL,FL., UNITED STATES: KTLH | N/A | A | A | A |
| TAMPA/INTL., FL., UNITED STATES: KTPA | N/A | A,R | A,R | A,R |
| TERRE HAUTE/INTL.-HULMAN FIELD, IN., UNITED STATES: KHUF | N/A | A | A | A |
| TOLEDO/EXPRESS,OH., UNITED STATES: KTOL | N/A | A | A | A |
| TOLUCA/LIC.ADOLFO LOPEZ M., MEXICO: MMTO | N/A | A | A | A |
| TOPEKA/FORBES FIELD,KS., UNITED STATES: KFOE | N/A | A | A | A |
| TOULOUSE/BLAGNAC, FRANCE: LFBO | N/A | A | A | A |
| TRENTON/MERCER, NJ., UNITED STATES: KTTN | N/A | A,R | A,R | A,R |
| TUCSON/INTL.,AZ., UNITED STATES: KTUS | N/A | A,R | A,R | A,R |
| TULSA/INTL, OK., UNITED STATES: KTUL | N/A | A | A | A |
| TWIN FALLS/JOSLIN FIELD - MAGIC VALLEY REGIONAL, ID., UNITED STATES: KTWF | N/A | A | A | A |

U.S. Department of Transportation
Federal Aviation Administration

Operations Specifications

| AIRPORTS | AIRCRAFT AUTHORIZED | | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| WACO REGIONAL, TX, UNITED STATES KACT | N/A | A | A | A |
| WASHINGTON/DULLES INTL, DC, UNITED STATES KIAD | N/A | A | A | A |
| WASHINGTON/NATIONAL, DC, UNITED STATES KDCA | N/A | R | R | R |
| WEST PALM BEACH/PALM BEACH INTL, FL, UNITED STATES KPBI | N/A | A | A | A |
| WHITEHORSE, YT, CANADA CYXY | N/A | A | A | A |
| WICHITA FALLS/SHEPPARD AFB/WICHITA FALLS MUNI, TX, UNITED STATES KSPS | N/A | A | A | A |
| WICHITA/MID-CONTINENT, KS, UNITED STATES KICT | N/A | A | A | A |
| YAKIMA/AIR TERMINAL, WA, UNITED STATES KYKM | N/A | A | A | A |
| YOUNGSTOWN/WARREN REGIONAL, OH, UNITED STATES KYNG | N/A | A | A | A |
| YUMA/MCAS/YUMA INTL, AZ, UNITED STATES KNYL | N/A | A | A | A |
| ZIHUATANEJO/IXTAPA-ZIHUATANEJO INTL, MEXICO MMZH | N/A | AR | AR | AR |

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

1. The Certificate Holder applies for the Operations in this paragraph.
2. These Operations Specifications are approved by direction of the Administrator.

Digitally signed by Dale Snider, Principal Operations Inspector (OL1)
[1] SUPPORT INFO: A## SSN and TTN is a reqular anent
SAT is a reqular anent
[2] EFFECTIVE DATE: 9/25/2012, [3] AMENDMENT #: 113
DATE: 2012.09.25 06:20:20 -05:00

3.1 I hereby accept and receive the Operations Specifications in this paragraph.
Digitally signed by Barry W Callwra
[ SUPPORT INFO: A## and TTN, Renewed SAT as an IRI airport
DATE: 2012.09.25 09:15:09 -05:00

Frontier Airlines, Inc.

C079-12

Certificate No. FILA00RY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRRAM, INC.,<br><br>          Plaintiffs,<br><br>v.<br><br>UNITED STATES FEDERAL AVIATION<br>ADMINISTRATION,<br><br>          Defendant. | Civil Action No.:  14-cv-2686 (PGS)<br><br>ORDER |

THIS MATTER having been brought to the Court on (1) the Motion to Dismiss Plaintiffs Complaint pursuant to Fed. R. Civ. P. 12(b)(l) and 12(b)(6) (ECF No. 24) filed by Defendant, Federal Aviation Administration ("FAA"); and (2) the motion for leave to amend the complaint filed by Plaintiffs (ECF No. 35); and the Court having reviewed the papers submitted by the parties, and having heard the argument of the parties; and for the reasons set forth at the hearing on the record on May 18, 2015, and for good cause shown,

IT IS on this 18th day of May, 2015

ORDERED that the FAA's motion pursuant to Fed. R. Civ. P. 12(b)(l) is hereby GRANTED; and it is further

ORDERED that Plaintiffs Complaint is DISMISSED; and it is further

ORDERED that Plaintiff's motion to amend the Complaint is denied as moot. The clerk is directed to close the case.

_____
PETER G. SHERIDAN, U.S.D.J.

Exhibit 3

1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2

3
    _____
4   BRRAM, INC., et al,
                  PLAINTIFFS
5
        Vs.                             CIVIL NO.
6                                       14-2886 (PGS)

    UNITED STATES FEDERAL AVIATION
7   ADMINISTRATION, et al,
                  DEFENDANTS
8   _____

9

10                           **MAY 18, 2015**
                          CLARKSON S. FISHER COURTHOUSE
11                        402 EAST STATE STREET
                          TRENTON, NEW JERSEY  08608
12

13

14  B E F O R E:        THE HONORABLE PETER G. SHERIDAN
                        U.S. DISTRICT COURT JUDGE
15                      DISTRICT OF NEW JERSEY

16

17

18

19
    **COURT'S OPINION ON MOTION TO DISMISS**
20

21

22
                          Certified as true and correct as required
23                        by Title 28, U.S.C. Section 753
                          /S/ Francis J. Gable
24                        FRANCIS J. GABLE, C.S.R., R.M.R.
                          OFFICIAL U.S. REPORTER
25                        (856) 889-4761

Exhibit 4

1    THE COURT:  This is the BRRAM v. The Federal

2    Aviation Administration.  This is a motion by the Federal

3    Aviation Administration to dismiss the complaint for lack of

4    jurisdiction and for failure to state a claim.  The complaint

5    seeks injunctive relief to enjoin Frontier Airline Operations

6    at Trenton Mercer Airport until such time as an Environmental

7    Impact Statement is completed and implemented as required by

8    the National Environmental Policy Act (NEPA), 42 U.S.C.

