In the
United States Court of Appeals
for the Third Circuit
No. 15-2393

BRRAM, Inc., a corporation organized under the laws of the Commonwealth
of Pennsylvania, MS. HOLLY BUSSEY, MR. WILLIAM LYNCH,
MR. RICHARD DELELLO, MS. JULIE POWER,
MR. JOHN GIACOBETTI, MRS. JENNIFER GIACOBETTI,
MS. DEBORAH LEAMANN, MS. CAROLINE BONDI,
MS. DELORES BRIENZA, MR. RICHARD WAYNE,

Appellants,

v.

UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA),
MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, and
FRONTIER AIRLINES, INC.,

Appellees

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:14-cv-02686
Honorable Peter G. Sheridan, District Judge

APPELLANTS' OPENING BRIEF
bound with Appendix Volume 1

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555; Fax: (609) 921-2181
Attorneys for BRRAM, Inc., Ms. Holly Bussey,
Mr. William Lynch, Mr. Richard Delello,
Ms. Julie Power, Mr. John Giacobetti,
Mrs. Jennifer Giacobetti, Ms. Deborah
Leamann, Ms. Caroline Bondi, Ms. Delores
Brienza, and
Dated February 1, 2016.     Mr. Richard Wayne

## Table of Contents

Page

Corporate Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . 1

District Court Subject Matter Jurisdiction . . . . . . . . . . . . . . . 1

Court Of Appeals Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . 1

Timeliness Of This Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Of Issues Presented For Appeal . . . . . . . . . . . . . . . . 2

Statement Of Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. The Prior Litigation And The FAA's Settlement Agreeing To
       An EIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. Trenton Airport Federally Funded Expansions . . . . . . . . . . . 7

    C. The Non-Public Approval By Email Of Frontier's Ops Specs
       Amendment For Two Flights A Week At TTN . . . . . . . . . . . . 7

    D. Frontier's Substantial Increase In Operations . . . . . . . . . . . . 9

    E. The FAA Regional Administrator's May 28, 2013 Letter . . . . . 11

    F. The Filing Of This Action And The Ops Specs Amendment
       Appearance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    G. The District Court's Opinion And Judgment . . . . . . . . . . . . . 16

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rulings Presented For Review . . . . . . . . . . . . . . . . . . . . . . . . . 22

Summary Of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.    Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

II.   The District Court Should Have Granted The Plaintiffs's
      Motion For Leave To Amend Their Complaint, Since The
      Amended Complaint Made Clear That The Plaintiffs Were
      Challenging The FAA's Inaction In Not Preparing The EIS
      That The Agency Agreed To Prepare, Not The Ops Specs
      Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

III.  To This Day, There Has Never Been Any FAA Action With
      Respect To Frontier's Expanded Service That Can Be
      Deemed An "Order" Within The Meaning Of Section
      46110 For Which This Court Has Exclusive Jurisdiction
      On Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IV.   The District Court Had Jurisdiction To Review The FAA's
      Non-Action In Permitting Frontier To Expand Beyond The
      Two Flights Per Week Authorized In The Ops Specs
      Amendment Without Complying With An Obligation
      Under NEPA Which The FAA Expressly Admitted In
      2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

V.    The FAA's Contention That The "Airline Deregulation
      Act" Divested The Agency Of Any Authority Over The
      Frequency Of Flights Is Incorrect; The Cited Language
      Was Not In The Airline Deregulation Act At All And Has
      Never Been Applied To The FAA . . . . . . . . . . . . . . . . . . . . . 51

VI.    The FAA's Implication That The "Airline Deregulation
       Act" "Repealed" NEPA Is Factually Incorrect, Since NEPA
       *Postdated* The FAA's Cited Language And In Any Event
       Implied Repeals Are Strongly Disfavored; The FAA's Cited
       Authority And NEPA Are Readily Harmonized  . . . . . . . . 60

VII.   The FAA's Claim Of No Further Regulation After The
       Initial Two Flights Per Week Approval Is Irrelevant To
       NEPA: A Major Federal Action Significantly Affecting The
       Quality Of The Human Environment *Has* Occurred And
       The FAA Must Conduct The Nepa Analysis Now Even If It
       Could Have Claimed A Categorical Exclusion When The
       Ops Specs Amendment Was Approved . . . . . . . . . . . . . . . . . 63

VIII.  If The District Court Does Lack Subject Matter
       Jurisdiction, There Are "Reasonable Grounds" To Extend
       The Sixty Day Time Limit For Filing In This Court, And
       This Court Should Convert This Appeal To A Direct
       Appeal And Compel The FAA To Prepare The EIS It Has
       Already Agreed Is Required For Operations Of The Scope
       Of Frontier's TTN Operations  . . . . . . . . . . . . . . . . . . . . . 70

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

Table of Citations

Page

CASES

*Aerosource, Inc. v. Slater,* 142 F.3d 572 (3d Cir. 1998) . . . 38, 39, 40, 45

*Avia Dynamics v. F. A. A.*, 641 F.3d 515 (D.C. Cir. 2011)  . . . . . . . . 36

*Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874
(3rd Cir., 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190
(D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*Citizens for Responsible Area Growth v. Adams*, 434 F.Supp. 403
(D.D.C. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*City of Atlanta v. United States*, 531 F.Supp. 506
(N.D. Ga. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*City of Boston v. Coleman*, 397 F.Supp. 698 (D.Mass. 1975) . . . . . . . . 50

*City of Edinburgh Council v. Pfizer, Inc.,* 754 F.3d 159
(3rd Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*City of Irving, Tex. v. F.A.A.*, 539 F.Supp. 17 (N.D.Tex. 1981) . . . . . . 50

*City of Romulus v. County of Wayne*, 392 F.Supp. 578
(E.D.Mich. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*County of Rockland, N.Y. v. FAA*, 335 Fed. Appx. 52 (D.C. Cir., 2009),
cert. denied, 558 U.S. 1149 (2010) . . . . . . . . . . . . . . . . . . . . . . . . 57

*Diefenthal v. C.A.B.*, 681 F.2d 1039 (5th Cir.), cert. denied,
459 U.S. 1107 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Fleming v. U.S. Dep't of Transp.*, 348 F. App'x 736 (3rd Cir. 2009) . . . 43

*Foglia v. Renal Ventures Management, LLC,* 754 F.3d 153
(3rd Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) . . . 30

*Greater Orlando Aviation Authority*, 939 F. 2d 954 (11th Cir. 1991) . . 68

*Hanly v. Kleindienst*, 471 F2d 823 (2nd Cir. 1972) . . . . . . . . . . . . . 49, 50

*Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989) . . . 62

*National Air Transportation Ass'n v. McArtor*, 866 F.2d 483
(D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*National Association of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60 fn. 9

*Northwest Airlines v. Goldschmidt*, 645 F. 2d 1309 (8th Cir. 1981) . . . 59

*Santomenno ex rel. John Hancock Trust v. John Hancock Life
Ins. Co.,* 768 F.3d 139 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 28

*Scientists' Institute for Public Information v. Atomic Energy
Commission*, 481 F.2d 1079 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . 49

*Sierra Club v. Skinner*, 885 F.2d 591 (9th Cir. 1989( . . . . . . . . . . . . 42

*Sima Products Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir.),
cert. denied, 446 U.S. 908 (1980) . . . . . . . . . . . . . . . . . . . . . . . 43

*State of Illinois ex rel. Scott v. Butterfield*, 396 F.Supp. 632
(N.D. Ill., 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49, 50

*Suburban O'Hare Commission v. Dole*, 787 F.2d 186 (7th Cir.),
*cert. denied*, 479 U.S. 847 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Virginians for Dulles v. Volpe*, 541 F.2d 442 (4th Cir. 1976) . . . . . . . . 50


STATUTES

*Airline Deregulation Act of 1978*, P.L. 95-504,
92 Stat. 1705, § 15 . . . . . . . . . . . . . . . . . .    3, 11, 12, 13, 25, 51-55, 60, 63

*Federal Aviation Act of 1958*, P.L. 85-726, 72 Stat. 731, § 101(1) . . . . 53

*Federal Aviation Act of 1958*, P.L. 85-726, 72 Stat. 731, § 103 . . . . . . 53

*Federal Aviation Act of 1958*, P.L. 85-726, 72 Stat. 731, § 301 . . . . . . 53

*Federal Aviation Act of 1958*, P.L. 85-726, 72 Stat. 731, § 401(e) . . . . 52

P.L. 95-504, Title XVI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

P.L. 103-272, 108 Stat. 1123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

49 U.S.C. § 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

49 U.S.C. § 40101(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 58

49 U.S.C. § 40101(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 58

49 U.S.C. § 40103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57, 58

49 U.S.C. § 40106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

49 U.S.C. § 40109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

49 U.S.C. § 40113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

49 U.S.C. § 41109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 53, 54, 62

49 U.S.C. § 41109(a)(2)(B) . . . . . . . . . . . . . . . . . . . 25, 51, 60, 61, 63

49 U.S.C. § 44502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

49 U.S.C. § 44514 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

49 U.S.C. § 44701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

49 U.S.C. § 44714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

49 U.S.C. § 44719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

49 U.S.C. § 46110 . . . . . . . . . 3, 11, 23, 24, 31-33, 36, 37, 39-42, 47, 68

49 U.S.C. § 46301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## REGULATIONS

14 CFR Part 93 Subparts K & S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

40 CFR 1508.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

80 F.R. 1273 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57, 58

## RULES

Fed.R.Civ.P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

TREATISES

C. Wright and C. Koch, *Federal Practice and Procedure, Judicial Review of Administrative Action*, ¶ 8292, at 4 (2006) . . . . . . . . . . . . 44

Joint Appendix Table of Contents
Volume 1, attached to brief

Page

Notice of Appeal filed by BRRAM, Inc., et al., in the District
Court June 4, 2015 and in the Court of Appeals June 9, 2015
as Document 003111985910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA1

Order issued May 19, 2015 by U.S.D.J. Sheridan which
dismissed Plaintiffs' Complaint and denied motion to amend
attached to Notice of Appeal as Document 003112008437 . . . . . . . JA4

U.S.D.J. Sheridan's Opinion on Motion to Dismiss transcript
of May 18, 2015, filed July 2, 2015, attached to Notice of
Appeal and filed as Document 003112008437 . . . . . . . . . . . . . . . . . JA5

Volume 2

Concise Summary of the Case filed July 9, 2015 in the Court
of Appeals as Document 003112012883 . . . . . . . . . . . . . . . . . . . . . JA18

Certified copy of the Civil Docket for Case #: 3:14-cv-02686-
PGS-DEA, U.S. District Court for the District of New Jersey . . . JA26

Complaint of BRRAM, Inc., et al., Plaintiffs, filed April 28, 2014
as Document 1 in the U.S. District Court for the District of
New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA37

Complaint Exhibit 1 filed as Document 1 in the U.S. District
Court for the District of New Jersey: the June 6, 2006,
Petition for Review to the Court of Appeals in Docket 06-2929
captioned, *Board of Supervisors of Lower Makefield Township et al.
v. Federal Aviation Administration* . . . . . . . . . . . . . . . . . . . . . . . . . . JA53

Complaint Exhibit 2 filed as Document 1 in the U.S. District
Court for the District of New Jersey: June 9, 2008 *Order
Withdrawing Finding of No Significant Impact/Record of Decision
(FONSI/ROD)* dated February 23, 2006 for the Trenton-Mercer
Airport (TTN) by Manny Weiss, FAA Regional Administrator for
Eastern Region . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA64

Complaint Exhibit 3 filed as Document 1 in the U.S. District
Court for the District of New Jersey: *Frontier Airlines
Announces Expansion at Trenton-Mercer Airport*, article
dated November 15, 2012 in the *Princeton Patch* . . . . . . . . . . . . . JA67

Complaint Exhibit 4 filed as Document 1 in the U.S. District
Court for the District of New Jersey: Letter by R. William
Potter to Mercer County Executive Brian Hughes and to
C. Gallo, FAA Regional Administrator for the Eastern Region
dated April 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA69

Complaint Exhibit 5 filed as Document 1 in the U.S. District
Court for the District of New Jersey: Letter by R. William
Potter to C. Gallo, FAA Regional Administrator for the
Eastern Region dated October 31, 2013 . . . . . . . . . . . . . . . . . . . . JA75

Complaint Exhibit 6 filed as Document 1 in the U.S. District
Court for the District of New Jersey: Letter by C. Gallo,
FAA Regional Administrator, to R. William Potter dated
May 28, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA85

Civil Cover Sheet to Complaint filed as Document 1 in the
U.S. District Court for the District of New Jersey . . . . . . . . . . . . . JA87

Declaration of Bruce A. Montigney dated August 14, 2014 filed
by FAA as Document 24-2 in the U.S. District Court for the
District of New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA88

Exhibit to Declaration of Bruce A. Montigney filed as Document
24-2 on August 18, 2014 in the U.S. District Court for the
District of New Jersey: Letter by Jim Colburg, of Frontier, to
Dale Snider, Flight Standards District Office, dated September
19, 2012, to add Trenton (TTN) to Frontier's Operations
Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA90

Exhibit to Declaration of Bruce A. Montigney filed as Document
24-2 on August 18, 2014 in the U.S. District Court for the District
of New Jersey: FAA Operations Specifications Revision for
Frontier Airlines effective September 25, 2012 . . . . . . . . . . . . . . . JA91

Certification of Holly J. Bussey dated June 9, 2014, filed as
Exhibit 7 on November 12, 2014 to the opposition to motion
to dismiss, part of Document 34 in the U.S. District Court
for the District of New Jersey  . . . . . . . . . . . . . . . . . . . . . . . . . JA103

BRRAM, Inc., et al., First Amended Complaint, filed as
Document 35-2 on November 20, 2014 in the U.S. District
Court for the District of New Jersey . . . . . . . . . . . . . . . . . . . . . . JA108

Mercer County's May 17, 2013, *Notice of Opportunity for
Public Comment* concerning Passenger Facility Charges at
TTN, filed as Document 45 on January 20, 2015 in the
U.S. District Court for the District of New Jersey . . . . . . . . . . . . JA128

Mercer County Counsel P. Adezio's letter of June 10, 2015 to
the Court of Appeals filed as Document 003111991055 on
not participating in the appeal . . . . . . . . . . . . . . . . . . . . . . . . JA133

Frontier Airlines' Counsel J. Flaherty's letter of June 19, 2015
to the Court of Appeals filed as Document 003111996072 on
not participating in the appeal . . . . . . . . . . . . . . . . . . . . . . . . JA134

## Corporate Disclosure Statement

BRRAM is a non-profit membership entity and has no corporate shareholders or owners or affiliates.

