In the
United States Court of Appeals
for the Third Circuit
No. 15-2393

BRRAM, Inc., a corporation organized under the laws of the Commonwealth
of Pennsylvania, MS. HOLLY BUSSEY, MR. WILLIAM LYNCH,
MR. RICHARD DELELLO, MS. JULIE POWER,
MR. JOHN GIACOBETTI, MRS. JENNIFER GIACOBETTI,
MS. DEBORAH LEAMANN, MS. CAROLINE BONDI,
MS. DELORES BRIENZA, MR. RICHARD  WAYNE,

Appellants,

v.

UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA),
MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, and
FRONTIER AIRLINES, INC.,

Appellees

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:14-cv-02686
Honorable Peter G. Sheridan, District Judge

JOINT APPENDIX
Volume 2

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555; Fax: (609) 921-2181
Attorneys for BRRAM, Inc., Ms. Holly Bussey,
Mr. William Lynch, Mr. Richard Delello,
Ms. Julie Power, Mr. John Giacobetti,
Mrs. Jennifer Giacobetti, Ms. Deborah
Leamann, Ms. Caroline Bondi,
Ms. Delores Brienza, and Mr. Richard Wayne

Dated February 1, 2016.

Joint Appendix Table of Contents
Volume 1, attached to brief

Page

Notice of Appeal filed by BRRAM, Inc., et al., in the District
Court June 4, 2015 and in the Court of Appeals June 9, 2015
as Document 003111985910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA1

Order issued May 19, 2015 by U.S.D.J. Sheridan which
dismissed Plaintiffs' Complaint and denied motion to amend
attached to Notice of Appeal as Document 003112008437 . . . . . . . JA4

U.S.D.J. Sheridan's Opinion on Motion to Dismiss transcript
of May 18, 2015, filed July 2, 2015, attached to Notice of
Appeal and filed as Document 003112008437 . . . . . . . . . . . . . . . . JA5

Volume 2

Concise Summary of the Case filed July 9, 2015 in the Court
of Appeals as Document 003112012883 . . . . . . . . . . . . . . . . . . . . . JA18

Certified copy of the Civil Docket for Case #: 3:14-cv-02686-
PGS-DEA, U.S. District Court for the District of New Jersey . . . JA26

Complaint of BRRAM, Inc., et al., Plaintiffs, filed April 28, 2014
as Document 1 in the U.S. District Court for the District of
New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA37

Complaint Exhibit 1 filed as Document 1 in the U.S. District
Court for the District of New Jersey: the June 6, 2006,
Petition for Review to the Court of Appeals in Docket 06-2929
captioned, *Board of Supervisors of Lower Makefield Township et al.
v. Federal Aviation Administration* . . . . . . . . . . . . . . . . . . . . . . . . . . . JA53

Complaint Exhibit 2 filed as Document 1 in the U.S. District
Court for the District of New Jersey: June 9, 2008 *Order
Withdrawing Finding of No Significant Impact/Record of Decision
(FONSI/ROD)* dated February 23, 2006 for the Trenton-Mercer
Airport (TTN) by Manny Weiss, FAA Regional Administrator for
Eastern Region  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    JA64

Complaint Exhibit 3 filed as Document 1 in the U.S. District
Court for the District of New Jersey: *Frontier Airlines
Announces Expansion at Trenton-Mercer Airport,* article
dated November 15, 2012 in the *Princeton Patch*  . . . . . . . . . . . . .    JA67

Complaint Exhibit 4 filed as Document 1 in the U.S. District
Court for the District of New Jersey: Letter by R. William
Potter to Mercer County Executive Brian Hughes and to
C. Gallo, FAA Regional Administrator for the Eastern Region
dated April 24, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    JA69

Complaint Exhibit 5 filed as Document 1 in the U.S. District
Court for the District of New Jersey: Letter by R. William
Potter to C. Gallo, FAA Regional Administrator for the
Eastern Region dated October 31, 2013  . . . . . . . . . . . . . . . . . . .    JA75

Complaint Exhibit 6 filed as Document 1 in the U.S. District
Court for the District of New Jersey: Letter by C. Gallo,
FAA Regional Administrator, to R. William Potter dated
May 28, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    JA85

Civil Cover Sheet to Complaint filed as Document 1 in the
U.S. District Court for the District of New Jersey . . . . . . . . . . . .    JA87

Declaration of Bruce A. Montigney dated August 14, 2014 filed
by FAA as Document 24-2 in the U.S. District Court for the
District of New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    JA88

Exhibit to Declaration of Bruce A. Montigney filed as Document 24-2 on August 18, 2014 in the U.S. District Court for the District of New Jersey: Letter by Jim Colburg, of Frontier, to Dale Snider, Flight Standards District Office, dated September 19, 2012, to add Trenton (TTN) to Frontier's Operations Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  JA90

Exhibit to Declaration of Bruce A. Montigney filed as Document 24-2 on August 18, 2014 in the U.S. District Court for the District of New Jersey: FAA Operations Specifications Revision for Frontier Airlines effective September 25, 2012 . . . . . . . . . . . . . . .  JA91

Certification of Holly J. Bussey dated June 9, 2014, filed as Exhibit 7 on November 12, 2014 to the opposition to motion to dismiss, part of Document 34 in the U.S. District Court for the District of New Jersey  . . . . . . . . . . . . . . . . . . . . . . . . .  JA103

BRRAM, Inc., et al., First Amended Complaint, filed as Document 35-2 on November 20, 2014 in the U.S. District Court for the District of New Jersey . . . . . . . . . . . . . . . . . . . . . . .  JA108

Mercer County's May 17, 2013, *Notice of Opportunity for Public Comment* concerning Passenger Facility Charges at TTN, filed as Document 45 on January 20, 2015 in the U.S. District Court for the District of New Jersey . . . . . . . . . . . .  JA128

Mercer County Counsel P. Adezio's letter of June 10, 2015 to the Court of Appeals filed as Document 003111991055 on not participating in the appeal . . . . . . . . . . . . . . . . . . . . . . . . .  JA133

Frontier Airlines' Counsel J. Flaherty's letter of June 19, 2015 to the Court of Appeals filed as Document 003111996072 on not participating in the appeal . . . . . . . . . . . . . . . . . . . . . . . . .  JA134

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within 10 days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced. Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT
CAPTION: BRRAM, et al v. FAA, et al

USCA NO.: 15-2393

LOWER COURT or AGENCY and DOCKET NUMBER:
United States District Court for the District of New Jersey, Docket No. 3:14-cv-02686

NAME OF
JUDGE: Peter G. Sheridan

Specify who is suing whom, for what, and the subject of this action. Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

BRRAM, Inc., and ten individuals (Holly Bussey, William Lynch, Richard Delello, Julie Power, John Giacobetti, Jennifer Giacobetti, Deborah Leamann, Caroline Bondi, Delores Brienza, and Richard Wayne) are the appellant suing the United States Federal Aviation Administration seeking an order from the United States District Court compelling the FAA to conduct an environmental and safety review, pursuant to the National Environmental Policy Act, of the exponential increase in flights by a commercial air carrier operating at the Trenton Mercer Airport in New Jersey. The District Court dismissed the complaint for lack of subject matter jurisdiction withou reviewing if the appellants' motion for leave to file an amended complaint cured the alleged jurisdictional bar. The date of the order on appeal is May 18, 2015 (filed May 19, 2015) and the District Court dictated the Court's Opinion.

LIST and ATTACH a copy of each order, judgment, decision or opinion which is involved in this appeal. If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

The Order and the Opinion of the Court are attached: Order by Peter G. Sheridan, U.S.D.J., May 18, 2015 (filed the United States District Court for the District of New Jersey on May 19, 2015), and Court's Opinion on Motion to Dismiss (dictated on the record). Also attached are the FAA June 9, 2008 Order Withdrawing FONSI/ROD The FAA Ops Specs amendment dated September 25, 2012 for Frontier Airlines

Page 1 of 2

JA18

**Provide a short statement of the factual and procedural background, which you consider important to this appeal:**

  See attached statement.

**Identify the issues to be raised on appeal:**

  See attached statement of the issues.

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this ___9th___ day of ___July___, 20 15 ___.

*R. Will-Roth*
_____
Signature of Counsel

Rev. 01/2015

JA19

<u>Statement of factual and procedural background: Docket No. 15-2393.</u>

On June 9, 2008, the FAA issued "ORDER WITHDRAWING Finding of No Significant Impact/Record of Decision (FONSI/ROD) dated February 23, 2006 for the Trenton-Mercer Airport (TTN) Terminal Replacement and Other Projects in the Capital Improvement Program" (2008 Order). In this 2008 Order, the FAA responded to Mercer County's decision to forgo proposed expansion of TTN because Southwest Airlines, predecessor to Frontier Airlines, withdrew its plan to use TTN. This 2008 Order was the reason BRRAM, et al., agreed to dismissal of their petition to the Third Circuit for judicial review of the 2006 FONSI/ROD in *Board of Supervisors of Lower Makefield Township, Commonwealth of Pennsylvania ("Board of Supervisors"), and Bucks Residents for Responsible Airport Management ("BRRAM") v. United States Federal Aviation Administration*, No. 06-2929.

The 2008 Order provided that if TTN were to expand its facilities in order to attract another high frequency air carrier, an Environmental Impact Statement (EIS) would be required. Specifically the 2008 Order stated as follows:

> The analysis of Build Alternative 2 [airport expansion to accommodate high frequency service] revealed that alternative would likely cause sufficient noise impacts that would require the preparation of an Environmental Impact Statement (EIS).

Page 1 of 3

JA20

The FAA has now taken the exact opposite position, asserting in this case that it will not conduct any environmental or safety reviews of the exponential increase in flights at TTN by Frontier Airlines beyond the 2 flights per week for which Frontier Airlines requested and received FAA approval in an "Operations Specifications" (Ops Specs) amendment set forth in a private exchange of emails between September 18 and 25, 2012.

As Frontier Airlines began to increase passenger service at TTN, BRRAM wrote twice to the FAA asking for the environmental review and compliance with the 2008 Order and the National Environmental Policy Act (NEPA). After the FAA responded that it would not conduct any environmental or safety review, BRRAM, Inc., et al., sued in the United States District Court in Trenton. The FAA filed a motion to dismiss dated August 14, 2014, and disclosed for the first time the amendment to Frontier's Ops Specs approving Frontier's request to operate only 2 flights per week from TTN.

On November 20, 2014, the appellants, BRRAM, Inc., et al., filed a motion with the District Court for leave to amend their complaint (1) to add three Pennsylvania municipalities in Bucks County, the Township of Lower Makefield, Upper Makefield Township, and Yardley Borough, as co-plaintiffs and (2) to clarify that their complaint is not directed at any action taken by the FAA in

JA21

approving the Ops Specs amendment as limited to 2 flights per week but at the

FAA's **inaction**, its failure to conduct any safety or environmental analysis, as

required by the NEPA, of the exponential increase in flights by Frontier Airlines at

the TTN far beyond the 2 flights per week as requested and as approved by the

FAA in an exchange of unpublished emails in September 2012 that were revealed

for the first time as exhibits to the FAA's motion brief dated August 14, 2014.

After hearing oral argument on May 8, 2015, by order dated May 19, 2015,

the District Court granted the FAA's motion to dismiss BRRAM's original

complaint and declared that the appellants' motion to amend that complaint was

thereby rendered "moot." This decision is procedurally backwards. The District

Court rendered no ruling or opinion with respect to the proposed amended

complaint, other than its asserted mootness. As a result, the District Court never

considered the merits of the amended complaint and whether it cured any alleged

defects in the original complaint. When a motion to amend a complaint is

pending, the reviewing court must consider the adequacy of the amended

complaint as a substitute for the original complaint. *Lesser v. City of Cape May*,

110 F.Supp.2d 303 (D.N.J. 2000), quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962).

Page 3 of 3

JA22

Statement of issues on appeal: Docket No. 15-2393.

    A.  Whether the District Court has subject matter jurisdiction to compel the FAA to review the environmental and safety impacts of the "business decision" by Frontier Airlines to increase the frequency of flights at the Trenton Mercer Airport (TTN) far beyond the two flights per week permitted by the FAA in a private and unpublished Operations Specifications (Ops Specs) amendment accomplished by an exchange of private emails?  And whether an Ops Specs amendment approval granted by the FAA may be considered "issued" if the FAA never published the Ops Specs amendment or provided "public notice"?

    B.  Whether the District Court erred by dismissing the appellant's complaint and declaring that such dismissal thereby renders plaintiffs' Motion to Amend the Complaint as "moot" without the court considering whether the amended complaint successfully cured any alleged defects in the original complaint and pleaded causes of action for which the District Court, not this Court, has subject matter jurisdiction?

    C.  Whether the District Court has subject matter jurisdiction to order the FAA to comply with the National Environmental Policy Act (NEPA) 42 U.S.C. § 4321, et seq. and to review the environmental and safety impacts of Frontier Airlines' exponential expansion in the frequency of flights at TTN far in excess of

JA23

the two flights per week approved by the FAA in an unpublished Ops Specs amendment?

    D.  Whether enactment of the Air Line Deregulation Act of 1978, 49 U.S.C. § 41109, prevents the FAA from complying with the requirements of the NEPA such that the FAA has no authority to review the safety and environmental impacts caused by Frontier's exponential increases in the frequency of flights at TTN far beyond the two flights per week permitted in the unpublished Ops Specs amendment?

    E.  Whether the Air Line Deregulation Act impliedly repealed NEPA as applied to the FAA in these circumstances?

    F.  Whether the FAA's approval of Frontier Airline's request for an Ops Specs amendment seeking FAA permission to initiate two flights per week at TTN in a private and unpublished exchange of emails over a one week period in 2012 constitutes a "final order" appealable solely to the Circuit Court of Appeals within 60 days of the date of the private and unpublished email?

    G.  Whether it is arbitrary and capricious for the FAA to construe the Ops Specs amendment limiting Frontier to two flights per week at TTN as *sub silentio* granting further authorization for Frontier to expand such usage without the FAA engaging in any safety or environmental review of the impacts of any such

increase in frequency of flights?

H.   Whether the award of substantial Federal funds to Mercer County, New Jersey, the owner/operator of TTN, for the enhancement and expansion of airport runway capacity at TTN for the purpose of attracting a "low fare/high-frequency" (LF/HF) commercial air carrier (Frontier Airlines) constitutes a "major federal action significantly affecting the environment" and thereby triggers a duty for the FAA pursuant to the NEPA to consider the environment impacts associated with such air port construction and enhancement projects?

I.   Whether the FAA is bound  by its 2008 "Record of Decision" (ROD) stating that if Mercer County were to attract another  LF/HF commercial air carrier (Frontier Airlines) this would likely trigger the requirements for the FAA to prepare an "Environmental Impact Statement" (EIS)  due to the cumulative noise impacts associated with a substantial increase in the usage of the airport?

JA25

## U.S. District Court
### District of New Jersey [LIVE] (Trenton)
### CIVIL DOCKET FOR CASE #: 3:14-cv-02686-PGS-DEA
### Internal Use Only

| | |
|---|---|
| BRRAM, INC. et al v. UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) et al | Date Filed: 04/28/2014 |
| Assigned to: Judge Peter G. Sheridan | Date Terminated: 05/19/2015 |
| Referred to: Magistrate Judge Douglas E. Arpert | Jury Demand: None |
| Case in other court: THIRD CIRCUIT, 15-02393 | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| Cause: 42:4321 Review of Agency Action-Environment | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**BRRAM, INC.**
*a corporation organized under the laws of the Commonwealth of Pennsylvania*

represented by **R. WILLIAM POTTER**
POTTER AND DICKSON
194 NASSAU STREET
SUITE 31
PRINCETON, NJ 08542
609 921-9555
Email: potterrex@cs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MS. HOLLY BUSSEY**

represented by **R. WILLIAM POTTER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MR. WILLIAM LYNCH**

represented by **R. WILLIAM POTTER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MR. RICHARD DELELLO**

represented by **R. WILLIAM POTTER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

I HEREBY CERTIFY that the above and foregoing is a true and correct copy of the original on file in my office.
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
WILLIAM T. WALSH, CLERK
By _____
Deputy Clerk

JA26

**MS. JULIE POWER**                    represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


<u>Plaintiff</u>

**MR. JOHN GIACOBETTI**                represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


<u>Plaintiff</u>

**MRS. JENNIFER GIACOBETTI**           represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


<u>Plaintiff</u>

**MS. DEBORAH LEAMANN**                represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


<u>Plaintiff</u>

**MS. CAROLINE BONDI**                 represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


<u>Plaintiff</u>

**MS. DELORES BRIENZA**                represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


<u>Plaintiff</u>

**MR. RICHARD WAYNE**                  represented by **R. WILLIAM POTTER**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*


V.

<u>Defendant</u>

**UNITED STATES FEDERAL**              represented by **JOHN ANDREW RUYMANN**
**AVIATION ADMINISTRATION**            OFFICE OF THE US ATTORNEY
**(FAA)**                              402 EAST STATE STREET

SUITE 430
TRENTON, NJ 08608
(609) 989-2190
Email: john.ruymann@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**THE MERCER COUNTY BOARD**              represented by   **PAUL RICHARD ADEZIO**
**OF CHOSEN FREEHOLDERS**                                  COUNTY OF MERCER
*TERMINATED: 03/31/2015*                                   640 SOUTH BROAD STREET
                                                           TRENTON, NJ 08650
                                                           609-989-6514
                                                           Email: padezio@mercercounty.org
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**FRONTIER AIRLINES, INC.**              represented by   **JOHN EDMUND FLAHERTY**
*TERMINATED: 03/31/2015*                                  MCCARTER & ENGLISH, LLP
                                                          FOUR GATEWAY CENTER
                                                          100 MULBERRY STREET
                                                          NEWARK, NJ 07102
                                                          (973) 622-4444
                                                          Email: jflaherty@mccarter.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **RAVIN R. PATEL**
                                                          MCCARTER & ENGLISH LLP
                                                          FOUR GATEWAY CENTER
                                                          100 MULBERRY STREET
                                                          NEWARK, NJ 07102
                                                          973-848-5312
                                                          Email: rpatel@mccarter.com
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/2014 | 1 | COMPLAINT against FRONTIER AIRLINES, INC., THE MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) ( Filing and Admin fee $ 400 receipt number 5655140), filed by JOHN GIACOBETTI, RICHARD WAYNE, HOLLY BUSSEY, RICHARD DELELLO, JULIE POWER, CAROLINE BONDI, DEBORAH LEAMANN, BRRAM, INC., DELORES BRIENZA, JENNIFER GIACOBETTI, WILLIAM LYNCH. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(mak) (Entered: 04/29/2014) |

| 04/28/2014 | 2 | Corporate Disclosure Statement by BRRAM, INC. identifying NONE as Corporate Parent.. (mak) (Entered: 04/29/2014) |
| 04/29/2014 | 3 | SUMMONS ISSUED as to FRONTIER AIRLINES, INC., THE MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA). Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. Issued By *Marlene Kalbach* (mak) (Entered: 04/29/2014) |
| 05/19/2014 | 4 | NOTICE of Appearance by JOHN EDMUND FLAHERTY on behalf of FRONTIER AIRLINES, INC. (FLAHERTY, JOHN) (Entered: 05/19/2014) |
| 05/19/2014 | 5 | NOTICE of Appearance by RAVIN R. PATEL on behalf of FRONTIER AIRLINES, INC. (PATEL, RAVIN) (Entered: 05/19/2014) |
| 05/20/2014 | 6 | APPLICATION/PETITION for Pro Hac Vice Admissions for by FRONTIER AIRLINES, INC.. (Attachments: # 1 Certification of John E. Farley, # 2 Certification of Robert E. Cohen, # 3 Certification of Justin A. Savage, # 4 Certification of Emily E. Kimball, # 5 Text of Proposed Order)(FLAHERTY, JOHN) (Entered: 05/20/2014) |
| 05/21/2014 | 7 | CONSENT ORDER for the *pro hac vice* admissions of Robert E. Cohn, Esq., Justin A. Savage, Esq. and Emily E. Kimball, Esq. Signed by Magistrate Judge Douglas E. Arpert on 5/20/2014. (mmh) (Entered: 05/21/2014) |
| 05/27/2014 | 8 | Notice of Request by Pro Hac Vice Emily E. Kimball to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-5711867.) (FLAHERTY, JOHN) (Entered: 05/27/2014) |
| 05/27/2014 | 9 | Notice of Request by Pro Hac Vice Justin A. Savage to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-5711892.) (FLAHERTY, JOHN) (Entered: 05/27/2014) |
| 05/27/2014 | 10 | Notice of Request by Pro Hac Vice Robert E. Cohn to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-5711903.) (FLAHERTY, JOHN) (Entered: 05/27/2014) |
| 05/27/2014 | | Pro Hac Vice counsel, ROBERT E COHN, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (gxh) (Entered: 05/27/2014) |
| 05/27/2014 | | Pro Hac Vice counsel, JUSTIN A SAVAGE, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (gxh) (Entered: 05/27/2014) |
| 05/27/2014 | | Pro Hac Vice counsel, EMILY E KIMBALL, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local |

