No. 15-2393

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

BRRAM, INC., ET AL.,

APPELLANTS,

V.

UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA),
ET AL.,

APPELLEES.

_____

On Appeal from the United States District Court
for the District of New Jersey, Civil Action No. 14-2686(PGS)

_____

**BRIEF OF APPELLEE FEDERAL AVAIATION ADMINISTRATION**
_____

PAUL J. FISHMAN
United States Attorney
District of New Jersey
402 E. State St., Room 430
Trenton, NJ  08608
Telephone: (609) 989-0563
Email: john.ruymann@usdoj.gov

On the brief:
J. ANDREW RUYMANN
Assistant United States Attorney

# **TABLE OF CONTENTS**

COUNTERSTATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELATED CASES AND PROCEEDINGS. . . . . . . . . . . 2

STATEMENT OF FACTS AND OF THE CASE. . . . . . . . . . . . . . . . . . . . . 2

    A.  Regulatory Background for FAA Actions . . . . . . . . . . . . . . . . . . . . . 2

        1.  Amending an Airline's Operations Specifications. . . . . . . . . . . . 3

        2.  Amendment of Operations Specifications and Environmental Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  The FAA's Amendment of Frontier's OpSpecs and Categorical Exclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  Prior FAA Orders and Earlier Petition for Review filed by BRRAM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.  Pre-Lawsuit Correspondence Between the FAA and BRRAM. . . . . . 11

    E.  BRRAM's Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    F.  Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    G.  BRRAM's Motion to Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    H.  Opposition to Motion to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I.  Dismissals, District Court's Opinion, and Notice of Appeal. . . . . . . . 17

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.    The District Court's Decision to Dismiss the Complaint for
Lack of Subject Matter Jurisdiction Was Correct and Should
Be Affirmed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.  The District Court Correctly Found that BRRAM's'
Lawsuit Challenged the FAA's Final Order Amending
Frontier's OpSpecs And Correctly Held that the
Courts of Appeals Have Exclusive Jurisdiction
Over the Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B. BRAMM's Attempts to Evade this Settled Jurisdictional
Law Fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1.  BRAMM's Challenge to the District Court's Dismissal
Relies on Outdated Caselaw and Ignores Settled Principles
of Jurisdictional Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2.  BRRAM's Arguments that the FAA Never Issued a Final
Order Covered by 49 U.S.C. § 46119(a) Are
Meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

3.  BRRAM's Jurisdictional Argument is Based on the
Unsupported Premise That the Approval of Frontier's
OpSpecs Was Conditioned on Frontier Operating Only
Two Flights Per Week. . . . . . . . . . . . . . . . . . . . . . . . . . . 35

C.  Any Discussion of the Merits of BRRAM's  Challenge to the
FAA's  OpSpecs Amendment, Including the Categorical Exclusion
Decision, is Premature and, if This Court Determines that This Court
or the District Court Has Jurisdiction, the Case Should Proceed as a
Record- Review Case to be Decided on the Administrative
Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

II.  BRRAM's Challenge to the FAA's Decision Authorizing Frontier to Provide
Commercial Passenger Service at Trenton Airport is Time-Barred by 49 U.S.C.
§ 46110.  Accordingly, This Court Should Not Deem the Appeal a Petition For
Review and Decide the Issue, Because Even if BRRAM Had Filed in the
Right Court, Its Suit Would be Untimely Under 49 U.S.C. § 46110 . . . . . . . . 40

III.  The District Court Properly Denied BRRAM's Motion to Amend. . . . . . . . 45

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

# TABLE OF AUTHORITIES

Cases

*Aerosource v. Slater*,
   142 F.3d 572 (3d Cir. 1998) .................................................. 18, 31, 34

*Alvin v. Suzuki*,
   227 F.3d 107 (3d Cir. 2000) ..............................................................45

*Americopters, LLC v. Fed. Aviation Admin.*,
   441 F.3d 726 (9th Cir.2006) ..............................................................42

*Amerijet International, Inc. v. Pistole*,
   753 F.3d 1343 (D.C. Cir. 2014)..........................................................33

*Anselma Crossing L.P. v. U.S. Postal Serv.*,
   637 F.3d 238 (3d Cir. 2011) ..............................................................29

*Arizona Christian Sch.Tuition Org. v. Winn*,
   563 U.S. 125, 131 S.Ct. 1436, 179 L. Ed. 2d 523 (2011)………………….…..27

*Avia Dynamics v. Federal Aviation Administration*,
   641 F.3d 515 (D.C. Cir. 2011)...........................................................41

*Bellocchio v. New Jersey Dept. of Environmental Protection*,
   602 Fed. Appx. 876, 2015 WL 1345663 (3d Cir. March 24, 2015)............. 23, 41

*Block v. North Dakota*,
   461 U.S. 273 (1983)........................................................................30

*California Save Our Streams Council v. Yeutter*,
   887 F.2d 908 (9th Cir. 1989) ............................................................29

*CEC Energy Co., Inc. v. Pub. Serv. Comm'n of Virgin Islands*,
   891 F.2d 1107 (3d Cir. 1989) ...........................................................31

*City of Alexandria v. Helms*,
   728 F.2d 643 ........................................................................ 27, 30

*City of Dania Beach, Fla. V. FAA*,
    485 F.3d 1181 .................................................................................33

*City of Irving, Tex. v. FAA*,
    539 F. Supp. 17 (N.D. Tex. 1981) ...................................................27

*City of Rochester v. Bond*,
    603 F.2d 927 (2d Cir. 1979) ............................................................30

*City of Southlake v. FAA*,
    679 F. Supp. 618 (N.D. Tex. 1986) .................................................28

*CNA v. U.S.*,
    535 F.3d 132 (3d Cir. 2008) ............................................................22

*Corbett v. Transportation Sec. Admin.*,
    767 F.3d 1171 ..................................................................................42

*Durso v. Napolitano*,
    795 F. Supp. 63 (D.D.C. 2011) .......................................................32

*Fed. Trade Comm'n v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980).................................................................. 31, 34

*Fleming v. U.S. Dept. of Transp.*,
    348 Fed. Appx. 736 (3d Cir. 2009)..................................................23

*Florida Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985).........................................................................40

*Friends of Richards-Gebaur Airport v. FAA*,
    251 F.3d 1178 (8th Cir. 2001) .........................................................24

*Gen. Elec. Uranium Mgmt. Corp. v. United States Dep't of* Energy,
    764 F.2d 896 (D.C. Cir. 1985)........................................................30

*Grayson v. Mayview State Hosp.*,
    293 F.3d 103 (3d Cir. 2002) ............................................................45

*Greater Orlando Aviation Authority v. FAA*,
   939 F.2d 954 (11th Cir. 1991) ........................................................42

*Heide v. FAA*,
   110 Fed.Appx. 724 (8th Cir.2004)...................................................41

*Jones v. United States*,
   625 F.3d 827 (5th Cir. 2010) ...........................................................23

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) .............................................................45

*Marshfield v. FAA*,
   552 F.3d 1 (1st Cir. 2008)................................................................25

*Minard Run Oil Co. v. U.S. Forest Serv.*,
   670 F.3d 236 (3d Cir. 2011) .............................................................35

*Motor Vehicle Manuf. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)...........................................................................39

*National Air Transportation Ass'n. v. McArtor*,
   866 F.2d 483 (D.C. Cir. 1989).........................................................42

*Pennsylvania ex rel v. Zimmerman v. Pepsico*,
   836 F.2d 173 ............................................................................ 25, 32

*Reder v. Administrator, FAA*,
   116 F.3d 1261 (8th Cir. 1997) .........................................................42

*Safe Extensions, Inc. v. FAA*,
   509 F.3d 593 (D.C. Cir. 2007) ................................................... 40, 42

*San Diego Air Sports Center, Inc. v. FAA*,
   887 F.2d 966 (9th Cir. 1989) ...........................................................33

*Security Point Holdings, Inc. v. TSA*,
   769 F.3d 1184 (D.C. Cir. 2014)........................................................33

*Sierra Club v. Slater*,
  120 F.3d 623 (6th Cir. 1997) .............................................................39

*Sierra Club v. U.S. Dept. of Transp.*,
  753 F.2d 120 (D.C. Cir. 1985) ...........................................................24

*Sima Prods. Corp. v. McLucas*,
  612 F.2d 309 (7th Cir. 1980) .............................................................24

*Solar Turbines, Inc. v. Seif*,
  879 F.2d 1073 (3d Cir. 1989) .............................................................31

*Southern California Aerial Advertisers' Assn. v. FAA*,
  881 F2d 672 (9th Cir 1989) ...............................................................33

*St. John's United Church of Christ v. City of Chicago*,
  401 F. Supp. 2d 887 (N.D. Ill. 2005) ..................................................29

*St. John's United Church of Christ v. City of Chicago*,
  502 F.3d 616 (7th Cir. 2007) ........................................................ 24, 29

*State of Illinois ex rel Scottt v. Butterfield*,
  396 F. Supp. 632 (N.D. Ill 1975) .......................................................26

*Suburban O'Hare Com'n. v. Dole*,
  787 F. 2d 186 (7th Cir. 1986) ............................................................28

*Taliaferro v. Darby Twp. Zoning Bd.*,
  458 F.3d 181 (3d Cir. 2006) ..............................................................40

*Tinicum Twp, PA v. U.S. Dep't of Transp.*,
  685 F.3d 288 (3d Cir. 2012) ........................................................ 35, 39