9    Section 4332.  BRRAM is a group of New Jersey and Pennsylvania

10   residents who live near the Trenton Airport.  The FAA seeks to

11   dismiss under Rule 12(b)(1) because the Federal Airlines

12   Deregulation Act requires any person who is aggrieved by a

13   final action of the FAA "apply for review...in the Court of

14   Appeals of the United States for the Circuit in which the

15   person resides." 46 U.S.C. Section 46110.  The FAA also seeks

16   to dismiss under Rule 12(b)(6) because the complaint was

17   untimely filed, as the petition for review must be filed

18   within 60 days after the order is issued, and allegedly the

19   plaintiffs did not comply with that provision.  The statute

20   (49 U.S.C. Section 46110(a)) provides in pertinent part:  "A

21   person disclosing a substantial interest in an order issued by

22   the secretary of transportation (or the...administrator of the

23   Federal Aviation Administration with respect to aviation

24   duties and powers designated to be carried out by the

25   administrator) in whole or in part under this part or part

1   B...may apply for review of the order by filing a petition for

2   review in the United States Court of Appeals for the District

3   of Columbia Circuit, or in the Court of Appeals of the United

4   States for the Circuit in which the person resides or has its

5   principal place of business.  The petition must be filed no

6   later than 60 days after the order is issued.  The court may

7   allow the petition to be filed after the 60th day only if

8   there are reasonable grounds for not filing by the 60th day."

9        The plaintiffs counter that they seek to have an

10  environmental assessment of the noise impacts of the Trenton

11  Airport undertaken by the FAA prior to the commencement of

12  more airline traffic.  As such, the plaintiffs only contend

13  they seek relief exclusively under the NEPA.

14        The NEPA requires that Environmental Impact

15  Statements be prepared before undertaking "major federal

16  actions significantly affecting the quality of human

17  environment."  42 U.S.C. Section 4332(c).  The FAA had not

18  provided an Environmental Impact Statement under NEPA because

19  the FAA determined that the Trenton Airport fit within the

20  "categorical exclusion provisions of NEPA."  In light of those

21  contentions, the facts are presented below.

22        In 2006, BRRAM and Lower Makefield Township filed

23  suit against the FAA in the Third Circuit.  While the suit was

24  pending in 2008, after 10 years of attempting to expand the

25  Trenton Airport to accommodate a low fare/high frequency air

00:03
00:03
00:04
00:05
00:06

1  carrier, Mercer County officials abandoned its expansion plan

2  and advised the FAA of same.  At that time, and in response,

3  the FAA "withdrew the Finding of No Significant Impact/Record

4  of Decision" (FONSI/ROD) that was originally filed on February

00:07     5  23, 2006.  Within the withdrawal, the regional administrator

6  noted that an environmental assessment was undertaken, and the

7  FAA issued a FONSI/ROD approving the airport's sponsor's

8  preferred alternative.  The administrator further noted that

9  such an assessment remains valid for three years, and three

00:08    10  years was nearing expiration.  As such, the Trenton Airport

11  "EA would need to be reevaluated at the very least to ensure

12  that the environmental analyses are accurate, valid, adequate

13  and current."  Under the signature of the administrator, the

14  administrator noted that the withdrawal was a final action or

00:08    15  decision.  It states:

16       "This decision is taken pursuant to 49 U.S.C. Section

17       40101, et seq. (Part A) and 49 U.S.C. Section 47101, et

18       seq. (Part B), and constitutes a final order of the

19       administrator which is subject to review by the Courts of

00:09    20       Appeals by the United States in accordance with the

21       provisions of 49 U.S.C. Section 46110."

22            The filing of this withdrawal also ended the lawsuit

23  that was pending in the Third Circuit, and terminated any

24  judicial proceedings on the expansion of the Trenton Airport.

00:10    25            From that date there were no other reportable events

1   with regard to the parties until September 19, 2012.  On that

2   date Frontier, by way of a letter from Jim Colburn, notified

3   the FAA (Dale Snider) of its intent to utilize Trenton

4   Airport.  And Frontier sought an amendment "to add Trenton,

5   New Jersey to the Frontier Airlines operations specifications

6   CO7O airports as a regular (R) and alternative (A) airport."

7   The letter that Mr. Colburn of Frontier sent was brief.  First

8   it indicated that the subject matter as scheduled air bus

9   service from TTN (TTN being Trenton).  Then the body of the

10  letter indicates "that Frontier Airlines intends to begin

11  scheduled service from Trenton, New Jersey (TTN).  Service is

12  scheduled to begin on November 16, 2012 utilizing the airbus

13  A320 Series aircraft."  The letter only refers to two flights

14  per week, but below that Frontier Airlines requested to add

15  Trenton, New Jersey (TTN) to the Frontier Airlines operations

16  specifications, CO7O airports as a regular (R) and alternative

17  (A) airport.

18          About a week later, on September 25, 2012, Dale

19  Snider, Principal Operations Inspector of FAA, approved

20  Frontier's operations specifications.  That approval was

21  printed on the letterhead of U.S. Department of

22  Transportation, Federal Aviation Administration; and refers to

23  the operations specifications.  Below that reference there are

24  several paragraphs wherein it reads:  The certificate holder

25  (Frontier) applies for operations specifications to add

1 Trenton as a regular and alternative airport, and these
2 operations specifications are approved by direction of the
3 administrator.
4      Within the FAA's submission there is a certification
5 of Bruce A. Montigny, Manager of Flight Standard District
6 Office of the FAA, who oversees Frontier's air carrier's
7 certificate.  Mr. Montigny certified that Frontier's amendment
8 to add Trenton is a final decision of the FAA.  Montigny
9 states in paragraph 11 of his certification:
10      "On September 25, 2012, after determining that
11      Frontier could safely provide regular scheduled service
12      at Trenton-Mercer County Airport, the FAA approved that
13      amendment to Frontier's OpSpecs to include
14      Trenton-Mercer County Airport.  Exhibit B to this
15      declaration Frontier Airlines operations specifications
16      CO7O dated September 25, 2012 reflects this decision.
17      Once Frontier's OpSpecs were approved to permit it to
18      operate at Trenton-Mercer County Airport, Frontier
19      required no further approval with respect to service at
20      Trenton-Mercer County Airport.  Frontier is free to
21      determine which other airports approved in its OpSpecs
22      it will serve from Trenton-Mercer County Airport, as well
23      as the number of flights it will provide.  These matters
24      are business decisions made by the carrier without FAA
25      involvement."