## District Court Subject Matter Jurisdiction

The district court had subject matter jurisdiction to order the Federal Aviation Administration (FAA) to initiate an environmental review of the expansion of flights by Frontier Airlines aircraft using Trenton Mercer Airport (TTN) pursuant to the National Environmental Policy Act (NEPA). The district court also had jurisdiction pursuant to 28 U.S.C. §1331.

## Court of Appeals Jurisdiction

The Court of Appeals has jurisdiction to hear this appeal pursuant to 28 U.S.C § 1291. This appeal is from a final judgment that disposed of all the parties' claims.

## Timeliness Of This Appeal

The district court rendered judgment dismissing with prejudice the plaintiffs complaint and declaring the plaintiffs motion to amend the complaint as moot on May 15, 2015. The plaintiffs filed their appeal

notice on June 4, 2015. Therefore, the appeal was timely filed.

## Statement Of Issues Presented For Appeal

A. Whether the district court has subject matter jurisdiction pursuant to the National Environmental Policy Act (NEPA) and 28 U.S.C. §1331 to order the FAA to review the environmental impacts of the substantial increase in the frequency of flights by Frontier Airlines at the Trenton Mercer Airport (TTN) far beyond the two flights per week which were permitted by the FAA in an Operations Specifications (Ops Specs) amendment?

B. Whether the district court abused its discretion by deciding without discussion that the plaintiffs' motion to amend the complaint was moot; the amended complaint clarified that the plaintiffs were pleading a cause of action based on the FAA's admitted inaction in conducting a NEPA analysis after the initial approval of Frontier's two flights a week, for which the district court, not this court, has subject matter jurisdiction?

C. Whether either or both of the FAA's approval of Frontier Airline's request for an Ops Specs amendment seeking FAA permission

to initiate two flights per week at TTN, or a letter from the Regional
Administrator dated May 28, 2013, constitutes an "order" appealable
exclusively to the court of appeals within the meaning of 49 U.S.C.
46110?

D. Whether the FAA erroneously claimed that a provision of the
"Airline Deregulation Act" (49 U.S.C. § 41109), barred it from any
further jurisdiction over the frequency of Frontier's operations at TTN
once it had approved two flights a week, including jurisdiction to
conduct a NEPA analysis, when the language relied upon by the FAA
was not contained in the Airline Deregulation Act and has *never*
applied to the FAA?

E. Whether the FAA could continue to legally claim a categorical
exclusion from NEPA compliance for TTN operations once those
operations expanded significantly from the initially approved two
flights per week?

F. Whether the FAA could legally claim a categorical exclusion
from NEPA compliance for TTN operations if it knew or assumed that
approval of just two flights a week would permit and lead to a

significant increase in operations from the initially approved two flights per week, when its own regulations clearly provide that it could not?

G. Whether reasonable grounds exist for extending the sixty day period for direct appeal to this court or converting this to a direct appeal?

## Statement Of Relevant Facts

In 2008, in making a settlement of previous litigation challenging the expansion of service at TTN, the FAA issued an order in which it expressly agreed that if a high frequency air carrier sought to provide service to TTN, that would in and of itself constitute a "major Federal Action significantly affecting the quality of the human environment" and require the FAA to prepare an EIS. In 2013, Frontier Airlines (Frontier) commenced such service. Despite its earlier agreement that an EIS would be required, the FAA did nothing. The FAA now objects to this lawsuit seeking to compel the preparation of that EIS, relying on flimsy and highly misleading procedural arguments. The FAA has never explained its sudden about face. The FAA has never in this litigation represented that its previous commitment to prepare an EIS

was in any way incorrect or invalid or contrary to law. The FAA has never disputed and can not seriously dispute that the proper application of NEPA and the FAA's own regulations would require preparation of an EIS. In other words, the FAA has never challenged the merits of this case.

## A. The Prior Litigation And The FAA's Settlement Agreeing To An EIS

In 1999 members of "Bucks Residents for Responsible Airport Management" (BRRAM, also among the plaintiffs here) participated in "scoping sessions" by the FAA to determine the "scope" of NEPA reviews of Mercer County's proposal to expand facilities at TTN to attract Southwest Airlines and its planned provision of high-frequency commercial passenger service. At that time the FAA recognized its duty to comply with NEPA prior to release of Federal funds to modernize TTN. Thereafter the FAA released a draft environmental assessment (DEA) and held a public hearing at which BRRAM members argued that a comprehensive Environmental Impact Statement (EIS) was needed to assess cumulative impacts, especially noise, of intensive commercial traffic using TTN. On February 23, 2006, the FAA issued

"Record of Decision/Finding of No Significant Impact ("ROD/FONSI")

which approved the DEA and authorized release of federal funds for

TTN airport enhancement projects.[1]

On June 6, 2006, the Township of Lower Makefield, Bucks

County, BRRAM, and individual residents filed a petition with the

Third Circuit Court of Appeals for review of the ROD/FONSI. That case

was docketed as 06-2929 and captioned *Board of Supervisors of Lower

Makefield Township et al. v. Federal Aviation Administration.* JA53.

During court-supervised mediation, Mercer County advised the FAA

that it no longer intended to replace the terminal building because

Southwest Airlines was discontinuing plans to use TTN. This led the

FAA to issue a second ROD on June 9, 2008, captioned "Order

Withdrawing the FONSI/ROD dated February 23, 2006" ("2008

Order"), finding no need for the TTN projects since Southwest Airlines

had disavowed use of TTN. JA64. In the 2008 Order, the FAA pledged

to comply with NEPA and prepare an EIS in the event another high-

---

[1] These projects included construction of a new 44,000 SF
terminal building, expanded apron area, realignment of an existing
access road, additional automobile parking, extension of two taxiways,
and demolition of a tennis center to make way for more parking.

frequency air carrier proposed to locate at TTN. JA64. In reliance on the 2008 Order, the plaintiffs withdrew their petition as moot.

## B. Trenton Airport Federally Funded Expansions

Despite the assurances in the 2008 Order, in recent years the FAA has approved or financed several capital projects at TTN in furtherance of Mercer County's attraction of a high frequency air carrier. JA128. The FAA provided substantial federal funding for projects at TTN. Among these federally-funded projects are the following: $880,000 for an emergency vehicle; $8,550,000 for construction of a parallel taxiway; $427,500 for construction of a connector taxiway; $665,000 for improvement to a connector taxiway; and $6,650,000 to complete a full parallel taxiway. JA128.

## C. The Non-Public Approval By Email Of Frontier's Ops Specs Amendment For Two Flights A Week At TTN

The FAA's action approving Frontier's initial service did not come to light until this lawsuit was filed, and to this day has never been made public. On September 19, 2012, Mr. Jim Colburn, Director of Operations for Frontier, sent a letter to Mr. Dale Snider, an official of the FAA, stating: "Please accept this letter as notification that Frontier

Airlines intends to begin *scheduled* service from Trenton New Jersey

(TTN). Service is *scheduled* to begin on November 16, 2012, utilizing

the Airbus A320 series aircraft." JA90, emphasis added. The letter sets

forth a flight *schedule* limited to only two daytime flights per week on

Friday. There is no mention of any plan to exceed the two-flights per

week *schedule* of operations.   JA90.

On September 25, just six days later, Dale Snider, an FAA

Principal Operations Inspector, replied by email that "These operations

specifications are approved by direction of the administrator." We will

refer to these two actions as the Ops Specs amendment.[2] Neither the

Frontier letter nor the Snider email was ever made public, published,

or noticed. In fact, their first appearance anywhere was in a declaration

of another FAA official filed in this litigation on August 18, 2014, with

the FAA motion to dismiss this case. JA88. No record was compiled for

the Ops Specs amendment. It does not contain any analysis of

environmental impacts or safety issues.  Nor does it recite to any facts

or evidence in support of its conclusion. It does not authorize or even

---

[2] Various abbreviations are used by the FAA and lower court for
this Operations Specifications amendment.

address any expansion of flights beyond the two *scheduled* flights.

It is this non-public exchange of private letter and correspondence that the FAA contends is the event which triggered the sixty-day period for filing a petition for review in this court. As we discuss below, at one point in its ruling the lower court all but says this is not an order but then says it is. It is this Ops Specs amendment approval allowing operation of just two flights a week at TTN that the FAA contends amounts to permission for Frontier to operate any amount of flights, forever, without any thought of preparing and considering the EIS that the FAA agreed –in an *actual* order, we should add – must be prepared for the level of operations conducted by Frontier.

## D. Frontier's Substantial Increase In Operations

Shortly thereafter, Frontier expanded operations at TTN far beyond the two daytime Friday flights approved by a Principal Operations Inspector without the FAA conducting any environmental analysis of such expansion of service, and despite the FAA's projection in the 2008 Order that such high frequency operations would cause "sufficient noise impacts that would require the preparation of an

[EIS]." By April of 2013, Frontier was providing 47 flights per week

from TTN; current operations exceed 60 flights per week.

    As a result of Frontier's' expanded usage of TTN, the Bucks

County residents suffer injury in fact from the multiple, daily takeoffs

and landings, early morning and late night, in the direction of, at low

altitude over Bucks County homes, businesses, schools, and public

facilities located across the Delaware River from TTN, causing

excessive noise and other pollution. As evidence of the injuries suffered

due to low altitude flights, often late at night or early in the morning,

we enclosed thirty-six declarations[3] of residents of Bucks County,

Pennsylvania, and Mercer County, New Jersey. For example, plaintiff

Holly J. Bussey testifies about

> noise from the aircraft engines as well as vibrations in our
> house caused by air turbulence generated by the engines
> and the size of the aircraft as it moves through the
> atmosphere. Much like air concussions from thunder that

---

[3] These 36 certifications, attached to the Certification of R.
William Potter, are Plaintiffs' Exhibits 7 through 42 to their opposition
to the FAA motion to dismiss. In the interests of not burdening the
court, we have not included them in the Joint Appendix. The Bussey
Declaration is representative of these expressions of the harm
sustained by nearby towns and residents. The FAA has never contested
the plaintiffs' standing.

> rattles a house. Also, [we have] concerns about impacts to
> my families health from unseen pollutants emitted by these
> aircraft during takeoff and landing. When they land, we can
> often hear and sometimes feel the vibrations of the engines
> as they work to stop the planes. When taking off, the
> whirring of the engines is so high-pitched that it can be
> painful.

JA103-104. Similar harmful experiences fill the testimony of these

people who can no longer enjoy peace and quiet in their homes or

backyards or nearby parks or carry on business activities because of the

FAA's refusal to engage in any environmental analysis and mitigation

measures, as required by the NEPA, of Frontier Airlines' increasing use

of TTN. The FAA has never disputed that these operations are causing

significant harm to these residents.

### E. The FAA Regional Administrator's May 28, 2013 Letter

The FAA's position that language supposedly enacted in the

Airline Deregulation Act divested it of any authority over any Frontier

operations beyond the two initially authorized first appeared – perhaps

for the first time ever – in another non-public document. On April 24,

2013, BRRAM wrote to the FAA Regional Administrator setting forth

objections to the Frontier Airlines operations and seeking NEPA

compliance. JA69. The Regional Administrator replied in a letter dated May 28, 2013 (May 28 Letter). JA85. The lower court erroneously held that this letter also was an "order" within the meaning of Section 46110.

In this letter, the Regional Administrator conceded at the outset "[t]he amendment of an air carrier's Operations Specifications (Ops Specs) *is a major Federal action that is subject to NEPA.*" JA85, emphasis added. It goes on to say that "in order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find the airline has demonstrated that it can safely and efficiently operate to/from that airport." JA85. The letter then says that at the time TTN was added to the Ops Specs, "the FAA *believed* that the approval was subject to a Categorical Exclusion" from NEPA. JA85. No categorical exclusion has ever been identified by the agency. The letter then said "once an airport has been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978, the airline is free to determine the level of service provided at that airport without any further FAA approval." JA85. As we discuss below, this statement is

legally and factually incorrect. The required documentation for the "believed" categorical exclusion has never been identified or produced. In short, the FAA exempted Frontier Airline's expanded operations at TTN without any NEPA review of the environmental impacts, *notwithstanding its agreement in the 2008 order that operations of the scope of Frontier's required the preparation of an EIS.* When the FAA agreed to this obligation in the 2008 order, all relevant laws – NEPA, the Airline Deregulation Act, the Federal Aviation Act – were the same as they are today.

The May 28 letter did not even acknowledge the 2008 order. The May 28 letter did not enclose any Ops Specs amendment or the exchange of letter and email that approved Frontier's two Friday flights a week. JA85.