JA29
1/6/2016

| | | counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (gxh) (Entered: 05/27/2014) |
|---|---|---|
| 06/13/2014 | 11 | Letter from John E. Flaherty to the Hon. Douglas E. Arpert, U.S.M.J. (Attachments: # 1 Text of Proposed Order)(FLAHERTY, JOHN) (Entered: 06/13/2014) |
| 06/23/2014 | 12 | STIPULATION AND ORDER that the deadline by which Frontier and Mercer County must answer, move or otherwise respond to the Complaint is extended to and including 8/4/2014. Signed by Magistrate Judge Douglas E. Arpert on 6/17/2014. (mmh) (Entered: 06/23/2014) |
| 07/24/2014 | 13 | Notice of Call for dismissal Pursuant to Rule 4(m) as to defendant, UNITED STATES FEDERAL AVIATION ADMINISTRATION only. (DS) (Entered: 07/24/2014) |
| 07/29/2014 | 14 | NOTICE of Appearance by JOHN ANDREW RUYMANN on behalf of UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) (Attachments: # 1 Certificate of Service)(RUYMANN, JOHN) (Entered: 07/29/2014) |
| 07/29/2014 | 15 | Application and Proposed Order for Clerk's Order to extend time to answer. (Attachments: # 1 Certificate of Service)(RUYMANN, JOHN) (Entered: 07/29/2014) |
| 07/29/2014 | 16 | Letter from John E. Flaherty to the Hon. Douglas E. Arpert, U.S.M.J., requesting additional time to respond to the Complaint. (FLAHERTY, JOHN) (Entered: 07/29/2014) |
| 07/30/2014 | | Clerk`s Text Order - The document 15 Application for Clerk's Order to Ext Answer/Proposed Order submitted by UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) has been GRANTED. The answer due date has been set for 8/18/2014. (jjc) (Entered: 07/30/2014) |
| 08/01/2014 | 17 | LETTER ORDER granting the request for a 14-day extension within which Frontier and Mercer County may respond to Plaintiff's Complaint. Time extended to 8/18/2014. Signed by Magistrate Judge Douglas E. Arpert on 8/1/2014. (mmh) (Entered: 08/01/2014) |
| 08/05/2014 | 18 | SUMMONS Returned Executed by BRRAM, INC.. UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) served on 6/9/2014, answer due 8/18/2014. (POTTER, R.) (Entered: 08/05/2014) |
| 08/05/2014 | 19 | WAIVER OF SERVICE Returned Executed by BRRAM, INC.. THE MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS waiver sent on 4/28/2014, answer due 6/27/2014. (POTTER, R.) (Entered: 08/05/2014) |
| 08/05/2014 | 20 | WAIVER OF SERVICE Returned Executed by BRRAM, INC.. FRONTIER AIRLINES, INC. waiver sent on 4/28/2014, answer due 6/27/2014. (POTTER, R.) (Entered: 08/05/2014) |

| 08/15/2014 | | CLERK'S NOTE: Notice of Call to Dismiss has been WITHDRAWN. (DS) (Entered: 08/15/2014) |
|---|---|---|
| 08/18/2014 | 21 | MOTION to Dismiss by FRONTIER AIRLINES, INC.. Responses due by 9/2/2014 (Attachments: # 1 Brief, # 2 Text of Proposed Order) (FLAHERTY, JOHN) (Entered: 08/18/2014) |
| 08/18/2014 | 22 | Corporate Disclosure Statement by FRONTIER AIRLINES, INC. identifying Frontier Airlines, Holdings, Inc. as Corporate Parent.. (FLAHERTY, JOHN) (Entered: 08/18/2014) |
| 08/18/2014 | 23 | MOTION to Dismiss by THE MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS. Responses due by 9/8/2014 (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Certificate of Service) (ADEZIO, PAUL) (Entered: 08/18/2014) |
| 08/18/2014 | 24 | MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim* by UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA). (Attachments: # 1 Memorandum in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), # 2 Declaration of Bruce A. Montigney, with Exhibits A and B, # 3 Proposed Order, # 4 Certificate of Service)(RUYMANN, JOHN) (Entered: 08/18/2014) |
| 08/19/2014 | | Set Deadlines as to 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 23 MOTION to Dismiss , 21 MOTION to Dismiss . Motion set for 9/15/2014 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (gxh) (Entered: 08/19/2014) |
| 08/20/2014 | 25 | Rule 7.1(d)(5) Letter for an automatic extension of the return date of a dispositive motion filed by BRRAM, INC. re 23 MOTION to Dismiss , 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 21 MOTION to Dismiss (POTTER, R.) (Entered: 08/20/2014) |
| 08/20/2014 | | Re-Set Deadlines as to 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 23 MOTION to Dismiss , 21 MOTION to Dismiss . Motion re-set for 10/6/2014 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (gxh) (Entered: 08/20/2014) |
| 09/12/2014 | 26 | Consent MOTION for Extension of Time to File *Response to Motions* by BRRAM, INC.. (POTTER, R.) (Entered: 09/12/2014) |
| 09/15/2014 | | Set Deadlines as to 26 Consent MOTION for Extension of Time to File *Response to Motions*. Motion set for 10/6/2014 before Magistrate Judge Douglas E. Arpert. The motion will be decided on the papers. No appearances required unless notified by the court. (mmh) (Entered: 09/15/2014) |
| 09/17/2014 | 27 | ORDER granting 26 Motion for Extension of Time to File. Plaintiff's |

| | | request for an extension of time, until 10/22/2014, to respond to the Motions to Dismiss is GRANTED. Signed by Judge Joel A. Pisano on 9/17/2014. (mmh) (Entered: 09/17/2014) |
|---|---|---|
| 10/02/2014 | 28 | Letter from John E. Flaherty to the Hon. Joel A. Pisano, U.S.D.J., regarding deadlines to file reply papers. (FLAHERTY, JOHN) (Entered: 10/02/2014) |
| 10/03/2014 | 29 | LETTER ORDER granting request for an extension of time for Defendants to file their reply in support of their Motions to Dismiss (docket entries 21 , 23 and 24 ). Time extended to 11/5/2014. Signed by Judge Joel A. Pisano on 10/2/2014. (mmh) (Entered: 10/03/2014) |
| 10/20/2014 | 30 | MOTION for Extension of Time to File Response/Reply by BRRAM, INC.. (POTTER, R.) (Entered: 10/20/2014) |
| 10/21/2014 | | Set Deadlines as to 30 MOTION for Extension of Time to File Response/Reply . Motion set for 11/17/2014 before Magistrate Judge Douglas E. Arpert. The motion will be decided on the papers. No appearances required unless notified by the court. (mmh) (Entered: 10/21/2014) |
| 10/21/2014 | 31 | ORDER granting 30 Motion for Extension of Time to Respond to Motions to Dismiss to 11/5/2014; Replies to Plaintiffs' responses shall be due 11/19/2014. Signed by Judge Joel A. Pisano on 10/21/2014. (jjc) (Entered: 10/21/2014) |
| 11/03/2014 | 32 | MOTION for Extension of Time to File Response/Reply as to 23 MOTION to Dismiss , 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 21 MOTION to Dismiss by BRRAM, INC.. (POTTER, R.) (Entered: 11/03/2014) |
| 11/05/2014 | | Set Deadlines as to 32 MOTION for Extension of Time to File Response/Reply as to 23 MOTION to Dismiss , 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 21 MOTION to Dismiss . Motion set for 12/1/2014 before Magistrate Judge Douglas E. Arpert. The motion will be decided on the papers. No appearances required unless notified by the court. (mmh) (Entered: 11/05/2014) |
| 11/06/2014 | 33 | ORDER granting 32 Motion for Extension of Time to File Response. Plaintiffs' time to respond to the Motions to Dismiss is extended to 11/12/2014; Replies due 12/5/2014. Signed by Judge Joel A. Pisano on 11/5/2014. (mmh) (Entered: 11/06/2014) |
| 11/12/2014 | 34 | BRIEF in Opposition filed by BRRAM, INC. re 23 MOTION to Dismiss , 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failiure to State a Claim*, 21 MOTION to Dismiss (POTTER, R.) (Entered: 11/12/2014) |
| 11/20/2014 | 35 | MOTION for Leave to File by BRRAM, INC.. (Attachments: # 1 Brief, # 2 Declaration, # 3 Text of Proposed Order)(POTTER, R.) (Entered: 11/20/2014) |

| 11/21/2014 | | Set Deadlines as to 35 MOTION for Leave to File . Motion set for 12/15/2014 before Magistrate Judge Douglas E. Arpert. The motion will be decided on the papers. No appearances required unless notified by the court. (mmh) (Entered: 11/21/2014) |
| 11/21/2014 | 🔒 | (Court only) Motions No Longer Referred: 35 MOTION for Leave to File (cc3) (Entered: 11/21/2014) |
| 11/24/2014 | 36 | Letter from John E. Flaherty to the Hon. Joel A. Pisano U.S.D.J., requesting an extension of time. (FLAHERTY, JOHN) (Entered: 11/24/2014) |
| 12/09/2014 | 37 | LETTER ORDER granting defendant's request for an extension of time to file their opposition to Plaintiffs' motion to amend the complaint and reply brief in support of their Motions to Dismiss. Signed by Judge Joel A. Pisano on 12/8/2014. (mmh) (Entered: 12/09/2014) |
| 12/15/2014 | 38 | REPLY BRIEF to Opposition to Motion filed by THE MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS re 23 MOTION to Dismiss (Attachments: # 1 Certificate of Service)(ADEZIO, PAUL) (Entered: 12/15/2014) |
| 12/15/2014 | 39 | BRIEF in Opposition filed by FRONTIER AIRLINES, INC. re 35 MOTION for Leave to File (FLAHERTY, JOHN) (Entered: 12/15/2014) |
| 12/15/2014 | 40 | REPLY BRIEF to Opposition to Motion filed by FRONTIER AIRLINES, INC. re 21 MOTION to Dismiss ; Opposition by BRRAM, INC. (D.I. 34 ) (FLAHERTY, JOHN) (Entered: 12/15/2014) |
| 12/15/2014 | 41 | REPLY BRIEF to Opposition to Motion filed by UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) re 24 MOTION to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Attachments: # 1 Certificate of Service)(RUYMANN, JOHN) (Entered: 12/15/2014) |
| 12/15/2014 | 42 | MEMORANDUM in Opposition filed by UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA) re 35 MOTION for Leave to File (Attachments: # 1 Certificate of Service)(RUYMANN, JOHN) (Entered: 12/15/2014) |
| 01/05/2015 | 43 | MOTION for Extension of Time to File Response/Reply as to 42 Memorandum in Opposition of Motion, 39 Brief in Opposition to Motion by BRRAM, INC.. (Attachments: # 1 Certification, # 2 Text of Proposed Order)(POTTER, R.) (Entered: 01/05/2015) |
| 01/06/2015 | | Set Deadlines as to 43 MOTION for Extension of Time to File Response/Reply as to 42 Memorandum in Opposition of Motion, 39 Brief in Opposition to Motion . Motion set for 2/2/2015 before Magistrate Judge Douglas E. Arpert. The motion will be decided on the papers. No appearances required unless notified by the court. (mmh) (Entered: 01/06/2015) |

| 01/06/2015 | 44 | ORDER granting 43 Motion for Extension of Time to File opposition to the Motion for Leave to Amend the Complaint. Time extended to 1/20/2015. Signed by Judge Joel A. Pisano on 1/6/2015. (mmh) (Entered: 01/06/2015) |
| 01/20/2015 | 45 | REPLY BRIEF to Opposition to Motion filed by BRRAM, INC. re 35 MOTION for Leave to File (Attachments: # 1 Statement Oral argument request)(POTTER, R.) (Entered: 01/20/2015) |
| 02/05/2015 | 46 | Letter from FAA's counsel, with the consent of Frontier Airlines, concerning plaintiffs' Motion to Amend. (Attachments: # 1 Certificate of Service)(RUYMANN, JOHN) (Entered: 02/05/2015) |
| 02/09/2015 | 47 | RESPONSE in Opposition filed by BRRAM, INC. re 35 MOTION for Leave to File *BRRAM response to FAA request* (POTTER, R.) (Entered: 02/09/2015) |
| 02/18/2015 | 48 | LETTER ORDER that Plaintiffs' request for oral argument on the pending motions in DENIED without prejudice and may be resubmitted once this matter has been reassigned. Signed by Magistrate Judge Douglas E. Arpert on 2/18/2015. (mmh) (Entered: 02/18/2015) |
| 02/18/2015 | 49 | LETTER ORDER that Defendant's request to submit a sur-reply regarding Plaintiff's Motion to Amend is DENIED without prejudice and may be resubmitted once this matter has been reassigned. Signed by Magistrate Judge Douglas E. Arpert on 2/18/2015. (mmh) (Entered: 02/18/2015) |
| 03/09/2015 | 50 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Peter G. Sheridan for all further proceedings. Judge Joel A. Pisano no longer assigned to case. So Ordered by Chief Judge Jerome B. Simandle on 3/9/2015. (gxh) (Entered: 03/09/2015) |
| 03/19/2015 | 51 | LETTER requesting oral argument re 23 MOTION to Dismiss , 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 21 MOTION to Dismiss by BRRAM, INC.. (Attachments: # 1 Exhibit)(POTTER, R.) Modified on 3/24/2015 (dm). (Entered: 03/19/2015) |
| 03/24/2015 | 🔒 | (Court only) ***Motion terminated as per chambers: 51 MOTION re 23 MOTION to Dismiss , 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 21 MOTION to Dismiss filed by BRRAM, INC. * Only #51 terminated. This is not a motion*. (dm ) Modified on 3/24/2015 (dm). (Entered: 03/24/2015) |
| 03/31/2015 | 52 | ORDER granting 21 Motion to Dismiss ; granting 23 Motion to Dismiss, as to Defendants Mercer County and Frontier. Signed by Judge Peter G. Sheridan on 3/31/2015. (dm ) (Entered: 03/31/2015) |
| 04/07/2015 | | ORAL ARGUMENT REQUIRED for the 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 35 MOTION for Leave to File . Motion set for 5/6/2015 at 12:00 PM in Trenton - |

| | | Courtroom 4E before Judge Peter G. Sheridan. (dh, ) (Entered: 04/07/2015) |
|---|---|---|
| 05/04/2015 | 53 | Letter from John E. Flaherty to the Hon. Peter G. Sheridan, U.S.D.J., in advance of the May 6, 2015 hearing. (FLAHERTY, JOHN) (Entered: 05/04/2015) |
| 05/04/2015 | | ORAL ARGUMENT REQUIRED for the 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failiure to State a Claim*, 35 MOTION for Leave to File . Motion set for 5/6/2015 at 12:00 PM is moved to 5/8/2015 11:00 AM in Trenton - Courtroom 4E before Judge Peter G. Sheridan. (dh, ) (Entered: 05/04/2015) |
| 05/08/2015 | 54 | Minute Entry for proceedings held before Judge Peter G. Sheridan: Motion Hearing held on 5/8/2015 re 24 MOTION to Dismiss for Lack of Jurisdiction *and for Failiure to State a Claim* filed by UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA), Motions Taken Under Advisement. (Court Reporter/Recorder Frank Gable.) (dh, ) (Entered: 05/12/2015) |
| 05/18/2015 | 56 | Minute Entry for proceedings held before Judge Peter G. Sheridan: Miscellaneous Hearing held on 5/18/2015. (Court Reporter/Recorder Frank Gable.) Modified on 7/21/2015 (dh). (Entered: 05/27/2015) |
| 05/19/2015 | 55 | ORDER denying as moot 35 Motion for Leave to File; granting 24 Motion to Dismiss for Lack of Jurisdiction. Signed by Judge Peter G. Sheridan on 5/18/2015. (mmh) (Entered: 05/19/2015) |
| 05/19/2015 | | ***Civil Case Terminated. (mmh) (Entered: 05/19/2015) |
| 06/04/2015 | 57 | NOTICE OF APPEAL as to 55 Order on Motion for Leave to File, Order on Motion to Dismiss/Lack of Jurisdiction by BRRAM, INC.. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. Appeal Record due by 6/18/2015. (Attachments: # 1 Order dismissing complaint, # 2 Opinion)(POTTER, R.) (Entered: 06/04/2015) |
| 06/04/2015 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised, the Notice of Appeal 57 filed on 6/4/2015 was filed without a filing fee. PLEASE SUBMIT THE FEE OF $505 to our Office Immediately. Your check should be made payable to Clerk, U.S. District Court. In the alternative, an application for In Forma Pauperis can be filed. Please refer to the Courts website at www.njd.uscourts.gov for information and forms. (mmh) (Entered: 06/04/2015) |
| 06/04/2015 | | USCA Appeal Fees received $ 505 receipt number TRE058305 re 57 Notice of Appeal (USCA), filed by BRRAM, INC. (eaj) (Entered: 06/04/2015) |
| 06/09/2015 | 58 | USCA Case Number 15-2393 for 57 Notice of Appeal (USCA), filed by BRRAM, INC.. USCA Case Manager TIM (Document Restricted - |

| | | | |
|---|---|---|---|
| | | | Court Only) (OM3) (Entered: 06/09/2015) |
| 07/14/2015 | | 59 | Transcript of MOTION HEARING held on 5/8/2015, before Judge PETER G. SHERIDAN. Court Reporter/Transcriber Frank Gable (856-889-4761). **NOTICE REGARDING REDACTION OF TRANSCRIPTS:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript. Redaction Request due 8/4/2015. Redacted Transcript Deadline set for 8/14/2015. Release of Transcript Restriction set for 10/13/2015. (eaj) (Entered: 07/14/2015) |
| 07/14/2015 | | 60 | Transcript of OPINION ENTERED ORALLY ON THE RECORD held on 5/18/2015, before Judge PETER G. SHERIDAN. Court Reporter/Transcriber Frank Gable (856-889-4761). **NOTICE REGARDING REDACTION OF TRANSCRIPTS:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript. Redaction Request due 8/4/2015. Redacted Transcript Deadline set for 8/14/2015. Release of Transcript Restriction set for 10/13/2015. (eaj) Modified on 7/14/2015 (kam, ). (Entered: 07/14/2015) |
| 10/14/2015 | | | (Court only) *** 59 and 60 Transcript deadlines terminated. (mmh) (Entered: 10/14/2015) |

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Phone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for the Plaintiffs

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard Wayne, | : Civil action number : : _____ : : : : : : : : : : |
| Plaintiffs, | : **COMPLAINT** : |
| v. | : : |
| United States Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., | : : : : : : : |
| Defendants. | : |

## A. THE PARTIES

1. Plaintiff BRRAM, Inc., is a not-for-profit corporation organized under the laws of the

Commonwealth of Pennsylvania, headquartered at 25 South Main Street, Suite # 208, in Yardley,

Page 1 of 16

JA37

PA 19067.

2. Individual plaintiff Holly Bussey is a resident of 20 Knoll Drive in Yardley, Bucks County, Pennsylvania, 19067. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

3. Individual plaintiff William Lynch is the Treasurer of BRRAM, Inc., with his principal place of business at 19 South Main Street in Yardley, PA 19067, also beneath the flight path of Frontier Airlines' flights originating and ending in TTN. Mr. Lynch resides in Wrightstown Township, Bucks County, PA.

4. Individual plaintiff Richard DeLello is a resident of Bucks County at 1315 Albright Drive, Yardley, PA 19067. His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

5. Individual Plaintiff Julie Power is a resident of Bucks County at 3 Harlow Court, Yardley, PA 19067. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

6. Individual Plaintiffs John and Jennifer Giacobetti are residents of Bucks County at 9 Ludlow Road, Yardley, PA 19067. Their residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

7. Individual Plaintiff Deborah Leamann is a resident of Mercer County, New Jersey, who resides at 630 Bear Tavern Road, West Trenton, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

8. Individual Plaintiff Caroline Bondi is a resident of Mercer County, New Jersey, residing at 630 Bear Tavern Road, West Trenton, NJ 08628. Her residence lies beneath the flight

JA38

path of many of defendant Frontier Airlines' flights from and into TTN.

9. Delores Brienza is a resident of Mercer County, New Jersey, residing a 173 W. Upper Ferry Road, Ewing, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

10. Individual Plaintiff Richard Wayne is a resident of Bucks County at 115 Windsor Road, Yardley, PA 19067. His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

11. Defendant The Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) is an executive agency of the Government of the United States, with its headquarters at 800 Independence Avenue, S.W., in Washington, DC 20591, with the responsible regional office at the Office of the Regional Administrator, Eastern Region, 1 Aviation Plaza, Jamaica, NY 11434-4809;

12. Defendant Mercer County Board of Chosen Freeholders is the governing body of Mercer County in the State of New Jersey and is the owner of the Trenton Mercer Airport ("TTN") located in West Trenton, Ewing Township, NJ 08628. The offices of the Freeholders are in the McDade Administration Building at 640 S. Broad Street in Trenton, New Jersey 08611.

13. Defendant Frontier Airlines, Inc., is a foreign for-profit corporation registered since 2010 to do business in New Jersey and operating as a common carrier at the Trenton Mercer Airport in West Trenton, Ewing Township, NJ 08628. Its main business address is Suite 300, 8909 Purdue Road, Indianapolis, IN 46268, and its registered agent for service of process in New Jersey is Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628.

Page 3 of 16

B. SUMMARY OF COMPLAINT:

14. This is an action for declaratory and injunctive relief against the United States

Federal Aviation Administration (FAA) for its failure to perform the comprehensive

environmental impact analysis mandated by the "National Environmental Policy Act" (NEPA)

through the preparation of an Environmental Impact Statement (EIS), prior to authorizing the

owners and operators of the Trenton Mercer Airport (TTN), the Mercer County Board of Chosen

Freeholders (Board), to (1) initially approve and authorize the use of commercial scheduled

passenger jet service at an airport where none was in service, (2) authorize and expand

commercial scheduled passenger jet service by any and all previous carriers, and (3) authorize

and expand commercial scheduled passenger jet service by current carrier, Frontier Airlines, at

TTN, located in Ewing Township, Mercer County, New Jersey.

The Plaintiffs seek a judicial order compelling the FAA and the Board to comply with

NEPA by promptly commencing the EIS review process and by curtailing operation and

expansion of Frontier Airlines passenger service at the TTN until such time as an EIS is

prepared, published, subjected to public hearing and comment, and duly adopted, with emphasis

on noise impacts and needed mitigation measures.

C. JURISDICTION:

15. This Court has subject matter jurisdiction of the complaint and jurisdiction of the

parties to this action:

16. This action is brought before this court pursuant to the law of the United States,

specifically section 102 (C) (2) of the National Environmental Policy Act of 1969 (NEPA), 42

U.S.C.A. § 4321, et seq.; the implementing regulations of the FAA, 14 C.F.R. 150, et seq.; the

Page 4 of  16

regulations of the United States Council on environmental quality (CEQ), 40 C.F.R. 1500 , et

seq.; and section 5 of the United States Administrative Procedure Act (APA)),  5 U.S.C.A. § 701,

et seq.

D.  VENUE:

17.  Because all of the defendants reside within or regularly conduct business within the

State of New Jersey, venue is proper in the United States District Court of New Jersey, located in

Trenton.

E.  FACTUAL ALLEGATIONS:

18.  Since at least 1999 various of the Plaintiffs, individually and collectively, together

with many others, have been actively urging the FAA to prepare an Environmental Impact

Statement ("EIS") regarding planned expansion of operations of commercial passenger jet

service into and out of TTN, primarily due to the offensive noise impacts caused by such

commercial airline service.

19.  In November 1999 the FAA sponsored "scoping sessions" to assist in determining

the proper scope of environmental impact and safety reviews of recently announced TTN plans

for expansion and enhancement of the airline terminal which was expressly intended for the

purpose of attracting a low-fare/high-frequency (LF/HF) commercial airline.

20.  At that time the LF/HF was intended to be Southwest Airlines.

21. Subsequently the FAA caused to be published a draft environmental assessment

(DEA) which was the subject of a public hearing on June 12, 2002 in Trenton, at which plaintiff

BRRAM members or representatives testified or submitted written comments critical of the

limited scope of the DEA and calling for preparation of a complete EIS prior to the

JA41

commencement of LF/HF service by Southwest or by any other air line.

22. On or about February 23, 2006 (published on April 7, 2006) the Regional Administrator of the FAA released a "Record of Decision" (ROD) inclusive of a "Finding of No Significant Environmental Impact" (FONSI) to explain the FAA decision to adopt the DEA, as amended, and not to prepare an EIS.