*TSG Inc. v. EPA*,
  538 F.3d 264 (3d Cir. 2008) ..............................................................35

*West v. FAA*,
  320 Fed. Appx. 782 (9th Cir. 2009)....................................................24

Statutes

5 U.S.C. § 701 ........................................................................................13

5 U.S.C. § 706 ........................................................................................39

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ....................................................................................29

42 U.S.C. § 4332 ................................................................................ 5, 13

49 U.S.C. § 1301 ....................................................................................27

49 U.S.C. § 1486 ....................................................................................24

49 U.S.C. § 40101(a)(1) ........................................................................36

49 U.S.C. § 40103 ..................................................................................36

49 U.S.C. § 40104 ....................................................................................3

49 U.S.C. § 41109(a)(2) ..........................................................................8

49 U.S.C. § 44705 ............................................................................ 3, 6, 8

49 U.S.C. § 46110 ........................................................................... passim

49 U.S.C. § 46119(a) ..............................................................................30

49 U.S.C. § 46610 ............................................................................ 17, 20

Rules

Fed. R. App. P. 32(a)(5) ...........................................................................1

Fed. R. App. P. 32(a)(6) ...........................................................................1

Fed. R. App. P. 32(a)(7) ...........................................................................1

Fed. R. Civ. P. 12(b)(1) ................................................................ 1, 14, 17

Fed. R. Civ. P. 12(b)(6) ................................................................... 14, 40

Fed. R. Civ. P. 15(a) ................................................................................45

Regulations

14 C.F.R. Part 150 ...................................................................................12

14 C.F.R. § 119.49(a)(4) ..................................................................... 3, 37

14 C.F.R. § 119.5(g) ........................................................................... 3, 37

14 C.F.R. § 119.5(g)-(j) .............................................................................3

14 C.F.R. § 119.51(a)(2) ..................................................................... 4, 37

14 C.F.R. §119.7 ......................................................................................4

14 CFR 119.51(a)(1) .................................................................................4

40 C.F.R. §1507.3(a) ................................................................................5

40 C.F.R. §1508.4 .................................................................................5, 6

80 Fed. Reg. 1274-01 .............................................................................36

Other Authorities

H.R. Conf. Rep. 108-334 ........................................................................29

Pub. L. No. 108 ......................................................................................29

## COUNTERSTATEMENT OF JURISDICTION

Plaintiffs, BRRAM, Inc. – "Bucks Residents for Responsible Airport Management," a Pennsylvania non-profit corporation – and ten individuals (collectively "BRRAM"), who live or work beneath the path of flights from and into the Trenton-Mercer County Airport ("Trenton Airport"), appeal a May 19, 2015, order granting the FAA's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), dismissing the complaint, and denying BRRAM's' motion to amend as moot. JA4. BRRAM filed a timely notice of appeal on June 4, 2015. JA1. The district court lacked subject matter jurisdiction because 49 U.S.C. § 46110 provides exclusive jurisdiction in the courts of appeals to review final orders of the FAA. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court lacked subject matter jurisdiction over BRRAM's lawsuit challenging the FAA's decision authorizing Frontier Airlines, Inc. ("Frontier") to provide scheduled commercial passenger service at Trenton Airport because 49 U.S.C. § 46110(a) grants exclusive jurisdiction over such challenges to the courts of appeals.

2. Whether BRRAM's challenge to the FAA's decision authorizing Frontier to provide commercial passenger service at Trenton Airport is time-barred by 49 U.S.C. § 46110, which requires a challenger to a final FAA

order to file a petition for review in the court of appeals within sixty days after the order was issued unless reasonable grounds for a late filing exist.

3. Whether the district court abused its discretion in denying BRRAM's motion to amend, where the amended complaint BRRAM sought to file would implicate the same FAA decision at issue in the initial complaint, and would also be subject to dismissal because of the jurisdictional and timeliness provisions of 49 U.S.C. § 46110.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The FAA is not aware of any case or proceeding that is related, completed, pending, or about to be presented before this or any other court, state agency, or federal agency.

## STATEMENT OF FACTS AND OF THE CASE

### A. Regulatory Background for FAA Actions

BRAMM's complaint challenged the FAA's approval of Frontier Airline's use of Trenton Airport for commercial passenger service.  The district court correctly concluded that it lacked jurisdiction over BRRAM's appeal of the FAA's decision and therefore did not reach the merits of that decision.  Nevertheless, some background on the FAA's regulatory regime, including its procedures for issuing

and amending operating certificates and operations specifications, will be helpful in understanding the procedural history of this case.

### 1. Amending an Airline's Operations Specifications

The FAA is charged with encouraging the development of civil aeronautics and the safety of air commerce in the United States. 49 U.S.C. § 40104. The FAA is required to issue an operating certificate to an airline when it "finds, after investigation, that the person properly and adequately is equipped and able to operate safely under this part and regulations and standards prescribed under this part." 49 U.S.C. § 44705. An operating certificate also specifies "terms necessary to ensure safety in air transportation; and (2)…the places to and from which, and the airways of the United States over which, a person may operate as an air carrier." *Id*. Also included in air carrier certificates is a stipulation that the air carrier's operations must be conducted in accordance with the provisions and limitations specified in operations specifications ("OpSpecs"). 14 C.F.R. § 119.5(g). The regulations implementing 49 U.S.C. § 44705 specify that an air carrier's approved OpSpecs must include, among other things, "each regular and alternate airport to be used in scheduled operations." 14 C.F.R. § 119.49(a)(4). An air carrier may not conduct any operation without having approved OpSpecs or in violation of those approved OpSpecs, including operating to and from an airport not listed on its OpSpecs. 14 C.F.R. § 119.5(g)-(j). The FAA may approve a

carrier's request to amend its OpSpecs if the FAA "determines that safety in air commerce and the public interest allows the amendment." 14 C.F.R. § 119.51(a)(2).

OpSpecs represent the authorizations, limitations, and procedures under which an air carrier must operate. 14 C.F.R. §119.7. They establish and administer safety standards for a specific carrier. OpSpecs are a more flexible method of imposing safety standards than regulations and can more readily be adapted to an individual carrier's circumstances, as well as the changes in aviation technology. Order 8900.1, para, 3-678.[1] Although the FAA must make the determination that the carrier is able to operate safely in order to issue or amend an OpSpec, the safety inquiry does not end with the issuance of the new OpSpec. The FAA may amend a carrier's OpSpecs of its own accord if, as part of its continuing safety oversight, it "determines that safety in air commerce and the public interest require the amendment[.]" 14 CFR 119.51(a)(1).

### 2. Amendment of Operations Specifications and Environmental Issues

The approval of OpSpecs is a major federal action subject to the requirements of the National Environmental Policy Act (NEPA). In considering the environmental impacts of an OpSpecs change, the FAA looks to the carrier to provide information regarding its operating assumptions for the market. The FAA

---

[1] FAA Order 8900.1 can be found at http://fsims.faa.gov.

reviews the operating assumptions to determine the reasonableness of the

information submitted by the carrier.  The FAA will look to the carrier's operations

at other airports or other carriers' operations at the airport at which the carrier

proposes to operate to determine reasonableness.  Order 1050.1E, App. A, para.

14.9.

The NEPA requires a federal agency to prepare an environmental impact

statement (EIS) for "proposals for legislation and other major federal actions

significantly affecting the quality of the human environment."  42 U.S.C.

§4332(2)(c).  Pursuant to NEPA's implementing regulations promulgated by the

Council on Environmental Quality (CEQ), federal agencies may exclude from

further NEPA review "categor[ies] of actions which do not individually or

cumulatively have a significant effect on the human environment and which have

been found to have no such effect in procedures adopted by a Federal agency in

implementation of these regulations … and for which, therefore, neither an

environmental assessment [EA] nor an environmental impact statement is

required."  40 C.F.R. §1508.4.  An agency's list of categorical exclusions must be

published in the Federal Register, be subjected to public comment, and submitted

for review by CEQ.  40 C.F.R. §1507.3(a), (b).  Additionally, the agency's

procedures regarding categorical exclusions "shall provide for extraordinary

circumstances in which a normally excluded action may have a significant environmental effect," thus requiring an EA or EIS.  40 C.F.R. §1508.4.

With CEQ's concurrence, the FAA determined which of its activities could constitute categorical exclusions in promulgating its "Policies and Procedures for Considering Environmental Impacts."  FAA Order 1050.1E. [2]  These categorical exclusions include, among other actions, an FAA action to approve: "[o]perating specifications and amendments that do not significantly change the operating environment of the airport."  Order 1050.1E, paragraph 308d.  Thus, unless extraordinary circumstances exist, these types of actions may be categorically excluded from further analysis pursuant to NEPA.

### B.  The FAA's Amendment of Frontier's OpSpecs and Categorical Exclusion

Frontier is, and was during the relevant period encompassed by the complaint, the holder of an Air Carrier certificate and OpSpecs issued pursuant to 49 U.S.C. § 44705 and authorized to conduct operations under part 121 of the Federal Aviation Regulations (FARs).  JA88 (Montigney Dec., paras. 2-3). Frontier made a business decision that the New Jersey area market could sustain additional scheduled air carrier service and that it wanted to conduct that service

---

[2] This categorical exclusion was also contained in earlier versions of the Order, 1050.1C and 1050.1D.  FAA Order 1050.1E can be found at www.faa.gov/documentLibrary/media/Order/1050.1E.pdf.

from Trenton Airport.  By a letter dated September 19, 2012, Frontier sought an

amendment to its OpSpecs to permit it to operate at Trenton Airport.  Frontier

made this request to the Flight Standards District Office located in Indianapolis,

Indiana (Indianapolis FSDO), which is primarily responsible for administering

Frontier's Air Carrier certificate.  JA89-90 (Montigney Dec., para. 10 and Ex. A).