*United States District Court*
*Trenton, New Jersey*

1          My review of this request and approval of the

2  operations specifications of Frontier raises certain concerns,

3  which I note below.  First, there's nothing in the approval of

4  the FAA about the waiving of the environmental assessment on

00:20    5  the basis of a categorical exclusion; second, the approval

6  does not note that it is a final decision of the FAA, although

7  it does acknowledge that approval was by the administrator of

8  the FAA; third, it is uncertain whether Dale Snider, who was

9  an inspector, has the authority over environmental matters so

00:21   10  as to conclude that an environmental assessment may be

11  categorically excluded.  And lastly, it remains unclear

12  whether the approval of the OpSpecs was communicated publicly,

13  i.e., to others beyond Frontier.

14          Sometime thereafter, on April 24, 2013, Mr. Potter,

00:22   15  attorney for the plaintiffs, wrote a letter to Carmine Gallo,

16  the FAA regional director.  Mr. Potter's letter acknowledged

17  the jurisdiction of the Third Circuit.  He wrote:  "You may

18  also recall that in 2006 BRRAM joined with the board of

19  supervisors of the Township of Lower Makefield in filing suit

00:23   20  in the Third Circuit Court of Appeals against the United

21  States Federal Aviation Administration.  The basis for the

22  2006 suit was the FAA's failure to prepare an Environmental

23  Impact Statement (EIS), as required by FAA Order 105OD, and

24  the National Environmental Policy Act (NEPA), 42 U.S.C.

00:23   25  Section 4321, et seq., including specifically a 'part 150'

1  noise capability study, prior to granting Trenton-Mercer

2  Airport approval to construct a new and enlarged passenger

3  terminal intended for the purposes of attracting Southwest

4  Airlines as a 'low fare/high frequency' commercial air carrier

00:24  5  at the airport."

6       The substance of the FONSI/ROD discussed earlier,

7  and Mr. Potter's understanding of the jurisdictional issues,

8  demonstrates that Potter knew that an appeal must ordinarily

9  be filed in the Third Circuit rather than at the district

00:25  10  court.

11       On May 28, 2013, the regional administrator's office

12  replied to Mr. Potter's April letter.  The letter has several

13  major points.  First, it notes an amendment to Frontier's

14  operations specification is a major federal action.  The

00:26  15  letter states: "At the time Frontier's OpSpecs were amended to

16  add Trenton Airport, the FAA believed that the approval was

17  subject to a categorical exclusion."  The letter further

18  stated: "While the FAA is not required to complete a NEPA

19  analysis for the additional flights, we understand the

00:26  20  community's concerns surrounding operations at Trenton

21  Airport, and we are willing to undertake a noise analysis to

22  determine if mitigation is necessary.  We expect that we will

23  be able to provide you with those results sometime in mid

24  August of this year."

00:  25       The reply is curious because the FAA does not state

1   the date of the approval of the categorical exclusion, and it

2   only acknowledges that "the FAA believed" that the approval of

3   the categorical exclusion occurred in September, but the

4   letter does not state who, when or why the FAA had such a

5   "belief" -- nor does it state that any public communication

6   notifying the public of the categorical exclusion decision had

7   occurred.

8            Lastly, the FAA's reply breathes life into

9   plaintiffs' contention that an EIS of some kind may be in the

10  offing.  The Court notes that the FAA determined it would

11  present such evidence by mid August -- which is after the 60

12  days permitted for plaintiffs to appeal.  Coincidentally, at

13  oral argument the FAA acknowledged that no environmental

14  impact statement was ever undertaken; and such decision or

15  omission not to undertake an environmental assessment was

16  never communicated to the plaintiffs.

17           Motion to dismiss.  Pursuant to Rule 12(b)(1) the

18  court must dismiss a complaint in whole or in part if the

19  plaintiff fails to establish that the court has jurisdiction

20  over the claim.  Plaintiffs, as the party asserting

21  jurisdiction, "bears the burden of showing that the case is

22  properly before the court at all stages of the litigation."

23  The *Packard* case, 994 F.2d 1039, 1045 (3d. Cir. 1993).

24  Challenges to jurisdiction under Rule 12(b)(1) may be either

25  facial or factual.  That's *Petruska v. Gannon*, 462 F.3d 294,

1    302, note 3 (3d. Cir. 2006)(cert. denied 550 U.S. 903 (2007)).

2            A facial attack challenges the sufficiency of the

3    pleading and the trial court "must consider the allegations of

4    the complaint as true."  However, a factual attack of

5    plaintiff's allegations are afforded no presumption of

6    truthfulness, and the trial court may review the evidence

7    outside the pleadings.  That's *Gould v. United States*, 220

8    F.3d 169, 176 (3d. Cir. 2000).

9            In looking at subject matter jurisdiction, the FAA

10   filed a motion to dismiss pursuant to Rules 12(b)(1) and

11   12(b)(6).  The FAA argues that the Court lacks subject matter

12   jurisdiction over plaintiffs' claims because the Courts of

13   Appeal have exclusive jurisdiction to review final orders of

14   the FAA.  And the FAA also argues that even if this Court had

15   subject matter jurisdiction, plaintiffs' claims would be

16   barred and dismissed under Rule 12(b)(6) because the claim was

17   filed untimely.  I do not reach the 12(b)(6) decision.

18           Congress has vested the Federal Courts of Appeal

19   with exclusive jurisdiction over FAA orders.  Specifically, 49

20   U.S.C. Section 46110(a) provides in pertinent part:

21           "A person disclosing a substantial interest in an order

22           issued by...the Administrator of the Federal Aviation

23           Administration with respect to aviation duties and powers

24           designated to be carried out by the Administrator...may

25           apply for review of the order by filing a petition for

1    review in the United States Court of Appeals for the

2    District of Columbia Circuit, or in the Court of Appeals

3    in the United States for the circuit in which the

4    plaintiff resides or has its principal place of

5    business." 49 U.S.C. Section 46110(a).

6        The statute further provides that the appellate

7    court "has exclusive jurisdiction to affirm, amend, modify, or

8    set aside any part of the order, and may order...further

9    [administrative] proceedings." 49 U.S.C. 46110(c). See also,

10   *Bellocchio v. N.J. Department of Environmental Protection*, 16

11   F.Supp.3d 367, 375 (D.N.J. 2014). In that case it was held

12   that challenges to FAA orders pertaining to NEPA actions vest

13   exclusively with the U.S. Court of Appeals. The FAA argues

14   that plaintiffs are appealing the September 25, 2012 approval,

15   or the May 28, 2013 response from the FAA to Potter. One

16   cannot actually determine when the categorical exclusion

17   decision was made by the FAA. It is difficult to conceive

18   that an inspector would have that authority in September of

19   2012. Moreover, the fact that the FAA asserts that it

20   "believed" the exclusion applied does not sound as if it was a

21   final decision. However, the facts show that a final decision

22   occurred over this longer period of time. That is, there are

23   a large number of flights that are entering the air space, and

24   the FAA has washed its hands of any responsibility for

25   oversight over Trenton Airport operations. As such, this

1   appears to be the kind of case which Congress empowered the

2   Circuit Courts to handle; that is, the FAA order being

3   challenged by the plaintiffs is the FAA's September 25, 2012

4   order amending Frontier OpSpecs which authorizes Frontier to

00:38   5   provide commercial passenger service in and out of Trenton

6   Airport.  Federal regulations empower the FAA Administrator to

7   amend the carrier's OpSpecs (14 CFR Section 119.51(A)).  Thus,

8   it would allow for an OpSpecs amendment as one of the

9   "aviation duties and powers designated to be carried out by

00:38   10   the FAA Administrator"  referenced in Section 4110(a).