The May 28 letter stated that "we understand the community's concerns surrounding operations at Trenton Airport and are willing to undertake a noise analysis to determine if mitigation is necessary. We expect that we will be able to provide you with those results sometime in mid-August of this year." JA85. Despite our request for a copy of that

"noise analysis," the FAA has never revealed any noise mitigation analysis. During oral argument in the district court on May 18, 2015, the FAA conceded that no "noise analysis" has ever been conducted.

On October 31, 2013, BRRAM again wrote to the FAA, this time to request reconsideration of what we assumed must have been FAA approvals for Frontier to provide high frequency service at TTN, and seeking revocation of whatever categorical exclusion might have been made. JA75. The FAA never replied.

### F. The Filing Of This Action And The Ops Specs Amendment Appearance

On April 28, 2014, BRRAM, joined by individual plaintiffs, filed a complaint in the U. S. District Court for the District of New Jersey which was docketed as Case 3:14-cv-02686-JAP-DEA, against the Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., defendants seeking an order to compel FAA compliance with NEPA. JA37.

On August 18, 2014, the defendants filed  motions to dismiss the complaint. Enclosed with the FAA's Motion was the Declaration of Bruce A. Montigney, a FAA official, which revealed for the first time

the Ops Specs amendment approval. JA88.

The Montigney Declaration concludes as follow:

5.  Air carriers are required to operate in conformity with their
Ops Specs.
...
10. By letter dated September 19, 2012, Frontier requested
amendment of its OpSpecs to be permitted to serve
Trenton–Mercer County Airport as a *regular* airport.
Exhibit A, Letter from Frontier Airlines to FAA, is a copy of
Frontiers' request for amendment of its Op Specs.

11. On September 25, 2012, after determining that Frontier
could safely provide *regular scheduled* service at Trenton-
Mercer County Airport, the FAA approved an amendment to
Frontier's OpSpecs to include Trenton Mercer County
Airport. ... Once Frontier's OpSpecs were approved to permit
it to operate at Trenton Mercer County Airport, Frontier is
free to determine which other airports approved in its
OpSpecs it will serve from Trenton-Mercer County Airport,
as well as the number of flights it will provide. *These
matters are business decisions made by the Carrier without
FAA involvement.*

JA88-89, emphasis added. As we demonstrate below, the final italicized

statement is plainly wrong.

On November 12, 2014, plaintiffs filed opposition to the motions

to dismiss and on November 20, 2014 filed their motion to amend the

complaint to add as additional parties plaintiffs, three Bucks County

municipalities – Lower Makefield Township, Upper Makefield

Township, and the Borough of Yardley – and to clarify that plaintiffs'

complaint is directed solely at the FAA's failure to comply with NEPA

by not conducting any environmental or safety analysis of Frontier's

exponential expansion of service at TTN beyond the approved schedule

of two flights per week. The amended complaint clarified that plaintiffs

were *not* contesting the Ops Specs amendment because it limited

Frontier to two flights per week. JA108.

### G. The District Court's Opinion And Judgment

The district court granted the FAA's Motion to Dismiss the

Complaint and, without explanation, also denied as "moot" the motion

to amend the complaint in an Order filed May 19, 2015. JA4. The

district court closed the case May 19, 2015.

The court reviewed the Montigney declaration (JA10) which refers

to the Ops Specs amendment as approving Frontier Airlines use of TTN

"to provide regular scheduled service," JA26, and therefore "Frontier is

free to determine which other airports approved in its OpSpecs it will

serve from [TTN], as well as the number flights it will provide. These

matters are business decisions made by the carrier without FAA

involvement." JA10. As we discuss in this brief, this part of the court's opinion was based on a false assertion by the FAA.

Next the court referred to the letter sent to the FAA by BRRAM counsel on April 24, 2013 (JA69), which the court mischaracterized as plaintiffs alleged "acknowledg[ment of] the jurisdiction of the Third Circuit ... The substance of the FONSI/ROD discussed earlier, and Mr. Potter's understanding of the jurisdictional issues, demonstrates that Potter knew that an appeal must ordinarily be filed in the Third Circuit rather than at the district court." JA11-12. This was inaccurate. Plaintiffs' counsel was referring to BRRAM's 2006 petition for review that was filed in the Third Circuit because the 2006 ROD/FONSI was clearly a final FAA order of compliance with NEPA, and it was "publicly issued." JA53. This is unlike the present case in which the FAA has failed to take any action to implement NEPA review of Frontier's expanded schedule of service, and the Ops Specs has never been "publicly issued."

The court then discussed the May 28, 2013 FAA letter which replied to plaintiffs' request for the FAA to conduct a NEPA analysis of

the numerous flights by Frontier Airlines using TTN. "The letter has several major points. First, it notes an amendment to Frontier's operations specifications is a major federal action. The letter states: 'At the time Frontier's ops specs were amended to add Trenton Airport, the FAA believed that the approval was subject to categorical exclusion.' The letter further stated: 'While the FAA is not required to complete a NEPA analysis for the additional flights, we understand the community's concerns surrounding operations at Trenton Airport, we are willing to undertake a noise analysis to determine if mitigation is necessary. We expect that we will be able to provide you with those results sometime in mid-August of this year [2013]." JA12.

The court correctly referred to this FAA reply as "curious, because the FAA does not state the date of the alleged approval of the categorical exclusion, and it only acknowledges that 'the FAA believed' that the approval of the categorical exclusion occurred in September, but the letter does not state who, or why the FAA has such a 'belief' – nor does it state that any public communication notifying the public of the categorical exclusion decision had occurred." JA12-13.

The court noted that "the FAA's reply brings life into plaintiff's contention that an EIS of some kind may be in the offing." The court noted that "the FAA determined it would present such evidence by mid August [2013] – which is after the 60 days permitted for plaintiffs to appeal. Coincidentally, at oral argument the FAA acknowledged that no environmental impact statement was ever undertaken; and such decision or omission not to undertake an environmental assessment was never communicated to the plaintiffs." JA13.

In short, the court conceded the lack of any public notice of any decision allegedly made by the FAA declaring or explaining why it would not undertake an environmental assessment "of some kind" regarding Frontier Airlines' expansion of service. Equally troubling was the FAA's failure to perform a noise mitigation study, as promised in the FAA reply letter, as well as the lack of any notice by the FAA that it would *not* perform such a study which it had promised to provide by August 2013.

Plaintiffs filed the Notice of Appeal on June 4, 2015. JA1.

On June 22, 2015 the FAA filed a motion for summary affirmance

of the district court order, to which the appellants filed a response in

opposition on July 2, 2015.  In an order dated November 17, 2015, this

court denied the FAA motion.

### Procedural History

On April 28, 2014, BRRAM, Inc., joined by Ms. Holly Bussey, Mr.

William Lynch, Mr. Richard DeLello, Ms. Julie Poer, Mr. John

Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, M.

Caroline Bondi, Ms. Delores Brienza, and Mr. Richard Wayne,

individually, plaintiffs (collectively, "BRRAM, Inc."),  filed a complaint

in the United States Distrct Court for the District of New Jersey which

was docketed as Case 3:14-cv-02686-JAP-DEA, against the United

States Federal Aviation Administration (FAA), the Mercer County

Board of Chosen Freeholders, and Frontier Airlines, Inc., defendants.

JA37.

On August 18, 2014, the FAA, the Mercer County Board of

Chosen Freeholders, and Frontier Airlines, Inc., each filed a motion to

dismiss the complaint.

BRRAM, Inc., opposed the motions to dismiss on jurisdictional

grounds on November 12, 2014, but consented to dismissal of the complaint as to Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc. BRRAM, Inc., on November 20, 2014 filed their motion to amend the complaint. JA108.

The District Court dismissed the complaint on March 31, 2015, as to both Mercer County Board of Chosen Freeholders and Frontier Airlines, Inc. Neither participated further in the case.

The District Court heard oral argument on the motions on May 8, 2015, and on May 18, 2015 read its opinion into the record (JA5), then issued its Order on May 19, 2015, dismissing the complaint and denying the motion to amend the complaint as moot. JA4.

The plaintiffs filed their notice of appeal in the District Court on June 4, 2015, which was docketed in this court on June 9, 2015, as Docket No. 15-2393. JA1.

Mercer County Deputy Counsel filed a letter on June 10, 2015, and the attorney for Frontier Airlines, Inc., filed a letter on June 19, 2015, that neither would participate in the appeal.

The FAA filed on June 22, 2015 a motion for summary affirmance

of the District Court's Order, and this court denied that opposed motion

on November 17, 2015.

## Rulings Presented For Review

This appeal is from the opinion of the district court entered orally

on May 8, 2015, dismissing the complaint with prejudice and denying

as moot plaintiffs' motion to amend their complaint, and the judgment

entered by the district court on May 19, 2015.

## Summary Of Argument

Plaintiffs are challenging the FAA's inaction in conducting a

proper analysis pursuant to the National Environmental Policy Act

(NEPA) of an exponential expansion of operations at Trenton-Mercer

Airport (TTN) beyond the FAA's only authorization of just two flights

per week. The FAA explicitly agreed in a 2008 order that if a carrier

operated at TTN to the extent that Frontier does, it would conduct that

analysis and prepare an environmental impact statement. JA66.

This is an appeal from the district court order dismissing

plaintiffs' complaint with prejudice, on the ground that plaintiffs were

appealing from an Operations Specifications (Ops Specs) amendment

approval dated September 25, 2012, and an FAA letter of May 28, 2013,

and that both constituted "orders" directly reviewable in the court of

appeals within the meaning of 49 U.S.C. § 46110. JA16. The court also

denied as moot plaintiffs' motion to amend their complaint. JA4. The

amended complaint clarified that plaintiffs were challenging the FAA's

inaction in *not* performing a NEPA analysis after the Ops Specs

approval. JA123. The district court failed to consider whether the

amended complaint cured any alleged jurisdictional defect in the

original complaint and gave no reasons in its opinion to explain why it

deemed the amended complaint as moot. The district court abused its

discretion by denying the motion and by failing to provide any reasons

for its mootness decision.

By statute and caselaw including the law of this circuit, for an

FAA action to be deemed an "order" for purposes of Section 46110, it

must be made public or published, it must be based on a reviewable

record and that record must have been compiled in a proceeding. The

FAA action must also be final. This includes whether the agency has

completed its process; whether the process directly affects the parties; a

definitive statement of the agency's position; and concrete legal

consequences flowing from the action. Neither the Ops Specs

amendment nor the May 28 letter meet any of these tests.

The Ops Specs amendment consisted of a private letter from

Frontier to the FAA seeking to provide scheduled service of two flights

per week (JA90), and, six days later, a private email from a District

Inspector granting permission for two flights a week. JA91. No

environmental analysis was done and there is no hint in the exchange

that any flights beyond the two per week are contemplated or included

in the approval. This exchange was never published, circulated or made

public at all, and did not come to light anywhere until the FAA filed a

motion to dismiss in this case. There was no proceeding or record. It

cannot be considered an order alone for purposes of Section 46110. Nor

was it final as it was not a definite statement of the FAA's position –

which as later (and wrongly) stated – was that an infinite number of

added flights were authorized by the FAA's email.

The May 28 letter was not an order or final, either. It was solely

addressed to BRAAM counsel, never published, circulated or made

public at all. It had no concrete consequences, affected no party, and was not a definitive statement of the FAA's position. There was no record or proceeding.

As this court's exclusive direct appeal jurisdiction does not apply to the claims of agency *inaction*, the district court had jurisdiction to review those claims as many cases have previously held.

In the May 28 letter and in this litigation, the FAA has taken the position that a provision of the Airline Deregulation Act prohibits it from having anything to do with any expansion of operations by Frontier beyond the two authorized in the Ops Specs amendment. The FAA relies on language in 49 U.S.C. 41109(a)(2)(B): "The Secretary [of Transportation] ... may not prescribe a term prohibiting an air carrier from adding or changing schedules .. for providing the authorized transportation." But the cited language was *not* in the Airline Deregulation Act and was *never* applicable to the FAA. It dates to the 1958 Federal Aviation Act and was a limitation on the *economic* regulatory power of the Civil Aeronautics Board, not the safety regulation authority of the FAA. The FAA has had since its creation in

the 1958 act pervasive and wide ranging powers over the navigable airspace and airport operations, as evidenced by numerous FAA actions repeatedly upheld in the courts. The notion that the FAA has no control over Frontier's operations at TTN once it gave permission for just two flights per week is demonstrably false.

The FAA has never stated definitively why it has never conducted any environmental analysis of Frontier's operation. The May 28 letter said only that the FAA "believed" the Ops Specs amendment approval was subject to a categorical exclusion. The precise categorical exclusion remains unidentified to this day. In any event, a simple reading of the FAA's own NEPA implementing regulations in Order 1015E shows this to be utterly untrue. Any possibility of a categorical exclusion must consider whether "extraordinary circumstances" nonetheless exist to bar the exclusion. "Extraordinary circumstances," defined in part as "factors or circumstances in which a normally categorically excluded action may have a significant environmental impact that then requires further analysis in an EA or an EIS." Here, the FAA determined in its 2008 order that operations of the scope of Frontier's are such

circumstances and an EIS was required. That is true today. The FAA

ignored its own regulations and procedures in failing to undertake

NEPA review  in allowing Frontier's expansion.

In the event that this court nonetheless decides that jurisdiction

does lie in this court, plaintiffs request that it convert this appeal to a

direct appeal and proceed to the merits, and also find that reasonable

grounds exist for extending the sixty day deadline for direct appeals.