23. In response to issuance of the ROD/FONSI, Plaintiffs BRRAM and Lynch, joined by Bucks' resident Mr. Paul Krupp and the elected Board of Supervisors of the Township of Lower Makefield in Bucks County, PA, filed a formal "Petition for Review" in the United States Court of Appeals for the Third Circuit, captioned "Board of Supervisors of Lower Makefield Township, et al. Petitioners v. Federal Aviation Administration Respondent," a copy of which is enclosed as Plaintiffs' Exhibit 1.

24. Following a period of court-ordered mediation, the FAA on or about June 9, 2008 issued a decision captioned "Order Withdrawing Finding of No Significant Impact/Record of Decision dated February 23, 2006 for the Trenton Mercer Airport" (Order) which is enclosed as Plaintiffs' Exhibit 2.

25. In the Order, the FAA concluded that there was a "change of circumstances" in that the project sponsor, Mercer County, had withdrawn its original plans to expand the TTN terminal and attendant facilities (the subject of the DEA) because Mercer County no longer sought to attract an LF/HF commercial air carrier, such as a Southwest Airlines and, as a result, there was no need to expand or enhance the TTN airport terminal or related facilities.

26. The FAA Order expressed its position that no EIS was made necessary because "to FAA's knowledge no other large commercial air carrier has expressed interest to enter this

market," referring to TTN, and thus there was no "major federal action significantly affecting the environment" which would trigger further compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321, et seq., and the regulations of the FAA. 14 C.F.R. 150 et seq., through preparation of an EIS.

27. The FAA Order characterized a LF/HF air carrier "as an air carrier with operations similar to those of Southwest Airlines; specifically, section 1.5.2 of the DEA defines a LF/HF air carrier operation as a commercial air carrier characterized by offering low fares with a high frequency of flights to popular business and leisure destinations."

28. The FAA Order explained that "if the airport sponsor [Mercer County] desired to pursue other projects for any purpose in the future, appropriate environment review and full documentation would be required" to obtain FAA approval.

29. The Order added that "based on my consideration of the substantial new information that changed circumstances concerning the purpose and need for the replacement terminal project discussed above as well as my consideration of FAA orders cited above, I [Mr. Murray Weiss, FAA Regional Administrator, FAA Eastern Region] am withdrawing the February 23, 2006 FONSI/ROD ... Should the airport sponsor wish to proceed with any component of the project approved in the now withdrawn ROD, the sponsor must seek FAA approval for that component."

30. Most importantly, the Order stated that if the project sponsor, Mercer County, attracted a LF/HF air carrier, this action "would likely cause sufficient noise impacts that would require the preparation of an environmental impact statement (EIS)." However, because "to date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN," no EIS was needed in order to satisfy

NEPA requirements.

31. "Finally," the Order stated that "an Environmental Assessment [EA] remains valid for 3 years in the absence of major steps to implement a project. Therefore in approximately 9 months ... [by February 9, 2010] the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current."

32. To date, on information and belief, no such reevaluation of the EA has been performed or even commenced.

33. Since issuance of the Order on June 9, 2008, Mercer County has succeeded in attracting Frontier Airlines, a LF/HF air carrier, to commence and expand commercial passenger operations at TTN.

34. Mercer County has also embarked upon a federally-assisted series of capital improvement programs for the express purpose of facilitating Frontier Airlines efforts to operate and to further expand operations.

35. The LF/HF operations of Frontier Airlines have caused, are causing, and will continue to cause "sufficient noise impacts that would require the preparation of an environmental impact statement," as the FAA projected they would in the FAA Order of June 9, 2009. However, the FAA has not commenced any environmental analysis of the impacts of Frontier's LF/HF operations.

36. Frontier Airlines operations at TTN constitute the equivalent of a Southwest Airlines LF/HF with attendant increased noise and other environmental impacts substantially affecting the human and natural environment, including extensive noise caused during takeoffs and landings over and above the Plaintiffs' homes, businesses, schools, and recreation areas that lie within the

JA44

flight path into and out of TTN.

37. By April of 2013, Frontier was already providing at least 47 flights per week into and out of Trenton Mercer Airport to the following destinations: Fort Myers, Florida; Fort Lauderdale, Florida; Orlando, Florida; Tampa, Florida; New Orleans, Louisiana; Atlanta, Georgia; Chicago, Illinois; Columbus, Ohio; Detroit, Michigan; and Raleigh, North Carolina.

38. In order to further expand LF/HF operations Frontier has loaned or will loan Mercer County sizable sums of money, including $450,000 to provide improvements to the passenger terminal, $3 million for a new parking facility, and $300,000 for improvements to the airport's taxiways, roads and ramps.

39. Moreover, the FAA and the United States Congress have provided or will provide substantial federal funding for various capital improvement projects at TTN for the express or implied purpose of facilitating Frontier Airlines and its ambitious LF/HF commercial ventures, thereby "federalizing" these projects.

40. Among these FAA-financed projects at TTN intended to facilitate Frontier Airlines operations as an LF/HF are the following:

– a. $880,000 for the purchase of an emergency response vehicle to help the airport to improve its emergency response preparation as Frontier Airlines expands operations at TTN;

– b. $8,550,000 for the construction of a parallel taxiway necessitated for the safe operation of Frontier Airlines;

– c. $427,500 for the construction of a connector taxiway to the terminal apron and associated lighting;

– d. $665,000 for improvement to a connector taxiway and associated lighting to

complete a full parallel taxiway;

— e. $6,650,000 to complete a full parallel taxiway for the north side of the Ttn terminal.

41. To summarize the list of federally-financed capital improvements necessitated by Frontier Airlines operations at the airport are (1) taxiway lengthening and improvements as ordered by the FAA to safely accommodate the planes used by Frontier; (2) installing an engineering materials arrestor system (EMAS), also necessitated by Frontier; (3) expanding the surface parking lot to handle increased patronage due to Frontier; (4) terminal passenger improvements to assist expanded Frontier passenger service.

42. In addition, recently the Mercer County Executive announced that Frontier will expand and may have expanded service to provide 3 additional nonstop flights to Cincinnati, Ohio, and four nonstop flights to Charlotte, North Carolina, all commencing on February 12, 2014.

43. On information and belief, Frontier Airlines has continued to expand operations as a LF/HF beyond the list of flights and destinations specified in this complaint, and now includes service to the following additional cities: Cleveland, Ohio; Milwaukee, Wisconsin; Minneapolis/St. Paul, Minnesota; Indianapolis, Indiana; St. Louis, Missouri; Nashville, Tennessee; Raleigh/Durham, North Carolina; St. Augustine/Jacksonville, Florida. See Plaintiffs' Exhibit 3, Frontier.com website.

44. Individually and collectively, the Plaintiffs are suffering and will suffer injury in fact due to the environmental impacts of current and expanded operations of Frontier Airlines which include multiple, daily takeoffs and landings, early morning and late night, in the direction of, at low altitude over and above Bucks County homes, businesses, schools, and other public

JA46

facilities, which are located only a few miles away from TTN across the Delaware River, thereby

causing excessive and substantial noise and other pollution. Therefore, Plaintiffs have standing to

sue.

45. On April 24, 2013 and October 31, 2013, plaintiff BRRAM wrote to the FAA

Regional Administrator setting forth detailed objections to the Frontier Airlines operations and

seeking NEPA compliance by the FAA. Copies of these letters are attached as plaintiff's

Exhibits 4 and 5, respectively.

46. The FAA Regional Administrator replied to the April 24, 2013 letter in a letter dated

May 28, 2013 (FAA Letter), a copy of which is included as plaintiff's Exhibit 6. (To date, there

has been no FAA reply to the plaintiff's October 31, 2013 letter.)

47. Although the FAA Letter conceded that "an amendment of an air carrier's operations

specifications (Ops Specs) is a major Federal action that is subject to NEPA" it did not address

how or whether the FAA intended to comply with NEPA prior to granting approval of the Ops

Specs for Frontier to utilize TTN as its new "hub."

48. The FAA Letter further stated that in "in order to approve an amendment to add an

airport to an airline's Ops Specs, the FAA must find the airline has demonstrated that it can

safely and efficiently operate to/from that airport," but made no mention of the FAA performing

any environmental impact analysis whatever.

49. The FAA Letter goes on to state that "at the time Frontiers Ops Specs were amended

to add Trenton Airport, the FAA believed that the approval was subject to a Categorical

Exclusion" from the requirements of NEPA, but without citation to any of the possible

Categorical Exclusions provided in the FAA regulations; see, e.g., FAA Order 1050.20, 5050.4B

(Table 6-1), 1050.1E (Ch. 3).

50. Nor does the FAA Letter explain how the FAA reached its conclusion that its approval of amended Ops Specs for Frontier was properly excluded from any environmental impact analysis; nor was a copy of any such Categorical Exclusion ruling provided.

51. The FAA Letter concluded that "once an airport has been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978, the airline is free to determine the level of service provided at that airport without any further FAA approval."

52. The foregoing statement implies that even though the FAA has determined that the Ops Specs amendment for Frontier is a "major federal action," presumptively subject to NEPA, Frontier Airline's operations are exempt from any NEPA review no matter how many flights into or out of TTN airport are added by Frontier.

F . ALLEGATIONS OF LAW:

**The FAA's grant of a "Categorical Exclusion" for Frontier Airlines'**

**Operational Specifications amendment violates NEPA, contravenes the FAA's**

**regulations and is arbitrary and capricious:**

53. The Plaintiffs incorporate by reference the allegations of paragraphs 1 through 52 as if set forth verbatim herein.

54. In the FAA Letter, the FAA Regional Administrator reported that FAA approval of an amendment to a commercial airliner's Ops Specs is a "major Federal action," which determination triggers the commencement of an Environmental Assessment (EA) and NEPA compliance.

55. The term "major Federal action is defined by the Council on Environmental Quality

("CEQ") as " actions with effects that may be major and which are potentially subject to federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (section 1508.27)...." 40 C.F.R. 1508.18.

56. The CEQ regulations further clarify that "federal actions tend to fall within one of the following categories: ... (4) approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities." 40 C.F.R. 1508.18 (b) (4)

57. "'Significantly' as used in NEPA requires consideration of both context and intensity," including "(a) context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), affected region, the affected interest, and the locality. Significance varies with the setting of the proposed action for instance, in the case of a site specific action, significance would usually depend upon the effects in the locale rather than the world as a whole. Both short and long term effects are relevant." 40 C.F.R. 1508.27 (a).

58. "Intensity" include "(1) impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial. ... (4) the degree to which the effects on the quality of the human environment are likely to be controversial ... (7) whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts...." 40 C.F.R.

1508.27.

59. Accordingly, a major Federal action which significantly affects the human environment requires the reviewing FAA, as the lead federal agency, promptly to comply with the NEPA by commencing the environmental analysis process which may conclude with the preparation of an EIS.

60. The FAA failed to comply with NEPA and its own NEPA regulations by arbitrarily and capriciously granting a "Categorical Exclusion" for the "major Federal action" of approving Frontier Airlines operational specifications ("Ops Specs") for use of Trenton Mercer airport without consideration of the environmental impacts of Frontier's expanded and expanding LF/HF passenger service at TTN.

61. A Categorical Exclusion is defined as "the category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency and implementation of these regulations and for which therefore, neither an environmental assessment nor an environmental impact statement is required...." 40 C. F.R. Part 1508, Sec. 1508.4, et seq.

62. The FAA's Categorical Exclusion of the amended Ops Specs approved for Frontier Airlines has enabled Frontier Airlines to operate as a LF/HF commercial air carrier using Trenton Mercer airport without any environmental impact analysis, even though the FAA previously determined in its June 9, 2008 Order that operation of an LF/HF airliner at TTN would likely cause sufficient noise impacts to require preparation of an EIS.

G. Judicial relief / Remedies:

WHEREFORE, Plaintiffs petition this Honorable Court to issue an Order:

Page 14 of 16

1. Enjoining Frontier Airlines from any increase or expansion of service beyond current service levels at TTN until such time as the FAA has prepared, or caused to be prepared an Environmental Assessment (EA) which may result in the preparation of an Environmental Impact Statement (EIS) pursuant to the requirements of NEPA and implementing regulations.

2. Enjoining the owner / operator of TTN, the Mercer County Board of Chosen Freeholders, from taking any action which is for the purpose of facilitating or enabling Frontier to increase or expand service at TTN until the requirements of NEPA are satisfied.

3. Compelling the FAA to prepare or cause to be prepared an EA which may result in an EIS and will address the full range of environmental impacts, including, inter alia, noise and community disruption and potential mitigation measures resulting from or caused by Frontier Airlines use of TTN at current and anticipated levels of service.

4. Retaining jurisdiction of the case to ensure compliance.

And

5. Such other relief or remedies as may be Just and Equitable under the circumstances.

Date  4-28-14

Respectfully submitted,

POTTER AND DICKSON

By  R. William Potter

R. William Potter
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Email addresses: rwppddlaw@cs.com
and potterrex@cs.com
Telephone: (609) 921-9555
Fax: (609) 921-2181

Page 15 of 16

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other  court, arbitration or administrative proceeding.

Date  4-28-14

R. William Potter
Attorney for the Plaintiffs

JA52

United States Court of Appeals
for the Third Circuit

**FILE COPY**

The Board of Supervisors of )
Lower Makefield Township, et al. )
                 Petitioners, )
      v.                      )
                              ) Petition for Review
Federal Aviation Administration )
                 Respondent    )

    1.  The Board of Supervisors of the Township of Lower Makefield, Bucks County, the Commonwealth of Pennsylvania; The Bucks Residents For Responsible Airport Management ("BRRAM"); and William G. Lynch, Jr., and Paul E. Krupp, individually and as officers of BRRAM; (hereafter "Petitioners") hereby petition the court for review of the Order of the Regional Administrator of the Federal Aviation Administration Eastern Region (600 Old Country Rd., Suite 446, Garden City, NY 11530) as published on or about April 7, 2006 (dated February 23, 2006), and directed to Mr. Justin Edwards, Airport Manager, of the Trenton Mercer Airport in West Trenton, Ewing Township, NJ 08628 in which the Regional Administrator issued a "Finding of No Significant Impact" ("FONSI")/ Record of Decision for the Construction of a New Replacement Terminal and other Capital Projects included in the Capital Improvement Plan at Trenton Mercer Airport.  A copy of the Order is appended hereto.

    2.  Jurisdiction:

    a.  The Court of Appeals of the Third Circuit has subject

1

Exhibit 1

JA53

matter jurisdiction to hear and decide this petition for review

pursuant to 49 U.S.C.A. § 46110(a) which provides in relevant

part as follows:

> [A] person disclosing a substantial interest in an
> order issued by the Secretary of Transportation (or the
> Administrator of the Federal Aviation Administration
> ... may apply for review of the order by filing a
> petition for review in the United States Court of
> Appeals for the District of Columbia or in the court of
> appeals of the United States for the circuit in which
> the person resides or has its principal place of
> business.

b.   The Petitioners assert and disclose a "substantial

interest in [the] order" appealed from.   Petitioners both reside

and have their "principal place of business" within the region

administered by the Third Circuit.   The Board of Supervisors are

the elected officials of Lower Makefield Township which is a

township within Bucks County in Pennsylvania.   The officers of

BRRAM and the majority if not entirety of BRRAM members are

residents of Lower Makefield Township, Bucks County or elsewhere

within Bucks County.

c.   The substantial interest of the Petitioners:

(1) Board of Supervisors of Lower Makefield Township:

The Board of Supervisors is the elected governmental body by

and for the residents of Lower Makefield Township ("the

Township") with authority to act in their official capacity on

behalf of the Township and its residents.   The Supervisors, all

of whom reside in the Township, are:

2

Steve Santarsiero, Chairman

Ronald Smith, Vice Chairman

Greg Caiola, Secretary/Treasurer

Grace Godshalk, Supervisor

Pete Stainthorpe, Supervisor

On May 3, 2006, the Supervisors, in an open public meeting, heard testimony and engaged in discussion and deliberation prior to voting unanimously to authorize and direct that the undersigned attorneys file an appeal with the Third Circuit Court of Appeals in Philadelphia to petition for review of the above-captioned Record of Decision and "Finding of No Significant Impact" ("FONSI").

The FONSI which is the subject of this petition addressed the FAA's review of a Draft Environmental Assessment ("DES")prepared by DMJM + Harris, Inc., (formerly Frederick R. Harris, Inc.) and concluded that the FAA may proceed to approve and underwrite the proposed capital enhancement and expansion program for the Trenton Mercer Airport ("TTN"), involving the construction of a new terminal building for the TTN and other enhancements which in turn are for the purpose of safely meeting current and projected growth in the usage of the TTN for commercial passenger and cargo service. The FONSI represents the FAA's final determination that the TTN projects will cause "no significant impact" on the human or natural environment and,

3

JA55

therefore, the projects may proceed without the necessity of first preparing, considering and adopting an Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321, et seq., and the regulations of the FAA. 14 C.F.R. s 150 et seq.

Lower Makefield Township disputes the finding of no significant impact.  Since at least 2002 the Township has been active in seeking to persuade the FAA (1) to conduct an EIS and to perform a Comprehensive "Part 150" Noise Compatibility Study of the impact of the commercial aircraft which will use TTN upon completion of a new terminal buildings and other capital improvements intended for TTN, and (2) to prepare an EIS prior to rendering any determination with respect to the TTN projects.  In furtherance of such active engagement, representatives of the Township have filed written comments and testified orally at the public hearing held on June 12, 2002 regarding the draft Environmental Assessment ("DES") for the terminal enhancement and capital improvement program at TTN.

The homes, schools, playgrounds, parks, governmental and cultural facilities, and businesses of Township residents are located directly beneath one of the primary flight paths of aircraft using the TTN which is located in Mercer County, New Jersey and is within one mile of the Township on the eastern side of the Delaware River.  Therefore, the government and residents

4

of the Township are directly impacted by the TTN operation and commercial jet service flight paths.

Based on historical experience to date and as planned for the future expansion of the TTN operations, the residents of the Township will continue to be impacted adversely by overflights, both incoming and departing, due to the commercial jet aircraft which will make use of the new TTN terminal and other capital developments intended for the airport both for passenger service and for expanded cargo and corporate jet service.

Accordingly, the government and residents of Lower Makefield Township have a "substantial interest" in the within petition seeking review of the FONSI and the determination by the FAA to not prepare an EIS prior to approving the TTN terminal and capital improvement projects.

(2) Petitioner Bucks Residents For Responsible Airport Management ("BRRAM"): Co-petitioner BRRAM is an unincorporated association of persons who reside in Bucks County, including but not limited to Lower Makefield Township.

Mr. Lynch is the Treasurer of BRRAM with his principal place of business at 19 South Main Street in Lower Makefield Township, Yardley, PA 19067.

Mr. Krupp is a resident of Lower Makefield Township with his principal residence at 1171 University Drive, Yardley, PA 19067.

Based on their residence and business location under the TTN

JA57

flight path, BRRAM and its members, including but not limited to Mr. Lynch and Mr. Krupp, have a "substantial interest" in the matter appealed from.

BRRAM and its members, individually and collectively, have been active in seeking an EIS of the impacts of the TTN capital improvement program since at least November, 1999 when they testified at the "scoping" session to assist in determining the "scope" of environmental and safety reviews of the plans for TTN terminal expansion and enhancement. At the public hearing on the draft Environmental Assessment ("DES") on June 12, 2002, BRRAM and its members, including but not limited to Mr. Krupp, provided oral testimony and filed written comments at that time and during the official "comment period" thereafter.[1]

Due to the potential and actual impacts of commercial jet aircraft traffic and overflights, BRRAM, its officers and members, have a "substantial interest" in the outcome of this petition.

3. The nature of the proceedings as to which relief is sought:

Petitioners seek judicial review and reversal of the FAA's administrative determination to issue a Finding of No Significant Impact ("FONSI") pursuant to NEPA and the FAA's implementing

---

[1]    Mr. Lynch attended the public hearing, but was not permitted to testify orally, ostensibly due to time limitations, but he submitted written comments.

JA58

regulations.  The FONSI rejects the positions asserted by the Petitioners, which were amply supported in the record.  In particular, the Petitioners aver as follows:

a. The proposed terminal expansion and capital improvement program for TTN will have a significant impact on the petitioners due to the intended and potential usage of the terminal and other capital improvements for increased usage of the facilities leading to increased overflights affecting the Petitioners with noise and pollution; and

b. Because the Environmental Assessment on which the FONSI is based is inadequate, the FAA should be directed to conduct a full environmental impact study and to draft, circulate, adopt and consider an Environmental Impact Statement ("EIS") consistent with the requirements of NEPA and the FAA's regulations prior to rendering a determination to approve or reject the proposed TTN terminal enhancement and capital improvement program for the TTN airport.

The gravamen of the petition is that the FONSI fails to consider or to consider adequately several important facts and factors which the Township and the members of BRRAM forcefully and timely brought to the attention of the FAA, including but are not limited to the following:

(1)  The FONSI and Final Environmental Assessment arbitrarily limited the scope of the FAA review to what it

7

functional equivalent of high frequency usage of TTN and the new terminal building, with consequent environmental impacts sufficient to require an EIS.

(4) The FONSI has not provided a basis for its determination that the new terminal building is reasonably necessary to meet current passenger traffic or normal growth in such passenger usage, without accommodation of a high volume air carrier or equivalent carriers to TTN.

(5) The FONSI has not provided a basis for its determination that the current terminal buildings must be replaced with a new 44,000 square foot building, in order to provide improved seating, waiting area, air conditioning and heating, and other minor repairs, and that reasonable repairs cannot be made more cost effectively in order to meet current or expected incremental growth in air service into and out of TTN without the risk of the new terminal building attracting a LF/HF.

(6) The FONSI contains no legally enforceable prohibition or condition against TTN attempting to arrange for a LF/HF commercial air carrier to use the new terminal building and other TTN improvements without the necessity of TTN or FAA first preparing an EIS.

(7) The FONSI does not address the cumulative environmental impacts of the TTN enhancement and capital improvements project particularly as these relate to or are

9

derived from a long history of the FAA approving and funding
numerous incremental improvements to TTN without first examining
their environmental impacts, both individually and cumulatively,
and as they relate to the continuing growth in private and
corporate air traffic into and out of TTN.

(8)  Further grounds for rejecting the FONSI are set
forth in the comprehensive comments filed by the Township on July
12, 2002 and incorporated by reference herein.