Frontier's request for an OpSpecs amendment included a proposed service

plan of two flights per week on Fridays.  JA90 (Montigney Dec., Ex. A).  At the

time Frontier sought the OpSpecs amendment, Trenton Airport had a history of

attracting scheduled service and then losing it.  JA65 (Complaint, Ex. 2, p. 2, n.4).

On September 25, 2012, after determining that Frontier could safely provide

regularly scheduled service at Trenton Airport, the FAA approved an amendment

to Frontier's OpSpecs to include Trenton Airport.  JA89, JA91-JA102 (Montigney

Dec., para. 11 and Ex. B); SA1-SA12.[3]  Once Frontier's OpSpecs were approved to

permit it to operate at Trenton Airport, Frontier was free to determine which other

airports approved in its OpSpecs it would serve from Trenton Airport, as well as

the number of flights it would provide.  Those matters are considered by the FAA

---

[3]The FAA's approval of the OpSpecs amendment is at JA91-JA102 and
SA1to SA12.  The FAA has sought leave to file a supplemental appendix, which
would include SA1 to SA12, because the copy of the OpSpecs amendment in the
joint appendix is unreadable.

to be business decisions made by the carrier without FAA involvement.  JA89 (Montigney Dec., para. 11).

The FAA's position regarding Frontier's ability to increase the number of flights at Trenton Airport following the FAA's approval of the OpSpecs amendment is grounded in 49 U.S.C. § 44705, the statute under which FAA certificates and OpSpecs are issued.  Pursuant to 49 U.S.C. § 44705, the FAA's inquiry is limited to determining whether the air carrier seeking an OpSpecs amendment is "properly and adequately equipped and able to operate safely under [Part A] and regulations and standards issued under [Part A]."  49 U.S.C. § 44705. Nowhere under Section 44705 is the FAA given authority to limit the frequency of operations, unless a limit on the frequency of operations is necessary to ensure safety in air transportation.  *See id.*[4]

At the time the FAA approved the amendment of Frontier's OpSpecs to include the Trenton Airport, the FAA addressed its requirements under NEPA by

---

[4] BRRAM asserts that the FAA improperly relied upon 49 U.S.C. § 41109(a)(2) for its position regarding Frontier's ability to increase the number of flights at Trenton Airport.  BRRAM correctly notes that 49 U.S.C. § 41109(a)(2)  was not part of the Airline Deregulation Act and it does  not apply to the FAA. (Plaintiff's Brief, pp. 51-59).  However, the FAA's position is not grounded in 49 U.S.C. § 41109(a)(2), as the applicable statute is 49 U.S.C. § 44705.  Any erroneous reference to Section 41109(a)(2) at the district court was not material.  The district court did not cite Section 41109(a)(2) in its decision.  Moreover, BRRAM points to no provision of law post-deregulation that permits the FAA to limit the number or frequency of operations by an air carrier, absent a safety issue.

categorically excluding the OpSpecs amendment from further analysis pursuant to NEPA.  *See* JA85 (Complaint, Ex. 6, p. 1).

### C.  Prior FAA Orders and Earlier Petition for Review filed by BRRAM

On February 23, 2006, the FAA issued a Finding of No Significant Impact/Record of Decision ("FONSI/ROD") allowing for the construction of a new terminal building and other capital improvements at Trenton Airport.  JA64 (Complaint, Ex. 2, p. 1).  Soon thereafter, in 2006, BRRAM (but not with the individual plaintiffs here) and others, through the same counsel representing BRRAM in the instant appeal, sought judicial review of the FONSI/ROD in this Court, pursuant to 49 U.S.C. § 46110(a).  JA53-JA62 (Complaint, Ex. 1).  On June 9, 2008, after Trenton Airport's sponsor, Mercer County, failed to take any major steps to implement the project approved by the FONSI/ROD and indicated that it had no present plans for the replacement terminal, the FAA issued an order withdrawing the FONSI/ROD ("2008 Withdrawal Order").  JA64-JA66 (Complaint, Ex. 2).  At that time, no low fare-high frequency (LF/HF) air carrier was operating at Trenton Airport and no such carrier had recently expressed an interest in starting operations at Trenton Airport.  JA65 (Complaint, Ex. 2, p. 2, n. 4).   The 2008 Withdrawal Order stated that "[t]he FONSI/ROD made it clear that if the airport sponsor desired to pursue other projects for any purpose in the future,

appropriate environmental review and documentation would be required." JA65 (Complaint, Ex. 2, p. 2).

The FAA never stated in the 2008 Withdrawal Order that an EIS would be required solely because a LF/HF carrier commenced service at Trenton Airport. The 2008 Withdrawal Order's reference to the future preparation of an EIS related to an alternative project proposed by the County, known as "Build Alternative 2," a project which would have involved doubling the number of passenger gates from two to four. The 2008 Withdrawal Order stated that while the final draft Environmental Assessment from 2001 "did include the analysis for the 'Build Alternative 2' *and* the potential impacts of the entry of a LF/HF air carrier, the County's preferred alternative was the 44,000 square foot replacement terminal building accommodating two aircraft gates" and that this preferred alternative "reflects the fact that the airport sponsor no longer anticipated the entry of a LF/HF air carrier into the [Trenton Airport] market." JA65 (Complaint, Ex. 2, p. 2). Further, the 2008 Order noted that, "the [environmental] analyses of Build Alternative 2 revealed that [that] alternative would likely cause [sufficient] noise impacts that would require the preparation of an [EIS]." JA65 (Complaint, Ex. 2, p. 2, n. 3). The 2008 Withdrawal Order's statement that an EIS would be required was linked to Build Alternative 2, which would have involved doubling the number of passenger gates from two to four, and not, in and of itself, the entry of a

10

LF/HF carrier to a Trenton Airport with two passenger gates. *See* JA65

(Complaint, Ex. 2, p. 2 and n.3). At the time of the 2008 Order the Trenton Airport

had two passenger gates. *See* JA65 (Complaint, Ex. 2, p. 2). The complaint does

not allege that Trenton Airport has more than two passenger gates. *See* JA37-

JA63 (Complaint).

### D. Pre-Lawsuit Correspondence Between the FAA and BRRAM

By a letter dated April 24, 2013, BRRAM, through the same counsel

representing Plaintiffs, complained to Mercer County and the FAA about

Frontier's actual and planned usage of Trenton Airport for commercial passenger

service. Among other things, BRRAM asserted that Frontier was providing at least

47 flights into and out of Trenton Airport, JA72 (Complaint, Ex. 4, p. 4); that no

such service should have been permitted without prior compliance with NEPA,

JA70 (Complaint, Ex. 2, p. 2); that an EIS is required to assess the impacts of

Frontier's operations, JA71 (Complaint, Ex. 2, p. 3); and that, unless Mercer

County and the FAA agreed to limit Frontier's flights to a minimal number of

flights while an EIS and a noise study, identified as a Part 150 Noise Compatibility

Study, was performed, BRRAM would commence legal action in federal court.

JA74 (Complaint, Ex. 2, p. 6).

The FAA responded with a letter, dated May 28, 2013, stating, among other

things, that 1) the amendment of an air carrier's OpSpecs is a major federal action

subject to NEPA; 2) at the time Frontier's OpSpecs were amended to add Trenton Airport, the FAA believed the approval was subject to a categorical exclusion;[5] 3) once the airport is added to the airline's OpSpecs the airline is free to determine the level of service offered at that that airport without any further FAA approval; 4) because the changes announced by Frontier do not constitute a federal action, NEPA requirements are not triggered; 5) while the FAA is not required to complete a NEPA analysis for additional flights, the FAA was willing to undertake a noise analysis to determine if mitigation is necessary and expects to provide those results sometime in mid-August 2013; and 6) generally, an airport's decision not to complete a Part 150 Study, pursuant to FAA Advisory Circular 150/5020-1, "Noise Control and Compatibility Planning for Airports," will not prevent the FAA from approving airport development projects. JA85-86 (Complaint, Ex. 6).[6]

Five months later, on October 31, 2013, BRRAM's counsel sent a letter to the FAA. BRRAM's letter, among other things, stated its disagreement with the FAA's position that, after the approval of the amendment to Frontier's OpSpecs, Frontier was free to determine the level of service offered at Trenton Airport, JA76-JA77 (Complaint, Ex. 5, pp. 2-3); stated that Frontier had become a LF/HF

---

[5] While the FAA's letter stated "the FAA believed that the approval was subject to a Categorical Exclusion," JA85 (Complaint, Ex. 6, p. 1), it is clear, as was understood by BRRAM, *see* JA75-JA84 (Complaint, Ex. 5, p. 3), that the FAA, in fact, did determine that that the OpSpecs amendment qualified as a categorically excluded action.

[6] *See also* 14 C.F.R. Part 150.

carrier at Trenton Airport, JA77 (Complaint, Ex. 5, p. 3); demanded that the FAA

must reconsider and withdraw the categorical exclusion it previously issued to

Frontier, JA77 (Complaint, Ex. 5, p. 3); asserted that Frontier had plans to increase

its operations at Trenton Airport, JA82 (Complaint, Ex. 5, p. 8); and requested a

copy of the noise analysis the FAA said it would provide in its May 28, 2013,

letter.  JA84 (Complaint, Ex. 5, p. 10).