11          Even if the September 25, 2012 letter is deemed not

12   to be final, then the May 2013 reply letter from the regional

13   manager of FAA gives notice to the plaintiffs of the so-called

14   categorical exclusion decision.  As such, under Section

00:40   15   4110(a) review of the FAA's letter would still lie with the

16   Court of Appeals under 49 U.S.C. Section 46110(A).  See also,

17   *Sierra Club v. Department of Transportation*, 753 F.2d 120, 121

18   (D.C. Cir. 1985).  See also, *Fleming v. United States*

19   *Department of Transportation*, 348 Fed. App'x 736 at 737 (3d.

00:40   20   Cir. 2009).

21          It's noteworthy that an agency letter can sometimes

22   constitute an agency order.  For example, the Third Circuit

23   has held that FAA correspondence may provide an adequate

24   record for judicial review under 49 U.S.C. Section 46110(a).

00:41   25   See, *Aerosource v. Slater*, 142 F.3d 572, 578, note 10 (3d.

1   Cir. 1998). In *Aerosource,* there was a finding that an FAA

2   letter could serve as a final order. Thus, an FAA order "need

3   not be a formal order, the product of a formal decision-making

4   process, or be issued personally by the FAA administrator."

00:42   5   *Id.*

6           At the heart of this lawsuit, the lawsuit challenges

7   the order of the FAA that amended Frontier's OpSpecs, but

8   failed to decide, as best this Court can tell, the EIS issue.

9   As such, under 46110(a) the Court of Appeals has exclusive

00:42   10   jurisdiction over this suit to the extent there is a dispute

11   over the meaning of the FAA's order, or whether the FAA met

12   its obligations under NEPA in categorically excluding any

13   environmental assessment. Approval of Frontier's OpSpecs is a

14   decision that falls within the provisions of Section 46110(a),

00:43   15   because that section provides that review of the orders of FAA

16   falls squarely within the exclusive jurisdiction of the

17   Circuit Courts. As such, when one looks at all the facts,

18   this is a case for the Circuit Courts to decide. Despite the

19   fact that the decision-making of the FAA may have been

00:44   20   somewhat ambiguous, it still yields sufficient notice to the

21   plaintiffs that any appeal or review of an FAA decision should

22   proceed before the Circuit Courts. As such, the complaint is

23   dismissed with prejudice.

24

25

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Phone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for the Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard  Wayne, The Board of Supervisors of Township of Lower Makefield, the Board of Supervisors of Upper Makefield Township, and the Borough Council of the Borough of Yardley, Pennsylvania | : Civil action number<br>: 3:14-cv-02686-JAP-DEA<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:     FIRST AMENDED<br>:       COMPLAINT<br>:<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| United States Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., | :<br>:<br>:<br>:<br>: |
| Defendants. | : |

Exhibit 5

A. THE PARTIES

1. Plaintiff BRRAM, Inc., is a not-for-profit corporation organized under the laws of the Commonwealth of Pennsylvania, headquartered at 25 South Main Street, Suite # 208, in Yardley, PA 19067.

2. Individual plaintiff Holly Bussey is a resident of 20 Knoll Drive in Yardley, Bucks County, Pennsylvania, 19067. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

3. Individual plaintiff William Lynch is the Treasurer of BRRAM, Inc., with his principal place of business at 19 South Main Street in Yardley, PA 19067, also beneath the flight path of Frontier Airlines' flights originating and ending in TTN. Mr. Lynch resides in Wrightstown Township, Bucks County, PA.

4. Individual plaintiff Richard DeLello is a resident of Bucks County at 1315 Albright Drive, Yardley, PA 19067. His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

5. Individual Plaintiff Julie Power is a resident of Bucks County at 3 Harlow Court, Yardley, PA 19067. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

6. Individual Plaintiffs John and Jennifer Giacobetti are residents of Bucks County at 9 Ludlow Road, Yardley, PA 19067. Their residence lies beneath the

flight path of many of defendant Frontier Airlines' flights from and into TTN.

7. Individual Plaintiff Deborah Leamann is a resident of Mercer County, New Jersey, who resides at 630 Bear Tavern Road, West Trenton, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

8. Individual Plaintiff Caroline Bondi is a resident of Mercer County, New Jersey, residing at 630 Bear Tavern Road, West Trenton, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

9. Individual Plaintiff Delores Brienza is a resident of Mercer County, New Jersey, residing a 173 W. Upper Ferry Road, Ewing, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

10. Individual Plaintiff Richard Wayne is a resident of Bucks County at 115 Windsor Road, Yardley, PA 19067. His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

11. Plaintiff, The Board of Supervisors of the Township of Lower Makefield in Bucks County, in the Commonwealth of Pennsylvania, is the governing body of the Township with offices at 1100 Edgewood Road, Yardley,

Pennsylvania 19067. The Board of Supervisors, with authority to act in their official capacity on behalf of the Township and its residents, voted on September 17, 2014, to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and its historic places.

12. Plaintiff, The Board of Supervisors of Upper Makefield Township of Bucks County, in the Commonwealth of Pennsylvania, is the governing body of the Township with offices at 1076 Eagle Road, Newtown, Pennsylvania 18940. The Board of Supervisors, with authority to act in their official capacity on behalf of the Township and its residents, decided to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and all its historic places.

13. Plaintiff, The Yardley Borough Council Members form the governing body of the Borough of Yardley in Bucks County in the Commonwealth of Pennsylvania, and have offices at 56 South Main Street, Yardley, Pennsylvania 19067. The Council Members, with authority to act in their official capacity on behalf of the Borough and its residents, decided to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and all its historic places.