## ARGUMENT

### I. Standard Of Review

The lower court's ruling dismissing the case is reviewed in this

court de novo with no deference to the lower court. The standard of

review for the court of appeals assessment of a district court's decision

on a motion to dismiss for failure to state a claim or for lack of subject

matter jurisdiction is well-settled as "de novo" without deference. *City

of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159 (3d Cir. 2014),

affirming that the court of appeals exercises "plenary review" over a

district court's grant of a motion to dismiss. The court of appeals

accepts as true all allegations in the complaint and all reasonable

inferences therefrom that can be drawn from them, after construing the allegations in the light most favorable to the nonmovant. *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153 (3d Cir. 2014); *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.*, 768 F.3d 139 (3d Cir. 2010).

This court ordinarily reviews a lower court decision denying a plaintiff's motion for leave to amend their complaint on an abuse of discretion basis. However, in this case, since the denial appears to have been based on the FAA's argument that amendment would be futile, this court must look to the arguments made by the FAA in support of its motion to dismiss, and thus if those arguments are wrong, so too was the motion for leave to amend no matter what standard is applied.

### II. The District Court Should Have Granted The Plaintiffs's Motion For Leave To Amend Their Complaint, Since The Amended Complaint Made Clear That The Plaintiffs Were Challenging The FAA's Inaction In Not Preparing The EIS That The Agency Agreed To Prepare, Not The Ops Specs Amendment

The plaintiffs' motion to amend sought to accomplish two purposes. First, it added three new co-parties – each a municipality in Bucks County whose constituents daily and nightly experience the

injury of low-flying Frontier aircraft above their homes and businesses. More importantly, the amended complaint clarified that the plaintiffs do not contest the September 25, 2012 Ops Specs amendment granting Frontier Airlines approval to initiate only two flights per week at Trenton Mercer Airport. The amended complaint was directed solely at the FAA's failure to conduct any environmental assessment and EIS, pursuant to the NEPA, of the impacts caused by Frontier's quantum expansion of flights from TTN far beyond anything sought by Frontier and approved by the FAA in the September 25, 2012 Ops Specs. As even the lower court recognized, there is no FAA decision which examined any of the environmental impacts of Frontier's expansion of service far beyond the scheduled level of service set forth in its Ops Specs amendment.

Rule 15(a)2 of the Federal Rules of Civil Procedure provides in relevant part: "In all other cases [set forth in (a)], the party may amend its pleadings only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." As the Supreme Court has held, "[i]f the underlying facts or circumstances

relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "With respect to the District Court's order denying the motion to amend to assert diversity jurisdiction, we find that the District Court erred in determining that amendment was not permissible because the amendment stated a new basis for jurisdiction...." *Berkshire Fashions, Inc. v. Hakusan II,* 954 F.2d 874 (3d Cir. 1992) .

The basis for the court's decision is apparently its belief that it would be "futile" for the court to grant the motion to amend – although the court doesn't use the term "futility" and renders no such finding – based on its view that only this court can review the FAA's September 25, 2012 Ops Specs amendment. But the amended complaint made it

clear that plaintiffs were not contesting that Ops Specs amendment;
they were contesting the absence of any action by the FAA addressing
Frontier's expansion of service far beyond anything authorized in the
Ops Specs amendment.

We note that the district court opinion *never ruled on the precise
challenge in the amended complaint:* that the initial approval of the
Ops Specs amendment for just two flights met neither the legal
threshold for a "major Federal Action significantly affecting the quality
of the human environment" nor scope of operations for which the FAA
bound itself in its 2008 order to prepare an EIS, but without ever
having reviewed it. It is the FAA's *inaction* on NEPA after that Ops
Specs amendment that we are challenging in the amended complaint.

### III. To This Day, There Has Never Been Any FAA Action With Respect To Frontier's Expanded Service That Can Be Deemed An "Order" Within The Meaning Of Section 46110 For Which This Court Has Exclusive Jurisdiction On Direct Appeal

This court has direct review appeal jurisdiction only over FAA
"orders." While the term is not defined in the act itself, we discuss here
that courts have established several indicia, including publication; the
presence of a reviewable record; the presence of some sort of proceeding

in which the record has been developed; and incorporating the concept

of finality, which includes whether the agency has completed its

process; whether the process directly affects the parties; a definitive

statement of the agency's position; and concrete legal consequences

flowing from the action.

 Here, there has never been any action by the FAA that would

constitute an "order," and there is nothing that would meet any

conceivable definition of a "proceeding." Thus, to this day, the FAA has

done nothing that would be reviewable in this court with respect to

Frontier's expansion of operations at TTN beyond the two flights a

week initially authorized. So far as the FAA is concerned, the agency

has, in the words of the lower court, "washed its hands" of any

authority over any number of flights operated by Frontier.

Neither the Ops Specs amendment nor the May 28, 2013 letter

was an "order" within any conceivable understanding of Section 46110.

The Ops Specs amendment was a non-public exchange of a letter and

an email, and was never published in any manner, let alone in the

*Federal Register*, never the subject of any announcement, never posted

on any website available to the general public. There was no

"proceeding" at the FAA, no notice or opportunity for comment by any

interested party, no record compiled of the effects of Frontier's proposed

expansion or actual expansion, no record compiled of the environmental

effects and alternatives including alternative routes and noise

mitigation measures, nothing at all. There was no record of decision.

And the exchange was concerned only with two flights a week, not the

massive expansion that followed.

The lower court's findings are confused. The court stated that its

review of the Ops Specs "raises certain concerns ... First, there's

nothing in the approval of the FAA about the waiving of the

environmental assessment on the basis of a categorical exclusion;

second, the approval does not note that it is a final decision of the FAA

... Third, it is uncertain whether Dale Snider [FAA], who was an

inspector, has the authority over environmental matters so to conclude

that environmental assessment may be categorically excluded. And

lastly, it remains unclear whether the approval of the ops specs was

communicated publicly, i.e., to others beyond Frontier." JA11. The

court did not find that there was anything final about this Ops Specs amendment. JA15.

The lower court found that the May 28 letter (which it mistakenly said was sent by a regional "manager") "gives notice to the plaintiffs of the so-called categorical exclusion decision" and is therefore an "order" within the meaning of Section 46110. JA16. But the court didn't really believe this, because it also said that "[o]ne cannot actually determine when the categorical exclusion decision was made by the FAA. *** Moreover, the fact [stated in the May 28 letter] that the FAA 'believed' the exclusion applied *does not sound as if it were a final decision.*" JA15, emphasis added. These are not descriptions of an appealable order.

The court also said that "the facts show that a final decision occurred over this longer period of time. That is, there are a large number of flights that are entering the air space, and the *FAA has washed its hands* of any responsibility for oversight over Trenton Airport operations." JA15. That is not a description of a final, publicly issued order, either.

The May 28 letter was never published anywhere in any manner, was never the subject of any announcement, never posted on any website available to the general public. The FAA did not characterize it as an order. It was based on no record. Other than BRRAM's counsel and its members, no member of the interested public would have any idea of the agency's position. For example, one would assume that millions of people affected by airport and aircraft noise throughout the nation would be vitally interested to know that the FAA has now taken the position that once it approves two flights a week, the air carrier may expand operations without limit and to eternity with no FAA oversight and no compliance with NEPA.

But *then* the court circled back and found that the Ops Specs amendment *is* the "order" that is the subject of the challenge, JA17, which is contradicted by the court's finding that "[o]ne cannot actually determine when the categorical exclusion decision was made by the FAA" and "the FAA 'believed' the exclusion applied does not sound as if it were a final decision." JA15.

If the court can not pinpoint when the so-called categorical

exclusion decision was made, or at what point the FAA's "handwashing"

constituted some sort of appealable order, then no such appealable

order has ever existed.

The law, including the law cited by the lower court, leads to but

one conclusion: nothing the FAA has done so far is an "order"

appealable directly to this court.

*A. An "order" must be officially made public and published.* In

*Avia Dynamics, Inc. v. F.A.A.*, 641 F.3d 515, 519 (D.C. Cir. 2011), the

court noted that the event that triggers the time for filing a Section

46110 petition must be a *public* event, certainly not a private email

exchange or letter:

> Section 46110(a) requires that a petition be filed within
> sixty days of the date the order is "issued," which we read to
> mean that the filing period begins to run on the date that
> the order is *officially made public. See Fla. Manufactured
> Hous. Ass'n. V. Cisneros*, 53 F.3d 1565, 1574 (11th Cir.
> 1995)("The verb 'issue' clearly refers to an act of *public
> announcement ... .*"); Black's Law Dictionary 830 (6th Ed.
> 1990)("issue" as verb means "[t]o *send forth; to emit; to
> promulgate*); 8 Oxford English Dictionary 137 (2d ed.
> 1989)("issue" as verb means *to send out authoritatively or
> officially; to send forth or deal out in a formal or public
> manner; to publish*").

(Emphasis added.) There is nothing contestable about this. For

example, in *National Air Transportation Ass'n. v. McArtor*, 866 F.2d

483 (D.C. Cir. 1989), the court held that inadequate notice would not

start the running of the sixty day period in Section 46110. Here, of

course, there was no notice.

If the FAA " wash[es] its hands" and does nothing whatsoever to

alert the public that it has "washed its hands" of any review of the

expansion of Frontier's operations, then by definition there has been no

"proceeding" and nothing "officially made public," no "public

announcement," nothing " sen[t] forth" or "promulgate[d]," and nothing

"sen[t] out authoritatively or officially" or "sen[t] forth or deal[t] out in

a formal or public manner ... or publish[ed]." There is no FAA decision

approving Frontier's expansion of operations; as the FAA concedes, it

has taken *no action* to review Frontier's expansion of operations. This

*inaction* is the core of the plaintiffs' case as clarified and expressed in

their motion to amend the complaint. There is nothing in the Ops Specs

amendment approval – which in any event can not be considered an

"order" – that even hints at FAA approval of anything but two flights a

week.

It is noteworthy that in its pleadings in the lower court and this court (as part of its motion for summary affirmance), the FAA has *never* cited to any caselaw holding that FAA inaction of "washing its hands" in failing to prepare an EIS is subject to direct review in this court. All cases relied upon by the FAA included extensive consideration by the agency of a compiled record and a published order after consideration of NEPA review. And at no time has the FAA ever disavowed its 2008 order committing itself to the preparation of an EIS in the event that air carrier operations at TTN reach the scope of Frontier's operations. It has never offered any explanation of why that order is not valid.

The sole case cited by the lower court in support of the proposition that a "letter" can constitute an "order" for purposes of direct appeal to this court is *Aerosource, Inc. v. Slater,* 142 F.3d 572 (3d Cir. 1998). JA16. The court cites to n. 10 on page 578. But *Aerosource* stands for just the opposite, and the court's reliance on this case is a mystery.

Before we begin this discussion, we ask that this court keep in mind that although the Ops Specs amendment approval was by a

digitally transmitted "letter," that letter was never made public in any way.

In *Aerosource*, some customers of the plaintiff (a certified aircraft repair station) had deserted it in response to communications from the FAA's warning that the plaintiff might have maintained aircraft parts inadequately. *Id.* at 576. Contrary to what the lower court here said, the court held that the letters and notices and other actions of the FAA *did not constitute final agency action* and were therefore not an appealable Section 46110 order. *Id.* at 581-82. The court *dismissed* the petition for review filed by Aerosource pursuant to Section 46110. *Id.* at 582. Note 10 of the opinion, cited by the lower court for the proposition that a "letter" could rise to an appealable "order," says nothing of the sort.[4] While the opinion does analyze one letter as a possible "order," it

---

[4] Note 10 reads in its entirety:
We are not predicating our ruling on a possible insufficiency of the administrative record, as we find the record sufficient for us to make a meaningful review. In fact, we make that review in considering Aerosource's application for mandamus relief. In this regard, we point out that an agency action not predicated on an administrative record permitting meaningful review could impose substantial obligations on a petitioner who thus reasonably could contend that it is entitled to review without regard for the

did not find that the letter was an order within the meaning of Section
46110.

In *Aerosource*, this court said "[t]here are three FAA actions
relevant in determining whether Aerosource's petition seeks to review
an order and thus whether we have jurisdiction: (1) the issuance of the
SDR [Service Difficulty Report] and [General Aviation Airworthiness]
Alert; (2) the March 28, 1997 letter refusing to rescind the SDR and
Alert; and (3) the May 6, 1997 letter refusing to reconsider its decision
not to rescind the SDR and Alert." *Id.* at 578. (In fact, the court
examined two letters, both seeking recision of the FAA SDRs and
Alerts.) Both the SDRs and the Alerts were documents published and
widely circulated by the FAA. The court held that "[w]e agree with the
FAA that the SDR and Alert were not final orders because their
conclusions were tentative and indicative of an on-going investigation.

_____

state of the record. We observe that while the courts recite
that an appealable order must be based on a record
sufficient to permit a meaningful review, they regularly find
the record adequate for that purpose. We leave to another
day the determination of whether, and if so how, a court
would exercise appellate jurisdiction notwithstanding an
inadequate record for the review.

\*\*\* *Indeed, it is impossible to characterize either the SDR or the Alert as announcing, ... the FAA's definitive statement,* as both publications merely gave advisory information predicated on information supplied to the FAA." *Id.* at 579, emphasis added.