4.  Venue: Venue is properly in the Court of Appeals for the
Third Circuit pursuant to 49 U.S.C.A. 46110(a), which provides in
relevant part that venue of a proceeding under this section is in
the court of appeals of the United States for the circuit in which
the person resides or has its principal place of business...."

a.  Residence of the Petitioners:

Co-petitioners Lower Makefield Township, BRRAM and its
membership reside in Bucks County, Pennsylvania, within the
geographic area of the Third Circuit.

b.  The subject of the decision appealed from:

Trenton Mercer Airport ("TTN") is located on Sam Weinroth
Drive in Ewing Township, New Jersey, within the geographic area of
the Third Circuit with its terminal building.  TTN is owned by the
County of Mercer, New Jersey, and the County's principal offices
are located in the McDade Admin. Building at 640 South Broad
Street in Hamilton Township, with a mailing address as PO Box

10

JA61

8068, Trenton, New Jersey 08650-0068.

  b. Location of the impacts:

  The environmental impacts associated with the proposed TTN projects are within the local area of Lower Makefield Township, Bucks County and Mercer County, New Jersey.

  5. The relief prayed for:

  The petitioners respectfully request that the court reverse and remand the FONSI for the purpose of directing the FAA to reconsider the issuance of the FONSI, to conduct a full environmental impact study and to prepare an environmental impact statement in accordance with NEPA and the FAA's regulations which will adequately address the objections filed by the petitioners and other parties to the proposed TTN expansion projects.

  6. Filing fee:  The required filing fee of $450.00 is herewith submitted.


                    R. William Potter
                    Attorney for Petitioners
                    Potter and Dickson
                    194 Nassau Street, Suite 32
                    Princeton, NJ 08542-7003
                    Telephone: (609) 921-9555
                    Fax: (609) 921-2181

Certificate of Service

I hereby certify that I have served a copy of the foregoing
Petition for Review by certified mail, return receipt requested,
upon the following this 6th day of June, 2006:

The Honorable Alberto R. Gonzales
Attorney General of the United States
950 Pennsylvania Ave. N.W.
Washington, DC 20530-0001

and

The United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

and

Federal Aviation Administration
Administrator
800 Independence Avenue S.W.
Washington, DC 20591

and

Federal Aviation Administration Eastern Region
New York Airports District Office
600 Old Country Road, Suite 446
Garden City, NY 11530


R. William Potter

Case: 15-2393    Document: 003112201036    Page: 51    Date Filed: 07/02/2016
Case: 15-2393    Document: 003112008437    Page: 68    Date Filed: 07/02/2016

Case 3:14-cv-02686-JAP-DEA    Document 1-1    Filed 04/28/14    Page 13 of 35    PageID: 20    http://www.faa.gov/airports/...cases/media/.../Order With...
Ord... Withdrawing - final signed.pdf

## ORDER WITHDRAWING
### Finding of No Significant Impact/Record of Decision (FONSI/ROD)
### dated February 23, 2006
### for the
### Trenton-Mercer Airport (TTN)
### Terminal Replacement and Other Projects in the Capital Improvement Program

This Order withdraws the Finding of No Significant Impact/Record of Decision (FONSI/ROD) issued by the Federal Aviation Administration (FAA) on February 23, 2006. The FAA issued the FONSI/ROD subsequent to its independent review of the Environmental Assessment and its Appendices ("the EA") for the Trenton-Mercer County Airport (TTN) *Construction of a New Replacement Terminal and Other Projects in the TTN Capital Improvement Program* ("the project"). The EA was issued pursuant to the National Environmental Policy Act of 1969 (NEPA), Council on Environmental Quality (CEQ) Regulations, and other applicable laws, FAA Orders, regulations and policies. The EA assessed the potential environmental impacts associated with the project, which is described in detail below. The FONSI/ROD was issued pursuant to 49 U.S.C. §40101 et.seq. (Part A) and 49 U.S.C. §47101 et.seq. (Part B) and constitutes a final order of the Administrator subject to review by the courts of appeals of the United States, pursuant to 49 U.S.C. §46110.

**Project Description**
The ROD allows for the construction of a new 44,000 square foot terminal building accommodating two aircraft gates to replace the existing two-gate terminal; expanded apron area; realignment of existing airport terminal access road; additional automobile parking spaces (proposed northern and southern parking areas); demolition and removal of the existing Tennis Center (for southern parking area); new snow removal equipment and storage building; and taxiway improvement plan (including relocation of Taxiway D, widening Taxiway B and F, extension of Taxiway F to Runway 24, extension of Taxiway J to Taxiway B, and the addition of connectors to Runway 6/24 and the Terminal Ramp, Taxiway E to H connector; and Taxiway G connector.)

**Background**
In early 1998, TTN requested FAA funding and Airport Layout Plan (ALP) approval for replacement of its terminal and other capital improvement plan (CIP) projects. In 1999, after considering and discussing this request with the airport sponsor, the FAA determined that an EA should be prepared to evaluate current conditions and analyze the impact of recent past and potential foreseeable future projects at TTN. On April 13, 2000, the airport sponsor submitted the draft EA to the FAA for review and comment.

During the preparation and review of the environmental analyses for this project, the purpose and need for the project changed. At various times during this process, TTN/Mercer County expressed interest in developing increased air carrier service at TTN. In fact, one of the alternatives analyzed during the NEPA process proposed a new, four-gate terminal facility. TTN described the purpose and need for this alternative, in part, as enabling it to accommodate the entry of a low fare/high frequency (LF/HF)[1] air carrier into the TTN

---

[1]  A low fare-high frequency (LF/HF) air carrier is an air carrier with operations similar to those of Southwest Airlines. Specifically, Section 1.5.2 of the EA defines a LF/HF air carrier operation as "a commercial air carrier

1

Case: 15-2393    Document: 003112201036    Page: 52    Date Filed: 07/08/2016
Case: 15-2393    Document: 003112008430    Page: 63    Date Filed: 07/02/2015

Case 3:14-cv-02686-JAP-DEA   Document 1-1   Filed 04/28/14   Page 14 of 35 PageID: 30
Order Withdrawing - final signed.pdf    http://www.faa.gov/airports/eastern/environmental/media/Order With...

market. This terminal design alternative encompassed 64,000 square feet of terminal space and four aircraft gates. Thereafter, but still during the NEPA process, TTN advised the FAA that it was no longer interested in pursuing the four-gate alternative. Rather, it was interested in pursuing a two-gate replacement alternative, the project described above.[2] This change in purpose and need required major modifications to the draft EA documentation. The FAA advised TTN that, in the interest of transparency and full compliance with applicable laws and regulations, the four-gate terminal alternative and its analyses should be included in the EA. This alternative is referred to as the "Build Alternative 2".[3]

The final draft Final EA was transmitted to the FAA on December 19, 2001. On March 11, 2002, the FAA provided the airport sponsor with its official comments and acknowledged that the sponsor was no longer interested in pursuing "Build Alternative 2". Therefore, while the final draft EA did include the analysis for the "Build Alternative 2" project *and* the potential impacts of the entry and operation of a LF/HF air carrier, the County's preferred alternative was the 44,000 square foot replacement terminal building accommodating two aircraft gates (also referred to as "Build Alternative 1"). This alternative is a "replacement terminal project" and reflects the fact that the airport sponsor no longer anticipated the entry of a LF/HF air carrier into the TTN market.[4]

The final draft EA was made available to the public via Public Notice on May 9, 2002 for a 60-day comment period including a public hearing held on June 12, 2002. The preliminary final EA, which included responses to comments, was transmitted to FAA on November 1, 2002. While undergoing FAA review, the County, via Public Notice on February 10, 2003, initiated an additional ten-day public comment period. On August 29, 2003, FAA received the final appendices to the preliminary final EA that included additional comments and responses.    The FAA once again conducted an independent review of the NEPA documentation submitted for this project. The document still required additional information, modification, and coordination with other agencies.

Finally, in February, 2006, after all required information was obtained and agency coordination was completed, the FAA issued a FONSI/ROD approving the airport sponsor's preferred alternative/"Build Alternative 1". Based on the facts and circumstances at the time, as documented in the administrative record, the FONSI/ROD was accurate, well supported, and warranted. The FONSI/ROD made it clear that if the airport sponsor desired to pursue other projects for any purpose in the future, appropriate environmental review and documentation would be required.

---

characterized as offering low fares with a high frequency of flights to popular business and leisure destinations....A LF/HF commercial carrier typically starts up a new market like TTN with a minimum of 10 flights per day. LF/HF commercial air carriers also typically exhibit relatively high load factors (percent of seats occupied) from the start due to the low fares and wide selection of destination choices."

[2] Letter from Robert D. Prunetti, Mercer County Executive to Philip Brito, Manager, FAA New York Airports District Office, dated January 24, 2001

[3] The analyses of Build Alternative 2 revealed that [that] alternative would likely cause [sufficient] noise impacts that would require the preparation of an Environmental Impact Statement (EIS).

[4] To date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN. Additionally, as of early 2006, several commercial service airlines have commenced and ceased operations, or reduced the number of operations into and out of TTN. These carriers include Shuttle America, Boston-Maine Airways (PanAm), Big Sky, and Comair (Delta).

JA65

Case 3:14-cv-02686-JAP-DEA   Document 1-1   Filed 04/28/14   Page 56 of 72   PageID: 241

Or... 'Vithdrawing - final signed.pdf                    https://www.gov/airportsoffice/ord/mega/data/Order With...

**Current Status and Changed Circumstances**

In making my decision to withdraw the February 23, 2006 FONSI/ROD, I have considered the changed status of the replacement terminal project and substantial new information that has been brought to my attention.

Specifically, it is the FAA's understanding that to date, the airport sponsor has taken no major steps to implement the project, nor does it have any plans to do so. By letter dated April 25, 2008, FAA requested Mercer County Counsel to provide information with respect to the implementation of the replacement terminal project. FAA specifically asked whether the County had initiated major steps to implement the replacement terminal project or, if no major steps had been taken, whether the County had any plans to begin work on the replacement terminal project prior to February 23, 2009. By letter dated April 29, 2008, Mercer County Counsel advised the FAA that it has no plans for the replacement terminal at this time. Additionally, to FAA's knowledge, no other large commercial air carrier has expressed interest to enter this market. Finally, pursuant to FAA Orders 5050.4B and 1050.1E,[5] an EA remains valid for three years in the absence of major steps to implement a project. Therefore, in approximately nine months (of which, only about five months could be considered "construction season" for the project), and in the absence of major steps to implement the project, the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current.

Based on my consideration of this substantial new information and the changed circumstances concerning the purpose and need for the replacement terminal project discussed above, as well as my consideration of FAA Orders cited above, I am withdrawing the February 23, 2006 FONSI/ROD. Accordingly, all FAA actions approved in the FONSI/ROD are also withdrawn. Should the airport sponsor wish to proceed with any component of the project approved in the now-withdrawn ROD, the sponsor must seek FAA approval for that component.

Manny Weiss
FAA Regional Administrator
FAA Eastern Region

_JUN   9  2008_
Date

This decision is taken pursuant to 49 U.S.C. §40101 et.seq. (Part A) and 49 U.S.C.§47101 et.seq. (Part B), and constitutes a final order of the Administrator which is subject to review by the courts of appeals of the United States in accordance with the provision of 49 U.S.C. §46110.

---

[5] FAA Order 5050.4B, *National Environmental Policy Act (NEPA) Implementing Instructions for Airport Actions*, Paragraph 1401(e)(1) and FAA Order 1050.1E, *Environmental Impacts: Policy and Procedures*, Paragraph 402b.(1)

JA66



**Going shopping?** **Grocery Specials** Find local specials and coupons you can print
Check Patch Grocery Specials for coupons and weekly deal
Patch

 Editor Greta Cuyler greta.cuyler@patch.com      like 1.5k

# PrincetonPatch  ✳ 79°

| Home | News | Events | Directory | Pics & Clips | Commute | Real Estate | More |

News

# Frontier Airlines Announces Expansion at Trenton-Mercer Airport

The Denver-based airline adds routes to Fort Lauderdale, Fort Myers, New Orleans and Tampa.

November 15, 2012

Recommend  2      Tweet  1      **Email**      **Print**      **Comment**

Related Topics: **Frontier Airlines** and **Trenton-Mercer Airport**

Frontier Airlines announced on Thursday it will expand its low-fare service at Trenton-Mercer Airport, with the add launching in late January and early February 2013.

In addition to service to Orlando, Fla., Frontier will now fly to Fort Lauderdale, Fort Myers, New Orleans, and Tan through Nov. 29 at www.flyfrontier.com

Exhibit 3

4/9/2013 12:54 PM

JA67

Case: 15-2393    Document: 003112201036    Page: 55    Date Filed: 02/08/2016

Frontier Airlines Announces Expansion at Trenton-Mercer Airport 0:1-1    Filed 04/28/14    Page 17 of 35 PageID: 22rticles/frontier

- Tampa service will begin Jan. 31, 2013 with flights on Tuesday, Thursday and Saturday.
- New Orleans service will begin Feb. 1, 2013 with flights on Monday and Friday.
- Fort Lauderdale service will begin Feb. 2, 2013 with flights on Monday, Wednesday and Saturday.

Frontier will also increase service to Orlando from two weekly flights to four beginning Feb. 1, 2013. Flights will b
Sunday.

Frontier executives joined county officials at Trenton-Mercer Airport to make the announcement this morning. Th
that it will base an Airbus A319 aircraft at the airport to operate the new service.

"Frontier is the right partner at the right time. We are confident the traveling public will embrace these new destin.
County economy will get an added boost," Mercer County Executive Brian Hughes said.

**Email me updates about this story.**                    Keep me posted

Recommend   2      Tweet  1        **Email**        **Print**

Follow comments        **Submit tip**        **Comment**

**Leave a comment**

Submit

:hed In
ws, events, and deals sent to you daily and
/s as it happens. **See more options**

s

**Terms of Service**  **Privacy Policy**

JA68

## POTTER AND DICKSON

ATTORNEYS AT LAW

194 NASSAU STREET

### PRINCETON, NEW JERSEY 08542

(609) 921-9555

R. WILLIAM POTTER
MEMBER N.J. AND CA. BARS

PETER D. DICKSON
MEMBER N.J. AND D.C. BARS

TELECOPIER
(609) 921-2181

April 24, 2013

Brian M. Hughes, County Executive
Mercer County, McDade Admin. Bldg.
640 S. Broad Street, PO Box 8068
Trenton, NJ 08650-0068

Carmine Gallo
FAA Regional Administrator
FAA Eastern Region
1 Aviation Plaza
Jamaica, NY 11434-4809

     Re:    Frontier Airlines Operations at Trenton Mercer Airport

Dear Mr. Hughes and Administrator Gallo:

    As you may recall, this law firm represents "Bucks Residents for Responsible Airport

Management" (BRRAM), the grass-roots citizens organization located in Bucks County, PA,

dedicated to protection against high noise levels resulting from aircraft overflights into and out of

the Trenton Mercer Airport.  You may also recall that in 2006 BRRAM joined with the Board of

Supervisors of the Township of Lower Makefield, Bucks County, PA, in filing suit in the Third

Circuit Court of Appeals in Philadelphia against the United States Federal Aviation

Administration (FAA).  The basis for the 2006 lawsuit was the FAA's failure to prepare an

Environmental Impact Statement (EIS), as required by FAA Order 1050D and the National

Environmental Policy Act (NEPA), 42 U.S.C.A. Sec. 4321, et. seq., including specifically a "Part

150" Noise Compatibility Study, prior to granting Trenton Mercer Airport approval to construct a

Page 1 of 6

Exhibit 4

JA69

new and enlarged passenger terminal intended for the purpose of attracting Southwest Airlines as a "Low Fare/High-Frequency" (LF/HF) commercial air carrier at the Airport.

Now, the same issue has risen again with respect to the FAA's approval of Frontier Airlines and its actual and planned heavy usage of the Airport for commercial passenger service. This service is now well underway, with more frequent service planned in the near future as a Southwest-type of LF/HF air carrier. Thus, no such service at the Airport should have been permitted without <u>prior</u> compliance with NEPA, specifically including the preparation and dissemination for public hearing and comment of an EIS that would address the full range of impacts, direct, indirect and cumulative, of this high volume usage of the Airport.

While the 2006 lawsuit was eventually dismissed voluntarily, this was because the FAA on June 9, 2008 withdrew the approvals it had granted the Airport which were at that time being vigorously challenged in federal court. The FAA withdrawal is contained in a formal document captioned "ORDER WITHDRAWING Finding of No Significant Impact / Record of Decision (FONSI/ROD) dated February 23, 2006 for the Trenton-Mercer Airport (TTN) Terminal Replacement and Other Projects in the Capital Improvement Program" (hereafter ORDER). **Exhibit 1**, enclosed.

The ORDER cited "new information" disclosing "changed circumstances" which eliminated the reason for the Terminal enhancement project. The "new information" revealed that Mercer County officials had abandoned plans to replace and enlarge the Terminal which was planned to attract Southwest or another LF/HF air carrier to make heavy use of the Airport. The "new information" was contained in a letter (dated April 29, 2008) from the Mercer County Executive; as summarized in the ORDER, the Executive "advised the FAA that [Mercer County]

has no plans for the replacement terminal at this time," eliminating a requirement for Southwest use of the Airport. Moreover, "no other large commercial air carrier has expressed interest to enter this market." Thus, the FAA relied upon assurances from Mercer County that <u>at that time</u> it "has no plans" to replace the terminal to attract Southwest Airlines, the prototypical LF/HF air carrier (described by FAA as "Build Alternative 2").

Importantly, the FAA's environmental analysis "revealed that that alternative" – attracting a LF/HF air carrier – "would likely cause sufficient noise impacts that would **require the preparation of an Environmental Impact Statement (EIS)**." The ORDER, fn. 3, emphasis added. But because the ORDER found that "to date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN," no EIS was needed to satisfy NEPA. The ORDER fn. 4. To repeat: *at that time* ("to date") and based solely on those factual circumstances, the FAA reasoned that no EIS was then required.

All that has now changed and an EIS is demonstrably required *at this time* to assess the impacts of Frontier Airlines operations, current and planned, at the Airport. Indeed, the FAA should not have authorized <u>any</u> service by Frontier without first complying fully with NEPA's environmental assessment mandates.

The ORDER further states that "an EA [Environmental Assessment] remains valid for 3 years in the absence of major steps to implement a project. Therefore in approximately 9 months ... and in the absence of major steps to implement the project, the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses remain accurate, valid, adequate, and current." Thus, any alleged validity the EA had has long since lapsed. This is yet

another reason why an EIS is now required: With the passage of time, the "old" EA needs "to be reevaluated" in light of newly changed circumstances, i.e., the introduction of a LF/HF air carrier at the Airport.

Accordingly, as the ORDER concludes, in withdrawing the FONSI/ROD, the FAA explained that "[s]hould the airport sponsor [Mercer County] wish to proceed with **any component** of the project approved in the now withdrawn ROD, the sponsor must seek FAA approval for that component." (Emphasis added) Since attraction of a LF/HF to the Airport was the key "component of the [terminal replacement] project," this is further indication that an EIS was required. (After issuance of the ORDER, FAA funding for the new terminal was withdrawn, the new terminal was not constructed, and Southwest Airlines chose not to make use of Trenton Mercer Airport.) In short, as the ORDER provides, Mercer County and the FAA must now proceed to prepare an EIS related to the introduction of Frontier Airlines as an LF/HF at the Airport.

Frontier's status as a LF/HF is readily seen. For starters, the ORDER described a LF/HF air carrier as "an air carrier with operations *similar* to those of Southwest Airlines ... characterized by offering low fares with high-frequency of flights to popular business and leisure destinations.... A LF/HF commercial carrier typically starts up a new market like TTN with a minimum of 10 flights per day...." See ORDER, n.1. The public record amply supports a finding that Frontier Airlines qualifies as an LF/HF at the Trenton Mercer Airport. Recent published reports indicate that Frontier is providing at least 47 flights per week into and out of Trenton Mercer to the following destinations, with more planned for the near future: To/from Fort Myers; Fort Lauderdale; Orlando; Tampa; New Orleans; Atlanta; Chicago-Midway; Columbus, OH;

Page 4 of 6

Detroit; and Raleigh, NC.  Moreover, Frontier operates as a "low fare" air carrier at TTN; see "Frontier Airlines Announces Expansion at Trenton-Mercer Airport:" "Frontier Airlines announced on Thursday it will **expand its low-fair** service at Trenton Mercer Airport ... in late January and early February 2013." **Exhibit 2**, enclosed (Emphasis added).  Frontier's business plan to operate as a "profitable **ultra-low cost carrier**" was reiterated in another Frontier press release; see "Republic Airways names new Frontier CEO, President and interim COO." **Exhibit 3**, enclosed (Emphasis added)

The deepening involvement of Frontier with the Airport, and Mercer County's entanglement with Frontier is further evidenced by recent news reports.  It appears that the air carrier will lend Mercer County "$450,000 for improvements to the passenger terminal [obviously to better serve Frontier] ... Additional plans include construction of a $3 million parking facility and $300,000 for improvements to the airport's taxiways, roads and ramps ... Frontier, the airport's only passenger airline, would fund about $450,00 in fixes to the terminal and *in exchange* the county would give frontier a 50 percent discount on passenger facility charges to use the airport, until the loan is repaid.... County officials said since Frontier began expanding the number of flights from ... two flights per week to approximately five flights per day, there have been some capacity issues," notably overcrowding in the airport parking lot due to Frontier's rapid expansion.  See "Frontier Airlines may loan $450K for airport fixes," Trenton Times, p. A3 (April 23, 2013) **Exhibit 4**, enclosed (Emphasis added)

To sum up, the public record supports that:

Frontier Airlines has begun operations as a LF/HF air carrier at TTN and intends to "ramp up" such operations in the near future.  Prior to any such operations, Mercer County and the

Page 5 of 6

FAA were obligated to satisfy the conditions set forth in the ORDER and to comply in full with

NEPA by preparing an EIS, a Part 150 Noise Compatibility Study, and addressing the direct,

indirect, incremental and cumulative impacts of the commercial flights by Frontier Airlines into

and out of the Trenton Mercer Airport. But none of this environmental review was done.

Therefore, please be further advised that unless Mercer County and the FAA promptly agree to

limit Frontier Airlines to a minimal number of flights into and out of the airport while an EIS and

Part 150 Study are performed, my clients may have no alternative but to commence legal action a

second time and seek a preliminary injunction in federal court.

Respectfully submitted,

POTTER AND DICKSON

By R. William Potter

POTTER AND DICKSON
ATTORNEYS AT LAW
194 NASSAU STREET
PRINCETON, NEW JERSEY 08542
(609) 921-9555

R. WILLIAM POTTER
MEMBER N.J. AND CA. BARS

PETER D. DICKSON
MEMBER N.J. AND D.C. BARS

TELECOPIER
(609) 921-2181

October 31, 2013

Mr. Carmine W. Gallo
FAA Regional Administrator
FAA Eastern Region
1 Aviation Plaza
Jamaica, NY 11434-4809

Re: Frontier Operations at Trenton Mercer Airport

Dear Mr. Gallo:

As you may recall, this law firm represents "Buck's Residents for Responsible

Airport Management" (BRRAM), the citizens' organization located in Bucks County, PA,

which is seeking enforcement of laws and regulations protecting the public against

excessive noise levels and other pollution emanating from flights into and out of the

Trenton Mercer Airport. As you also know we previously corresponded; this letter

answers yours of May 28, 2013, which you wrote in reply to my letter of April 24, 2013.