### E.  BRRAM's Complaint

Another six months passed before BRRAM filed its complaint in the district

court on April 28, 2014.  *See* Case No. 14-2686 (D.N.J.) (Docket No. 1).  The

complaint, which purported to be  an action brought under NEPA, federal

regulations and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*,

asserted that the FAA violated the NEPA, 42 U.S.C. § 4332, by allegedly failing to

perform a comprehensive environmental impact analysis, including a noise

analysis, prior to approving Frontier's expansion of operations to Trenton Airport.

In addition to the FAA, BRRAM named the Mercer County Board of Chosen

Freeholders ("Mercer County"), identified as the owners of Trenton Airport, and

Frontier as defendants.  JA37-JA52 (Complaint).  The complaint asserted, in the

lawsuit's only claim, that the FAA's decision to categorically exclude the

amendment of Frontier's OpSpecs from further NEPA review violated NEPA,

contravened the FAA's own regulations and was arbitrary and capricious.  JA48-JA50 (Complaint, paras. 53-62).

As relief, BRRAM sought an order from the district court 1) enjoining Frontier from any increase or expansion of service beyond current service levels at Trenton Airport until the FAA prepared an environmental assessment pursuant to NEPA, 2) enjoining Mercer County from taking any action which would enable or facilitate Frontier's increase or expansion of service at Trenton Airport until the requirements of NEPA are satisfied and 3) compelling the FAA to prepare an environmental assessment addressing the full range of environmental impacts resulting from Frontier's use of Trenton Airport.  JA50-JA51 (Complaint, pp. 14-15).

### F.  Motion to Dismiss

The FAA moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for two reasons: 1) the district court lacked subject matter jurisdiction because the courts of appeals have exclusive jurisdiction to review final orders of the FAA pursuant to 49 U.S.C. §46110; and 2) BRRAM's claims are time barred by 49 U.S.C. § 46110, which states that, in the absence of reasonable grounds for the late filing, a petition to review a final order of the FAA in the court of appeals "must be filed not later than 60 days after the order is

14

issued." 49 U.S.C. § 46110.  (Docket No. 24-1). [7] Accompanying the FAA's motion was a declaration from Bruce A. Montigney, Manager of the Flight Standards District Office, explaining the process by which the agency's decision had been made.  JA88-JA102; SA1-SA12.

### G. BRRAM's Motion to Amend

On November 20, 2014, eight days after filing its opposition to the pending motions to dismiss, BRRAM sought leave from the district court to amend the complaint.  (Docket No. 35).  BRRAM stated that, up until the time the FAA filed the Declaration of Bruce A. Montigney in support of the FAA's motion to dismiss, "the terms and requirements of [the] Ops Specs amendment" had not been disclosed, (Docket No. 35-1, p. 8), and that

> [i]n filing the original complaint, the plaintiffs reasonably believed that the Ops Specs amendment must have authorized Frontier to grow its operations at TTN into that of a high-frequency commercial air carrier without any NEPA analysis or process by the FAA.  But with the disclosure of the Ops Specs amendment we learned, belatedly, that it specifically limits Frontier to **two flights per week** at TTN. The FAA has now indicated that it will not engage in any environmental or safety analysis whatever of the decision by Frontier to expand its usage of TTN to 62 or more flights per week, far in excess of the flight schedule in its Ops Specs amendment that was capped at two weekly flights.

(Docket No. 35-1, p. 3)(emphasis in original).

---

[7] Frontier and Mercer County also filed motions to dismiss.  (Docket Nos. 21 and 23).

15

BRRAM advanced two reasons for the proposed amendment to its

complaint.  First, it sought to add as plaintiffs three Bucks County municipalities

(Lower Makefield, Upper Makefield and Yardley) whose citizens are negatively

impacted by Frontier's flights.  (Docket Entry No. 35-1, p. 8).

Second, BRRAM asserted,

> the amendment informs the court and other parties that the
> plaintiffs' complaint is not against the actual terms of the Ops Specs
> amendment which limited Frontier to two flights per week.
> Rather, the gravamen of the plaintiff's case is the
> FAA's apparent "policy" to not perform any environmental
> or safety analysis, pursuant to NEPA, prior to the airlines'
> expansion of operations to an extent far in excess of the schedule of
> flights proposed by Frontier Airlines and authorized by the FAA in an
> Ops Specs amendment.

(Docket No. 35-1, pp. 8-9).

BRRAM provided a proposed first amended complaint with its motion to

amend.  That proposed pleading, which named the FAA, Frontier and Mercer

County as defendants, summarized the action as follows:

> This is an action for declaratory and injunctive relief against the
> United States Federal Aviation Administration (FAA) for its
> failure to perform the comprehensive environmental impact
> analysis mandated by the "National Environmental Policy Act"
> (NEPA) through the preparation of an Environmental Impact
> Statement (EIS) of the environmental and safety impacts of
> Frontier Airlines expansion of passenger jet service at
> TTN, located in Ewing Township, Mercer County, New Jersey,
> far beyond the two flights per week authorized in Frontier's
> operations specifications amendment ("Ops Specs").

JA112-JA113 (Proposed First Amended Complaint, para. 17).

16

## H.  Opposition to Motion to Amend

The FAA opposed the motion to amend.  (Docket Nos. 39 and 42).  In support of its opposition, the FAA argued that the amendment was futile as the proposed first amended complaint, like the original complaint, would be subject to immediate dismissal.  The FAA argued, mirroring the reasons raised in support of the FAA's motion to dismiss the original complaint, that the proposed pleading, if filed, must be dismissed as the suit, which challenged the FAA's decision authorizing Frontier to provide commercial passenger service to Trenton Airport, is barred because exclusive jurisdiction to review such a decision, a final order of the FAA, lies in the courts of appeals, pursuant to 49 U.S.C. § 46610, and it is untimely under that statute.  (*See* Docket No. 42).

## I.  Dismissals, District Court's Opinion, and Notice of Appeal

BRRAM did not oppose the motions to dismiss filed by Frontier and Mercer County and consented to their dismissal.  (Docket No. 34).   The district court dismissed the complaint as to those defendants.  (Docket No. 52).  The district court then held oral argument on the FAA's motion to dismiss for lack of jurisdiction and for failure to state a claim.   (Docket No. 54).  The district court granted the FAA's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), dismissed the complaint, and denied BRRAM's motion to amend as moot.  JA4 (Order).

17

The district court issued its opinion on the record without counsel present. The opinion is contained in a transcript reproduced in the Joint Appendix.  JA5-JA17 (Opinion).

Because the district court found that it lacked subject matter jurisdiction to review an order of the FAA Administrator under 49 U.S.C. §46110, it did not reach the issue of whether the complaint was untimely.  *See* JA14 (Opinion, p. 10, lines 9-16).

The district court found that "the FAA order being challenged by the plaintiffs is the FAA's September 25, 2012 order amending Frontier OpSpecs which authorizes Frontier to provide commercial passenger service in and out of Trenton Airport."  JA16 (Opinion, p. 12, lines 2-6).   Relying on *Aerosource v. Slater*, 142 F.3d 572, 578, n. 10 (3d Cir. 1998), the court held that an FAA letter could serve as a final order and need not be a formal order or the product of a formal-decision making process.  JA16-JA17 (Opinion, pp. 12-13, lines 21-5).

Ultimately the district court concluded that the court of appeals has exclusive jurisdiction over BRRAM's lawsuit:

> At the heart of this lawsuit, the lawsuit challenges the order of the FAA that amended Frontier's OpSpecs, but failed to decide, as best as this Court can tell, the EIS issue.  As such, under 46110(a) the Court of Appeals has exclusive jurisdiction over this suit to the extent there is a dispute over the meaning of the FAA's order, or whether the FAA met its obligations under NEPA in categorically excluding any environmental assessment.  Approval of Frontier's OpSpecs is a decision

that falls within the provision of Section 46110(a), because that section provides that review of the orders of FAA squarely within the exclusive jurisdiction of the Circuit Courts. As such, when one looks at all the facts, this is a case for the Circuit Courts to decide. Despite the fact that the decision-making of the FAA may have been somewhat ambiguous, it still yields sufficient notice to the plaintiffs that any appeal or review of an FAA decision should proceed before the Circuit Courts. As such, the complaint is dismissed with prejudice.

JA17 (Opinion, p. 13, lines 6-23).

BRRAM filed a timely notice of appeal. JA1-JA3 (Notice of Appeal). The FAA filed a motion for summary affirmance. This Court denied the FAA's motion and issued a briefing schedule.

## SUMMARY OF ARGUMENT

The courts of appeals have exclusive jurisdiction to review orders issued by the FAA, including the FAA's decision to amend the operations specifications of an air carrier. Congress has provided that persons who are aggrieved by final actions of the FAA "may apply for review" in the "United States Court of Appeals for the District of Columbia Circuit" or "in the court of appeals of the United States for the circuit in which the person resides." 49 U.S.C. § 46110. The district court therefore properly dismissed for lack of subject matter jurisdiction.