14. Defendant The Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) is an executive agency of the Government of the United States, with its headquarters at 800 Independence

Avenue, S.W., in Washington, DC 20591, with the responsible regional office at

the Office of the Regional Administrator, Eastern Region, 1 Aviation Plaza,

Jamaica, NY 11434-4809.

15. Defendant Mercer County Board of Chosen Freeholders is the

governing body of Mercer County in the State of New Jersey and is the owner of

the Trenton Mercer Airport ("TTN") located in West Trenton, Ewing Township,

NJ 08628.  The offices of the Freeholders are in the McDade Administration

Building at 640 S. Broad Street in Trenton, New Jersey 08611.

16.  Defendant Frontier Airlines, Inc., is a foreign for-profit corporation

registered since 2010 to do business in New Jersey and operating as a common

carrier at the Trenton Mercer Airport in West Trenton, Ewing Township, NJ

08628.  Its main business address is Suite 300, 8909 Purdue Road, Indianapolis,

IN 46268, and its registered agent for service of process in New Jersey is

Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628.

B.  SUMMARY OF COMPLAINT:

17.  This is an action for declaratory and injunctive relief against the United

States Federal Aviation Administration (FAA) for its failure to perform the

comprehensive environmental impact analysis mandated by the "National

Environmental Policy Act" (NEPA) through the preparation of an Environmental

Impact Statement (EIS) of the environmental and safety impacts of Frontier Airlines expansion of passenger jet service at TTN, located in Ewing Township, Mercer County, New Jersey, far beyond the two flights per week authorized in Frontier's operations specifications amendment ("Ops Specs").

18. The Plaintiffs seek a judicial order compelling the FAA to comply with NEPA by promptly commencing the EIS review process and by curtailing further operation and expansion of Frontier Airlines passenger service at the TTN until such time as an EIS is prepared, published, subjected to public hearing and comment, and duly adopted, with emphasis on noise impacts, cumulative impacts and needed mitigation measures.

C. JURISDICTION:

19. This Court has subject matter jurisdiction of the complaint and jurisdiction of the parties to this action.

20. This action is brought before this court pursuant to the law of the United States, specifically section 102 (C) (2) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4321, et seq.; the implementing regulations of the FAA, 14 C.F.R. 150, et seq.; the regulations of the United States Council on environmental quality (CEQ), 40 C.F.R. 1500 , et seq.; and section 5 of the United States Administrative Procedure Act (APA)), 5 U.S.C.A. § 701, et

seq.; and 28 U.S.C.A. § 1331 which provides as follows:    "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, , laws, or treaties of the United States."

D.  VENUE:

21.  Because all of the defendants reside within or regularly conduct business within the State of New Jersey, venue is proper in the United States District Court of New Jersey, located in Trenton.

E.  FACTUAL ALLEGATIONS:

22.  Since at least 1999 various of the Plaintiffs, individually and collectively, together with many others, have been actively urging the FAA to prepare an Environmental Impact Statement ("EIS") regarding planned expansion of operations of commercial passenger jet service into and out of TTN, primarily due to the offensive noise impacts caused by such commercial airline service.

23.  In November 1999 the FAA sponsored "scoping sessions" to assist in determining the proper scope of environmental impact and safety reviews of recently announced TTN plans for expansion and enhancement of the airline terminal which was expressly intended for the purpose of attracting a low-fare/high-frequency (LF/HF) commercial airline.

24. At that time the LF/HF was intended to be Southwest Airlines.

25. Subsequently the FAA caused to be published a draft environmental assessment (DEA) which was the subject of a public hearing on June 12, 2002 in Trenton, at which plaintiff BRRAM members or representatives testified or submitted written comments critical of the limited scope of the DEA and calling for preparation of a complete EIS prior to the commencement of LF/HF service by Southwest or by any other air line.

26. On or about February 23, 2006 (published on April 7, 2006) the Regional Administrator of the FAA released a "Record of Decision" (ROD) inclusive of a "Finding of No Significant Environmental Impact" (FONSI) to explain the FAA decision to adopt the DEA, as amended, and not to prepare an EIS.

27. In response to issuance of the ROD/FONSI, Plaintiffs BRRAM and Lynch, joined by Bucks County resident Mr. Paul Krupp and the elected Board of Supervisors of the Township of Lower Makefield in Bucks County, PA, filed a formal "Petition for Review" in the United States Court of Appeals for the Third Circuit, captioned "Board of Supervisors of Lower Makefield Township, et al. Petitioners v. Federal Aviation Administration Respondent," a copy of which is enclosed as Plaintiffs' Exhibit 1.

28. Following a period of court-ordered mediation, the FAA on or about

June 9, 2008 issued a decision captioned "Order Withdrawing Finding of No Significant Impact/Record of Decision dated February 23, 2006 for the Trenton Mercer Airport" (Order) which is enclosed as Plaintiffs' Exhibit 2.

29. In the Order, the FAA concluded that there was a "change of circumstances" in that the project sponsor, Mercer County, had withdrawn its original plans to expand the TTN terminal and attendant facilities (the subject of the DEA) because Mercer County no longer sought to attract an LF/HF commercial air carrier, such as a Southwest Airlines and, as a result, there was no need to expand or enhance the TTN airport terminal or related facilities.

30. The FAA Order expressed its position that no EIS was made necessary because "to FAA's knowledge no other large commercial air carrier has expressed interest to enter this market," referring to TTN, and thus there was no "major federal action significantly affecting the environment" which would trigger further compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321, et seq., and the regulations of the FAA. 14 C.F.R. 150 et seq., through preparation of an EIS.

31. The FAA Order characterized a LF/HF air carrier "as an air carrier with operations similar to those of Southwest Airlines; specifically, section 1.5.2 of the DEA defines a LF/HF air carrier operation as a commercial air carrier

characterized by offering low fares with a high frequency of flights to popular

business and leisure destinations."

32. The FAA Order explained that "if the airport sponsor [Mercer County]

desired to pursue other projects for any purpose in the future, appropriate

environment review and full documentation would be required" to obtain FAA

approval.

33. The Order added that "based on my consideration of the substantial new

information that changed circumstances concerning the purpose and need for the

replacement terminal project discussed above as well as my consideration of FAA

orders cited above, I [Mr. Murray Weiss, FAA Regional Administrator, FAA

Eastern Region] am withdrawing the February 23, 2006 FONSI/ROD ... Should

the airport sponsor wish to proceed with any component of the project approved in

the now withdrawn ROD, the sponsor must seek FAA approval for that

component."