*B. The "order" must be the result of a proceeding and the compilation of a record at the FAA.* As this court knows, the fundamental premise of "direct appeal" to a court of appeals is that the court is not compiling a new record; the whole concept of direct appeal is that there is a record compiled by the administrative agency. That record is examined for a defensible basis for the agency decision. Indeed, the plain text of the statute contemplates a "proceeding" and a "record." Section 46110 provides in relevant part that this court has direct appeal jurisdiction over a limited category of FAA actions: "a person disclosing a substantial interest in *an order issued* by [the FAA Administrator] with respect to aviation duties and powers designated to be carried out ... in whole or in part under this part ... may apply for review of the order by filing a petition for review in the United States Court of Appeals ... ." (Emphasis added.) Section 46110 also provides in

part that a reviewing court "may consider an objection to an order *only if the objection was made in the proceeding conducted by ... the Administrator,* or if there was a reasonable ground for not making the objection in the proceeding... ." Section 46110(c) provides that the court has "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the *order,* and may order ... *further proceedings.*"

Thus, the statute explicitly limits direct appeals to this court from an "order," and that "order" must have been the result of a " proceeding conducted by ... the Administrator." There is not the semblance of a proceeding or record here. Nothing exists beyond the entirely private Ops Specs amendment and the non-public May 28 letter. In the absence of such a record, it violates common sense to find that either one of these non-public documents constitutes an "order" within the meaning of Section 46110. "The existence of a reviewable administrative record is *the determinative element* in defining an FAA decision as an "order" for purposes of Section [46110]" *(emphasis added). Sierra Club v. Skinner,* 885 F.2d 591, 593 (9th Cir. 1989), *citing Suburban O'Hare Commission v. Dole,* 787 F.2d 186, 193 (7th Cir.), *cert.*

*denied,* 479 U.S. 847 (1986)("the purpose of having agency decisions reviewed by the courts of appeal is to avoid duplicative factfinding"). In *Fleming v. U.S. Dept. Of Transportation,* 348 Fed. Appx. 736, 737 (3d Cir. 2009), (a case relied upon by the FAA), this court said "when resolution of a plaintiff's claims in federal court *requires an examination of the underlying FAA proceedings,* the district courts lack subject matter jurisdiction over any such claims." *See also Sima Products Corp. v. McLucas,* 612 F.2d 309, 313 (7th Cir.), cert. denied, 446 U.S. 908 (1980)("order" means "any agency action capable of review on the basis of the administrative record.")

To appreciate the absurdity of the FAA's argument that some sort of legally cognizable "order" was present in these non-public documents, and direct review should be in this court, the court should consider just *how* it would fulfill its duty of judicial review. There is no record to examine. There are no comments reviewed by the agency. The agency did not offer any rationale for the decision to approve the Ops Specs amendment. There is no evidence of an FAA determination of a categorical exclusion. There is none of the required documentation for a

categorical exclusion. So far as we are aware, the FAA has *never* in any regulation or order or public pronouncement taken the absurd position it takes here, that approval of two flights a week means approval of an unlimited number of flights until the end of time, irrespective of any possible safety  or environmental concerns. There is no evidence of whether and how the agency decided not to proceed to prepare an EIS once Frontier's operations expanded exponentially. The agency "washed its hands" but without ever definitively saying so, apart from its motions in this case.

What "facts" would this court rely upon in its review? "Courts of appeal are neither designed nor generally authorized to find facts. Therefore they may act on administrative action only where a complete factfinding has taken place." C. Wright and C. Koch, *Federal Practice And Procedures, Judicial Review Of Administrative Action*, ¶ 8292, at 4 (2006).

Furthermore, at no time has the agency abandoned or disavowed the concrete position it took in 2008 – in a *real* "order" supported by a record, it is worth noting – that operations at TTN of the scale of

Frontier's require the preparation of an EIS including public
participation. Those non-public  documents say nothing about any of
this.

   *C. The "order" must be final.* As this court held in Aerosource,
only final orders are appealable. The factors considered in deciding
whether an action is final are whether the agency has completed its
process; whether the process directly affects the parties; whether there
is a definitive statement of the agency's position; and concrete legal
consequences flowing from the action.

   The FAA has not in either the Ops Specs nor the May 28 letter
completed whatever process it undertook. By the agency's *own* much
repeated (but incorrect) argument, the Ops Specs amendment did not
complete anything other than permit two scheduled flights a week, as
Frontier was free to expand its operations as far as it chose. Nor was
the process complete until the agency identified and documented
according to its own regulations the categorical exclusion it was relying
upon, *and* made that public. The May 28 letter promised additional
environmental analysis, so the process was explicitly stated to be

continuing. The process directly affects the parties, but only in the sense of not doing what the law requires. There is no definitive statement of the agency's position: Frontier's operations may increase beyond the two scheduled flights approved, and there is no definitive statement by the agency as to the categorical exclusion issues. The FAA only said in the May 28 letter that earlier it "believed" that a categorical exclusion applied. While there were concrete legal consequences flowing from the Ops Specs amendment, it is clear that additional – and at the time, undisclosed – flights were supposedly permitted. The May 28 letter has no legal consequences at all. It is merely at best a defense (incorrect) of the agency's position and does not have any legal force or practical effect on anyone's operations.

So a faithful application of the law including the cases in this Circuit shows that there is no "order" which must be directly appealed to this court.

If the court accepts the lower court decision and the FAA's argument, the FAA can exercise its lawful authority entirely by way of cryptic non-public emails or letters by agency underlings that are based

on no record compiled before the agency, and which can be read to
authorize limitless expansion of whatever permission has been granted,
and all of this will completely evade not just any public understanding
of what the agency is doing, but all efforts at judicial review.

### IV. The District Court Had Jurisdiction To Review The FAA's Non-Action In Permitting Frontier To Expand Beyond The Two Flights Per Week Authorized In The Ops Specs Amendment Without Complying With An Obligation Under NEPA Which The FAA Expressly Admitted In 2008

Federal courts are courts of limited jurisdiction. This court has
direct review only of FAA "orders" as set forth in Section 46110. If this
court does not have jurisdiction to review the FAA's "washing of its
hands" of its admitted NEPA obligations because there is no order an
no proceeding, then the district court had jurisdiction and erroneously
dismissed this case.

From the earliest years after enactment of NEPA in 1969, district
courts have consistently reasoned that they have subject matter
jurisdiction to review a regulatory agency's failure to perform an
analysis of the environmental effects of a potentially "major federal
action."

Where the FAA has implemented NEPA and publicly issued an
order adopting an Environmental Assessment (EA) or other NEPA
decision such as "Finding of No Significant Impact" (FONSI) or a
Categorical Exclusion or an EIS in a publicly announced order, then
plaintiffs agree jurisdiction to review how well the FAA has
implemented NEPA resides exclusively in the courts of appeal. But
where there is *no* NEPA implementation and *no* order and *no*
proceeding in which compliance with NEPA has been examined, then
jurisdiction to review such "non-action" resides in the district court.

The lead case and still good law, is *State of Illinois ex rel Scott v.*
*Butterfield*, 396 F.Supp. 632 (N.D. Ill. 1975) in which the district court
was asked to review "actions of officers and employees of the
[FAA]...which have allegedly resulted in the *uncontrolled increase in*
*aircraft operations, noise, and air pollutants* at O'Hare International
Airport in violation of [NEPA]." (Emphasis added). The district court
judge reasoned that "the court must have jurisdiction to determine
whether said [EIS] is required at all. To hold otherwise is to allow an
agency to circumvent judicial review merely by failing to file a

statement," citing another early landmark decision *Hanly v. Kleindienst*, 471 F.2d 823 (2d Cir. 1972) (*Hanly II*)( district court has jurisdiction to review agency decision not to file an impact statement). The district court said "there is federal action [triggering NEPA].... whenever an agency makes a decision which permits action by other parties which will affect the quality of the environment. NEPA's impact statement procedure has been held to apply where..the agency made a decision which permitted some other party, private or governmental, to take actions affecting the environment," *Scott v. Butterfield*, 396 F.Supp. at 639-640, quoting *Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission*, 481 F.2d 1079, 1088-1089 (D.C.Cir.1973). The court then held that "we believe the claim would lie which compels the production of a statement giving consideration to the environmental effects of activities creating *increased operational growth* at the airport." *Scott v. Butterfield*, 396 F.Supp. at 640-641.

The district court went on to hold that the NEPA "requires that before a preliminary or threshold determination of significance is made the responsible [federal] agency must give notice to the public of the

proposed major federal action and an opportunity to submit relevant facts which might bear upon the agency's threshold decision," *Scott v. Butterfield*, 396 F. Supp. at 641, citing *Hanly II*, 471 F.2d at 836. "Otherwise the agency, lacking essential information, might frustrate the purpose of NEPA by threshold determination that impact statement is unnecessary. Furthermore an adequate record serves to preclude later changes in use without consideration of environmental significance as required by NEPA." Other cases vesting jurisdiction in the district courts to review agency inaction include *City of Atlanta v. United States*, 531 F. Supp. 506 (N.D. Ga. 1982), quoting *Virginians for Dulles v. Volpe*, 541 F.2d. 442, 445 (4th Cir. 1976); *City of Irving, Tex. v. Federal Aviation Admin.*, 539 F. Supp. 17, 27, 34 (N.D.Tex. 1981), citing *Citizens for Responsible Area Growth v. Adams*, 434 F.Supp. 403 (D. D.C. 1977); *City of Romulus v. County of Wayne*, 392 F.Supp. 578 (E.D. Mich. 1975); *City of Boston v. Coleman*, 397 F. Supp. 698 (D. Mass. 1975).

### V. The FAA's Contention That The "Airline Deregulation Act" Divested The Agency Of Any Authority Over The Frequency Of Flights Is Incorrect; The Cited Language Was Not In The Airline Deregulation Act At All And Has Never Applied To The FAA

In the May 28 letter, the Regional Administrator took the unprecedented position that once the FAA approved Frontier's request to perform two flights a week at TTN, the agency then had no further lawful authority to limit or control the number of operations at that airport. The letter claims that the "Airline Deregulation Act" divests the agency of any control over the number of flights at TTN, and thus, no NEPA analysis can be carried out. No court has ever so held, and for good reason. While it relies heavily on this claim in this case, the FAA cites no caselaw to this effect, and for good reason. So far as we are aware, the agency has never made any public announcement of this position, and for good reason. The FAA's argument is stunningly wrong.

The claim relies upon the provision in 49 U.S.C. § 41109(a)(2) (B) that "the Secretary may not prescribe a term preventing an air carrier from adding or changing schedules, equipment, accommodations, and facilities for providing the authorized transportation to satisfy business development and public demand." In its pleadings below, the FAA even

dressed up its theory. The FAA's December 12, 2014 reply on its motion to dismiss elaborated on this claim at page 5, stating that this language was in the Airline Deregulation Act, "which phased out forty years of government regulation of aviation rates, routes, and services to permit airlines to fly where passenger dictates .... *** As a result of deregulation, there is no fixed regulatory limit on the number of flights an air carrier can offer." There was no basis for this.

*This language was not part of the Airline Deregulation Act and was never intended to apply to the FAA at all, and does not apply to the FAA today.* The language cited by the FAA goes all the way back to the original Federal Aviation Act of 1958, P.L. 85-726, 72 Stat. 731, at Section 401(e), which read in relevant part:

> TERMS AND CONDITIONS OF CERTIFICATE
>   (e) Each certificate issued under this section shall specify the terminal points and intermediate points, if any, between which the air carrier is authorized to engage in air transportation and the service to be rendered; and there shall be attached to the exercise of the privileges granted by the certificate, or amendment thereto, such reasonable terms, conditions, and limitations as the public interest may require. ... *No term, condition, or limitation of a certificate shall restrict the right of an air carrier to add to or change schedules, equipment, accommodations, and facilities for performing the authorized transportation and service as the*

*development of the business and the demands of the public
shall require.*

(Emphasis added.)

This was part of Title IV of the 1958 Act, titled "Air Carrier

Economic Regulation" and applied *only* to the Civil Aeronautics Board,

and not the FAA. Those responsibilities were transferred to the

Secretary of Transportation and remain in Subtitle II, captioned

"Economic Regulation." P.L. 95-504, Title XVI ("Sunset Provisions").

The FAA's responsibilities, which continue today in amended form,

were contained in Title III of the 1958 Act, titled "Organization Of

Agency And Powers And Duties Of Administrator," referring to the

FAA Administrator. *See* P.L. 85-726, Secs. 101(1) and 103. Indeed, the

FAA was established by that act. P.L. 85-726, Sec. 301. These

authorities remain in Subtitle II, captioned "Safety."

This part of Section 401 was recodified as current Section 41109

"without substantive change" by P.L. 103-272, 108 Stat. 1123 (1994).[5]

---

[5] "SUBTITLES II, II, AND V-X OF TITLE 49 UNITED STATES
CODE SECTION 1. (A) Certain general and permanent laws of the
United States, related to transportation, are revised, codified, and
enacted by subsections (c)–(e) of this section without substantive
change as subtitles II, III, and V–X of title 49, United States Code,

In this enactment, "Secretary Of Transportation" was substituted for the now sunsetted Civil Aeronautics Board originally established by the 1958 act.

The only part of the *Airline Deregulation Act* which affected this section was Section 15 of the Deregulation Act, which reads in its entirety:

> Sec. 15.(a) Paragraph (3) of section 401(e) of the Federal Aviation Act of 1958 (49 U.S.C. 1371(e)(3) is amended by striking out "supplemental air transportation" and inserting in lieu thereof "foreign charter air transportation".
> (b) Paragraph (4) of section 401(e) of such Act is amended by striking out the semicolon and all that follows down through the period and inserting in lieu thereof a period.
> (c) Paragraph (6) of section 401(e) of such Act is amended by striking out "supplemental air carrier" and inserting in lieu thereof "charter air carrier".

P.L 95-504, 92 Stat. 1705, Sec. 15. The Airline Deregulation Act did not contain, recodify or amend the language relied upon by the FAA.

Thus, the FAA's Airline Deregulation Act argument is based *entirely* on a false premise. No part of Section 41109 has *ever* applied to the FAA. *See, e.g., Diefenthal v. C.A.B.*, 681 F. 2d 1039 (5th Cir.), *cert. denied,* 459 U.S. 1107 (1982), (confirming that the predecessor to 41109

---

"Transportation"."

applied to Civil Aeronautics Board and not the FAA).