Copies of those letters are enclosed as Attachments 1 and 2.

Summary: Recent facts of public record amply demonstrate why the Federal

Aviation Administration (FAA) must comply with the National Environmental Policy Act

(NEPA) by promptly commencing the preparation of an Environmental Impact Statement

(EIS) addressing the full range of impacts from the high intensity use by Frontier Airlines

of the Trenton Mercer Airport and the many airport enhancement projects now underway.

Page 1 of 10

Exhibit 5

JA75

To date, the FAA has never prepared an EIS concerning the Airport despite the many –
and until now, unsuccessful – efforts made to attract and retain "Low Fare / High
Frequency" (LF/HF) commercial airline service at the Airport.

In your most recent letter you state that an "amendment of an air carrier's
operations specifications (Ops Specs) is a major Federal action that is subject to NEPA."
You further state that "in order to approve an amendment to add an airport to an airline's
Ops Specs, the FAA must find that the airline has demonstrated that it can safely and
efficiently operate to/from that airport." You go on to state that: "At the time Frontier's
Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was
subject to a Categorical Exclusion." You then conclude, "Once an airport has been added
to the airline's Ops Specs, under the Airline Deregulation Act of 1978, the airline is free
to determine the level of service provided at that airport without any further FAA
approval."

According to this reasoning, if an airline carrier applies for FAA Ops Specs
approval and in its application states that it plans to initiate service into an airport at a
trivial level of only one flight per day, and **on that asserted basis,** the FAA, assuming no
safety or environmental impact, issues a Categorical Exclusion from NEPA, then the "the
airline is thereafter forever "free" to increase the level of service to 200 or more flights
per day – without **any** further FAA review to determine safety and environmental
compliance.

Such logic defies common sense and would make a mockery of the NEPA

Page 2 of 10

JA76

requirements and the FAA's continuing responsibilities to assure continuing safe and environmentally compliant operations. In effect, this statement would suggest that the FAA may abdicate all safety and environmental responsibilities based upon an Ops Specs application asserting a *de minimis* initial level of service even though the airline thereafter departs from the terms of its initial application by greatly expanding its service and intends to further intensify usage of an airport – to the obvious detriment of the quality of life for affected residents, along with possible safety impacts.

In the case of Frontier Airlines, recent facts of public record reveal that – whatever initial usage plans Frontier provided to the FAA that led to the Categorical Exclusion from NEPA – Frontier has become, and is now, a "Low-Fare/High-Frequency" (LF/HF) commercial air carrier causing significant and continuing environmental impacts for residents of Bucks County, Pennsylvania, who reside, work and recreate beneath the flight path of Frontier aircraft.

For these reasons, the FAA must promptly reconsider and withdraw whatever Categorical Exclusion it previously issued to Frontier and investigate recent facts of record which disclose (1) that Frontier submitted inaccurate or false information or (2) those earlier "facts" have changed dramatically and (3) therefore a Categorical Exclusion from NEPA can no longer be justified. Among the facts of record supporting theses conclusions are the following:

1.    **Major Airport and Terminal Enhancement Projects with Federal Participation and Approval:**

As you know by now, the Mercer County Board of Chosen Freeholders has

JA77

embarked upon a series of major capital improvement projects at the Airport. These projects are intended expressly to facilitate Frontier Airlines's marketing efforts and to coordinate closely with Frontiers' ambitious LF/HF business plans.

Moreover, the FAA has provided substantial funding for many of these projects which directly implicates NEPA compliance. Indeed, the Airport has been closed for commercial air service until these capital improvements are completed, at which point Frontier will resume operations and immediately expand its growing LF/HF service at the Airport.

Much of this information was provided to you last spring. Nevertheless, you stated that "when such development" -- referring to the Airport capital improvements -- "is proposed, the FAA will conduct the appropriate level of NEPA review prior to issuing any approvals. We note that you specifically mention proposed improvements to the passenger terminal. At this time the FAA has not received a proposal for improvements to the passenger terminal. You should be aware that some terminal projects would not require FAA approval or receive federal financial participation, thus there would be no major Federal action requiring NEPA review."

First, regardless of whether there is "federal financial participation," these airport enhancement projects are compelling evidence of Frontiers' current and future status as a "Low Fare/High Frequency" air carrier with attendant safety and environmental impacts that require the drafting of an EIS pursuant to NEPA. Even without "federal financial participation," the capital improvements are part of the plan to greatly increase service by

Frontier into and out of the Airport such that the original Ops Specs must be rescinded.

Second, contrary to your suggestion, there is extensive "federal financial participation" in at least some of the major Airport improvement projects, thereby further underscoring the need for an EIS and NEPA compliance. To cite just one example, according to a report in NJ.com from August 27, 2013, entitled "Trenton-Mercer Airport in Ewing granted $880,000 for emergency response vehicle" "[t]he grant, from the Federal Aviation Administration, will be used to replace the airport's 11-year old vehicle. U.S. Rep. Rush Holt said today. The updated vehicle will help the airport improve its emergency response preparation **as Frontier Airlines, the airport's sole commercial carrier, expands operations there."** Attachment 3.

The article goes on to report: "From early September to early November, Frontier will suspend operations as the terminal, some of the parking lots and parts of the main runway undergo construction. The county is renovating to upgrade safety and also to **accommodate increased demand it has seen since Frontier began flying out of the airport last fall."** (Emphasis added) The website of Mercer County also posted under date of August 29, 2013, the report of this grant, noting that "Under FAA rules, airports must provide aircraft rescue and firefighting services during certain air carrier operations." Attachment 4.

Additional evidence of "federal financial participation" in the Frontier-induced expansion of the Airport is found in the May 17, 2013 "Notice of Opportunity for Public Comment" which "will be considered by the County and will be forwarded with the

application to the FAA" regarding ten (10) identified capital improvement projects, each of which relates to Frontier and five of which will receive substantial FAA financial participation. See Attachment 5.

Finally, the "FY 2008 - 2014 Capital Improvement Program Trenton Mercer Airport," Attachment 6, reveals a continuing pattern of FAA financial participation in the expanded Airport operations, much of it necessitated by Frontier's increased LF/HF operations. In particular, the FY 2013 and FY 2014 Budgets, which are contemporaneous with Frontiers' Op Specs for use of the Airport, include the following:

Project 1 in FY 2013 is for construction, relocation and extension of TW "F" to provide a parallel taxiway, for which $8,550,000 will be provided from Federal funds.

Project 2 is for Design for connecting TW "B" & "J" connector taxiway to the terminal apron and associated lighting to complete a full parallel taxiway, with $427,500 in Federal funds.

Project 3 in FY 2013 is for design for TW "H", a connector taxiway between TW "E" & "H" and associated lighting to complete a full parallel taxiway; the Federal funds part is $665,000.

In FY 2014, Project 1 is to construct connector between TW "B" & "J", a connector taxiway to the terminal apron and associated lighting to complete a full parallel taxiway for north side; $6,650,000 in Federal Funds is expected.

Project 2 in FY 2014 is to construct rehabilitation overlay for TW "H" to replace the existing pavement and for the connection between TW "E" and "H" and associated

lighting to complete a full parallel taxiway for east side of TW 16/34; Federal funds of

$6,650,000 are expected.

In short, the County has applied for and received significant funding from the FAA

for the express purpose of "accommodating increased demand" for the Airport due to

then current and projected Frontier operations.  To summarize the capital improvements:

(1) Lengthening a taxiway, as ordered by the FAA to safely accommodate the planes used

by Frontier; (2) Installing an engineered materials arrestor system (EMAS), also

necessitated by Frontier; (3) Building an expanded surface parking lot nearing the

terminal to handle increased usage due to Frontier; (4) Building a new baggage handling

facility to expedite Frontier's passenger service; and (5) Expanding the secure lower floor

and installing new restrooms, again due to Frontier.

In conclusion:

The Ops Specs approved by the FAA and leading to a Categorical

Exclusion from NEPA can no longer be justified.  Therefore, the FAA must suspend or

rescind the Ops Specs and reexamine it in light of recent developments.

2.    **Frontier's current LF/HF level of service and projected increase:**

As of the time of my earlier letter there was ample evidence that Frontier had

become a LF/HF at the Trenton Mercer Airport.  At that time Frontier was providing or

would soon provide at least 47 flights per week to the following destinations, with more

planned for the near future:  Fort Myers; Fort Lauderdale; Orlando; Tampa; New Orleans;

JA81

Atlanta; Chicago – Midway; Columbus OH; Detroit; and Raleigh, NC. [1] Frontier had

also announced plans to "expand its low-fare service at the Trenton Mercer Airport ... in

late January and early February 2013," based on its business plan to operate as a

"profitable ultra low cost carrier" at the Airport. More recently, Frontier has extended its

lease through 2018 and has announced that it hopes to put another plane into service in

2014 and add still more destinations.

In addition, Frontier Airlines and Mercer County, as part of its plans to serve 11

million people by 2025, to:

-- Add commuter rail service between the Airport and Trenton, with anticipated

links to Philadelphia, Newark and New York;

-- Build a new terminal at the former Naval Air Warfare site; and

-- Improve roads and bridges to serve increased Airport traffic.[2]

Finally, the Mercer County Executive has announced that Frontier will expand

service to provide three weekly nonstop flights to Cincinnati, Ohio, and four weekly

nonstop flights to Charlotte, N.C., all beginning February 12, 2014. See Attachment 9.

Thus, there is no room for serious disagreement that Frontier is now a LF/HF air carrier,

that the Ops Specs must be withdrawn, and that there is major federal involvement which

trigger NEPA and its EIS mandates.

---

[1] The airport is estimated to handle 85,000 takeoffs and landings annually. "Frontier Airlines to continue growth at Trenton air tower closing," CourierPostonline, March 22, 2013; Attachment 7.

[2] midJersey Business, August 2013, pp. 38-39; Attachment 8.

JA82

3.    **The FAA Order of 2008 Requires the FAA to Prepare an EIS and Comply Fully with NEPA:**

At the risk of further reiteration, we note that the FAA is on record in its formal determination that **before an LF/HF may operate at the Airport, the FAA will prepare an** "Environmental Impact Statement" (EIS). This FAA determination is set forth in its "Order Withdrawing Finding of No Significant Impact/Record of Decision (FONSI/ROD) dated February 23, 2006 for the Trenton Mercer Airport Terminal Replacement and Other Projects in the Capital Improvement Program" (hereafter "Order"), dated June 9, 2008. A copy of the Order is enclosed as Exhibit 1 to Attachment 1. It is clear that Frontier has already commenced operations as an LF/HF and with more intense usage planned in the near future. As a result, the FAA must enforce its Order, rescind the Ops Specs and the Categorical Exclusion, and initiate the formal EIS process dictated in the 2008 Order.

**To sum up our position:** Whatever information Frontier submitted to the FAA to persuade it to issue a Categorical Exclusion from the requirements of NEPA, recent facts of public record contradict that information, demonstrating that:

(1) Already Frontier is operating as a Low-Fare/High-Frequency airline carrier using Trenton Mercer as its apparent hub.

(2) Trenton Mercer has commenced an ambitious capital improvement program for the airport terminal, taxiways, runway and parking, to facilitate Frontiers' LF/HF operations, with even more ambitious plans for the future.

(3) There is substantial "federal financial participation" in the Frontier-induced

Page 9 of 10

JA83

enhancement projects at the Airport, thereby "federalizing" these projects.

(4) The FAA issued an Order that it will prepare an EIS prior to authorizing any LF/HF service at the Trenton Mercer Airport.

(5) Therefore, the FAA must immediately:

  a. Revoke the Categorical Exclusion,

  b. Commence the necessary NEPA / EIS process; and

  c. Withdraw or suspend Frontier Airlines Ops Specs for the airport until such time as NEPA has been fully complied with.

As a final matter, we note that in your letter of May 28, 2013, you stated that "we understand the community's concerns surrounding operations at Trenton Airport and are willing to undertake a noise analysis to determine if mitigation is necessary. We expect that we will be able to provide you with those results sometime in mid-August of this year." Accordingly, please provide us with a true and accurate copy of the FAA's "noise analysis" report.

      Respectfully submitted,

      POTTER AND DICKSON

      By R. William Potter

cc: Mercer County Executive Brian Hughes
  Mercer County Board of Chosen Freeholders



**received**
5-31-13

U.S. Department
of Transportation

**Office of Regional Administrator**
**Eastern Region**

1 Aviation Plaza
Jamaica, NY 11434-4809

**Federal Aviation**
**Administration**

MAY 2 8 2013

Mr. R. William Potter
Potter and Dickson
Attorneys at Law
194 Nassau Street
Princeton, NJ 08542

Re: Frontier Operations at Trenton Mercer Airport

Dear Mr. Potter:

This letter is in response to your April 24, 2013 letter, addressed to Carmine W. Gallo, Eastern Regional Administrator and Brian M. Hughes, County Executive, regarding Trenton Mercer County Airport.

In your letter, you allege that the Federal Aviation Administration (FAA) failed to comply with the National Environmental Policy Act (NEPA) when it authorized Frontier Airlines to operate at Trenton Mercer County Airport (Trenton Airport). Additionally, you refer to several airport development projects that should have been subject to NEPA review before receiving FAA approval. Finally, you state that unless the FAA agrees to limit the number of Frontier Airlines flights at the airport while an EIS and Part 150 Study are performed, your clients will commence legal action.

The amendment of an air carrier's Operations Specifications (Ops Specs) is a major Federal action that is subject to NEPA. In order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find that the airline has demonstrated that it can safely and efficiently operate to/from that airport. At the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion. Once an airport has been added to the airline's Op Specs, under the Airline Deregulation Act of 1978 the airline is free to determine the level of service provided at that airport without any further FAA approval. Therefore, the recent changes announced by Frontier Airlines at Trenton Airport, to which you refer in your letter, are changes made by the air carrier absent FAA involvement. Because there is no federal action, NEPA requirements are not triggered. While FAA is not required to complete a NEPA analysis for the additional flights, we understand the community's concerns surrounding operations at Trenton Airport and are willing to undertake a noise analysis to determine if mitigation is necessary. We expect that we will be able to provide you with those results sometime in mid-August of this year.

Exhibit 6

As to the airport development issues, Trenton Airport made application to the FAA for an airport layout plan (ALP) amendment to provide increased public parking, the creation of an additional pay parking lot and an employee/rental car/cell phone waiting lot. The FAA reviewed the proposal for additional parking pursuant to NEPA and Categorically Excluded that project. As for the other elements of airport development that your letter states have been the subject of recent news reports, Trenton Airport has not proposed such development to the FAA. If and when such development is proposed, the FAA will conduct the appropriate level of NEPA review prior to issuing any approvals. We note that you specifically mention proposed improvements to the passenger terminal. At this time the FAA has not received a proposal for improvements to the passenger terminal. You should be aware that some terminal projects would not require FAA approval or receive federal financial participation, thus there would be no major federal action requiring NEPA review.

Finally, your letter requests that a Part 150 Noise Compatibility Study and EIS be completed for Trenton Airport. The Part 150 Pprogram is a voluntary program in which airport operators are encouraged to participate with . FAA Advisory Circular [AC] 150/5020-1, -"Noise Control and Compatibility Planning for Airports". Generally, an airport's decision not to conduct a Part 150 Study will not prevent the FAA from approving airport development projects. As for an EIS, NEPA regulations do not require an EIS for every project.

I trust this letter addresses your concerns.

Sincerely,

Carmine W. Gallo
Regional Administrator

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BRRAM, Inc.; Bussey, Holly; Lynch, William; DeLello, Richard; Power, Julie; Giacobetti, John; Giacobetti, Jennifer; Leamann, Deborah; Bondi, Caroline; Brienza, Delores; and Wayne, Richard | Federal Aviation Administration; Mercer County Board of Chosen Freeholders; and Frontier Airlines, Inc. |

**(b)** County of Residence of First Listed Plaintiff  **Bucks, Pennsylvania**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **U.S.**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
R. William Potter; Potter and Dickson; 194 Nassau St., Suite 31;
Princeton, NJ 08542-7003; rwppddlaw@cs.com; potterrex@cs.com;
(609) 921-9555

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
    Plaintiff

☐ 3  Federal Question
    *(U.S. Government Not a Party)*

☒ 2  U.S. Government
    Defendant

☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
    Proceeding

☐ 2  Removed from
    State Court

☐ 3  Remanded from
    Appellate Court

☐ 4  Reinstated or
    Reopened

☐ 5  Transferred from
    Another District
    *(specify)*

☐ 6  Multidistrict
    Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 4321 & 5 U.S.C. 701

Brief description of cause:
FAA's failure to prepare Environmental Impact Statement or Environmental Assessment for scheduled service

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

JA87

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BRRAM, et al.                              )
Plaintiffs,                                )
                                           )
                                           )      Civil Action No. 3:14-cv-02686-JAP-DEA
        v.                                 )
                                           )
FEDERAL AVIATION ADMINISTRATION,)
et al.,                                    )
            Defendants.                    )

## DECLARATION OF BRUCE A. MONTIGNEY

I, Bruce A. Montigney, hereby state under penalty of perjury the following facts:

1. I am the manager of the Indianapolis Flight Standards District Office. As part of my duties I am responsible for overseeing the administration of Frontier's Air Carrier Certificate.

2. Frontier holds an Air Carrier certificate issued by the Federal Aviation Administration pursuant to 49 U.S.C. §44705 and 14 C.F.R. part 119. Frontier provides scheduled air service under part 121 of the Federal Aviation Regulations [14 C.F.R. part 121].

3. Frontier also holds Operating Specifications (OpSpecs) issued pursuant to 49 U.S.C. §44705 and part 119 of the Federal Aviation Regulations [14 C.F.R. part 119].

4. OpSpecs are issued to a holder of an air carrier certificate to define the conditions under which the air carrier must operate to ensure a safe operation.

5. Air carriers are required to operate in conformity with their OpSpecs.

6. One of the required elements of an air carrier's OpSpecs is a list of airports the carrier may serve in scheduled operations.

7. In order to include an airport in an air carrier's OpSpecs, the FAA must determine that the air carrier is able to conduct scheduled operations to and from that airport safely.

8. OpSpecs may be amended at the request of the air carrier. OpSpecs may also be amended at the discretion of the FAA when the FAA determines that an amendment is required by safety in air transportation or air commerce and the public interest.

1

9. As the certificate holding district office for Frontier, the Indianapolis FSDO is responsible for managing the OpSpecs for Frontier, including making the decision to amend Frontier's OpSpecs.

10. By letter dated September 19, 2012, Frontier requested amendment of its OpSpecs to permit it to serve Trenton-Mercer County Airport as a regular airport. Exhibit A, Letter from Frontier Airlines to FAA, is a copy of Frontier's request for amendment of its OpSpecs.

11. On September 25, 2012, after determining that Frontier could safely provide regular scheduled service at Trenton-Mercer County Airport, the FAA approved an amendment to Frontier's OpSpecs to include Trenton-Mercer County Airport. Exhibit B to this declaration, Frontier Airlines Operations Specifications C070, dated September 25, 2012 reflects this decision. Once Frontier's OpSpecs were approved to permit it to operate at Trenton-Mercer County Airport, Frontier required no further approvals with respect to service at Trenton-Mercer County Airport. Frontier is free to determine which other airports approved in its OpSpecs it will serve from Trenton-Mercer County Airport, as well as the number of flights it will provide. These matters are business decisions made by the carrier without FAA involvement.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this _14TH_ day of August 2014.

_Bruce A. Montigny_

2

JA89

Case: 15-2393    Document: 003112301036    Page: 27    Date Filed: 02/02/2015
Case: 15-2393    Document: 003112308437    Page: 27    Date Filed: 02/02/2015

Case 3:14-cv-02686-JAP-DEA    Document 24-2    Filed 08/18/14    Page 4 of 17 PageID: 170

# FRONTIER

Frontier Airlines, Inc.    P 720-374-7400    www.frontierairlines.com
7001 Tower Road
Denver, Colorado 80249

September 19, 2012

Dale Snider
Flight Standards District Office
1201 Columbia Road, Suite 101
Plainfield, IN, 46168-7582
Tel: (317) 837-4473

Subject:    Scheduled Airbus service from TTN.

Dear Mr. Snider,

Please accept this letter as notification that Frontier Airlines intends to begin scheduled service from Trenton New Jersey (TTN).

Service is scheduled to begin on November 16, 2012 utilizing the Airbus A320 series aircraft.

| Route | Departs | Arrives | Frequency | Aircraft |
|-------|---------|---------|-----------|----------|
| 316 MCO-TTN | 07:25 | 09:50 | Friday | A320 series |
| 317 TTN-MCO | 12:55 | 18:35 | Friday | A320 series |

Please accept this as Frontier Airlines official letter of request to add Trenton New Jersey (TTN) to the Frontier Airlines Operations Specifications C070 airports as a Regular (R) and Alternate (A) airport.

Sincerely,

Clint Colburn
Director of Operations

Cc:    J. Colburn    K. Elkin    J. Bendoraitis    D. Diehl    C. Van Leuven
       J. Taras     B. Westgate   J. Carlson       J. Ward

*A whole different animal.*

JA90

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 6 of 17 PageID: 172

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

HQ Control: 07/25/2001
HQ Revision: 045

**C070 - Airports Authorized for Scheduled Operations**

a. The conditions below is authorized to conduct scheduled passenger and cargo operations between the regular, refueling, and provisional airports provided in the following table. Except for alternate airports, the conditions holder shall maintain a list of alternate airports which can be used and shall not any scheduled passenger and cargo operation. The conditions holder shall not use any other airport in the conduct of scheduled operations to an airport listed in the table for this type of aircraft being used and the kind of operation being conducted.

b. The following definitions shall apply.

Regular Airport. An airport approved under scheduled service in a community in the regular stop in that community.

Refueling Airport. An airport approved as an airport to which flights may be dispatched only for refueling.

Provisional Airport. An airport approved for use by an air carrier for the purpose of providing scheduled service to a community when the regular airport serving that community is not available.

Alternate Airport. An airport to which an aircraft may land if it landing at the intended airport becomes inadvisable.

NOTE: Refueling and provisional airports are not applicable to Part 135 operations.
R = Regular, P = Refueling, A = Alternate, and P = Provisional

The complete Airports Authorized for Scheduled Operations table begins on the next page.

Frontier Airlines, Inc.