In addition to filing in the wrong court, BRRAM's complaint was also filed well outside the applicable sixty-day statute of limitations established by that same statute. 49 U.S.C. § 46110(a). Although the statute may provide some exception to the sixty-day filing deadline if a plaintiff has "reasonable grounds" for delay, the

exception does not apply here. BRRAM did not file its lawsuit until approximately a year and one-half after the FAA authorized Frontier to service Trenton Airport. Even if BRRAM was correct that it could not have known of the FAA's decision (despite Frontier openly operating flights out of Trenton Airport shortly thereafter) until after the FAA's correspondence the following May, BRRAM nevertheless waited eleven months after that letter before filing suit. No reasonable grounds exist for BRRAM's untimely filing. As such, this Court should not deem the appeal a petition for review and decide the issue. Even if BRRAM had filed in the right court, its suit would be untimely.

Finally, the district court properly denied BRRAM's motion to amend as moot. Although the district court did not provide a discussion of its reasons for the decision, it is clear that the proposed amendment would be futile as the proposed amended complaint, if filed, would be subject to immediate dismissal. The same reasons supporting dismissal of the original complaint would also support the dismissal of the proposed pleading: the suit, which challenges the FAA's decision authorizing Frontier to provide commercial passenger service to Trenton Airport, is barred because exclusive jurisdiction to review such a decision, a final order of the FAA, lies in the courts of appeals, pursuant to 49 U.S.C. § 46610, and it is untimely. The addition of three municipality plaintiffs and BRRAM's recasting of the suit are inconsequential. Whether BRRAM characterizes the suit as an action

20

for declaratory and injunctive relief against the FAA for its alleged failure to comply with NEPA when Frontier expanded service beyond the two flights allegedly authorized in Frontier's OpSpecs amendment - as it does in the proposed amended complaint - or as an action for declaratory and injunctive relief against the FAA for its failure to comply with NEPA prior to approving Frontier's expansion of operations to TTN – as BRRAM does in the original complaint – BRRAM's suit challenges the same FAA action – that is, the approval of the amendment to the Frontier OpSpecs – and is subject to dismissal.

## **ARGUMENT**

**I.     Argument: The District Court's Decision to Dismiss the Complaint for ack of Subject Matter Jurisdiction Was Correct and Should Be Affirmed.**

**Standard of Review**:  In its review of the district court's dismissal of a complaint for lack of subject matter jurisdiction, on a factual attack on subject matter jurisdiction, this Court exercises plenary review over legal conclusions and reviews findings of fact, including findings of fact related to jurisdiction, under a clearly erroneous standard of review.  *See CNA v. U.S.*, 535 F.3d 132, 139 (3d Cir. 2008).

### **A. The District Court Correctly Found that BRRAM's' Lawsuit Challenged the FAA's Final Order Amending Frontier's OpSpecs and Correctly Held that the Courts of Appeals Have Exclusive Jurisdiction Over the Complaint**.

As the district court correctly found, BRAMM's complaint challenges the FAA's approval of the amendment of Frontier's OpSpecs to include service to and from Trenton Airport.  Such claims are reviewed exclusively by the Court of Appeals.  BRAMM fails to identify any alternative cause of action or alternative final agency action taken by the FAA that would permit BRAMM to file first in the district court.  As a result, the district court's dismissal of BRAMM's complaint should be affirmed.

Title 49 U.S.C. § 46110(a) provides, in pertinent part:

[A] person disclosing a substantial interest in an order issued by the
Secretary of Transportation (or the . . . Administrator of the Federal
Aviation Administration with respect to aviation duties and powers
designated to be carried out by the Administrator) in whole or in part under
this part [or part B] . . . *may apply for review of the order by filing a petition*
*for review in the United States Court of Appeals for the District of Columbia*
*Circuit or in the court of appeals of the United States for the circuit in which*
*the person resides or has its principal place of business*. The petition must
be filed not later than 60 days after the order is issued. The court may allow
the petition to be filed after the 60th day only if there are reasonable grounds
for not filing by the 60th day.

49 U.S.C. § 46110(a) (emphasis added).

"As numerous courts have held, when the resolution of a plaintiff's claims in

federal court requires an examination of the underlying FAA proceedings, the

district courts lack subject matter jurisdiction over any such claims." *Fleming v.*

*U.S. Dept. of Transp.*, 348 Fed. Appx. 736, 737 (3d Cir. 2009). This premise is

well-settled and was recently followed by this Court in *Bellocchio*, a non-

precedential opinion, where this Court affirmed the district court's dismissal of a

NEPA challenge to FAA decisions concerning various projects at the Philadelphia

International Airport implicating final orders of the FAA subject to 49 U.S.C. §

46110(a)'s grant of exclusive jurisdiction to the courts of appeals. *Bellocchio v.*

*New Jersey Dept. of Environmental Protection,* 602 Fed. Appx. 876, 879, 2015

WL 1345663, at *2 (3d Cir. March 24, 2015). Other courts of appeals

unanimously agree. *See, e.g., Jones v. United States*, 625 F.3d 827, 829 (5th Cir.

23

2010) ("Section 46110(a) of the Federal Aviation Act vests the exclusive jurisdiction over challenges to FAA orders in certain United States Courts of Appeals"); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 630 (7th Cir. 2007) (holding that plaintiffs' NEPA challenge to FAA record of decision "falls within the exclusive jurisdiction of the court of appeals"); *Friends of Richards-Gebaur Airport v. FAA*, 251 F.3d 1178, 1184 (8th Cir. 2001) ("a court of appeals reviewing a petition for judicial review of an order of the FAA has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order"); *Sierra Club v. U.S. Dept. of Transp.*, 753 F.2d 120, 121 (D.C. Cir. 1985)(challenging the FAA's amendment of Frontier Airlines' operations specifications and explaining that the court of appeals takes jurisdiction under 49 U.S.C. § 1486, the predecessor version of § 46110(a)); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir. 1980) (affirming district court dismissal of complaint for lack of jurisdiction where plaintiffs challenged FAA regulations, explaining that "coherence and economy are best served if courts of appeals exercise their exclusive jurisdiction over final agency actions"). The FAA's action, and its accompanying decision to apply a categorical exclusion, is reviewable only in the courts of appeals under 49 U.S.C. § 46110. *See West v. FAA*, 320 Fed. Appx. 782 (9th Cir. 2009) (involving petitions for review brought in

court of appeals, pursuant to 49 U.S.C. § 46110, challenging FAA's categorical

exclusion decision); *Marshfield v. FAA*, 552 F.3d 1 (1st Cir. 2008)(same).

Here, the FAA considered a request by Frontier and took an action on that

request, as demonstrated by the fact that the FAA considered how to evaluate that

action under NEPA (concluding that it was categorically excluded). JA85

(Complaint, Ex. 6, p. 1). As a result, the district court correctly found that "the

lawsuit challenges the order of the FAA that amended Frontier's OpSpecs," JA17

(Opinion, p. 13, lines 6-7),[8] and that a final decision occurred, JA14 (Opinion, p.

11, lines 21-22), and held, consistent with applicable case law and the

jurisdictional directive in 49 U.S.C. § 46110(a), that BRRAM's suit must be

brought in an appropriate court of appeals. As the district court explained:

"[a]pproval of Frontier's OpSpecs is a decision that falls within the provisions of

Section 46110(a)" and "that section provides that review of the orders of [the]

FAA falls squarely within the exclusive jurisdiction of the Circuit Courts." JA17

(Opinion, p. 13, lines 13-17).

---

[8] To the extent that BRRAM has attempted to recast its complaint in its arguments to this Court beyond what is actually alleged in the complaint, any such attempt fails as a complaint cannot be amended by a brief. See *Pennsylvania ex rel v. Zimmerman v. Pepsico*, 836 F.2d 173 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")(citation omitted). Further, BRRAM's arguments to this Court do not undermine the district court's finding that that "the lawsuit challenges the order of the FAA that amended Frontier's OpSpecs," JA17 (Opinion, p. 13, lines 6-7), or turn the lawsuit into something beyond what is alleged or amend the complaint.

**B. BRAMM's Attempts to Evade this Settled Jurisdictional Law Fail.**

BRRAM attempts to evade this settled jurisdictional law in three ways.

First, it generally relies upon a series of antiquated and inapposite NEPA decisions

from other jurisdictions and outdated aviation law, and it ignores the implications

of 49 U.S.C. § 46110(a)'s narrowly-drawn jurisdictional provision.  Second, to the

extent it agrees that the FAA's compliance with NEPA in a final order is

reviewable only in the court of appeals, it incorrectly describes this case instead as

one where "there is *no* NEPA implementation and *no* order and *no* proceeding in

which compliance with NEPA has been examined." (BRRAM's Brief, p. 48).

Third, its claim that the district court had jurisdiction to review the expansion of

Frontier's operations beyond two flights per week, (BRRAM's Brief, pp. 47-50),

relies on the faulty premise that Frontier was required to seek FAA approval in

order to increase the number of flights operating out of Trenton Airport; in fact, no

such approval is required.   As a result, BRRAM's challenge to the district court's

dismissal fails.

### 1. BRAMM's Challenge to the District Court's Dismissal Relies on Outdated Caselaw and Ignores Settled Principles of Jurisdictional Law.

BRRAM's argument that the district court had subject matter jurisdiction

relies on a series of antiquated and inapposite NEPA decisions from other

jurisdictions.  The principal case relied upon by BRRAM, *State of Illinois ex rel*

*Scottt v. Butterfield*, 396 F. Supp. 632 (N.D. Ill 1975), did not even analyze subject

matter jurisdiction under 49 U.S.C. § 46110 or its predecessors.  "When a potential

jurisdictional defect is neither noted nor discussed in a federal decision, the

decision does not stand for the proposition that no defect existed."  *Arizona*

*Christian Sch.Tuition Org. v. Winn*, 563 U.S. 125, 144,131 S.Ct. 1436, 1448, 179

L. Ed. 2d 523 (2011)(citations omitted).  BRRAM points to just one case which

addressed subject matter jurisdiction under 49 U.S.C. § 46110 or its predecessors.