34. Most importantly, the Order stated that if the project sponsor, Mercer

County, attracted a LF/HF air carrier, this action "would likely cause sufficient

noise impacts that would require the preparation of an environmental impact

statement (EIS)." However, because "to date, no LF/HF air carrier is operating at

TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed

interest in starting operations at TTN," no EIS was needed in order to satisfy

NEPA requirements.

35. "Finally," the Order stated that "an Environmental Assessment [EA]

remains valid for 3 years in the absence of major steps to implement a project.

Therefore in approximately 9 months ... [by February 9, 2010] the TTN EA would

need to be reevaluated, at the very least to ensure that environmental analyses are

accurate, valid, adequate, and current."

36. To date, on information and belief, no such reevaluation of the EA has

been performed or even commenced.

37. Since issuance of the Order on June 9, 2008, Mercer County has

succeeded in attracting Frontier Airlines, which has become a LF/HF air carrier  at

TTN.

38.  Mercer County has embarked upon a federally-assisted series of capital

improvement programs which has facilitated Frontier Airlines decision to expand

its operations.

39.  The LF/HF operations of Frontier Airlines have caused, are causing,

and will continue to cause "sufficient noise impacts that would require the

preparation of an environmental impact statement," as the FAA projected they

would in the FAA Order of June 9, 2009.  However, the FAA has not commenced

any environmental or safety analysis of the impacts of Frontier's LF/HF operations.

40. Frontier Airlines operations at TTN constitute the equivalent of a Southwest Airlines LF/HF with attendant increased noise and other environmental impacts substantially affecting the human and natural environment, including extensive noise caused during takeoffs and landings over and above the Plaintiffs' homes, businesses, schools, and recreation areas that lie within the flight path into and out of TTN.

41. By April of 2013, Frontier was providing at least 47 flights per week into and out of Trenton Mercer Airport to the following destinations: Fort Myers, Florida; Fort Lauderdale, Florida; Orlando, Florida; Tampa, Florida; New Orleans, Louisiana; Atlanta, Georgia; Chicago, Illinois; Columbus, Ohio; Detroit, Michigan; and Raleigh, North Carolina.

42. By September 1, 2014, Frontier has been providing 62 flights per week, as claimed by the FAA in papers filed with this Court.

43. The FAA has provided or will provide substantial federal funding for various capital improvement projects at TTN for the purpose of facilitating Frontier Airlines and its ambitious LF/HF commercial ventures, thereby "federalizing" these projects.

44. Among these FAA-financed projects at TTN intended to facilitate Frontier Airlines operations as an LF/HF are the following:

– a. $880,000 for the purchase of an emergency response vehicle to help the airport to improve its emergency response preparation as Frontier Airlines expands operations at TTN;

– b. $8,550,000 for the construction of a parallel taxiway necessitated for the safe operation of Frontier Airlines;

– c. $427,500 for the construction of a connector taxiway to the terminal apron and associated lighting;

– d. $665,000 for improvement to a connector taxiway and associated lighting to complete a full parallel taxiway;

– e. $6,650,000 to complete a full parallel taxiway for the north side of the Ttn terminal.

45. To summarize, the list of federally-financed capital improvements necessitated by Frontier Airlines' operations at the airport includes (1) taxiway lengthening and improvements as ordered by the FAA to safely accommodate the planes used by Frontier; (2) installing an engineering materials arrestor system (EMAS), also necessitated by Frontier; (3) expanding the surface parking lot to handle increased patronage due to Frontier; (4) terminal passenger improvements

to assist expanded Frontier passenger service.

46. By letter dated September 19, 2012, Frontier wrote to an FAA regional administrator requesting an amendment to its Operations Specifications (Ops Specs) to allow it to use TTN for no more than 2 flights per week.  Exhibit 7.

47. By letter dated September 25, 2012 the FAA approved the Ops Specs amendment requested by Frontier.  Exhibit 8.

48. The Ops Specs amendment was not publicly issued or publicly noticed in any manner calculated to inform the public that Frontier was seeking an Ops Specs amendment and that the FAA had approved an amendment.

49. Since then, Frontier has expanded service to provide at least 62 flights per week at TTN, far in excess of the two flights per week in the Ops Specs amendment request.

50. On information and belief, Frontier Airlines has continued to expand operations as a LF/HF beyond the list of flights and destinations specified in this complaint, and now includes service to the following additional cities: Cleveland, Ohio; Milwaukee, Wisconsin; Minneapolis/St. Paul, Minnesota; Indianapolis, Indiana; St. Louis, Missouri; Nashville, Tennessee; Raleigh/Durham, North Carolina; St. Augustine/Jacksonville, Florida.  See Plaintiffs' Exhibit 3, Frontier.com website.

51. Individually and collectively, the Plaintiffs are suffering and will suffer injury in fact due to the environmental impacts of current and expanded operations of Frontier Airlines which include multiple, daily takeoffs and landings, early morning and late night, in the direction of, at low altitude over and above Bucks County homes, businesses, schools, historic buildings, historic districts, historic parks and other public facilities, which are located only a few miles away from TTN across the Delaware River, thereby causing excessive and substantial noise and other pollution. Therefore, Plaintiffs have standing to sue.

52. On April 24, 2013 and October 31, 2013, plaintiff BRRAM wrote to the FAA Regional Administrator setting forth detailed objections to the Frontier Airlines expansive operations and seeking NEPA compliance by the FAA, and requesting FAA reconsideration of any approvals granted to Frontier to expand operations at TTN. Copies of these letters are attached as plaintiff's Exhibits 4 and 5, respectively.

53. The FAA Regional Administrator replied to the April 24, 2013 letter in a letter dated May 28, 2013 (FAA Letter), a copy of which is included as plaintiff's Exhibit 6. (To date, there has been no FAA reply to the plaintiff's October 31, 2013 letter.)

54. Although the FAA Letter conceded that "an amendment of an air

carrier's operations specifications (Ops Specs) is a major Federal action that is subject to NEPA" it did not address how or whether the FAA intended to comply with NEPA prior to or after granting approval of the Ops Specs amendment for Frontier to utilize TTN for only two flights per week.

55. The FAA Letter further stated that in "in order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find the airline has demonstrated that it can safely and efficiently operate to/from that airport," but made no mention of the FAA performing any environmental or safety impact analysis of Frontier's high frequency use of TTN.

56. The FAA Letter goes on to state that "at the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion" from the requirements of NEPA, but without citation to any of the possible Categorical Exclusions provided in the FAA regulations; see, e.g., FAA Order 1050.20, 5050.4B (Table 6-1), 1050.1E (Ch. 3).