In any event, the FAA's argument is wrong for other good reasons, too.

The FAA is charged by law with regulating the safe operations of all air carriers and the navigable airspace. 49 U.S.C. § 44701; 47101(a)("[i]t is the policy of the Untied States - (1) that the safe operation of the airport and airway system is the highest aviation priority"). It is also charged with controlling aircraft noise. 49 U.S.C. § 44714. The Airline Deregulation Act *reaffirmed* this responsibility. 49 U.S.C. § 40101(a)("the Secretary [and by delegation, the FAA Administrator] shall consider the following matters, among others, as being in the public interest and consistent with the public convenience and necessity: "(1) assigning and maintaining safety as the highest priority in air commerce;" (2) before authorizing new air transportation service, evaluating the safety implications of those services.") *See also* 49 U.S.C. § 40101(c). The FAA's position that any approval of any service, even two flights a week, amounts to blanket approval of a unlimited number of flights to the end of time is the ultimate

abdication of regulatory responsibility. By this reasoning, Frontier

could operate flights stacked up for hours awaiting landing at TTN,

twenty four hours a day and 365 days a year, with no FAA safety

oversight.

To appreciate how extensively the FAA claims legal and

operational control over airports such as TTN, the court can look to

other recent FAA actions. For example, in 2007, the FAA completed a

comprehensive redesign of air carrier operations in and out of all

metropolitan New York Airports. (TTN was one of the satellite airports

whose operations were included in the study and redesign, but Frontier

had not commenced any operations.) This project included a large

number of changes in air carrier approaches and departures from

individual airports, operations in navigable airspace throughout the

region and other pervasive controls over carrier operations, including

some accomplished for noise reduction. This extensive redesign of

departure and arrival procedures and noise mitigation analysis also

demonstrates the FAA's pervasive authority over *all* air carrier

operations in and out of airports and in *all* navigable airspace.[6]

The FAA has long claimed the authority to explicitly limit the number of operations at various airports, including those it designated as "high density," requiring that an air carrier proposing to serve such "slot-constrained" airports to get permission. See, e.g., 14 C.F.R. Part 93 Subparts K and S. The following provision are cited as authority for this power: 49 U.S.C. §§ 106, 40103, 40106, 40109, 40113, 44502,

---

[6] The FAA's Corrected Record of Decision can be found at

http://www.faa.gov/air_traffic/nas/nynjphl_redesign/documentation/media/Corrected_ROD_071005.pdf

A summary of airport and air carrier operational changes appears at pages 5-6. The many alternatives studied are summarized at pages 13-20. Extensive noise mitigation techniques were included: "These techniques included increasing altitudes, dispersing or concentrating tracks where appropriate, reducing flying time, and routing aircraft over less noise-sensitive areas where feasible." *Id.* at 10.

An extensive investigation by the Government Accountability Office is found at:

http://www.gao.gov/assets/280/278697.pdf

in which, among other things, the GAO analyzed the FAA's compliance with NEPA.

The FAA's ROD was upheld in *County of Rockland, NY v. FAA*, 335 Fed. Appx. 52 (D.C. Cir., 2009), cert. denied 558 U.S. 1149 (2010).

44514, 44701, 44719, 46301. For a recent discussion by the FAA of its

authority to limit the number of air carrier operations, see Notice Of

Proposed Rulemaking, "Slot Management and Transparency for

LaGuardia Airport, John F. Kennedy International Airport, and

Newark Liberty International Airport," 80 F.R. 1273 (January 8, 2015):

> This rulemaking is promulgated under the authority
> described in Title 49 of the United States Code, Subtitle VII,
> Part A, Subpart I, Sections 40101, 40103, 40105, and 41712
> * * *
> The FAA has broad authority under 49 U.S.C. 40103 to
> regulate the use of the navigable airspace of the United
> States. This section authorizes the FAA to develop plans and
> policy for the use of navigable airspace and to assign the use
> the FAA deems necessary for safe and efficient utilization.

In this NPRM, the FAA demonstrated how it *normally* claims a

categorical exclusion:

> G. Environmental Analysis
> FAA Order 1050.1E, *Environmental Impacts: Policies and
> Procedures*, identifies FAA actions that are categorically
> excluded from preparation of an environmental assessment
> or environmental impact statement under the National
> Environmental Policy Act in the absence of extraordinary
> circumstances. The FAA has determined this rulemaking
> action qualifies for the categorical exclusion identified in
> paragraph 312d "Issuance of regulatory documents (e.g.,
> Notices of Proposed Rulemaking and issuance of Final
> Rules) covering administration or procedural requirements
> (Does not include Air Traffic procedures; specific Air Traffic

procedures that are categorically excluded are identified under paragraph 311 of this Order.)". *It has been determined that no extraordinary circumstances exist that may cause a significant impact and therefore no further environmental review is required. A documented categorical exclusion has been filed in the docket.*[7]

(Emphasis added.) Here, of course, no such documentation for a categorical exclusion for TTN has ever been produced and no doubt does not exist. No such claim of a categorical exclusion was made in the 2008 ROD that promised an EIS in the event that a high frequency low fare air carrier operated to the extent that Frontier does.

The FAA's legal authority to limit the number of air carrier operations was affirmed in *Northwest Airlines v. Goldschmidt*, 645 F. 2d 1309 (8th Cir. 1981) and has never been seriously challenged since.[8]

---

[7] The current version of FAA Order 1050.1E can be found at

http://www.faa.gov/documentLibrary/media/Order/FAA_Order_1050_1F.pdf

[8] For an extended discussion about these constraints, see General Accountability Office, "Slot-Controlled Airports: FAA's Rules Could be Improved to Enhance Competition and Use of Available Capacity," GAO report number GAO-12-902 (September 13, 2012). Appendix III of this report is entitled "History Of Slot Control Rules And Related Actions," and contains useful information about that history. See also, *GAO Legal Opinion on Federal Aviation Administration —* "Authority to Auction Airport Arrival and Departure Slots and to

**VI. The FAA's Implication That The "Airline Deregulation Act" "Repealed" NEPA Is Factually Incorrect, Since NEPA *Postdated* The FAA"s Cited Language And In Any Event Implied Repeals Are Strongly Disfavored; The FAA's Cited Authority And NEPA are Readily Harmonized**

The FAA's implication that a portion of Section 41109(a)(2)(B) somehow "repeals" any part of NEPA as it applies to the FAA is readily disposed of. The cited language was part of the 1958 Federal Aviation Act. NEPA was adopted effective January 1, 1970. Language enacted in 1958 can not "repeal" a subsequent enactment.[9]

There is no inconsistency between the FAA's cited language of 41109(a)(2)(B) – and that language has *never* applied to the FAA – and NEPA.

At least two ways may be found to harmonize the FAA's false "ADA" argument with NEPA. For example, prior to approving Frontier's Ops Specs amendment request, the FAA could have inquired

---

Retain and Use Auction Proceeds," B-316796 (Sept. 30, 2008), at:

http://www.gao.gov/assets/390/383986.pdf

[9] It is of course hornbook law that implied repeals are strongly disfavored. *See, e.g. National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665-665 (2007).

of the applicant to obtain its long-range plan, including specification of the maximum number of flights contemplated by the air carrier. Indeed, we fail to see how the agency could have discharged its safety responsibilities *without this information* if its false 41109(a)(2) (B) argument has any validity. How was the FAA supposed to analyze the safety of, say, hundreds of operations a week, with all sorts of different aircraft, without knowing Frontier's longer term plans? Surely the FAA is not saying that if it is presented with a request by Frontier to conduct two operations a week with one particular type of approved aircraft, it must find those operations are safe? Then, surely the FAA is not saying, forever after it is denied *any* authority over whatever number of operations Frontier chooses?

With information in hand revealing that Frontier was intent upon expanding operations far beyond two flights per week, including late night arrivals and early morning departures, the FAA would have been obligated to initiate a NEPA process as it had in 1999 when it assessed the impacts of the contemplated enhancement of TTN to accommodate high-frequency commercial service. But the FAA made no effort at

harmonizing its absurd and false interpretation of the Section 41109 with its NEPA duties. The FAA had an important job to do and it did not do it.

In this context, it is important for the court to keep in mind that NEPA only mandates that the agency take a "hard look" at the environmental impacts of the proposed federal action. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989). It does not mandate a particular outcome. Among other responsibilities of the law is that the agency consider all reasonable alternatives and mitigation measures for the proposed federal action. See also *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190 (D.C. Cir. 1991)(as to airport expansion, "NEPA does not mandate particular consequences...[it] directs agencies only to look hard at the environmental effects of their decisions..."An important part of the NEPA analysis for Frontier's operations at TTN would be for the FAA to consider take-off, landing, taxiing and air operations procedures that would minimize noise and air pollution impacts, or confine those impacts to narrowly defined areas. We know this did not happen because the initial Ops Specs approval took only six

days, and then only by an inspector. *None of this is in any way*

*inconsistent with the FAA's claim of the meaning of Section 41109(a)(2)*

*(B).*

Thus, there is no irreconcilable conflict between compliance with

the dictates of the NEPA and the FAA's claimed meaning of Section

41109(a)(2) (B).

### VII. The FAA's Claim Of No Further Regulation After The Initial Two Flights Per Week Approval Is Irrelevant To NEPA: A Major Federal Action Significantly Affecting The Quality Of The Human Environment *Has* Occurred And The FAA Must Conduct The Nepa Analysis Now Even If It Could Have Claimed A Categorical Exclusion When The Ops Specs Amendment Was Approved

The core of the FAA's argument is that the "Airline Deregulation

Act" prevents the agency from exercising any control whatsoever over

Frontier's initial two flight a week were approved. We have

demonstrated above that this argument is hopelessly wrong for several

reasons, including the fact that the language quoted by the FAA is not

in that Act and was never meant to apply to the FAA, and the FAA

routinely exercises pervasive control over navigable airspace and

airport operations. However, even assuming the FAA declined to

exercise pervasive and continuous control over the exponential expansion of Frontier's operations, that has nothing to do with NEPA compliance.

The court must consider these issues from two different perspectives.

A. *Frontier never expands materially beyond the two flights per week.* First, for purposes of this argument, the court can accept at face value the agency's approval of just two scheduled flights per week. It may be that such a minimal level of operations would qualify for a categorical exclusion. In the previous controversy about expanded operations at TTN, when Southwest Airlines was considering operations but abandoned those plans. It is possible that something of the sort might have happened here, or was at least reasonably foreseeable to the FAA in the original Ops Specs amendment process. Thus, for example, Frontier might have conducted those two approved flights per week for some period of time and then abandoned them. Or Frontier might have conducted those two approved flights per week for a period up to today. Frontier might have added, say, another two

flights a week. In these cases, the FAA might have legitimately claimed that a categorical exclusion such as Order 1050.1E, paragraph 312b., "[a]uthorizations and waivers for infrequent or one-time actions," might apply.[10]

The lower court did not find that the FAA's approval of the Ops Specs amendment included any finding of a categorical exclusion. This was correct. The lower court also expressed doubts about the May 28 letter, in which the Regional Administrator said "[a]t the time Frontier' Ops Specs were amended to add Trenton Airport, *the FAA believed* that approval was subject to a categorical exclusion." JA12. But no particular categorical exclusion has ever been identified and the required documentation has never been furnished. The only realistic inference is that it never existed. So there is substantial reason to doubt that the agency even considered, let alone decided, that a

---

[10] Order 1050.1E, the then current FAA order implementing NEPA, can be found at:

http://www.faa.gov/documentLibrary/media/order/energy_orders/1050-1E.pdf

The current version, Order 1015.1F, was adopted effective July 15, 2015 and does not change any provisions relevant here.

categorical exclusion might have applied at the initial Ops Specs
amendment approval.

But this, of course, is not what happened.

*B. Frontier does expand materially beyond the two flights per
week, or the FAA has reason to believe this will happen at the time it
approves the Ops Specs amendment.* One or both of these two things
did happen, and for purposes of this court's decision, it doesn't matter
which.

If the FAA – through wilful ignorance or otherwise – did not
contemplate that any further flights would happen, and a categorical
exclusion might apply, then once Frontier did significantly expand its
operations, then the categorical exclusion could no longer apply, and
the agency should by law have proceed to the environmental analysis
*and* the EIS that the agency conceded in its 2008 order was mandated
by the level of Frontier's operations

If the FAA had reason to believe that Frontier would significantly
expand it operations (which is of course what any airline in that
position would aim for), then it knew that no categorical exclusion

would apply *at that decision point.*

"Categorical exclusion" is a well-understood term and there are well-developed procedures at the FAA for making and supporting a claim of a categorical exclusion. According to paragraph 303a of the FAA's NEPA implementing Order 1050.1E (March 20, 2006),

> [c]ategorical exclusions are those types of Federal actions that meet the criteria contained in 40 CFR 1508. They represent actions that the FAA has found, based on past experience with similar actions, do not normally require an EA or EIS because they do not individually or cumulatively have a significant effect on the human environment, with the exception of extraordinary circumstances as set forth in paragraph 304. [11]

But the FAA's regulations include a significant check on any

---

[11] 40 CFR 1508.4, a CEQ regulation, reads as follows:

*Categorical exclusion* means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required. An agency may decide in its procedures or otherwise, to prepare environmental assessments for the reasons stated in § 1508.9 even though it is not required to do so. Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

attempt to claim a categorical exclusion based solely on the present circumstances. Paragraph 201a provides that "[i]f an action is included in one of the categories of categorical exclusions (see paragraphs 307-312), *and no extraordinary circumstances (see paragraph 304) apply to the proposed action*, the FAA can take action without further environmental review." (Emphasis added.) "Extraordinary circumstances" are defined as "factors or circumstances in which a normally categorically excluded action may have a significant environmental impact that then requires further analysis in an EA or an EIS." Among the identified "extraordinary circumstances is "impact on noise levels of noise-sensitive areas." Paragraph II.8.of Order 1050.1E defines "Noise Sensitive Area" as "[a]n area where noise interferes with normal activities associated with its use. Normally, noise sensitive areas include residential, educational, health, and religious structures and sites, and parks, recreational areas (including areas with wilderness characteristics), wildlife refuges, and cultural and historical sites." This includes the area around TTN, reaching as far as the three Pennsylvania towns that sought to join this action in

the plaintiffs's amended complaint.