C070-1

Certificate No.: FDLA89Y

JA91

Case 3:14-cv-02686-JAP-DEA Document 24-2 Filed 08/18/14 Page 7 of 17 PageID: 173

U.S. Department
of Transportation
Federal Aviation
Administration

**Operations Specifications**

## Airports Authorized for Scheduled Operations

| AIRPORTS | AIRCRAFT AUTHORIZED | | | | |
|---|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 | A-321 |
| ABILENE/REGIONAL, TX, UNITED STATES, KABI | N/A | A | A | A | A |
| ACAPULCO, MEXICO, MMAA | N/A | A | A | A | A |
| AGUADILLA/RAFAEL HERNANDEZ, PR, UNITED STATES, KCAK | N/A | A/R | A/R | A/R | A/R |
| ALBANY INTERNATIONAL, NY, UNITED STATES, KALB | N/A | A | A | A | A |
| ALBUQUERQUE/INT'L, NM, UNITED STATES, KABQ | N/A | A | A | A | A |
| ALEXANDRIA/INT'L, LA, UNITED STATES, KAEX | N/A | A | A | A | A |
| ALLENTOWN/LEHIGH VALLEY INT'L, PA, UNITED STATES, KABE | N/A | A/R | A/R | A/R | A/R |
| AMARILLO/INT'L, TX, UNITED STATES, KAMA | N/A | A | A | A | A |
| ANCHORAGE/MERRILL FIELD, AK, UNITED STATES, PAED | N/A | A | A | A | A |
| ANCHORAGE/INT'L, AK, ALASKA, (GLY PANC | N/A | A | A | A | A |
| ATLANTA/HARTSFIELD-JACKSON ATLANTA INTL, GA, UNITED STATES, KATL | N/A | A/R | A/R | A/R | A/R |
| ATLANTIC CITY/INT'L, NJ, UNITED STATES, KACY | N/A | A | A | A | A |
| AUGUSTA/AUGUSTA REGIONAL AT BUSH FIELD, GA, UNITED STATES, KAGS | N/A | A/R | A/R | A/R | A/R |
| AUSTIN/BERGSTROM INTERNATIONAL, TX, UNITED STATES, KAUS | N/A | A | A | A | A |
| BAKERSFIELD/MEADOWS FIELD, CA, UNITED STATES, KBFL | N/A | A | A | A | A |
| BALTIMORE/WASHINGTON INTL. THURGOOD MARSHALL, MD, UNITED STATES, KDWI | N/A | A/R | A/R | A/R | A/R |
| BANGOR/INTL, ME, UNITED STATES, KBGR | N/A | A | A | A | A |
| BATON ROUGE/METROPOLITAN/RYAN FIELD, LA, UNITED STATES, KBTR | N/A | A | A | A | A |
| BEAUMONT/PORT ARTHUR/JACK BROOKS REGIONAL, TX, UNITED STATES, KBPT | N/A | A | A | A | A |
| BELLEVILLE/SCOTT AFB/MIDAMERICA, IL, UNITED STATES, KBLV | N/A | A | A | A | A |

Frontier Airlines, Inc.          CVR-2          Certificate No.: FILA008Y

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 8 of 17 PageID: 174

U.S. Department
of Transportation
Federal Aviation
Administration                    Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| BELLINGHAM INTL, WA., UNITED STATES; KBLI | N/A | A,R | A,R | A,R |
| BILLINGS LOGAN INTL.,MT., UNITED STATES; KBIL | N/A | A | A | A |
| BLOOMINGTON-NORMAL/CENTRAL ILLINOIS REGIONAL, IL., UNITED STATES; KBMI | N/A | A,R | A,R | A,R |
| BOISE AIR TERMINAL/GOWEN FLD ,ID., UNITED STATES; KBOI | N/A | A,R | A,R | A,R |
| BOSTON-GENERAL E.L.LOGAN INTL., MA., UNITED STATES; KBOS | N/A | A,R | A,R | A,R |
| BOZEMAN/GALLATIN FIELD, MT., UNITED STATES; KBZN | N/A | A,R | A,R | A,R |
| BRADLEY INTL. AIRPORT WINDSOR LOCKS, CT., UNITED STATES; KBDL | N/A | A | A | A |
| BRANSON AIRPORT, UNITED STATES; KBBG | N/A | A,R | A,R | A,R |
| BUFFALO NIAGARA INTL. AIRPORT, NY., UNITED STATES; KBUF | N/A | A | A | A |
| BULLHEAD CITY/LAUGHLIN/BULLHEAD INT'L, AZ, UNITED STATES; KIFP | N/A | A | A | A |
| CANCUN, MEXICO; MMUN | N/A | . | A,R | A,R |
| CASPER/NATRONA COUNTY INTL, WY., UNITED STATES; KCPR | N/A | A | A | A |
| CHARLOTTE/DOUGLAS INTL.NC., UNITED STATES; KCLT | N/A | A | A | A |
| CHATTANOOGA LOVELL FIELD, TN., UNITED STATES; KCHA | N/A | A | A | A |
| CHEYENNE REGIONAL/JERRY OLSON FIELD,WY., UNITED STATES; KCYS | N/A | A | A | A |
| CHICAGO-CHICAGO-MIDWAY INTL.,IL., UNITED STATES; KMDW | N/A | A,R | A,R | A,R |
| CHICAGO-O'HARE INTL., IL., UNITED STATES; KORD | N/A | A,R | A,R | A,R |
| CINCINNATI-NORTHERN KENTUCKY INTL., OH., UNITED STATES; KCVG | N/A | A,R | A,R | A,R |
| CLEVELAND CLEVELAND-HOPKINS INTL.,OH., UNITED STATES; KCLE | N/A | A,R | A,R | A,R |
| COLORADO SPRINGS/CITY OF COLORADO SPRINGS MUNI., CO., UNITED STATES; KCOS | N/A | A,R | A,R | A,R |
| COLUMBIA METROPOLITAN,SC., UNITED STATES; KCAE | N/A | A | A | A |
| COLUMBIA REGIONAL,MO., UNITED STATES; KCOU | N/A | A | A | A |

JA93

Case: 15-2393 Document: 003112201036 Page: 24 Date Filed: 02/02/2016
Case: 15-2393 Document: 003112008437 Page: 24 Date Filed: 02/02/2016

Case 3:14-cv-02686-JAP-DEA Document 24-2 Filed 08/18/14 Page 9 of 17 PageID: 175

U.S. Department
of Transportation
Federal Aviation
Administration                    Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
| Location | Provision | A-318 | A-319 | A-320 |
|---|---|---|---|---|
| COLUMBUS/PORT COLUMBUS INTL, OH., UNITED STATES; KCMH | N/A | A | A | A |
| COZUMEL, MEXICO; MMCZ | N/A | - | A.R | A.R |
| CULIACAN, MEXICO; MMCL | N/A | A | A | A |
| DALLAS/DALLAS-LOVE FIELD,TX.; UNITED STATES; KDAL | N/A | A | A | A |
| DALLAS-FORT WORTH INTL,TX., UNITED STATES; KDFW | N/A | A.R | A.R | A.R |
| DAYTON/JAMES M. COX DAYTON INTL, OH., UNITED STATES; KDAY | N/A | A.R | A.R | A.R |
| DAYTONA BEACH INTL, FL., UNITED STATES; KDAB | N/A | A | A | A |
| DENVER INTERNATIONAL, CO., UNITED STATES; KDEN | N/A | A.R | A.R | A.R |
| DES MOINES INTL,IA., UNITED STATES; KDSM | N/A | A.R | A.R | A.R |
| DETROIT&METROPOLITAN WAYNE COUNTY, MI., UNITED STATES; KDTW | N/A | A.R | A.R | A.R |
| DUBUQUE REGIONAL,IA., UNITED STATES; KDBQ | N/A | A | A | A |
| DULUTH INTL, MN., UNITED STATES; KDLH | N/A | A | A | A |
| DURANGO INTL, MEXICO; MMDO | N/A | A | A | A |
| EL PASO INTL. TX., UNITED STATES; KELP | N/A | A | A | A |
| EUGENE/MAHLON SWEET FIELD,OR, UNITED STATES; KEUG | N/A | A | A | A |
| EVANSVILLE REGIONAL,IN., UNITED STATES; KEVV | N/A | A | A | A |
| EVERETT/SNOHOMISH COUNTY- PAINE FIELD, WA., UNITED STATES; KPAE | N/A | A | A | A |
| FAIRBANKS/EIELSON AFB,AK., ALASKA (U.S.); PAEI | N/A | A | A | A |
| FAIRBANKS INTL,AK., ALASKA (U.S.); PAFA | N/A | A.R | A.R | A.R |
| FARGO INTL,ND., UNITED STATES; KFAR | N/A | A | A | A |
| FARMINGTON/FOUR CORNERS REGIONAL, NM, UNITED STATES; KFMN | N/A | A | A | A |
| FLINT/BISHOP INTL,MI., UNITED STATES; KFNT | N/A | A | A | A |
| FORT COLLINS/LOVELAND MUNI, CO. UNITED STATES; KFNL | N/A | A | A | A |

Frontier Airlines, Inc.                    C070-4                    Certificate No.: F3LA008Y

Case 3:14-cv-02686-JAP-DEA Document 24-2 Filed 08/18/14 Page 10 of 17 PageID: 176

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | | |
|---|---|---|---|---|---|
| Location | | Provisions | A-318 | A-319 | A-320 |
| FORT LAUDERDALE/FORT LAUDERDALE/HOLLYWOOD INTL, FL, UNITED STATES: KFLL | | N/A | A/R | A | A/R |
| FORT MYERS/SOUTHWEST FLORIDA AIRPORT, FL, UNITED STATES: KRSW | | N/A | A/R | A | A |
| FORT WAYNE INTERNATIONAL, IN, UNITED STATES: KFWA | | N/A | A | A | A |
| FRESNO/YOSEMITE INTERNATIONAL, CA, UNITED STATES: KFAT | | N/A | A | A | A |
| GAINESVILLE REGIONAL, FL, UNITED STATES: KGNV | | N/A | A | A | A |
| GRAND JUNCTION REGIONAL, CO, UNITED STATES: KGJT | | N/A | A | A | A |
| GRAND RAPIDS/GERALD R. FORD INTL, MI, UNITED STATES: KGRR | | N/A | A/R | A | A/R |
| GREENSBORO/PIEDMONT TRIAD INTL, NC, UNITED STATES: KGSO | | N/A | A/R | A/R | A/R |
| GUADALAJARA, MEXICO: MMGL | | N/A | A | A | A |
| GULFPORT/GULFPORT-BILOXI INTL, MS, UNITED STATES: KGPT | | N/A | A | A | A |
| HARLINGEN/VALLEY INTL, TX, UNITED STATES: KHRL | | N/A | A/R | A | A/R |
| HOUSTON/GEORGE BUSH INTERCONTINENTAL, TX, UNITED STATES: KIAH | | N/A | A | A/R | A/R |
| HOUSTON/WILLIAM P. HOBBY, TX, UNITED STATES: KHOU | | N/A | A/R | A/R | A/R |
| INDIANAPOLIS INTL, IN, UNITED STATES: KIND | | N/A | A | A | A |
| ISLIP/LONG ISLAND MAC ARTHUR, NY, UNITED STATES: KISP | | N/A | A | A | A |
| JACKSON HOLE/JACKSON HOLE, WY, UNITED STATES: KJAC | | N/A | A/R | A/R | A/R |
| JACKSON/MEDGAR WILEY EVERS INTL AIRPORT, MS, UNITED STATES: KJAN | | N/A | A | A | A |
| JACKSONVILLE INTL, FL, UNITED STATES: KJAX | | N/A | A | A | A/R |
| KANSAS CITY INTL, MO, UNITED STATES: KMCI | | N/A | A | R | R |
| KAHULUI/KAHULUI, HI, UNITED STATES: PHOG | | N/A | A | A | A |
| KETCHIKAN/KETCHIKAN INTL AIRPORT, AK, UNITED STATES: PAKT | | N/A | A | A | A |
| KODIAK/KODIAK, AK, UNITED STATES: PADQ | | N/A | A | A | A |
| LA CROSSE/LA CROSSE MUNICIPAL, WI, UNITED STATES: KLSE | | N/A | A | A | A |

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 11 of 17 PageID: 177

**U.S. Department of Transportation Federal Aviation Administration**

**Operations Specifications**

**AIRPORTS**

| Location | Provisional | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| | | A-318 | A-319 | A-320 |
| LA PAZ INTERNATIONAL, MEXICO MMLP | N/A | A | A | A |
| LA/VENTURA MEMORIAL LA, UNITED STATES KLIT | N/A | A | A | A |
| LANSING CAPITAL REGION INTL, MI, UNITED STATES KLAN | N/A | A | A | A |
| LAS VEGAS REGIONAL WY L, UNITED STATES KEAR | N/A | A | A | A |
| LAS VEGAS MCCARRAN INTL, NV, UNITED STATES KLAS | N/A | A,X | A | A |
| LIBERIA DANIEL ODUBER INTL, COSTA RICA MRLB | N/A | A,X,Y | A,X,Y | A,X,Y |
| LIHUE, LIHUE, UNITED STATES PHLI | N/A | A | A | A |
| LITTLE ROCK ADAMS FIELD AR, UNITED STATES KLIT | N/A | A,X | A | A,X |
| LONG BEACH DAUGHERTY FIELD CA, UNITED STATES KLGB | N/A | A,X | A | A,X |
| LORETO, MEXICO MMLT | N/A | A | A | A |
| LOS ANGELES INTL, CA, UNITED STATES KLAX | N/A | A,X | A,X | A,X |
| LOS CABOS/SAN JOSE DEL, MEXICO, UNITED STATES MMSD | N/A | A,X | A,X | A,X |
| MCALLEN MILLER INTL, TX, UNITED STATES KMFE | N/A | A,X | A | A,X |
| MADISON DANE COUNTY REGIONAL, WI, UNITED STATES KMSN | N/A | A | A | A |
| MAZATLAN INTL, MEXICO MMMZ | N/A | A | A | A |
| MAZATLAN, MEXICO, UNITED STATES KMFE | N/A | A,X | A | A,X |
| MEXICO CITY/BENITO JUAREZ INTL, MEXICO MMMX | N/A | A | A | A |

Frontier Airlines, Inc.          C1704          Certificate No: FRLA069Y

JA96

Case 3:14-cv-02686-JAP-DEA Document 24-2 Filed 08/18/14 Page 12 of 17 PageID: 178

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

Frontier Airlines, Inc.

C070-3

Certificate No.: FJLA09IY

| AIRPORTS | | AIRCRAFT AUTHORIZED | | | |
|---|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| MIAMI INTL, FL, UNITED STATES, KMIA | N/A | A | A | A |
| MILWAUKEE/GENERAL MITCHELL INTL, WI, UNITED STATES, KMKE | N/A | A,R | A,R | A,R |
| MINNEAPOLIS-ST PAUL/WOLD-CHAMBERLAIN INTL, MN, UNITED STATES, KMSP | N/A | A | A | A |
| MOBILE REGIONAL, AL, UNITED STATES, KMOB | N/A | A | A | A |
| MONROE REGIONAL, LA, UNITED STATES, KMLU | N/A | A | A | A |
| MONTGOMERY REGIONAL, AL, UNITED STATES, KMGM | N/A | A | A | A |
| MONTEGO BAY/SANGSTER, JAMAICA, MKJS | N/A | | A,R | A,R |
| MONTROSE REGIONAL (DANIELY FIELD, AL, UNITED STATES, KMGW | N/A | A | A | A |
| MONTROSE REGIONAL CO, UNITED STATES, KMTJ | N/A | A | A | A |
| MOSES LAKE/GRANT CO INTL, WA, U.S., UNITED STATES, KMWH | N/A | A | A | A |
| MYRTLE BEACH INTL, SC, UNITED STATES, KMYR | N/A | A | A | A |
| NEW ORLEANS/INTL-LOUIS ARMSTRONG INTL, LA, UNITED STATES, KMSY | N/A | A,R | A,R | A,R |
| NEW YORK/JOHN F KENNEDY INTL, NY, UNITED STATES, KJFK | N/A | A | A | A |
| NEW YORK/LA GUARDIA, NY, UNITED STATES, KLGA | N/A | A,R | A,R | A,R |
| NEWARK LIBERTY INTL, NJ, UNITED STATES, KEWR | N/A | A | A | A |
| NEWPORT NEWS/WILLIAMSBURG INTL, VA, UNITED STATES, KPHF | N/A | A | A | A |
| NORFOLK INTL, VA, UNITED STATES, KORF | N/A | A | A,R | A,R |
| NORTH PLATTE REGIONAL, NE, UNITED STATES, KLBF | N/A | A | A | A |
| OAKLAND METROPOLITAN OAKLAND INTL, CA, UNITED STATES, KOAK | N/A | A | A | A |
| OMAHA/EPPLEY AIRFIELD, NE, UNITED STATES, KOMA | N/A | A | A | A |
| ONTARIO INTL/WILL ROGERS WORLD, OK, UNITED STATES, KOKC | N/A | A | A | A |
| ORANGE COUNTY/JOHN WAYNE, CA, UNITED STATES, KSNA | N/A | A | A | A |
| ORLANDO/ORLANDO EXEC, FL, UNITED STATES, KORL | N/A | A | A | A |

JA97

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 13 of 17 PageID: 179

U.S. Department
of Transportation
Federal Aviation
Administration                    Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| ORLANDO/INTL, FL., UNITED STATES; KMCO | N/A | A,R | A,R | A,R |
| ORLANDO/SANFORD INTL, FL., UNITED STATES; KSFB | N/A | A | A | A |
| PALM SPRINGS/REGIONAL, CA, UNITED STATES; KPSP | N/A | A,R | A,R | A,R |
| PANAMA CITY/TOCUMEN INTL., PANAMA; MPTO | N/A | A | A | A |
| PEORIA/GENERAL DOWNING - PEORIA INTL., IL., UNITED STATES; KPIA | N/A | A | A | A |
| PHILADELPHIA/INTL, PA., UNITED STATES; KPHL | N/A | A,R | A,R | A,R |
| PHOENIX/MESA GATEWAY, AZ., UNITED STATES; KIWA | N/A | A | A | A |
| PHOENIX/SKY HARBOR INTL., AZ., UNITED STATES; KPHX | N/A | A,R | A,R | A,R |
| PITTSBURGH INTL AIRPORT, PA., UNITED STATES; KPIT | N/A | A,R | A,R | A,R |
| POCATELLO/REGIONAL, ID., UNITED STATES; KPIH | N/A | A | A | A |
| PORT-AU-PRINCE/INTL, HAITI; MTPP | N/A | A | A | A |
| PORTLAND/INTL. JETPORT, ME., UNITED STATES; KPWM | N/A | A | A | A |
| PORTLAND/INTL. OR., UNITED STATES; KPDX | N/A | A,R | A,R | A,R |
| PORTSMOUTH/INTL AT PEASE, NH., UNITED STATES; KPSM | N/A | A | A | A |
| PROVIDENCE/THEODORE FRANCIS GREENE STATE,RI., UNITED STATES; KPVD | N/A | A | A | A |
| PROVO MUNICIPAL AIRPORT, UT, UNITED STATES; KPVU | N/A | A | A | A |
| PUEBLO MEMORIAL, CO., UNITED STATES; KPUB | N/A | A | A | A |
| PUERTO VALLARTA, MEXICO; MMPR | N/A | A,R | A,R | A,R |
| PUNTA CANA, DOMINICAN REPUBLIC; MDPC | N/A | - | A,R | A,R |
| RALEIGH/DURHAS,NC, UNITED STATES; KRDU | N/A | A | A | A |
| REDMOND/ROBERTS FIELD,OR., UNITED STATES; KRDM | N/A | A | A | A |
| RENO/TAHOE INTL., NV., UNITED STATES; KRNO | N/A | A | A | A |
| RICHMOND/INTL., VA., UNITED STATES; KRIC | N/A | A | A | A |

Premier Airlines, Inc.                    C070-8                    Certificate No.: P3LA008Y

JA98

Case: 15-2393 Document: 003112201036 Page: 86 Date Filed: 02/08/2016
Case: 15-2393 Document: 003112008437 Page: 29 Date Filed: 07/02/2015

Case 3:14-cv-02686-JAP-DEA Document 24-2 Filed 08/18/14 Page 14 of 17 PageID: 180

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

Frontier Airlines, Inc.     C070-4     Certificate No.: FTLAMKY

### AIRPORTS

| Location | Provisional | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| | | A-318 | A-319 | A-320 |
| ROCHESTER INTL ARPT, UNITED STATES-ROST | N/A | A | A | A |
| ROCKFORD/CHICAGO-ROCKFORD INTL, IL, UNITED STATES-RFD | N/A | A,R | A | A |
| ROOSEVELT ROADS NAVAL STA/JOSE APORCA COUNTY WY, UNITED STATES-KNBS | N/A | A,R | A | A,R |
| ROSWELL INTL AIR CENTER, NM, UNITED STATES-ROW | N/A | | A,R | A,R |
| SACRAMENTO INTERNATIONAL AIRPORT, CA, UNITED STATES-SMF | N/A | A,R | A,R | A,R |
| SALT LAKE CITY INTL AIRPORT, A, UNITED STATES-SLC | N/A | A,R | A,R | A,R |
| SAN ANTONIO INTL FIELD CA, UNITED STATES-SLE | N/A | A | A | A |
| SAN ANTONIO, A, UNITED STATES-SAT | N/A | A | A | A |
| SAN JUAN CITY ARPLE, A, UNITED STATES-SAN | N/A | A,R | A,R | A,R |
| SAN ANTONIO INTL, TX, UNITED STATES-KSAT | N/A | A,R | A,R | A,R |
| SAN DIEGO-SAN DIEGO INTL-LINDBERGH FIELD, CA, UNITED STATES-KSAN | N/A | A,R | A,R | A,R |
| SAN FRANCISCO INTL, CA, UNITED STATES-SFO | N/A | A,R | A | A,R |
| SAN JOSE DEL CABO, MEXICO-MMSD | N/A | A,R | A,R | A,R |
| SAN DIEGO, A, UNITED STATES-SEC | N/A | A | A | A |
| SAN JOSE/JUAN SANTAMARIA INTL, COSTA RICA-MROC | N/A | A | A,R | A |
| SAN PEDRO SULA-LA MESA INTL, HONDURAS-MHLM | N/A | | A | A,R |
| SAN SALVADOR-EL SALVADOR INTL, EL SALVADOR-MSLP | N/A | A,R | A,R | A,R |
| SANTA ANA/JOHN WAYNE ARPT-ORANGE COUNTY, CA, UNITED STATES-SNA | N/A | R | R | R |
| SANTO DOMINGO-LAS AMERICAS INTL, DOMINICAN REPUBLIC-MDSD | N/A | R | R | R |
| SARASOTA/BRADENTON-SARASOTA BRADENTON INTL, FL, UNITED STATES-KSRQ | N/A | A | A | A |
| SAVANNAH/HILTON HEAD INTL, GA, UNITED STATES-SAV | N/A | A | A | A |
| SCOTTSBLUFF/WILLIAM B HEILIG FIELD, NE, UNITED STATES-BFF | N/A | A | A | A |