In that case, *City of Irving, Tex. v. FAA*, 539 F. Supp. 17 (N.D. Tex. 1981), the

district court, while finding that no final order was issued, rejected the FAA's

argument that a NEPA suit raising a challenge to a test of air traffic control

procedures without having conducted an EIS must be dismissed for lack of subject

matter jurisdiction because the suit must be filed in the courts of appeal pursuant to

the Federal Aviation Act, 49 U.S.C. § 1301.  *City of Irving*, 539 F. Supp. at 34.

However, just five years after that decision, that same district court, relying upon

an intervening decision from the Fourth Circuit in *City of Alexandria v. Helms*, 728

F.2d 643,  (4th Cir 1984)(holding that FAA action implementing flight  pattern test

was a final order and because NEPA does not provide an independent basis for

jurisdiction, the district court lack jurisdiction), overruled its jurisdictional holding

in *Irving*:  "this Court must agree with the Fourth Circuit ... must reject, if not

overrule, [its jurisdictional ruling] in *Irving* ... and must hold that a NEPA claim

does not provide an independent basis for jurisdiction in the district court for

challenges to FAA actions involving the approval of, or the failure to require,

environmental impact statements." *City of Southlake v. FAA*, 679 F. Supp. 618,

621-22 (N.D. Tex. 1986)(footnotes omitted).[9]

Likewise, BRRAM's argument and the NEPA cases BRRAM relies upon do

not reflect current aviation law.  Prior to the codification of the aviation statutes,

the predecessor of §46110, and initially §46110 itself, applied only to orders of the

Administrator dealing with what is defined as his Commerce and Safety functions

(now Part A), or orders under the FAA Act.  Orders relating to airport

development, which were authorized by separate airport development acts (now

Part B of Subtitle VII of Title 49 of the United States Code), were not covered by

§46110 and its predecessor unless the order also included decisions made pursuant

to the commerce and safety functions.  *See Suburban O'Hare Com'n. v. Dole*, 787

F. 2d 186, 192-193 (7th Cir. 1986) ("when an order is based in substantial part on a

statutory provision providing for exclusive review by a court of appeals, then the

entire proceeding must be reviewed by a court of appeals.")    Moreover, in 2003,

Congress amended Section 46110(a) to make clear that the appellate courts

enjoyed exclusive jurisdiction over FAA orders that implicate airport development

and noise, which are governed by Part B of the aviation subtitle of Title 49.  *See*

---

[9] BRRAM's Brief does not mention *City of Southlake*.

Vision 100 - Century of Aviation Reauthorization Act, Pub. L. No. 108-176117 Stat. 2490, § 228. *See also St. John's United Church of Christ v. City of Chicago*, 401 F. Supp. 2d 887, 903 n.10 (N.D. Ill. 2005) (explaining the legislative history of the 2003 amendments to Section 46110(a)), *aff'd*, 502 F.3d 616 (7th Cir. 2007). As the Conference Report to the 2003 amendments explained, Congress intended "to clarify that decisions to take actions authorizing airport development projects are reviewable in the circuit courts of appeals under section 46110, notwithstanding the nature of the petitioner's objections to the decision." H.R. Conf. Rep. 108-334, at 160-161.

In any event, even if BRRAM could establish a theory under which the district court could take jurisdiction pursuant to NEPA, the APA, or 28 U.S.C. § 1331, general statutory provisions addressing federal court jurisdiction do not override the narrowly-drawn exclusive jurisdiction provision of 49 U.S.C. § 46110(a). It is well-established that the more narrowly drawn jurisdictional provision – in this case, 49 U.S.C. § 46110(a) – is determinative. "When two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation. *California Save Our Streams Council v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989). "In a variety of contexts the [Supreme Court] has held that a precisely drawn, detailed statute pre-empts more general remedies." *Anselma Crossing L.P. v. U.S. Postal Serv.*, 637 F.3d 238 (3d Cir.

2011) (citation omitted).  This rule flows from the Congressional intent to carve out from the broader scheme a specific exception for a particular type of claim. *Block v. North Dakota*, 461 U.S. 273, 285 (1983).  "[W]hen review of an agency order is at issue and when Congress has vested exclusive jurisdiction over that review in the Courts of Appeals, NEPA does not provide independent grounds for district court jurisdiction."  *City of Alexandria v. Helms*, 728 F.2d 643, 646 (4th Cir. 1984).  *See also City of Rochester v. Bond*, 603 F.2d 927, 936 (2d Cir. 1979) ("the district court may not exercise concurrent jurisdiction merely because a violation of NEPA is alleged").  Further, to the extent there could be any ambiguity, "in administrative appeals, where it is unclear whether jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter."  *Gen. Elec. Uranium Mgmt. Corp. v. United States Dep't  of* Energy, 764 F.2d 896, 903 (D.C. Cir. 1985)(footnote and citation omitted).

### 2.  BRRAM's Arguments that the FAA Never Issued a Final Order Covered by 49 U.S.C. § 46119(a) Are Meritless.

BRRAM also contends the FAA never issued an order covered by 49 U.S.C. § 46110(a), because the FAA never issued a final order,  (BRRAM's Brief, pp. 45-47);  the FAA never made public or published an order, (BRRAM's Brief, pp. 36-41); the order was not the result of a proceeding and the compilation of a record, (Plaintiffs' Brief, pp. 41-45); and the district court's findings regarding the order at

issue were confused.  (BRRAM's Brief, pp. 33-34).  BRRAM's arguments are without merit.

First, the decision approving Frontier's OpSpecs amendment request meets the requirements of a final order.  This Court has considered the following five factors in assessing finality: "1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act."  *CEC Energy Co., Inc. v. Pub. Serv. Comm'n of Virgin Islands*, 891 F.2d 1107, 1110 (3d Cir. 1989) (*citing Solar Turbines, Inc. v. Seif*, 879 F.2d 1073, 1080 (3d Cir. 1989) (*citing Fed. Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-40 (1980)).  This Court's finality assessment comports with the Supreme Court's determination of indicia of finality: "a definitive statement of the agency's position which has a direct and immediate effect on the petitioner's day-to-day operations, which has the status of law, and of which immediate compliance is expected."  *Aerosource,* 142 F.3d at 579 (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 241, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980).

The FAA's decision approving the amendment to Frontier's OpSpecs was a final order as it represented the agency's definitive and final position, had a direct and immediate effect, had the status of law and involved immediate compliance. The district court properly determined that the final decision occurred within the meaning of 49 U.S.C. § 46110(a).

Second, BRRAM's argument that the FAA never made public or published the order is misplaced. Here, the FAA published its decision on Frontier's OpSpecs amendment request to Frontier. Frontier, in turn, relied on that decision and began to sell (and then operate) flights to and from Trenton Airport. The FAA's order need not be published to the public at large to be a reviewable order covered by 49 U.S.C. § 46110. *See Durso v. Napolitano*, 795 F. Supp. 63, 68-69 (D.D.C. 2011) (TSA checkpoint screening protocol a final order despite fact that it was not disseminated to the public).

This Court has focused not on the method of publication but on whether an FAA decision has legal consequences. An order for purposes of 49 U.S.C. § 46110 "need not be formal, the product of a formal decision-making process, or be issued personally by the Administrator," but it must "impose an obligation, deny a right, or fix some legal relationship." *Aerosource*, 142 at 578. As such, letters may qualify as orders under 49 U.S.C. § 46110(a). *Aerosource*, *id*. at 177 ("[L]etters and other communications can be final orders depending upon the

32

surrounding circumstances and other indicia of finality."). *Accord Amerijet*

*International, Inc. v. Pistole*, 753 F.3d 1343, 1349 (D.C. Cir. 2014) (holding that

TSA letters constituted "orders" under 49 U.S.C. § 46110(a) because the letters

had "legal consequences" and were the "consummation of the agency's decision-

making process"); *Security Point Holdings, Inc. v. TSA*, 769 F.3d 1184, 1187 (D.C.

Cir. 2014)(same); *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1187 (D.C.

Cir. 2007 (FAA letter qualified as order under Section 46110(a)).

Third, BRRAM's argument that the order was not the result of a proceeding

and the compilation of a record is without merit.  The question of whether there

was a proceeding and whether there is a record for the court to review comes after

it is determined that the case is properly before the court.  *See San Diego Air*

*Sports Center, Inc. v. FAA*, 887 F.2d 966, 969 (9th Cir. 1989), *Southern California*

*Aerial Advertisers' Assn. v. FAA*, 881 F.2d 672 (9th Cir 1989) (administrative

record that was little more than a letter sufficient to review procedural challenges.)

There is simply no basis for BRRAM to argue that no record for review exists.  As

BRRAM's case was not properly before the district court, and was resolved on a

motion to dismiss, the FAA did not have the opportunity to file an administrative

record and there is no such record now before this Court.

Finally, BRRAM's assertion that the district court was confused and did not

issue a final order is unsupported.  The district court was not confused:  it correctly

found that a final decision occurred, JA15 (Opinion, p. 11, lines 21-22); and that

"the FAA order being challenged by the plaintiffs is the FAA's September 25,

2012 order amending Frontier OpSpecs which authorizes Frontier to provide

commercial passenger service in and out of Trenton Airport." JA16 (Opinion, p.