57. The FAA Letter does not explain how the FAA reached its conclusion that its approval of amended Ops Specs for Frontier was properly excluded from any environmental impact analysis; nor was a copy of any such Categorical Exclusion ruling provided or publicly issued.

58. The FAA Letter stated the agency's position that "once an airport has

been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978,

the airline is free to determine the level of service provided at that airport without

any further FAA approval."

59.  The foregoing  statement implies that even though the FAA has

determined that the Ops Specs amendment for Frontier as limited to two flights per

week, Frontier Airline's operations are exempt from any NEPA review of

environmental and safety impacts no matter how many flights into or out of TTN

airport are added by Frontier.

F .  ALLEGATIONS OF LAW:

The FAA's position that granting Frontier Airlines'

Operational Specifications amendment limited to two flights per week

permits Frontier to expand operations at will without any environmental or

safety analysis of expanded service violates NEPA and is arbitrary and

capricious:

60. The Plaintiffs incorporate by reference the allegations of paragraphs 1

through 59 as if set forth verbatim herein.

61   In the FAA Letter, the FAA Regional Administrator reported that FAA

approval of an amendment to a commercial airliner's Ops Specs is a "major

Federal action," which determination triggers the commencement of an

Environmental Assessment (EA) and NEPA compliance.

62.  The term "major Federal action is defined by the Council on Environmental Quality ("CEQ") as " actions with effects that may be major and which are potentially subject to federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (section 1508.27)...." 40 C.F.R. 1508.18.

63.  The CEQ regulations further clarify that "federal actions tend to fall within one of the following categories: ... (4) approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities." 40 C.F.R. 1508.18 (b) (4)

64.  "'Significantly' as used in NEPA requires consideration of both context and intensity," including "(a) context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), affected region, the affected interest, and the locality.  Significance varies with the setting of the proposed action for instance, in the case of a site specific action, significance would usually depend upon the effects in the locale rather than the world as a whole. Both short and long term effects are relevant." 40 C.F.R. 1508.27 (a).

65. "Intensity" includes "(1) impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial. ... (4) the degree to which the effects on the quality of the human environment are likely to be controversial ... (7) whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts...." 40 C.F.R. 1508.27.

66. Accordingly, a major Federal action which significantly affects the human environment requires the reviewing FAA, as the lead federal agency, promptly to comply with the NEPA by commencing the environmental analysis process which may conclude with the preparation of an EIS.

67. The FAA failed to comply with NEPA and its own NEPA regulations by arbitrarily and capriciously determining that a "Categorical Exclusion" approving Frontier Airlines Ops Specs for use of Trenton Mercer airport limited to two flights a week authorizes Frontier to expand its operations to include unlimited LF/HF passenger service at TTN.

68. A Categorical Exclusion is defined as "the category of actions which do

not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency and implementation of these regulations and for which therefore, neither an environmental assessment nor an environmental impact statement is required...." 40 C.F.R. Part 1508, Sec. 1508.4, et seq.

69. The FAA's Categorical Exclusion of the amended Ops Specs approved for Frontier Airlines is interpreted by Frontier Airlines and the FAA to allow Frontier to operate as a LF/HF commercial air carrier using Trenton Mercer airport without any environmental or safety impact analysis, even though the FAA previously determined in its June 9, 2008 Order that operation of an LF/HF airliner at TTN would likely cause sufficient noise impacts to require preparation of an EIS.

G. JUDICIAL RELIEF / REMEDIES:

WHEREFORE, Plaintiffs petition this Honorable Court to issue an Order:

1. Enjoining Frontier Airlines from any increase or expansion of service beyond current service levels at TTN until such time as the FAA has prepared, or caused to be prepared an Environmental Assessment (EA) which may result in the preparation of an Environmental Impact Statement (EIS) pursuant to the requirements of NEPA and implementing regulations.

2.  Compelling the FAA to prepare or cause to be prepared an EA which may result in an EIS and will address the full range of environmental impacts, including, inter alia, noise and community disruption and potential mitigation measures resulting from or caused by Frontier Airlines use of TTN at current and anticipated levels of service.

4.  Retaining jurisdiction of the case to ensure compliance. And

5.  Such other relief or remedies as may be Just and Equitable under the circumstances.

Dated: November 20, 2014.                Respectfully submitted,

                                         POTTER AND DICKSON

                                         _____/ s/ R. William Potter_____
                                         R. William Potter
                                         194 Nassau Street, Suite 31
                                         Princeton, NJ 08542-7003
                                         Email addresses: rwppddlaw@cs.com
                                         and potterrex@cs.com
                                         Phone (609) 921-9555; Fax (609) 921-2181
                                         Attorneys for the Plaintiffs

                              CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

Dated November 20, 2014.                 _____/s/  R. William Potter_____
                                         Attorney for the Plaintiffs

# ORDER WITHDRAWING
## Finding of No Significant Impact/Record of Decision (FONSI/ROD)
### dated February 23, 2006
### for the
### Trenton-Mercer Airport (TTN)
### Terminal Replacement and Other Projects in the Capital Improvement Program

This Order withdraws the Finding of No Significant Impact/Record of Decision (FONSI/ROD) issued by the Federal Aviation Administration (FAA) on February 23, 2006. The FAA issued the FONSI/ROD subsequent to its independent review of the Environmental Assessment and its Appendices ("the EA") for the Trenton-Mercer County Airport (TTN) *Construction of a New Replacement Terminal and Other Projects in the TTN Capital Improvement Program* ("the project"). The EA was issued pursuant to the National Environmental Policy Act of 1969 (NEPA), Council on Environmental Quality (CEQ) Regulations, and other applicable laws, FAA Orders, regulations and policies. The EA assessed the potential environmental impacts associated with the project, which is described in detail below. The FONSI/ROD was issued pursuant to 49 U.S.C. §40101 et.seq. (Part A) and 49 U.S.C. §47101 et.seq. (Part B) and constitutes a final order of the Administrator subject to review by the courts of appeals of the United States, pursuant to 49 U.S.C. §46110.

## Project Description
The ROD allows for the construction of a new 44,000 square foot terminal building accommodating two aircraft gates to replace the existing two-gate terminal; expanded apron area; realignment of existing airport terminal access road; additional automobile parking spaces (proposed northern and southern parking areas); demolition and removal of the existing Tennis Center (for southern parking area); new snow removal equipment and storage building; and taxiway improvement plan (including relocation of Taxiway D, widening Taxiway B and F, extension of Taxiway F to Runway 24, extension of Taxiway J to Taxiway B, and the addition of connectors to Runway 6/24 and the Terminal Ramp, Taxiway E to H connector; and Taxiway G connector.)