There are also established procedures for formalizing a categorical exclusion. Order 1050.1E, figure 3-1 at page 3-3. Formal documentation may be avoided, but *not* in circumstances as here where there is " (1) when there is controversy or public opposition (but not "effects on the quality of the human environment likely to be highly controversial on environmental grounds" as defined in paragraph 304i); (2) when the applicability of a categorical exclusion is not intuitively clear; (3) when litigation is anticipated; or (4) when the project is perceived by the public as having the potential for adverse environmental effects." All four of these circumstances exist here.

Thus, if the FAA was aware that Frontier would expand its operations well beyond the two flights per week in the OPS Spec amendment, and would not seek any further FAA approval for that expansion, then it could not have claimed or "believed" that a categorical exclusion would have applied. The FAA was therefore obligated by its own regulations to formally consider at the appropriate agency level whether a categorical exclusion might exist, and then, on

consideration and the inevitable finding that "extraordinary circumstances" were very much present, proceed to the environmental analysis *and* the EIS required by NEPA that the agency conceded in its 2008 order was mandated by the level of Frontier's operations. No categorical exclusion could have applied to the Ops Specs amendment if the FAA's claim that a limitless number of added operations was inevitable or likely.

### VIII. If The District Court Does Lack Subject Matter Jurisdiction, There Are "Reasonable Grounds" To Extend The Sixty Day Time Limit For Filing In This Court, Or In The Alternative This Court Should Convert This Appeal To A Direct Appeal And Compel The FAA To Prepare The EIS It Has Already Agreed Is Required For Operations Of The Scope Of Frontier's TTN Operations

This court has "reasonable grounds" to extend the sixty day deadline for filing a direct appeal in Section 46110. In *Greater Orlando Aviation Authority*, 939 F. 2d 954 (11th Cir. 1991), the court held that confusion about the reviewability of an FAA determination would constitute reasonable grounds for extending the sixty day deadline. As this brief sets forth, the FAA has engendered considerable confusion about just what it ordered, its legal authority once it had granted the

initial two flights per week permission, and whether it would ever carry out the environmental analysis it committed to in both the 2008 order and the May 28 letter. For these reasons and the other points in this brief, plaintiffs request that this court extend the filing deadline for direct appeal, or in the alternative, convert this appeal to a direct appeal.

## CONCLUSION

For the reasons given in this brief, the plaintiffs respectfully request that this court reverse the judgment of the lower court and remand for proceedings in the low er court. In the alternative, this court should find reasonable grounds for extension of the sixty day period, or convert this case to a direct appeal, and compel the FAA to conduct the environmental analysis and prepare the environmental impact statement it committed to prepare in 2008.

Respectfully submitted,

/s/ R. William Potter
R. William Potter

CERTIFICATE OF COMPLIANCE
WITH Fed. R. App. P. 32 and 3d Cir. Lar 32.1(c)

R. WILLIAM POTTER certifies as follows:

1. This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,854 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)9B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using WordPerfect 6-X7 in 14-point Century font.

3. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


Date: February 1, 2016

/s/ R. William Potter

R. William Potter

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

R. WILLIAM POTTER certifies as follows:

1. The text of the electronic and hard copy forms of this brief are identical.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: February 1, 2016

/s/ R. William Potter

R. William Potter

## CERTIFICATE OF ADMISSION TO THE BAR

R. WILLIAM POTTER certifies as follows:

1. I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.  Peter Dickson is also a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: February 1, 2016

/s/ R. William Potter

R. William Potter

## CERTIFICATE OF VIRUS CHECK

R. WILLIAM POTTER certifies as follows:

1. I caused the electronic version of this brief to be checked for computer viruses using _____.
No computer virus was found.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: February 1, 2016

/s/ R. William Potter

R. William Potter

CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2016, two copies of the foregoing Brief of Appellants, bound with Joint Appendix Volume 1, and two copies of Volume 2 of the Joint Appendix were sent by UPS overnight delivery to:

> Paul J. Fishman, United States Attorney
> Attention:  J. Andrew Ruymann, Assistant U.S. Attorney
> 402 East State Street, Room 430
> Trenton, New Jersey 08608

On the same date, an electronic copy of the Brief of Appellants was electronically transmitted to the Clerk of the United State Court of Appeals for the Third Circuit and simultaneously to J. Andrew Ruymann, Assistant U.S. Attorney.

An additional ten copies of the Brief of Appellants bound with Joint Appendix Volume 1 and four copies of Volume 2 of the Joint Appendix were sent by USP overnight delivery to:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> 601 Market Street. 21400 U.S. Courthouse
> Philadelphia, PA 19106-2790

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: February 1, 2016

/s/ R. William Potter
R. William Potter

In the
United States Court of Appeals
for the Third Circuit
No. 15-2393

BRRAM, Inc., a corporation organized under the laws of the Commonwealth
of Pennsylvania, MS. HOLLY BUSSEY, MR. WILLIAM LYNCH,
MR. RICHARD DELELLO, MS. JULIE POWER,
MR. JOHN GIACOBETTI, MRS. JENNIFER GIACOBETTI,
MS. DEBORAH LEAMANN, MS. CAROLINE BONDI,
MS. DELORES BRIENZA, MR. RICHARD  WAYNE,

Appellants,

v.

UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA),
MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, and
FRONTIER AIRLINES, INC.,

Appellees

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:14-cv-02686
Honorable Peter G. Sheridan, District Judge

JOINT APPENDIX
Volume 1

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555; Fax: (609) 921-2181
Attorneys for BRRAM, Inc., Ms. Holly Bussey,
Mr. William Lynch, Mr. Richard Delello,
Ms. Julie Power, Mr. John Giacobetti,
Mrs. Jennifer Giacobetti, Ms. Deborah
Leamann, Ms. Caroline Bondi, Ms. Delores
Brienza, and

Dated February 1, 2016.    Mr. Richard Wayne

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for Plaintiffs

## NOTICE OF APPEAL

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

### CASE NO. 3:14-cv-02686

BRRAM, Inc., a corporation organized under the laws of the
Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William
Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti
and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline
Bondi, Ms. Delores Brienza, and Mr. Richard Wayne,

Plaintiffs,

V.

United States Federal Aviation Administration (FAA),

Defendant.

**NOTICE IS HEREBY GIVEN** that Plaintiffs, BRRAM, Inc., Ms.

Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie

Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms.

Page 1 of 3

JA1

Case: 15-2393-6-PO3cument: 003112195910 FileRage/04/15 DRage12 df 06f 02/j2015535

Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and

Mr. Richard Wayne, appeal to the United States Court of Appeals for

the Third Circuit from the OPINION and ORDER granting Motion to

Dismiss the Complaint in favor of the Defendant, Federal Aviation

Administration, and denying the Plaintiffs, BRRAM, Inc., Ms. Holly

Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power,

Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah

Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard

Wayne, Motion to Amend the Complaint, signed by the Honorable

Peter G. Sheridan on May 19, 2015 and entered on May 19, 2015.

(Copy of Order and of Opinion as transcribed, annexed hereto)

POTTER AND DICKSON
Attorneys for the Plaintiffs

By: _R. William Potter_____

R. William Potter
June 4, 2015

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2015, two true copies of the Notice of

Appeal and Certificate of Service were forwarded to:

JA2

Honorable Peter G. Sheridan, U.S.D.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

and

The United States Federal Aviation Administration, by and through the
Office of the United States Attorney, attention John Andrew Ruymann, 402
East State Street, Suite 430, Trenton, NJ 08608, Email:
john.ruymann@usdoj.gov;

and to counsel for parties who were dismissed as defendants:

The Mercer County Board of Chosen Freeholders, represented by the
attorney of record, Paul Richard Adezio, County of Mercer, 640 South
Broad Street, Trenton, NJ 08650, Email: padezio@mercercounty.org;

and

Frontier Airlines, Inc., represented by the attorney of record, John Edmund
Flaherty, McCarter & English, LLP, Four Gateway Center, 100 Mulberry
Street, Newark, NJ 07102, Email: jflaherty@mccarter.com and also to
Ravin P. Patel, at the same address, Email: rpatel@mccarter.com.


R. William Potter

R. WILLIAM POTTER
Attorney for Plaintiffs


Page 3 of 3

JA3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRRAM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FEDERAL AVIATION ADMINISTRATION, <br><br> Defendant. | Civil Action No.:  14-cv-2686 (PGS) <br><br> ORDER |

THIS MATTER having been brought to the Court on (1) the Motion to Dismiss Plaintiffs Complaint pursuant to Fed. R. Civ. P. 12(b)(l) and 12(b)(6) (ECF No. 24) filed by Defendant, Federal Aviation Administration ("FAA"); and (2) the motion for leave to amend the complaint filed by Plaintiffs (ECF No. 35); and the Court having reviewed the papers submitted by the parties, and having heard the argument of the parties; and for the reasons set forth at the hearing on the record on May 18, 2015, and for good cause shown,

IT IS on this 18th day of May, 2015

ORDERED that the FAA's motion pursuant to Fed. R. Civ. P. 12(b)(l) is hereby GRANTED; and it is further

ORDERED that Plaintiffs Complaint is DISMISSED; and it is further

ORDERED that Plaintiff's motion to amend the Complaint is denied as moot. The clerk is directed to close the case.

_____
PETER G. SHERIDAN, U.S.D.J.

JA4

Case: 15-2393   Document: 003112195099   Page: 35   Date Filed: 07/02/2015
Case: 15-2393   Document: 003112008497   Page: 35   Date Filed: 07/02/2015

1

1              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY

2

3

4    BRRAM, INC., et al,
                    PLAINTIFFS

5
         Vs.                          CIVIL NO.
6                                     14-2886 (PGS)

     UNITED STATES FEDERAL AVIATION
7    ADMINISTRATION, et al,
                    DEFENDANTS

8

9

10                        **MAY 18, 2015**
                  CLARKSON S. FISHER COURTHOUSE
11                402 EAST STATE STREET
                  TRENTON, NEW JERSEY  08608

12

13

14   B E F O R E:     THE HONORABLE PETER G. SHERIDAN
                      U.S. DISTRICT COURT JUDGE
15                    DISTRICT OF NEW JERSEY

16

17

18

19
     **COURT'S OPINION ON MOTION TO DISMISS**
20

21

22
                      Certified as true and correct as required
23                    by Title 28, U.S.C. Section 753
                      /S/ Francis J. Gable
24                    FRANCIS J. GABLE, C.S.R., R.M.R.
                      OFFICIAL U.S. REPORTER
25                    (856) 889-4761

1       THE COURT:  This is the BRRAM v. The Federal

2   Aviation Administration.  This is a motion by the Federal

3   Aviation Administration to dismiss the complaint for lack of

4   jurisdiction and for failure to state a claim.  The complaint

5   seeks injunctive relief to enjoin Frontier Airline Operations

6   at Trenton Mercer Airport until such time as an Environmental

7   Impact Statement is completed and implemented as required by

8   the National Environmental Policy Act (NEPA), 42 U.S.C.

9   Section 4332.  BRRAM is a group of New Jersey and Pennsylvania

10   residents who live near the Trenton Airport.  The FAA seeks to

11   dismiss under Rule 12(b)(1) because the Federal Airlines

12   Deregulation Act requires any person who is aggrieved by a

13   final action of the FAA "apply for review...in the Court of

14   Appeals of the United States for the Circuit in which the

15   person resides." 46 U.S.C. Section 46110.  The FAA also seeks

16   to dismiss under Rule 12(b)(6) because the complaint was

17   untimely filed, as the petition for review must be filed

18   within 60 days after the order is issued, and allegedly the

19   plaintiffs did not comply with that provision.  The statute

20   (49 U.S.C. Section 46110(a)) provides in pertinent part:  "A

21   person disclosing a substantial interest in an order issued by

22   the secretary of transportation (or the...administrator of the

23   Federal Aviation Administration with respect to aviation

24   duties and powers designated to be carried out by the

25   administrator) in whole or in part under this part or part

Case: 15-2393   Document: 003112195009   Page: 97   Date Filed: 02/01/2016
Case: 15-2393   Document: 003112008437   Page: 36   Date Filed: 07/02/2015

3

1  B...may apply for review of the order by filing a petition for

2  review in the United States Court of Appeals for the District

3  of Columbia Circuit, or in the Court of Appeals of the United

4  States for the Circuit in which the person resides or has its

5  principal place of business.  The petition must be filed no

6  later than 60 days after the order is issued.  The court may

7  allow the petition to be filed after the 60th day only if

8  there are reasonable grounds for not filing by the 60th day."

9          The plaintiffs counter that they seek to have an

10  environmental assessment of the noise impacts of the Trenton

11  Airport undertaken by the FAA prior to the commencement of

12  more airline traffic.  As such, the plaintiffs only contend

13  they seek relief exclusively under the NEPA.