JA99

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 15 of 17 PageID: 181

**U.S. Department
of Transportation
Federal Aviation
Administration**

**Operations Specifications**

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| SEATTLE/BOEING FIELD/KING COUNTY INTL, WA., UNITED STATES; KBFI | N/A | A | A | A |
| SEATTLE/SEATTLE-TACOMA INTL, WA., UNITED STATES; KSEA | N/A | A,R | A,R | A,R |
| SHREVEPORT/REGIONAL,LA., UNITED STATES; KSHV | N/A | A | A | A |
| SIOUX FALLS/JOE FOSS FIELD, SD., UNITED STATES; KFSD | N/A | A | A | A |
| SOUTH BEND/MICHIANA RGNAL, IN., UNITED STATES; KSBN | N/A | A,R | A,R | A,R |
| SPOKANE/INTL, WA., UNITED STATES; KGEG | N/A | A,R | A,R | A,R |
| SPRINGFIELD/ABRAHAM LINCOLN CAPITAL, IL., UNITED STATES; KSPI | N/A | A | A | A |
| SPRINGFIELD/BRANSON NATIONAL, MO., UNITED STATES; KSGF | N/A | A | A | A |
| ST. LOUIS/LAMBERT-ST. LOUIS INTL, MO., UNITED STATES; KSTL | N/A | A,R | A,R | A,R |
| ST. PETERSBURG/CLEARWATER INTL, FL., UNITED STATES; KPIE | N/A | A | A | A |
| STOCKTON/STOCKTON METROPOLITAN, CA., UNITED STATES; KSCK | N/A | A | A | A |
| SYRACUSE/HANCOCK INTL,NY., UNITED STATES; KSYR | N/A | A | A | A |
| TALLAHASSEE REGIONAL,FL., UNITED STATES; KTLH | N/A | A | A | A |
| TAMPA/INTL, FL., UNITED STATES; KTPA | N/A | A,R | A,R | A,R |
| TERRE HAUTE/INTL-HULMAN FIELD, IN., UNITED STATES; KHUF | N/A | A | A | A |
| TOLEDO/EXPRESS,OH, UNITED STATES; KTOL | N/A | A | A | A |
| TOLUCA/LIC.ADOLFO LOPEZ M., MEXICO; MMTO | N/A | A | A | A |
| TOPEKA/FORBES FIELD,KS., UNITED STATES; KFOE | N/A | A | A | A |
| TOULOUSE/BLAGNAC, FRANCE; LFBO | N/A | A | A | A |
| TRENTON/MERCER, NJ., UNITED STATES; KTTN | N/A | A,R | A,R | A,R |
| TUCSON/INTL, AZ., UNITED STATES; KTUS | N/A | A,R | A,R | A,R |
| TULSA/INTL, OK., UNITED STATES; KTUL | N/A | A | A | A |
| TWIN FALLS/JOSLIN FIELD - MAGIC VALLEY REGIONAL, ID., UNITED STATES; KTWF | N/A | A | A | A |

Frontier Airlines, Inc.                    C070-10                    Certificate No.: F3LA008Y

Case: 15-2393   Document: 003112201036   Page: 88   Date Filed: 07/02/2015
Case: 15-2393   Document: 003112008437   Page: 32   Date Filed: 07/02/2015

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 16 of 17 PageID: 182

U.S. Department
of Transportation
Federal Aviation
Administration

Operations Specifications

| AIRPORTS | | AIRCRAFT AUTHORIZED | | |
|---|---|---|---|---|
| Location | Provisional | A-318 | A-319 | A-320 |
| WACO REGIONAL, TX, UNITED STATES KACT | N/A | A | A | A |
| WASHINGTON/DULLES INTL, DC, UNITED STATES KIAD | N/A | A | A | A |
| WASHINGTON/NATIONAL, DC, UNITED STATES KDCA | N/A | A | A | A |
| WEST PALM BEACH/PALM BEACH INTL, FL, UNITED STATES KPBI | N/A | A | A | A |
| WHITEHORSE, YT, CANADA CYXY | N/A | A | A | A |
| WICHITA FALLS/SHEPPARD AFB/WICHITA FALLS MUNI, TX, UNITED STATES KSPS | N/A | A | A | A |
| WICHITA/MID-CONTINENT, KS, UNITED STATES KICT | N/A | A | A | A |
| YAKIMA AIR TERMINAL, WA, UNITED STATES KYKM | N/A | A | A | A |
| YOUNGSTOWN/WARREN REGIONAL, OH, UNITED STATES KYNG | N/A | A | A | A |
| YUMA INTL, AZ, UNITED STATES KNYL | N/A | A | A | A |
| ZIHUATANEJO/IXTAPA INTL, MEXICO MMZH | N/A | AX | AX | AX |

Frontier Airlines, Inc.

C070-1

Certificate No.: FILA00RY

Case: 15-2393   Document: 003112201036   Page: 89   Date Filed: 07/08/2016
Case: 15-2393   Document: 003112608437   Page: 32   Date Filed: 07/02/2015

Case 3:14-cv-02686-JAP-DEA   Document 24-2   Filed 08/18/14   Page 17 of 17 PageID: 183

U.S. Department
of Transportation
Federal Aviation
Administration

**Operations Specifications**

1. The Certificate Holder applies for the Operations in this paragraph.
2. These Operations Specifications are approved by direction of the Administrator.

Frontier Airlines, Inc.                    C078-12                    Certificate No.: FJLA08IY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                          **Plaintiffs,**

       v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

                        **Defendants.**

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF HOLLY J. BUSSEY

1. My full name is Holly J. Bussey.

2. I reside at 20 Knoll Drive, Lower Makefield, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6. Specifically, these overflights cause a great deal of noise from the aircraft

JA103

engines as well as vibrations in our house caused by air turbulence generated by the
engines and the size of the aircraft as it moves through the atmosphere. (Much like air
concussions from thunder that rattles a house.). Also, concerns about impacts
to my family's health from unseen pollutants emitted by these aircraft during takeoff and
landing.

When they land, we can often hear and sometimes feel the vibrations of the
engines as they work to stop the planes. When taking off, the whirring of the engines is
so high pitched that it can be painful.

The early morning flights are such that I no longer need an alarm clock to wake up
and having a choice to sleep in has been taken from me. These flights (anywhere from
5:50-7:30am) disrupt my sleep. Daytime flights drown out any ability to speak normally
until the plane passes.

I have a home office and most recently, I now have to put my clients on hold while
I wait for the plane to pass in order to continue business. These planes are impacting not
only my personal, but business life as well.


7. These overflights typically operate at a low altitude and cause the following
disruptive impacts and injuries to me and my family: Loud and frequent flights from
Frontier Airlines in addition to corporate jets and loud low flying helicopters that disrupt

conversations, telephone conversations, outdoor activities with family and friends, causing children to be shocked at the sight of the size and noise produced by these aircraft.

The ability to enjoy my yard, do garden work is greatly impacted by the noise of the planes and I cannot but wonder what type of air pollution is being expelled as these big jets fly so low that I can easily see tail information, wheels down and the tops of our 40' hemlocks sway.

Additionally, I hesitate to entertain using my outdoor space as a result of these flyovers. When we do have family or friends, they are shocked and visibly shaken that these planes are so low, and conversation is disrupted. My goddaughter will no longer come over as she is afraid of the planes since they are so low

I feel my property is being taken away from me as a result of the FAA, Mercer County and Frontier Airlines actions even though I live in Pennsylvania and have no say in the matter.

It is impossible to get a good night's sleep because of the late flights. Even if I want to retire early after a hard day of work, I cannot, for I lay in bed 'tense' waiting for the scream of the engines knowing one will be in sometime between 10-11:30 or later. There are no curfews. No regard for those living on the ground.

JA105

8.  These overflights have been ongoing and, it is my understanding that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9.  I have complained regularly about the noise and disruption, but to no avail.

10.  As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery; avoiding going outside, keeping the windows closed even when the weather is very nice. Additionally, on many flights, my home shakes and I wonder about the long-term impact structurally of these constant vibrations. I am now inspecting walls regularly to see if cracks appear.

11.  It is further my understanding that if I put my house/business on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at

JA106

least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: _9 June 2014_

_Holly J Bussey_

JA107

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Phone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for the Plaintiffs

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard Wayne, The Board of Supervisors of Township of Lower Makefield, the Board of Supervisors of Upper Makefield Township, and the Borough Council of the Borough of Yardley, Pennsylvania | : Civil action number : 3:14-cv-02686-JAP-DEA : : : : : : : : : : |
| Plaintiffs, | : |
| v. | : |
| United States Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., | : **FIRST AMENDED COMPLAINT** : : : : : : |
| Defendants. | : |

Page 1 of 21

A. THE PARTIES

1.  Plaintiff BRRAM, Inc., is a not-for-profit corporation organized under the laws of the Commonwealth of Pennsylvania, headquartered at 25 South Main Street, Suite # 208, in Yardley, PA 19067.

2.  Individual plaintiff Holly Bussey is a resident of 20 Knoll Drive in Yardley, Bucks County, Pennsylvania, 19067.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

3.  Individual plaintiff William Lynch is the Treasurer of BRRAM, Inc., with his principal place of business at 19 South Main Street in Yardley, PA 19067, also beneath the flight path of Frontier Airlines' flights originating and ending in TTN.  Mr. Lynch resides in Wrightstown Township, Bucks County, PA.

4.  Individual plaintiff Richard DeLello is a resident of Bucks County at 1315 Albright Drive, Yardley, PA 19067.  His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

5.  Individual Plaintiff Julie Power is a resident of Bucks County at 3 Harlow Court, Yardley, PA 19067.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

6.  Individual Plaintiffs John and Jennifer Giacobetti are residents of Bucks County at 9 Ludlow Road, Yardley, PA 19067.  Their residence lies beneath the

JA109

flight path of many of defendant Frontier Airlines' flights from and into TTN.

7. Individual Plaintiff Deborah Leamann is a resident of Mercer County, New Jersey, who resides at 630 Bear Tavern Road, West Trenton, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

8. Individual Plaintiff Caroline Bondi is a resident of Mercer County, New Jersey, residing at 630 Bear Tavern Road, West Trenton, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

9. Individual Plaintiff Delores Brienza is a resident of Mercer County, New Jersey, residing a 173 W. Upper Ferry Road, Ewing, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

10. Individual Plaintiff Richard Wayne is a resident of Bucks County at 115 Windsor Road, Yardley, PA 19067. His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

11. Plaintiff, The Board of Supervisors of the Township of Lower Makefield in Bucks County, in the Commonwealth of Pennsylvania, is the governing body of the Township with offices at 1100 Edgewood Road, Yardley,

JA110

Pennsylvania 19067. The Board of Supervisors, with authority to act in their official capacity on behalf of the Township and its residents, voted on September 17, 2014, to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and its historic places.

12. Plaintiff, The Board of Supervisors of Upper Makefield Township of Bucks County, in the Commonwealth of Pennsylvania, is the governing body of the Township with offices at 1076 Eagle Road, Newtown, Pennsylvania 18940. The Board of Supervisors, with authority to act in their official capacity on behalf of the Township and its residents, decided to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and all its historic places.

13. Plaintiff, The Yardley Borough Council Members form the governing body of the Borough of Yardley in Bucks County in the Commonwealth of Pennsylvania, and have offices at 56 South Main Street, Yardley, Pennsylvania 19067. The Council Members, with authority to act in their official capacity on behalf of the Borough and its residents, decided to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and all its historic places.

14. Defendant The Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) is an executive agency of the Government of the United States, with its headquarters at 800 Independence

JA111

Avenue, S.W., in Washington, DC 20591, with the responsible regional office at

the Office of the Regional Administrator, Eastern Region, 1 Aviation Plaza,

Jamaica, NY 11434-4809.

15. Defendant Mercer County Board of Chosen Freeholders is the

governing body of Mercer County in the State of New Jersey and is the owner of

the Trenton Mercer Airport ("TTN") located in West Trenton, Ewing Township,

NJ 08628. The offices of the Freeholders are in the McDade Administration

Building at 640 S. Broad Street in Trenton, New Jersey 08611.

16. Defendant Frontier Airlines, Inc., is a foreign for-profit corporation

registered since 2010 to do business in New Jersey and operating as a common

carrier at the Trenton Mercer Airport in West Trenton, Ewing Township, NJ

08628. Its main business address is Suite 300, 8909 Purdue Road, Indianapolis,

IN 46268, and its registered agent for service of process in New Jersey is

Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628.

B. SUMMARY OF COMPLAINT:

17. This is an action for declaratory and injunctive relief against the United

States Federal Aviation Administration (FAA) for its failure to perform the

comprehensive environmental impact analysis mandated by the "National

Environmental Policy Act" (NEPA) through the preparation of an Environmental

JA112

Impact Statement (EIS) of the environmental and safety impacts of Frontier

Airlines expansion of passenger jet service at TTN, located in Ewing Township,

Mercer County, New Jersey, far beyond the two flights per week authorized in

Frontier's operations specifications amendment ("Ops Specs").

18. The Plaintiffs seek a judicial order compelling the FAA to comply with

NEPA by promptly commencing the EIS review process and by curtailing further

operation and expansion of Frontier Airlines passenger service at the TTN until

such time as an EIS is prepared, published, subjected to public hearing and

comment, and duly adopted, with emphasis on noise impacts, cumulative impacts

and needed mitigation measures.

C. JURISDICTION:

19. This Court has subject matter jurisdiction of the complaint and

jurisdiction of the parties to this action.

20. This action is brought before this court pursuant to the law of the

United States, specifically section 102 (C) (2) of the National Environmental

Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4321, et seq.; the implementing

regulations of the FAA, 14 C.F.R. 150, et seq.; the regulations of the United States

Council on environmental quality (CEQ), 40 C.F.R. 1500 , et seq.; and section 5 of

the United States Administrative Procedure Act (APA)), 5 U.S.C.A. § 701, et

seq.; and 28 U.S.C.A. § 1331 which provides as follows:   "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, , laws, or treaties of the United States."

D. VENUE:

21.  Because all of the defendants reside within or regularly conduct business within the State of New Jersey, venue is proper in the United States District Court of New Jersey, located in Trenton.

E. FACTUAL ALLEGATIONS:

22.  Since at least 1999 various of the Plaintiffs, individually and collectively, together with many others, have been actively urging the FAA to prepare an Environmental Impact Statement ("EIS") regarding planned expansion of operations of commercial passenger jet service into and out of TTN, primarily due to the offensive noise impacts caused by such commercial airline service.

23.  In November 1999 the FAA sponsored "scoping sessions" to assist in determining the proper scope of environmental impact and safety reviews of recently announced TTN plans for expansion and enhancement of the airline terminal which was expressly intended for the purpose of attracting a low-fare/high-frequency (LF/HF) commercial airline.

24. At that time the LF/HF was intended to be Southwest Airlines.

25. Subsequently the FAA caused to be published a draft environmental assessment (DEA) which was the subject of a public hearing on June 12, 2002 in Trenton, at which plaintiff BRRAM members or representatives testified or submitted written comments critical of the limited scope of the DEA and calling for preparation of a complete EIS prior to the commencement of LF/HF service by Southwest or by any other air line.

26. On or about February 23, 2006 (published on April 7, 2006) the Regional Administrator of the FAA released a "Record of Decision" (ROD) inclusive of a "Finding of No Significant Environmental Impact" (FONSI) to explain the FAA decision to adopt the DEA, as amended, and not to prepare an EIS.

27. In response to issuance of the ROD/FONSI, Plaintiffs BRRAM and Lynch, joined by Bucks County resident Mr. Paul Krupp and the elected Board of Supervisors of the Township of Lower Makefield in Bucks County, PA, filed a formal "Petition for Review" in the United States Court of Appeals for the Third Circuit, captioned "Board of Supervisors of Lower Makefield Township, et al. Petitioners v. Federal Aviation Administration Respondent," a copy of which is enclosed as Plaintiffs' Exhibit 1.

28. Following a period of court-ordered mediation, the FAA on or about

June 9, 2008 issued a decision captioned "Order Withdrawing Finding of No Significant Impact/Record of Decision dated February 23, 2006 for the Trenton Mercer Airport" (Order) which is enclosed as Plaintiffs' Exhibit 2.

29. In the Order, the FAA concluded that there was a "change of circumstances" in that the project sponsor, Mercer County, had withdrawn its original plans to expand the TTN terminal and attendant facilities (the subject of the DEA) because Mercer County no longer sought to attract an LF/HF commercial air carrier, such as a Southwest Airlines and, as a result, there was no need to expand or enhance the TTN airport terminal or related facilities.

30. The FAA Order expressed its position that no EIS was made necessary because "to FAA's knowledge no other large commercial air carrier has expressed interest to enter this market," referring to TTN, and thus there was no "major federal action significantly affecting the environment" which would trigger further compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321, et seq., and the regulations of the FAA. 14 C.F.R. 150 et seq., through preparation of an EIS.

31. The FAA Order characterized a LF/HF air carrier "as an air carrier with operations similar to those of Southwest Airlines; specifically, section 1.5.2 of the DEA defines a LF/HF air carrier operation as a commercial air carrier

characterized by offering low fares with a high frequency of flights to popular business and leisure destinations."

32. The FAA Order explained that "if the airport sponsor [Mercer County] desired to pursue other projects for any purpose in the future, appropriate environment review and full documentation would be required" to obtain FAA approval.

33. The Order added that "based on my consideration of the substantial new information that changed circumstances concerning the purpose and need for the replacement terminal project discussed above as well as my consideration of FAA orders cited above, I [Mr. Murray Weiss, FAA Regional Administrator, FAA Eastern Region] am withdrawing the February 23, 2006 FONSI/ROD ... Should the airport sponsor wish to proceed with any component of the project approved in the now withdrawn ROD, the sponsor must seek FAA approval for that component."

34. Most importantly, the Order stated that if the project sponsor, Mercer County, attracted a LF/HF air carrier, this action "would likely cause sufficient noise impacts that would require the preparation of an environmental impact statement (EIS)." However, because "to date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed

interest in starting operations at TTN," no EIS was needed in order to satisfy NEPA requirements.

35. "Finally," the Order stated that "an Environmental Assessment [EA] remains valid for 3 years in the absence of major steps to implement a project. Therefore in approximately 9 months ... [by February 9, 2010] the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current."

36. To date, on information and belief, no such reevaluation of the EA has been performed or even commenced.

37. Since issuance of the Order on June 9, 2008, Mercer County has succeeded in attracting Frontier Airlines, which has become a LF/HF air carrier at TTN.

38. Mercer County has embarked upon a federally-assisted series of capital improvement programs which has facilitated Frontier Airlines decision to expand its operations.

39. The LF/HF operations of Frontier Airlines have caused, are causing, and will continue to cause "sufficient noise impacts that would require the preparation of an environmental impact statement," as the FAA projected they would in the FAA Order of June 9, 2009. However, the FAA has not commenced

JA118

any environmental or safety analysis of the impacts of Frontier's LF/HF operations.

40.  Frontier Airlines operations at TTN constitute the equivalent of a Southwest Airlines LF/HF with attendant increased noise and other environmental impacts substantially affecting the human and natural environment, including extensive noise caused during takeoffs and landings over and above the Plaintiffs' homes, businesses, schools, and recreation areas that lie within the flight path into and out of TTN.

41.  By April of 2013, Frontier was providing at least 47 flights per week into and out of Trenton Mercer Airport to the following destinations: Fort Myers, Florida; Fort Lauderdale, Florida; Orlando, Florida; Tampa, Florida; New Orleans, Louisiana; Atlanta, Georgia; Chicago, Illinois; Columbus, Ohio; Detroit, Michigan; and Raleigh, North Carolina.

42.  By September 1, 2014, Frontier has been providing 62 flights per week, as claimed by the FAA in papers filed with this Court.

43.  The FAA has provided or will provide substantial federal funding for various capital improvement projects at TTN for the purpose of facilitating Frontier Airlines and its ambitious LF/HF commercial ventures, thereby "federalizing" these projects.

JA119

44. Among these FAA-financed projects at TTN intended to facilitate Frontier Airlines operations as an LF/HF are the following:

— a. $880,000 for the purchase of an emergency response vehicle to help the airport to improve its emergency response preparation as Frontier Airlines expands operations at TTN;

— b. $8,550,000 for the construction of a parallel taxiway necessitated for the safe operation of Frontier Airlines;

— c. $427,500 for the construction of a connector taxiway to the terminal apron and associated lighting;

— d. $665,000 for improvement to a connector taxiway and associated lighting to complete a full parallel taxiway;

— e. $6,650,000 to complete a full parallel taxiway for the north side of the Ttn terminal.

45. To summarize, the list of federally-financed capital improvements necessitated by Frontier Airlines' operations at the airport includes (1) taxiway lengthening and improvements as ordered by the FAA to safely accommodate the planes used by Frontier; (2) installing an engineering materials arrestor system (EMAS), also necessitated by Frontier; (3) expanding the surface parking lot to handle increased patronage due to Frontier; (4) terminal passenger improvements

JA120

51. Individually and collectively, the Plaintiffs are suffering and will suffer injury in fact due to the environmental impacts of current and expanded operations of Frontier Airlines which include multiple, daily takeoffs and landings, early morning and late night, in the direction of, at low altitude over and above Bucks County homes, businesses, schools, historic buildings, historic districts, historic parks and other public facilities, which are located only a few miles away from TTN across the Delaware River, thereby causing excessive and substantial noise and other pollution. Therefore, Plaintiffs have standing to sue.

52. On April 24, 2013 and October 31, 2013, plaintiff BRRAM wrote to the FAA Regional Administrator setting forth detailed objections to the Frontier Airlines expansive operations and seeking NEPA compliance by the FAA, and requesting FAA reconsideration of any approvals granted to Frontier to expand operations at TTN. Copies of these letters are attached as plaintiff's Exhibits 4 and 5, respectively.

53. The FAA Regional Administrator replied to the April 24, 2013 letter in a letter dated May 28, 2013 (FAA Letter), a copy of which is included as plaintiff's Exhibit 6. (To date, there has been no FAA reply to the plaintiff's October 31, 2013 letter.)

54. Although the FAA Letter conceded that "an amendment of an air

carrier's operations specifications (Ops Specs) is a major Federal action that is subject to NEPA" it did not address how or whether the FAA intended to comply with NEPA prior to or after granting approval of the Ops Specs amendment for Frontier to utilize TTN for only two flights per week.

55.  The FAA Letter further stated that in "in order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find the airline has demonstrated that it can safely and efficiently operate to/from that airport," but made no mention of the FAA performing any environmental or safety impact analysis of Frontier's high frequency use of TTN.