12, lines 2-6). The fact that the district court discussed the May 28, 2013, letter

from the FAA to BRRAM's counsel does not mean that the district court was

confused regarding the final order.[10]

BRRAM's position seems to be that the FAA has taken no judicially

reviewable actions of any kind. (BRRAM's Brief, p. 42 ("[T]here has never been

any action by the FAA that would constitute an 'order,'" and "to this day, the FAA

has done nothing that would be reviewable in this court . . .")). If that is correct, of

course, then neither this Court *nor* the district court could take jurisdiction. If the

cause of action to consider the FAA's amendment of Frontier's OpSpecs is not

---

[10] The May 28, 2013, letter from the FAA to BRRAM was not an order of
the FAA for purposes of 49 U.S.C. § 46110, nor was it a final agency action
reviewable under the APA. That letter was not "a definitive statement of the
agency's position which has a direct and immediate effect on the petitioner's day-
to-day operations, which has the status of law, and of which immediate compliance
is expected." *Aerosource,* 142 F.3d at 579 (citing *Standard Oil*, 449 U.S. at 239).
This letter is, however, relevant to whether BRRAM's suit was timely even if the
suit was properly filed in district court. As discussed below in Part II, if BRRAM
had no notice of the facts upon which its lawsuit is based until the May 28, 2013,
letter, BRRAM still failed to file a petition for review within sixty days of that
notice. *See* JA85-86 (Complaint, Ex. 6).

found in 49 U.S.C. § 46110, then it must be found in the APA, because NEPA itself provides no cause of action to review federal agency decisions. *See Tinicum Twp, PA v. U.S. Dep't of Transp.*, 685 F.3d 288, 294 (3d Cir. 2012)(reviewing FAA compliance with NEPA using APA standards); *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247-48 (3d Cir. 2011) (holding that NEPA challenge in the district court may only be brought to challenge "final agency action" under the APA) (citing, *inter alia*, *TSG Inc. v. EPA*, 538 F.3d 264, 267 (3d Cir. 2008)). BRRAM's theory that the FAA has not taken any "action" would mean not only that this Court lacks exclusive jurisdiction, but that the district court properly dismissed for lack of jurisdiction as well.

### 3. BRRAM's Jurisdictional Argument is Based on the Unsupported Premise That the Approval of Frontier's OpSpecs Was Conditioned on Frontier Operating Only Two Flights Per Week.

BRRAM's argument that the district court had jurisdiction to review the expansion of Frontier's operations beyond two flights per week, (BRRAM's Brief, pp. 47-50), not only seeks review in the wrong court, as discussed above; it is also based upon the unsupported premise that the FAA is required to approve any increase in an airline's service to an airport listed in the airline's OpSpecs.

Nowhere do the pertinent regulations require or even permit the FAA to limit the

frequency of operations by a carrier at a particular airport, absent a safety issue.[11]

---

[11] BRRAM makes the unfounded assertion that the FAA's position regarding the effect of an OpSpecs amendment "amounts to a blanket approval of an unlimited number of flights to the end of time" and "is the ultimate abdication of regulatory responsibility." (BRRAM's Brief, pp. 55-56). To the contrary, the FAA has not approved unlimited flights, nor has it abrogated its safety responsibilities by taking the position that an air carrier can operate the number of flights the market will bear.

The FAA has authority to impose restrictions on the number of operations at a particular airport. 49 U.S.C. §40103. The FAA imposes restrictions at airports where the airfield and airspace capacity at a particular airport is exceeded by demand. Slot Management and Transparency for LaGuardia Airport, John F. Kennedy International Airport, and Newark Liberty International Airport, 80 Fed. Reg. 1274-01, 1277 (proposed Jan. 8, 2015). As to Trenton Airport, there is no showing that operations exceed its airfield and airspace capacity. Indeed, Trenton Airport had a history of attracting and then losing scheduled air service. JA65 (Complaint, Ex. 2, p. 2, n.4).

Moreover, while the FAA's highest priority is maintaining safety in air commerce, the FAA is also charged with encouraging new and existing air carriers to enter into air transportation markets and promoting competition to provide an efficient air transportation system, among other policy goals. See 49 U.S.C. § 40101(a)(1), (6), (12)-(13). In addition, a citizen has a public right of transport through the navigable airspace. 49 U.S.C. §40103(a)(2). In regulating the airspace and operating the air traffic control system, FAA bears in mind the public's right to transit through the National Airspace System (NAS). The FAA has a number of tools, as the operator of the air traffic control system, to ensure safety. For example, the FAA can employ its ground stop program, which holds aircraft on the ground until they can safely be accommodated by the NAS. NBAA, https://www.nbaa.org/ops/airspace/tfm/tools/ground-stop.php (last visited Mar.18, 2016); Airman Information Manual, Pilot/Controller Glossary (PCG) PCG G-2 (12/10/15).

Instead, an airline's operating certificate includes the stipulation that the air carrier's operations must be conducted in accordance with the provisions and limitations specified in the carrier's OpSpecs. 14 C.F.R. § 119.5(g). One component of the OpSpecs includes "each regular and alternate airport to be used in scheduled operations[.]" 14 C.F.R. § 119.49(a)(4). If an airline wants to provide regular scheduled service to an airport not listed as approved in its OpSpecs – as Frontier did here in its request to service Trenton Airport – it must request the FAA to amend its OpSpecs. The FAA may approve a carrier's request to amend its OpSpecs if the FAA "determines that safety in air commerce and the public interest allows the amendment." 14 C.F.R. § 119.51(a)(2).

Nothing on the face of the OpSpecs amendment at issue here limits Frontier to two flights per week at Trenton Airport. JA91-JA102 (Montigney Dec., Ex. B). Once the FAA approved the amendment to Frontier's OpSpecs to permit it to operate at Trenton Airport, JA89, JA91-JA102 (Montigney Dec., para. 11 and Ex. B); SA1-SA12, Frontier was free to determine which other airports approved in its OpSpecs it would serve from Trenton Airport, as well as the number of flights it

---

In any event, a FAA decision regarding how to carry out its safety responsibilities would likely be the type of decision subject to 49 U.S.C. § 46110(a), which BRRAM could only challenge in the courts of appeals.

would provide.  The FAA's approval was a definitive statement that Frontier's

OpSpecs were amended to allow it to operate from Trenton Airport.

Contrary to BRRAM's position, Frontier was not required to seek approval

from the FAA to provide more flights than the two flights per week listed in its

letter, dated September 19, 2012, requesting an amendment of its OpSpecs to

permit it to serve Trenton Airport a regular airport.  BRRAM's argument that any

expansion beyond two flights per week required new approval is thus unsupported.

### C.  Any Discussion of the Merits of BRRAM's Challenge to the FAA's OpSpecs Amendment, Including the Categorical Exclusion Decision, is Premature and, if This Court Determines that This Court or the District Court Has Jurisdiction, the Case Should Proceed as a Record-Review Case to be Decided on the Administrative Record.

BRRAM's brief is replete with arguments as to the merits of the lawsuit,

including BRRAM's arguments that the Airline Deregulation Act did not divest the

FAA of authority to control the frequency of a carrier's flights, (BRRAM's Brief,

pp. 51-59), that the Airline Deregulation Act did not repeal the FAA's

requirements under NEPA, (BRRAM's Brief, pp. 60-63); and that the FAA must

conduct a NEPA analysis now, (BRRAM's Brief, pp. 63-70).  These arguments are

not before this Court, as this case is an appeal of the resolution of a motion to

dismiss by the district court.  If this Court (or somehow the district court) had

subject matter jurisdiction to hear BRRAM's merits arguments, those arguments

would be reviewed on the administrative record under the APA.  *See*  49 U.S.C.

§46110; *Motor Vehicle Manuf. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 33-35 (1983); *Tinicum Twp. v. USDOT*, 685 F.3d 288, 294 (3d Cir. 2012)(stating petition for review of FAA decision which constituted final agency decision subject to review under APA in the court of appeals). If this Court believes that it has jurisdiction and finds reasonable grounds exist for BRRAM's untimely filing, the appropriate next stage is for the record to be filed and, then, briefing on the merits. The APA provides that courts are to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "As a general matter, courts confine their review to the administrative record, which includes all materials compiled by the agency that were before the agency at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997)(internal quotation marks and citations omitted). Under the APA, an agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Section 46110 makes it clear that jurisdiction and the adequacy of the administrative record are separate inquiries. Section 46110(a) vests jurisdiction in the appellate courts and mentions nothing about the adequacy of the administrative record as a precondition to jurisdiction. In contrast, Section 46110(b) requires that once jurisdiction is accepted, the FAA must file with the appellate court "a record of any proceeding in which the order was issued …." 49 U.S.C. § 46110(b).

In the event of deficiencies with the record, Section 46110(c) specifies that the appellate court "may order … further [administrative] proceedings." 49 U.S.C. § 46110(c). Consistent with this reading of Section 46110, the D.C. Circuit has held that the "lack of an adequate agency record to review does not eliminate a circuit court's jurisdiction, but rather requires the court to remand to the agency so the agency can provide a record for review." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 599 (D.C. Cir. 2007) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985)).

Accordingly, any discussion of the merits is premature at this stage and, if this Court determines that it does have jurisdiction, the appropriate next stage is for the Court to order that an administrative record be filed and, then, briefing on the merits.