## Background
In early 1998, TTN requested FAA funding and Airport Layout Plan (ALP) approval for replacement of its terminal and other capital improvement plan (CIP) projects. In 1999, after considering and discussing this request with the airport sponsor, the FAA determined that an EA should be prepared to evaluate current conditions and analyze the impact of recent past and potential foreseeable future projects at TTN. On April 13, 2000, the airport sponsor submitted the draft EA to the FAA for review and comment.

During the preparation and review of the environmental analyses for this project, the purpose and need for the project changed. At various times during this process, TTN/Mercer County expressed interest in developing increased air carrier service at TTN. In fact, one of the alternatives analyzed during the NEPA process proposed a new, four-gate terminal facility. TTN described the purpose and need for this alternative, in part, as enabling it to accommodate the entry of a low fare/high frequency (LF/HF)[1] air carrier into the TTN

---

[1] A low fare-high frequency (LF/HF) air carrier is an air carrier with operations similar to those of Southwest Airlines. Specifically, Section 1.5.2 of the EA defines a LF/HF air carrier operation as "a commercial air carrier

Exhibit 6

market. This terminal design alternative encompassed 64,000 square feet of terminal space and four aircraft gates. Thereafter, but still during the NEPA process, TTN advised the FAA that it was no longer interested in pursuing the four-gate alternative. Rather, it was interested in pursuing a two-gate replacement alternative, the project described above.[2] This change in purpose and need required major modifications to the draft EA documentation. The FAA advised TTN that, in the interest of transparency and full compliance with applicable laws and regulations, the four-gate terminal alternative and its analyses should be included in the EA. This alternative is referred to as the "Build Alternative 2".[3]

The final draft Final EA was transmitted to the FAA on December 19, 2001. On March 11, 2002, the FAA provided the airport sponsor with its official comments and acknowledged that the sponsor was no longer interested in pursuing "Build Alternative 2". Therefore, while the final draft EA did include the analysis for the "Build Alternative 2" project *and* the potential impacts of the entry and operation of a LF/HF air carrier, the County's preferred alternative was the 44,000 square foot replacement terminal building accommodating two aircraft gates (also referred to as "Build Alternative 1"). This alternative is a "replacement terminal project" and reflects the fact that the airport sponsor no longer anticipated the entry of a LF/HF air carrier into the TTN market.[4]

The final draft EA was made available to the public via Public Notice on May 9, 2002 for a 60-day comment period including a public hearing held on June 12, 2002. The preliminary final EA, which included responses to comments, was transmitted to FAA on November 1, 2002. While undergoing FAA review, the County, via Public Notice on February 10, 2003, initiated an additional ten-day public comment period. On August 29, 2003, FAA received the final appendices to the preliminary final EA that included additional comments and responses. The FAA once again conducted an independent review of the NEPA documentation submitted for this project. The document still required additional information, modification, and coordination with other agencies.

Finally, in February, 2006, after all required information was obtained and agency coordination was completed, the FAA issued a FONSI/ROD approving the airport sponsor's preferred alternative/"Build Alternative 1". Based on the facts and circumstances at the time, as documented in the administrative record, the FONSI/ROD was accurate, well supported, and warranted. The FONSI/ROD made it clear that if the airport sponsor desired to pursue other projects for any purpose in the future, appropriate environmental review and documentation would be required.

---

characterized as offering low fares with a high frequency of flights to popular business and leisure destinations....A LF/HF commercial carrier typically starts up a new market like TTN with a minimum of 10 flights per day. LF/HF commercial air carriers also typically exhibit relatively high load factors (percent of seats occupied) from the start due to the low fares and wide selection of destination choices."
[2] Letter from Robert D. Prunetti, Mercer County Executive to Philip Brito, Manager, FAA New York Airports District Office, dated January 24, 2001
[3] The analyses of Build Alternative 2 revealed that [that] alternative would likely cause [sufficient] noise impacts that would require the preparation of an Environmental Impact Statement (EIS).
[4] To date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN. Additionally, as of early 2006, several commercial service airlines have commenced and ceased operations, or reduced the number of operations into and out of TTN. These carriers include Shuttle America, Boston-Maine Airways (PanAm), Big Sky, and Comair (Delta).

**Current Status and Changed Circumstances**

In making my decision to withdraw the February 23, 2006 FONSI/ROD, I have considered the changed status of the replacement terminal project and substantial new information that has been brought to my attention.

Specifically, it is the FAA's understanding that to date, the airport sponsor has taken no major steps to implement the project, nor does it have any plans to do so. By letter dated April 25, 2008, FAA requested Mercer County Counsel to provide information with respect to the implementation of the replacement terminal project. FAA specifically asked whether the County had initiated major steps to implement the replacement terminal project or, if no major steps had been taken, whether the County had any plans to begin work on the replacement terminal project prior to February 23, 2009. By letter dated April 29, 2008, Mercer County Counsel advised the FAA that it has no plans for the replacement terminal at this time. Additionally, to FAA's knowledge, no other large commercial air carrier has expressed interest to enter this market. Finally, pursuant to FAA Orders 5050.4B and 1050.1E,[5] an EA remains valid for three years in the absence of major steps to implement a project. Therefore, in approximately nine months (of which, only about five months could be considered "construction season" for the project), and in the absence of major steps to implement the project, the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current.

Based on my consideration of this substantial new information and the changed circumstances concerning the purpose and need for the replacement terminal project discussed above, as well as my consideration of FAA Orders cited above, I am withdrawing the February 23, 2006 FONSI/ROD. Accordingly, all FAA actions approved in the FONSI/ROD are also withdrawn. Should the airport sponsor wish to proceed with any component of the project approved in the now-withdrawn ROD, the sponsor must seek FAA approval for that component.

Manny Weiss                                              JUN  9 2008
FAA Regional Administrator                              Date
FAA Eastern Region

This decision is taken pursuant to 49 U.S.C. §40101 et.seq. (Part A) and 49 U.S.C.§47101 et.seq. (Part B), and constitutes a final order of the Administrator which is subject to review by the courts of appeals of the United States in accordance with the provision of 49 U.S.C. §46110.

---

[5] FAA Order 5050.4B, *National Environmental Policy Act (NEPA) Implementing Instructions for Airport Actions*, Paragraph 1401(c)(1) and FAA Order 1050.1E, *Environmental Impacts: Policy and Procedures*, Paragraph 402b.(1)