14          The NEPA requires that Environmental Impact

15  Statements be prepared before undertaking "major federal

16  actions significantly affecting the quality of human

17  environment."  42 U.S.C. Section 4332(c).  The FAA had not

18  provided an Environmental Impact Statement under NEPA because

19  the FAA determined that the Trenton Airport fit within the

20  "categorical exclusion provisions of NEPA."  In light of those

21  contentions, the facts are presented below.

22          In 2006, BRRAM and Lower Makefield Township filed

23  suit against the FAA in the Third Circuit.  While the suit was

24  pending in 2008, after 10 years of attempting to expand the

25  Trenton Airport to accommodate a low fare/high frequency air

1   carrier, Mercer County officials abandoned its expansion plan

2   and advised the FAA of same.  At that time, and in response,

3   the FAA "withdrew the Finding of No Significant Impact/Record

4   of Decision" (FONSI/ROD) that was originally filed on February

:07    5   23, 2006.  Within the withdrawal, the regional administrator

6   noted that an environmental assessment was undertaken, and the

7   FAA issued a FONSI/ROD approving the airport's sponsor's

8   preferred alternative.  The administrator further noted that

9   such an assessment remains valid for three years, and three

:08   10   years was nearing expiration.  As such, the Trenton Airport

11   "EA would need to be reevaluated at the very least to ensure

12   that the environmental analyses are accurate, valid, adequate

13   and current."  Under the signature of the administrator, the

14   administrator noted that the withdrawal was a final action or

):08   15   decision.  It states:

16      "This decision is taken pursuant to 49 U.S.C. Section

17      40101, et seq. (Part A) and 49 U.S.C. Section 47101, et

18      seq. (Part B), and constitutes a final order of the

19      administrator which is subject to review by the Courts of

0:09   20      Appeals by the United States in accordance with the

21      provisions of 49 U.S.C. Section 46110."

22      The filing of this withdrawal also ended the lawsuit

23   that was pending in the Third Circuit, and terminated any

24   judicial proceedings on the expansion of the Trenton Airport.

25      From that date there were no other reportable events

Case: 15-2393   Document: 003112195099   Page: 39   Date Filed: 02/01/2016
Case: 15-2393   Document: 003112008497   Page: 38   Date Filed: 02/01/2016

5

1   with regard to the parties until September 19, 2012.  On that

2   date Frontier, by way of a letter from Jim Colburn, notified

3   the FAA (Dale Snider) of its intent to utilize Trenton

4   Airport.  And Frontier sought an amendment "to add Trenton,

:11   5   New Jersey to the Frontier Airlines operations specifications

6   CO70 airports as a regular (R) and alternative (A) airport."

7   The letter that Mr. Colburn of Frontier sent was brief.  First

8   it indicated that the subject matter as scheduled air bus

9   service from TTN (TTN being Trenton).  Then the body of the

:12   10   letter indicates "that Frontier Airlines intends to begin

11   scheduled service from Trenton, New Jersey (TTN).  Service is

12   scheduled to begin on November 16, 2012 utilizing the airbus

13   A320 Series aircraft."  The letter only refers to two flights

14   per week, but below that Frontier Airlines requested to add

):13   15   Trenton, New Jersey (TTN) to the Frontier Airlines operations

16   specifications, CO70 airports as a regular (R) and alternative

17   (A) airport.

18   About a week later, on September 25, 2012, Dale

19   Snider, Principal Operations Inspector of FAA, approved

):14   20   Frontier's operations specifications.  That approval was

21   printed on the letterhead of U.S. Department of

22   Transportation, Federal Aviation Administration; and refers to

23   the operations specifications.  Below that reference there are

24   several paragraphs wherein it reads:  The certificate holder

0:1⁻   25   (Frontier) applies for operations specifications to add

Case: 15-2393   Document: 003112105089   Page: 100   Date Filed: 07/21/2016
Case: 15-2393   Document: 003112005437   Page: 30   Date Filed: 07/02/2015

6

1    Trenton as a regular and alternative airport, and these

2    operations specifications are approved by direction of the

3    administrator.

4            Within the FAA's submission there is a certification

5    of Bruce A. Montigny, Manager of Flight Standard District

6    Office of the FAA, who overseas Frontier's air carrier's

7    certificate.  Mr. Montigny certified that Frontier's amendment

8    to add Trenton is a final decision of the FAA.  Montigny

9    states in paragraph 11 of his certification:

10           "On September 25, 2012, after determining that

11       Frontier could safely provide regular scheduled service

12       at Trenton-Mercer County Airport, the FAA approved that

13       amendment to Frontier's OpSpecs to include

14       Trenton-Mercer County Airport.  Exhibit B to this

15       declaration Frontier Airlines operations specifications

16       CO7O dated September 25, 2012 reflects this decision.

17       Once Frontier's OpSpecs were approved to permit it to

18       operate at Trenton-Mercer County Airport, Frontier

19       required no further approval with respect to service at

20       Trenton-Mercer County Airport.  Frontier is free to

21       determine which other airports approved in its OpSpecs

22       it will serve from Trenton-Mercer County Airport, as well

23       as the number of flights it will provide.  These matters

24       are business decisions made by the carrier without FAA

25       involvement."

*United States District Court*    JA10

1    My review of this request and approval of the

2    operations specifications of Frontier raises certain concerns,

3    which I note below.  First, there's nothing in the approval of

4    the FAA about the waiving of the environmental assessment on

5    the basis of a categorical exclusion; second, the approval

6    does not note that it is a final decision of the FAA, although

7    it does acknowledge that approval was by the administrator of

8    the FAA; third, it is uncertain whether Dale Snider, who was

9    an inspector, has the authority over environmental matters so

10   as to conclude that an environmental assessment may be

11   categorically excluded.  And lastly, it remains unclear

12   whether the approval of the OpSpecs was communicated publicly,

13   i.e., to others beyond Frontier.

14   Sometime thereafter, on April 24, 2013, Mr. Potter,

15   attorney for the plaintiffs, wrote a letter to Carmine Gallo,

16   the FAA regional director.  Mr. Potter's letter acknowledged

17   the jurisdiction of the Third Circuit.  He wrote:  "You may

18   also recall that in 2006 BRRAM joined with the board of

19   supervisors of the Township of Lower Makefield in filing suit

20   in the Third Circuit Court of Appeals against the United

21   States Federal Aviation Administration.  The basis for the

22   2006 suit was the FAA's failure to prepare an Environmental

23   Impact Statement (EIS), as required by FAA Order 1050D, and

24   the National Environmental Policy Act (NEPA), 42 U.S.C.

25   Section 4321, et seq., including specifically a 'part 150'

Case: 15-2393    Document: 003112105099    Page: 102    Date Filed: 07/21/2016
Case: 15-2393    Document: 003112008437    Page: 42    Date Filed: 07/01/2016

8

1   noise capability study, prior to granting Trenton-Mercer

2   Airport approval to construct a new and enlarged passenger

3   terminal intended for the purposes of attracting Southwest

4   Airlines as a 'low fare/high frequency' commercial air carrier

5   at the airport."

6           The substance of the FONSI/ROD discussed earlier,

7   and Mr. Potter's understanding of the jurisdictional issues,

8   demonstrates that Potter knew that an appeal must ordinarily

9   be filed in the Third Circuit rather than at the district

10  court.

11          On May 28, 2013, the regional administrator's office

12  replied to Mr. Potter's April letter.  The letter has several

13  major points.  First, it notes an amendment to Frontier's

14  operations specification is a major federal action.  The

15  letter states: "At the time Frontier's OpSpecs were amended to

16  add Trenton Airport, the FAA believed that the approval was

17  subject to a categorical exclusion."  The letter further

18  stated: "While the FAA is not required to complete a NEPA

19  analysis for the additional flights, we understand the

20  community's concerns surrounding operations at Trenton

21  Airport, and we are willing to undertake a noise analysis to

22  determine if mitigation is necessary.  We expect that we will

23  be able to provide you with those results sometime in mid

24  August of this year."

25          The reply is curious because the FAA does not state

1   the date of the approval of the categorical exclusion, and it

2   only acknowledges that "the FAA believed" that the approval of

3   the categorical exclusion occurred in September, but the

4   letter does not state who, when or why the FAA had such a

5   "belief" -- nor does it state that any public communication

6   notifying the public of the categorical exclusion decision had

7   occurred.

8           Lastly, the FAA's reply breathes life into

9   plaintiffs' contention that an EIS of some kind may be in the

10  offing.  The Court notes that the FAA determined it would

11  present such evidence by mid August -- which is after the 60

12  days permitted for plaintiffs to appeal.  Coincidentally, at

13  oral argument the FAA acknowledged that no environmental

14  impact statement was ever undertaken; and such decision or

15  omission not to undertake an environmental assessment was

16  never communicated to the plaintiffs.

17          Motion to dismiss.  Pursuant to Rule 12(b)(1) the

18  court must dismiss a complaint in whole or in part if the

19  plaintiff fails to establish that the court has jurisdiction

20  over the claim.  Plaintiffs, as the party asserting

21  jurisdiction, "bears the burden of showing that the case is

22  properly before the court at all stages of the litigation."

23  The *Packard* case, 994 F.2d 1039, 1045 (3d. Cir. 1993).

24  Challenges to jurisdiction under Rule 12(b)(1) may be either

25  facial or factual.  That's *Petruska v. Gannon*, 462 F.3d 294,

1  302, note 3 (3d. Cir. 2006)(cert. denied 550 U.S. 903 (2007)).

2  A facial attack challenges the sufficiency of the

3  pleading and the trial court "must consider the allegations of

4  the complaint as true."  However, a factual attack of

5  plaintiff's allegations are afforded no presumption of

6  truthfulness, and the trial court may review the evidence

7  outside the pleadings.  That's *Gould v. United States*, 220

8  F.3d 169, 176 (3d. Cir. 2000).

9  In looking at subject matter jurisdiction, the FAA

10  filed a motion to dismiss pursuant to Rules 12(b)(1) and

11  12(b)(6).  The FAA argues that the Court lacks subject matter

12  jurisdiction over plaintiffs' claims because the Courts of

13  Appeal have exclusive jurisdiction to review final orders of

14  the FAA.  And the FAA also argues that even if this Court had

15  subject matter jurisdiction, plaintiffs' claims would be

16  barred and dismissed under Rule 12(b)(6) because the claim was

17  filed untimely.  I do not reach the 12(b)(6) decision.

18  Congress has vested the Federal Courts of Appeal

19  with exclusive jurisdiction over FAA orders.  Specifically, 49

20  U.S.C. Section 46110(a) provides in pertinent part:

21  "A person disclosing a substantial interest in an order

22  issued by...the Administrator of the Federal Aviation

23  Administration with respect to aviation duties and powers

24  designated to be carried out by the Administrator...may

25  apply for review of the order by filing a petition for

*United States District Court*   JA14

1   appears to be the kind of case which Congress empowered the

2   Circuit Courts to handle; that is, the FAA order being

3   challenged by the plaintiffs is the FAA's September 25, 2012

4   order amending Frontier OpSpecs which authorizes Frontier to

5   provide commercial passenger service in and out of Trenton

6   Airport.  Federal regulations empower the FAA Administrator to

7   amend the carrier's OpSpecs (14 CFR Section 119.51(A)).  Thus,

8   it would allow for an OpSpecs amendment as one of the

9   "aviation duties and powers designated to be carried out by

10   the FAA Administrator"  referenced in Section 4110(a).

11        Even if the September 25, 2012 letter is deemed not

12   to be final, then the May 2013 reply letter from the regional

13   manager of FAA gives notice to the plaintiffs of the so-called

14   categorical exclusion decision.  As such, under Section

15   4110(a) review of the FAA's letter would still lie with the

16   Court of Appeals under 49 U.S.C. Section 46110(A).  See also,

17   *Sierra Club v. Department of Transportation*, 753 F.2d 120, 121

18   (D.C. Cir. 1985).  See also, *Fleming v. United States*

19   *Department of Transportation*, 348 Fed. App'x 736 at 737 (3d.

20   Cir. 2009).

21        It's noteworthy that an agency letter can sometimes

22   constitute an agency order.  For example, the Third Circuit

23   has held that FAA correspondence may provide an adequate

24   record for judicial review under 49 U.S.C. Section 46110(a).

25   See, *Aerosource v. Slater*, 142 F.3d 572, 578, note 10 (3d.

:38

1:38

0:40

0:40

0:

Case: 15-2393    Document: 003112185009    Page: 106    Date Filed: 02/01/2016
Case: 15-2393    Document: 003112008437    Page: 46    Date Filed: 07/02/2015

*13*

1  Cir. 1998).  In *Aerosource,* there was a finding that an FAA

2  letter could serve as a final order.  Thus, an FAA order "need

3  not be a formal order, the product of a formal decision-making

4  process, or be issued personally by the FAA administrator."

5  *Id.*

6        At the heart of this lawsuit, the lawsuit challenges

7  the order of the FAA that amended Frontier's OpSpecs, but

8  failed to decide, as best this Court can tell, the EIS issue.

9  As such, under 46110(a) the Court of Appeals has exclusive

10  jurisdiction over this suit to the extent there is a dispute

11  over the meaning of the FAA's order, or whether the FAA met

12  its obligations under NEPA in categorically excluding any

13  environmental assessment.  Approval of Frontier's OpSpecs is a

14  decision that falls within the provisions of Section 46110(a),

15  because that section provides that review of the orders of FAA

16  falls squarely within the exclusive jurisdiction of the

17  Circuit Courts.  As such, when one looks at all the facts,

18  this is a case for the Circuit Courts to decide.  Despite the

19  fact that the decision-making of the FAA may have been

20  somewhat ambiguous, it still yields sufficient notice to the

21  plaintiffs that any appeal or review of an FAA decision should

22  proceed before the Circuit Courts.  As such, the complaint is

23  dismissed with prejudice.

24

25