56.  The FAA Letter goes on to state that "at the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion" from the requirements of NEPA, but without citation to any of the possible Categorical Exclusions provided in the FAA regulations; see, e.g., FAA Order 1050.20, 5050.4B (Table 6-1), 1050.1E (Ch. 3).

57.  The FAA Letter does not explain how the FAA reached its conclusion that its approval of amended Ops Specs for Frontier was properly excluded from any environmental impact analysis; nor was a copy of any such Categorical Exclusion ruling provided or publicly issued.

58.  The FAA Letter stated the agency's position that "once an airport has

been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978,

the airline is free to determine the level of service provided at that airport without

any further FAA approval."

59. The foregoing statement implies that even though the FAA has

determined that the Ops Specs amendment for Frontier as limited to two flights per

week, Frontier Airline's operations are exempt from any NEPA review of

environmental and safety impacts no matter how many flights into or out of TTN

airport are added by Frontier.

F. ALLEGATIONS OF LAW:

The FAA's position that granting Frontier Airlines'

Operational Specifications amendment limited to two flights per week

permits Frontier to expand operations at will without any environmental or

safety analysis of expanded service violates NEPA and is arbitrary and

capricious:

60. The Plaintiffs incorporate by reference the allegations of paragraphs 1

through 59 as if set forth verbatim herein.

61   In the FAA Letter, the FAA Regional Administrator reported that FAA

approval of an amendment to a commercial airliner's Ops Specs is a "major

Federal action," which determination triggers the commencement of an

JA123

Environmental Assessment (EA) and NEPA compliance.

62. The term "major Federal action is defined by the Council on Environmental Quality ("CEQ") as " actions with effects that may be major and which are potentially subject to federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (section 1508.27)...." 40 <u>C.F.R.</u> 1508.18.

63. The CEQ regulations further clarify that "federal actions tend to fall within one of the following categories: ... (4) approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities." 40 <u>C.F.R.</u> 1508.18 (b) (4)

64. "'Significantly' as used in NEPA requires consideration of both context and intensity," including "(a) context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), affected region, the affected interest, and the locality.  Significance varies with the setting of the proposed action for instance, in the case of a site specific action, significance would usually depend upon the effects in the locale rather than the world as a whole. Both short and long term effects are relevant." 40 <u>C.F.R.</u> 1508.27 (a).

JA124

65. "Intensity" includes "(1) impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial. ... (4) the degree to which the effects on the quality of the human environment are likely to be controversial ... (7) whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts...." 40 C.F.R. 1508.27.

66. Accordingly, a major Federal action which significantly affects the human environment requires the reviewing FAA, as the lead federal agency, promptly to comply with the NEPA by commencing the environmental analysis process which may conclude with the preparation of an EIS.

67. The FAA failed to comply with NEPA and its own NEPA regulations by arbitrarily and capriciously determining that a "Categorical Exclusion" approving Frontier Airlines Ops Specs for use of Trenton Mercer airport limited to two flights a week authorizes Frontier to expand its operations to include unlimited LF/HF passenger service at TTN.

68. A Categorical Exclusion is defined as "the category of actions which do

Page 19 of 21

JA125

not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency and implementation of these regulations and for which therefore, neither an environmental assessment nor an environmental impact statement is required...." 40 C. F.R. Part 1508, Sec. 1508.4, et seq.

69. The FAA's Categorical Exclusion of the amended Ops Specs approved for Frontier Airlines is interpreted by Frontier Airlines and the FAA to allow Frontier to operate as a LF/HF commercial air carrier using Trenton Mercer airport without any environmental or safety impact analysis, even though the FAA previously determined in its June 9, 2008 Order that operation of an LF/HF airliner at TTN would likely cause sufficient noise impacts to require preparation of an EIS.

G. JUDICIAL RELIEF / REMEDIES:

WHEREFORE, Plaintiffs petition this Honorable Court to issue an Order:

1. Enjoining Frontier Airlines from any increase or expansion of service beyond current service levels at TTN until such time as the FAA has prepared, or caused to be prepared an Environmental Assessment (EA) which may result in the preparation of an Environmental Impact Statement (EIS) pursuant to the requirements of NEPA and implementing regulations.

JA126

2. Compelling the FAA to prepare or cause to be prepared an EA which may result in an EIS and will address the full range of environmental impacts, including, inter alia, noise and community disruption and potential mitigation measures resulting from or caused by Frontier Airlines use of TTN at current and anticipated levels of service.

4. Retaining jurisdiction of the case to ensure compliance. And

5. Such other relief or remedies as may be Just and Equitable under the circumstances.

Dated: November 20, 2014.                    Respectfully submitted,

                                             POTTER AND DICKSON

                                             _____ / s/ R. William Potter _____
                                             R. William Potter
                                             194 Nassau Street, Suite 31
                                             Princeton, NJ 08542-7003
                                             Email addresses: rwppddlaw@cs.com
                                             and potterrex@cs.com
                                             Phone (609) 921-9555; Fax (609) 921-2181
                                             Attorneys for the Plaintiffs

                              CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

Dated November 20, 2014.                     _____ /s/ R. William Potter _____
                                             Attorney for the Plaintiffs

                              Page 21 of 21

JA127

May 17, 2013

## Notice of Opportunity for Public Comment

### Intent to File Application to "Impose and Use" Passenger Facility Charges at the Trenton Mercer Airport

Mercer County intends to file an application to "Impose and Use" Passenger Facility Charges (PFC) with the Federal Aviation Administration (FAA) that will allow the County to augment its capital Improvement program at the Trenton Mercer Airport. As required under Section 158.24 of CFR Part 158, "Passenger Facility Charges", Mercer County is hereby providing public notice of its intent to file the application.

Comments may be filed with Ms. Melinda Montgomery, A.A.E., Airport Manager, at the address listed below on or prior to June 16, 2013. Comments received by that date will be considered by the County and will be forwarded with the application to the FAA. More detailed project justification information will be provided upon written request to Ms. Montgomery.

**Trenton Mercer Airport**
**1100 Terminal Circle Drive, Suite 301**
**West Trenton, NJ 08628-2411**

Under the new PFC program, the total estimated net PFC revenue will be $2,913,645 with an estimated charge effective date of August 1, 2013 and an estimated charge expiration date of July 30, 2016. The application to "Impose and Use" will allow collection of PFCs to continue at the $4.50 level. The project descriptions, justifications, PFC level, and project costs are listed below.

### Project No. 1 – Acquire Snow Removal Equipment

**PFC Level:** $4.50
**PFC Eligible Cost (Local Share):** $134,567
**Start Date:** August, 2003
**Completion Date:** April, 2008

**Description:** Provide funding for the County's local matching requirements of the Acquire Snow Removal Equipment projects at the Airport. This project was divided into two phases due to funding limitations. Phase 1 included the purchase of four snow removal vehicles; one multi-purpose unit (with rotary plow and sweeper attachments) and three displacement plows with carrier vehicles. Phase 2 included the purchase of two new snow removal vehicles; one multi-purpose unit (with rotary blower, broom, and reversible plow attachments) and one high speed plow unit. All vehicles are for the exclusive use at the Trenton Mercer Airport. The total cost for the project was $1,917,538. FAA AIP Program grants 3-34-0042-026-03 and 3-34-0042-030-05, reimbursed the County $1,763,909 (90% and 95% respectively for each phase) of the total project cost for purchase of the vehicles. NJDOT State Aviation did not offer a matching grant for phase 1 however did offer a matching grant for phase 2 in the amount of $19,062 (2.5% of the Phase 2 total cost). Mercer County's local requirement for this project was $134,567. Therefore, PFC funding will financially support the $134,567 share of the Project.

**Justification:** The new equipment enhanced the Airport maintenance and snow removal crew's ability to remove snow from the airport's priority 1 pavement areas within the timeframe (1-inch of snow in 30 minutes) recommended in FAA Advisory Circular 150/5220-20 Airport Snow and Ice Control Equipment. The new equipment replaced aging and inadequate equipment that existed at the time of purchase.

**Project No. 2 – Rehabilitate Taxiways "A", "C", and "J"**

**PFC Level: $4.50**
**Estimated PFC Eligible Cost (Local Share): $198,697**
**Start Date: July, 2004**
**Estimated Completion Date: December, 2013**

Description: Provide funding for the County's local matching requirements of the Rehabilitate Taxiways "A", "C", and "J" project at the Airport. The project generally included the design and construction for the Rehabilitation of Taxiways "A" (3600 L.F. X 75LF), "C" (1,572 LF X 75 LF), and "J" (2464 LF X 75 LF) including pavements, drainage, lighting and signage, markings and wind cone. The estimated total cost for the project is $7,947,934. FAA AIP Program grants 3-34-0042-027-04, 3-34-0042-031-05, 3-34-0042-034-07, 3-034-0042-036-09, and 3-36-0042-037-10 is providing funding for 95% of the total project cost; $7,550,537. NJDOT State Aviation matching grants are providing $198,698 (2.5%) towards the total cost of the project. Mercer County's local requirement for this project is $198,699. Therefore, PFC funding will financially support the $198,699 share of the Project.

Justification: Taxiways "A", "C", and "J" serve an important role in providing access for the airport users at Trenton-Mercer Airport. These taxiways were deteriorated and aged; beyond repair by normal maintenance procedures. Major rehabilitation was necessary to return them to good condition for safe aircraft operations. This project repairs and rehabilitates these taxiways, while extending the useful life of the pavement sections. The approximate length of these taxiways total 7,636 feet. The rehabilitation project primarily consists of repairing cracks, reconstructing major portions of the taxiways that have failed, mill the top surface course and provide an overlay of the taxiways with bituminous pavement. Portions of the airfield required the alteration of taxiway fillets and the removal of excessive taxiway pavement that is no longer useful for the circulation of aircraft.

**Project No. 3 – Improve Runway 6-24 and Runway 16-34 Safety Areas (EMAS)**

**PFC Level: $4.50**
**Estimated PFC Eligible Cost (Local Share): $1,230,781**
**Start Date: August, 2009**
**Estimated Completion Date: December, 2014**

Description: Provide funding for the County's local matching requirements of the Runway 6-24 and Runway 16-34 Safety Area Improvements (EMAS) projects. The Project will generally involve design and construction of the installation of non-standard EMAS at the ends of Runways 6, 24, 16 and 34 as recommended in the September 29, 2008 FAA Runway Safety Area Determination. The total cost for the project is $31,733,598. FAA AIP Program grants 3-34-0042-035-09 and 3-34-0042-038-11 provide 95% funding and 3-34-0042-041-12 provide 90% funding of the respective total estimated cost of each phase of this project. The three FAA AIP grants total $29,353,818. NJDOT State Aviation matching grants provide a total of $1,148,999 towards the total cost of the project. Mercer County's local requirement for this project is $1,230,781. Therefore, PFC funding will financially support the $1,230,781 share of the Project.

Justification: The existing extended runway safety areas at each end of Runways 6-24 and 16-34 do not comply with required FAA safety area standards. A Runway Safety Area Study concluded that installation of EMAS at each runway end was the most appropriate option for improving the extended safety areas. The EMAS sites at all runway departure ends of both runways are not large enough to support full performance EMAS systems with 70 knot predicted stopping power for the aircraft fleet mix operating at Maximum Take-Off Weight and 80% of Maximum Landing Weight in accordance with FAA Order 5200.9. The design provides for installation of 50-strength EMAS beds which provide a minimum predicted performance of 55 knots or greater for Category C aircraft, meet all of the other requirements of the governing FAA Orders and Advisory Circular, and represent significant improvements to the existing RSA deficiencies. The EMAS installations satisfy FAA Part 139 safety area standards when installed.

**Project No. 4 – Rehabilitate Taxiways H, B, and F**

**PFC Level: $4.50**
**Estimated PFC Eligible Cost (Local Share): $785,425**
**Start Date: August, 2011**
**Estimated Completion Date: December, 2018**

Description: Provide funding for the County's local matching requirements of the Taxiways H, B, and F Rehabilitation project at the Airport. This project generally includes reconstruction of approximately 54,000 SY of bituminous taxiway. The work will generally consist of full-depth reconstruction of the bituminous pavement. Additionally associated grading and drainage improvements; edge lighting and guidance sign improvements including replacement of signs and fixtures, light bases and transformers, installation of a conduit system with new power and counterpoise cables; pavement markings; and restoration of adjacent turf surfaces are included in the project. The taxiway areas to be rehabilitated include Taxiway "H" from the Runway 16 end to Taxiway "B" including the portion along the Ronson Aviation apron and stub Taxiway "A"; Taxiway "B" from the Runway 24 end and Johnson & Johnson stub to the Taxiway "C" intersection; and Taxiway "F" from Runway 6-24 to Taxiway "B". The total estimated cost for the project is $16,025,000. An initial FAA AIP Program grant for design phase services was issued in FY 2011 (3-34-0042-039-11) in the amount of $973,750 to fund 95% of the total cost of the design of the project. A NJDOT state matching grant provides funding for 2.5% of the total estimated design phase costs. A stand alone NJDOT State Aviation grant in an amount of $2,500,000 was recently offered to fund a portion of the construction of the project. The $2,500,000 represents approximately 95% of an initial phase of construction estimated total $2,642,000. The balance of the construction funds ($12,358,000) are identified as candidate projects on the current airport 5-year capital improvement plan for 90% funding in each of the fiscal years 2014 thru 2017. NJDOT Aviation matching grants in the amount of 5% are also being requested in those future fiscal years. In total FAA AIP funding of $12,095,950 is currently estimated with an additional $3,143,625 from NJDOT leaving a balance of $785,425 local funding for this project. Therefore, PFC funding will financially support the local share of the project currently estimated to equal $785,425.

Justification: The taxiways are currently in poor condition beyond repair by normal maintenance procedures. The existing condition of the taxiway pavements are such that total reconstruction is anticipated to be required. The current PCI index is estimated to be from 40 – 55. The existing lighting is over 15 years old (direct buried cable and some stake mounted lights) and is at the end of its service life cycle.

**Project No. 5 – Airfield Marking**

**PFC Level: $4.50**
**PFC Eligible Capital Cost (Local Share): $13,021**
**Start Date: February, 2011**
**Estimated Completion Date:  March, 2012**

Description: Provide funding for the County's local matching requirements of the Airfield Marking project at the Airport. The project includes installation of new enhanced taxiway centerline markings and surface painted holding position markings for each runway. The NJDOT provided 95% funding for this $260,423 ($247,402 state share) marking project. Mercer County's local share for the project equals the 5% balance; $13,021. Therefore, PFC funding will financially support the $13,021 share of this project.

Justification: Recent changes of the standards require surface painted holding position markings and enhanced taxiway centerline markings. The marking improvements completed as part of this project resulted in the airport meeting the new FAA pavement marking standards thus enhancing safety of aircraft operating at the airport.

**Project No. 6 – Acquire and Install Wildlife fence**

PFC Level: $4.50
PFC Eligible Capital Cost (Local Share): $3,750
Start Date: June, 2009
Completion Date: December, 2010

Description: Provide funding for the County's local matching requirements of the Airport Security Fencing project at the Airport. The project generally included installation of approximately 2,000 feet of ten-foot high security/wildlife fencing including two twelve-foot manual swing gates, to prohibit entry by individuals and wildlife into the active Airport Operations Area (AOA). The NJDOT provided 95% funding for this $75,000 ($71,250 state share) fencing project. Mercer County's local share for the project equaled the 5% balance; $3,750. Therefore, PFC funding will financially support the $3,750 share of this project.

Justification: This project prohibits/deters deer from migrating from a heavily wooded area inside the fence line onto the area adjacent to the main ILS Runway 06 near Air Hangar. The project also provides a double protective security barrier abeam this very active public thoroughfare. The project was conceived and recommended by the Airport's Wildlife Hazard Management Committee and USDA to reduce wildlife hazards at Trenton-Mercer Airport.

**Project No. 7 – Airport Security Fencing**

PFC Level: $4.50
Estimated PFC Eligible Cost (Local Share): $72,502
Estimated Start Date: July, 2013
Estimated Completion Date: December, 2014

Description: Provide funding for the County's local matching requirements of the Airport Security Fencing project at the Airport. The project generally includes removal of approximately 24,000 LF of perimeter security fencing and replacement with fencing that meets current TSA security and FAA wildlife deterrent standards. In addition, the project is expected to include up to five aircraft rescue crash gates, two pedestrian gates, and ten motorized vehicle gates for improved airfield access. The NJDOT is expected to provide 95% funding for this $1,450,044,000 ($1,377,542 state share) fencing project in the near future. Mercer County's local share for the project equals the 5% balance; $72,502. Therefore, PFC funding will financially support the estimated $72,502 local share of this project.

Justification: The existing fencing does not meet FAA or TSA standards. The existing airfield security fence is over 25 years old and portions of the perimeter fence are as much as 1.5 feet above grade, or leaning/falling due to compromised stability. This project will provide a new security fence that will be installed along the secure side of the airport, and will replace the existing 6' and 8' fence. This project is necessary to repair and maintain security at the airport. The USDA has previously recommended fencing improvements in order to deter wildlife from entering the airport environment. This will be accomplished with a 2' embedding of the fence fabric.

**Project No. 8 – Replace ARFF Vehicles 343 and 344**

PFC Level: $4.50
Estimated PFC Eligible Cost (Local Share): $87,500
Estimated Start Date: August, 2013
Estimated Completion Date: December, 2014

Description: Provide funding for the County's local matching requirements of the Replace ARFF Vehicles 343 and 344 project at the Airport. This project includes the purchase of two new Aircraft Rescue and Fire Fighting (ARFF) vehicles to replace old and aging vehicles. As a Part 139 airport with scheduled commercial service it is vital the airport have ARFF equipment sufficient to handle emergency situations. The total cost for the project is estimated to equal $1,750,000. An FAA AIP Program grant is being requested for reimbursement of 90% of the total project cost; $1,575,000. In addition, a matching NJDOT State Aviation grant is being requested for 5% ($87,500) of the total cost this project. Mercer County's local requirement for this project will be the 5% balance remaining $87,500. Therefore, PFC funding will financially support the $87,500 share of the Project.

Justification: As a Part 139 airport with scheduled commercial service it is vital the airport have ARFF equipment sufficient to handle emergency situations when called upon. Existing equipment is old and aging and becoming unreliable. It is difficult to obtain parts in a reasonable timeframe when repairs are necessary. The new equipment will replace aging unreliable equipment that currently exists.

### Project No. 9 – Terminal Building Modifications

**PFC Level: $4.50**
**Estimated PFC Eligible Cost: $315,000**
**Estimated Start Date: August, 2013**
**Estimated Completion Date: December, 2013**

Description: Provide funding for the Terminal Building Modifications project at the Airport. The work proposed is within the existing building envelope and will improve the queuing of passengers passing through security as well as provide a secure and improved hold room area for passengers awaiting boarding of aircraft. Included in the building modification is the creating of restrooms in a portion of the existing space within the boarding area for the convenience of passengers who have successfully passed through the security check point. The total estimated cost for the project is $315,000. This project will be funded totally with PFC collections. Therefore, PFC funding will financially support the total $315,000 for the Project.

Justification: The existing building was originally constructed in the 1970's prior to today's current increased security requirements. There has been limited scheduled commercial service at the airport since the increased security regulations were instituted after the 2001 tragedy. Frontier Airlines recently started scheduled service from Trenton Mercer Airport significantly increasing the passenger activity at the airport. The proposed terminal building modifications will improve security and handling of the increased passenger activity generated resulting from Frontiers new service.

### Project No. 10 – PFC Program Administration

**PFC Level: $4.50**
**Estimated PFC Eligible Cost: $72,400**
**Estimated Start Date: March, 2013**
**Estimated Completion Date: September, 2016**

Description: Provide reimbursement for costs incurred in the preparation of the PFC application, required accounting and reporting, and annual audits. Only those administrative costs associated with PFC Application XX-XX-X-XX-TTN are included within this application.

Justification: Public agencies may use PFC revenue to pay for allowable administrative support costs during the life of the Passenger Facility Charge program as described in 14 CFR Part 158. This project is being undertaken to reimburse the County for costs associated with the preparation and administration of this PFC process. The PFC Project Application contains projects that meet PFC project eligibility criteria 1 by preserving or enhancing the safety, security, and capacity of the national air transportation system.



**COUNTY OF MERCER**
**OFFICE OF THE COUNTY COUNSEL**
McDADE ADMINISTRATION BUILDING
640 SOUTH BROAD STREET
P.O. BOX 8068
TRENTON, NEW JERSEY 08650-0068
(609) 989-6511
(609) 392-8625 Fax

RECEIVED
JUN 1 5 2015
U.S. C.A. 3rd

*mm*

**BRIAN M. HUGHES**
COUNTY EXECUTIVE

**KELVIN S. GANGES**
CHIEF OF STAFF

**ANDREW A. MAIR**
COUNTY ADMINISTRATOR

**ARTHUR R. SYPEK, JR.**
COUNTY COUNSEL

June 10, 2015

*Via electronic filing only*
Marcia M. Waldron, Clerk
United States Court of Appeals
21400 United States Court House
601 Market Street
Philadelphia, PA 19106-1790

RE: BRRAM, et al v. FAA, et al
Case Number: 15-2393
District Case Number: 3-14-CV-02686

Dear Clerk Waldron:

This office represents the Mercer County Board of Chosen Freeholders ("Freeholders"). Pursuant to your June 9, 2015 letter, please be advised that the Freeholders will not be participating in the appeal. The Freeholders were previously dismissed from this case and the Plaintiffs are not appealing that dismissal.

Please call me with any questions. Thank you for your courtesies.

Yours truly,

Arthur R. Sypek, Jr.
Mercer County Counsel

By: Paul R. Adezio
Deputy County Counsel

PRA:ar

CC:   McCarter & English
       United States Attorney's Office
       Potter & Dickson

*Visit Mercer County on the Web at www.mercercounty.org*

JA133



June 19, 2015

**VIA ECF**

Marcia M. Waldron, Clerk
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

**RE:** ***BRRAM, Inc., et al. v. FAA, et al.,***
**Case Number: 15-2393**
**District Court Civil Action No. 3:14-cv-02686-PGS-DEA**

Dear Clerk Waldron:

We, along with Hogan Lovells represent former defendant Frontier Airlines,
Inc. ("Frontier"). Please be advised that Frontier will not be participating in the appeal.
Frontier was previously dismissed from this case and the Plaintiffs are not appealing
that dismissal.

Thank you for your consideration in this matter.

Respectfully,

John E. Flaherty

cc:   Counsel of Record (via ECF)
Justin A. Savage, Esq.
R.W. Potter, Esq.

---

John E. Flaherty
Partner
T. 973-639-7903
F. 973-297-3971
jflaherty@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056
T 973.622.4444
3.624.7070
.v.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WASHINGTON, DC

WILMINGTON

JA134