**II.    Argument: BRRAM's Challenge to the FAA's Decision Authorizing Frontier to Provide Commercial Passenger Service at Trenton Airport is Time-Barred by 49 U.S.C. § 46110. Accordingly, This Court Should Not Deem the Appeal a Petition For Review and Decide the Issue, Because Even if BRRAM Had Filed in the Right Court, Its Suit Would be Untimely Under 49 U.S.C. § 46110.**

**Standard of Review**: The district court did not reach the FAA's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). This Court exercises plenary review over a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

40

No matter what court were to hear BRRAM's complaint, it is subject to dismissal for failure to comply with the applicable statute of limitations. A petition to review a final order of the FAA, in the court of appeals, "must be filed not later than 60 days after the order is issued." 49 U.S.C. § 46110. The final order BRRAM challenges – that is, the FAA's amendment to Frontier's OpSpecs authorizing Frontier's expansion of operations to Trenton Airport – was issued on September 25, 2012. BRRAM filed this lawsuit on April 28, 2014, long after the sixty-day period. As such, the complaint is time-barred unless "there are reasonable grounds for not filing by the 60th day." 49 U.S.C. § 46110; *see also Belocchio*, 602 Fed. Appx. at 879 n.2 (agreeing with the district court that claims challenging FAA final orders filed beyond sixty days would be time-barred).

Generally, courts have found reasonable grounds for late filing only where the delay is the result of more than mere ignorance of the order. *See Avia Dynamics v. Federal Aviation Administration*, 641 F.3d 515, 521 (D.C. Cir. 2011) (lack of actual notice of the order's posting did not delay the start of the sixty-day filing period); s*ee also Heide v. FAA*, 110 Fed.Appx. 724, 725 (8th Cir.2004) (unpublished) ("The fact that Petitioners were not personally aware of the order until [a later date] is irrelevant, as it is the date of the order's issuance that is pertinent under § 46110 (a)."), *cert. denied*, 544 U.S. 1018, 125 S.Ct. 1983, 161 L.Ed.2d 857 (2005). Reasonable grounds have been found to exist where the order

was misleading in its applicability, *see National Air Transportation Ass'n. v. McArtor*, 866 F.2d 483 (D.C. Cir. 1989); where a petitioner was attempting to exhaust administrative remedies, *see Reder v. Administrator, FAA*, 116 F.3d 1261 (8th Cir. 1997); where the FAA caused a petitioner's confusion, *see Greater Orlando Aviation Authority v. FAA*, 939 F.2d 954 (11th Cir. 1991); and where the challenger was aware that the order might be undergoing modification and was unable to determine the extent of the modification. *See Safe Extensions, Inc. v. Federal Aviation Administration*, 509 F.3d 593, 604 (D.C. Cir. 2007).   However, a petitioner's "dogged prosecution of his petition in the district court is not a reasonable ground to excuse his failure to file his petition on time in this Court." *Corbett v. Transportation Sec. Admin.,*767 F.3d 1171   ( 11th Cir. 2014).  *See also Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 734 (9th Cir.2006) ("[A] delay stemming from the filing of a petition or complaint with the wrong court is not, in general, a reasonable ground for delay." ).

Here, at the time the FAA amended Frontier's OpSpecs, on September 25, 2012, that amendment was sent to Frontier, not to BRRAM.  *See* JA91-102 (Montigney Dec., para. 11 and Ex. B); SA1-SA12.  However, BRRAM was aware at some point thereafter of Frontier's operations, which were of course public and advertised.  On April 24, 2013, BRRAM's counsel wrote the FAA a letter asserting that Frontier was providing at least 47 flights into and out of Trenton Airport, JA72

(Complaint, Ex. 4, p. 4), and alleged a violation of NEPA in connection with the FAA's approval of the expansion of Frontier's operations to Trenton Airport. JA73-74 (Complaint, Ex. 4, pp. 5-6).  However, BRRAM now contends that it did not know of the FAA's amendment to Frontier's OpSpecs at the time of that letter, let alone within sixty days of September 25, 2012 (the date the FAA issued the OpSpes amendment).  But, it is undisputed that the FAA's response letter of May 28, 2013, advised  BRRAM that the FAA amended  Frontier's OpSpecs to add Trenton Airport.  JA85-JA86 (Complaint, Ex. 6).  The letter further elaborated that: 1) the amendment of an air carrier's OpSpecs is a major federal action subject to NEPA; 2) the FAA believed the amendment was subject to a categorical exclusion; 3) once the airport is added to the airline's OpSpecs, the airline is free to determine the level of service offered at that that airport without any further FAA approval; and 4) because the changes announced by Frontier do not constitute a federal action NEPA requirements are not triggered.  JA85-86 (Complaint, Ex. 6).

Assuming *arguendo* that BRRAM did not know of the OpSpecs amendment until its receipt of the May 28, 2013, letter, BRRAM may have had "reasonable grounds" under 49 U.S.C. § 46110 to file a petition for review challenging the OpSpecs amendment within sixty days of its receipt of the May 28, 2013 letter. But there is no need for this Court to decide this issue here, because BRRAM

waited eleven months after the FAA's May 28, 2013, letter to file its suit (and then

filed in the wrong court).  *See* Case No. 14-2686 (D.N.J.)(Docket No. 1).

BRRAM's argument that reasonable grounds exist to make the April 28,

2014, suit timely because "the FAA engendered considerable confusion," is

without merit.  No later than BRAMM's receipt of the letter of May 28, 2013, it

possessed sufficient information concerning the OpSpecs amendment – and the

implications of that amendment – and the FAA's corresponding categorical

exclusion of the amendment to file a timely petition for review.  Further,

reasonable grounds do not exist for BRRAM's untimely filing merely because

BRRAM believes the FAA committed to an environmental analysis in the 2008

Withdrawal Order and a noise analysis in the May 28, 2013, letter.   Regardless of

how BRRAM interpreted the 2008 Withdrawal Order, BRRAM was not confused

– as of BRRAM's receipt of the letter of May 28, 2013, letter, BRRAM knew that

the FAA had amended Frontier's OpSpecs, that such a decision was subject to a

categorical exclusion and that Frontier was operating numerous commercial

passenger flights to and from Trenton Airport.  JA85 (Complaint, Ex. 6).

Moreover, reasonable grounds do not exist for BRRAM's untimely filing merely

because the FAA's May 28, 2013, letter advised that it was "willing to undertake a

noise analysis to determine if mitigation was necessary" and expected to provide

those results sometime in mid-August 2013.  JA85 (Complaint, Ex. 6).  BRRAM's

letter of October 31, 2013, acknowledged that it had not received any such noise analysis. JA84 (Complaint, Ex. 5, p. 10). Yet, BRRAM waited approximately six more months beyond October 31, 2013, before filing suit.

Accordingly, no reasonable grounds exist for BRRAM's untimely filing. As such, this Court should not deem the appeal a petition for review and decide the issue. Even if BRRAM had filed in the right court, the suit would be untimely.

## III.    Argument: The District Court Properly Denied BRRAM's Motion to Amend.

**Standard of Review**: This Court reviews a district court's refusal to allow a plaintiff to amend her complaint pursuant to Fed. R. Civ. P. 15(a) for abuse of discretion.

Leave to amend under Fed. R. Civ. P. 15(a) is appropriately refused when the amendment would be futile. A proposed amendment is futile when it would not survive a motion to dismiss (e.g., where the amendment fails to cure a jurisdictional defect). *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Accordingly, claims which cannot be cured by any amendment should be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that dismissal without leave to amend is appropriate if amendment would be futile).

Here, the district court properly dismissed BRRAM's motion to amend as moot. BRRAM's proposed amendment would not have saved the lawsuit from

dismissal.  The addition of three municipality plaintiffs and BRRAM's  recasting of the suit are inconsequential.  Whether BRRAM characterizes the suit as an action for declaratory and injunctive relief against the FAA for its alleged failure to comply with NEPA when Frontier expanded service beyond the two flights allegedly authorized in Frontier's OpSpecs amendment – as it does in the proposed amended complaint, JA112-JA113 (Proposed First Amended Complaint, para. 17) – or as an action for declaratory and injunctive relief against the FAA for its failure to comply with NEPA prior to approving Frontier's expansion of operations to Trenton Airport – as BRRAM does in the original complaint, JA48-JA50 (Complaint, paras. 53-62)  – BRAMM seeks the same relief as to the FAA and implicates the same final order of the FAA - that is, the FAA's approval of the amendment to Frontier's OpSpecs.  Accordingly, if filed, the proposed first amended complaint would be subject to dismissal for lack of subject matter jurisdiction, as exclusive jurisdiction to review such a decision lies in the courts of appeals, pursuant to 49 U.S.C. § 46110.  *See supra* Argument I.

Moreover, BRRAM's suit is time-barred.  The final order BRRAM challenges – that is, the FAA's approval of an amendment to Frontier's OpsSpecs authorizing Frontier's expansion of operations to TTN – was issued on September 25, 2012.  Here, no "reasonable grounds" exist to excuse BRRAM's late filing. *See supra* Argument II.

## **CONCLUSION**

The decision of the district court should be affirmed.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

s/ J. Andrew Ruymann

By: J. ANDREW RUYMANN
Assistant U.S. Attorney

Dated: May 4, 2016

Of Counsel:
Mary Madeline McCarthy, Esq.
Regional Counsel
Federal Aviation Administration
Burlington, MA