In the
United States Court of Appeals
for the Third Circuit
No. 15-2393

BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, MS. HOLLY BUSSEY, MR. WILLIAM LYNCH, MR. RICHARD DELELLO, MS. JULIE POWER, MR. JOHN GIACOBETTI, MRS. JENNIFER GIACOBETTI, MS. DEBORAH LEAMANN, MS. CAROLINE BONDI, MS. DELORES BRIENZA, MR. RICHARD WAYNE,

Appellants,

v.

UNITED STATES FEDERAL AVIATION ADMINISTRATION (FAA), MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, and FRONTIER AIRLINES, INC.,

Appellees

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:14-cv-02686
Honorable Peter G. Sheridan, District Judge

## APPELLANTS' REPLY BRIEF

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555; Fax: (609) 921-2181
Attorneys for BRRAM, Inc., Ms. Holly Bussey,
Mr. William Lynch, Mr. Richard Delello,
Ms. Julie Power, Mr. John Giacobetti,
Mrs. Jennifer Giacobetti, Ms. Deborah
Leamann, Ms. Caroline Bondi,

Dated June 1, 2016.          Ms. Delores Brienza, and Mr. Richard Wayne

# Table of Contents

Page

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    There Was No "Order" Issued By The FAA That Was
Appealable To The Court Of Appeals . . . . . . . . . . . . . . . . . . . 2

II.    There Has Never Been Any <u>Final</u> Order Issued By The
FAA That Was Appealable To The Court Of Appeals . . . . . . 5

III.    The FAA Continues To Make Things Up About Its
Authority To Control An Air Carrier's Operations . . . . . . . . 7

IV.    The FAA's Argument About Its Failure To Conduct A
NEPA Analysis Is Circular . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.    The District Court Erred In Dismissing BRRAM's Motion
To Amend Its Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.    The Complaint Was Not Time-Barred . . . . . . . . . . . . . . . . . 15

Table of Citations

Page

CASES

*Morrison v. Olson*, 487 U.S. 654, 726 (1988) (Scalia, J., dissenting)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, fn 1

*S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943)  . . . . . . . . . . . 13, fn 4


STATUTES

*Federal Aviation Act of 1958*, P.L. 85-726, 72 Stat. 731, § 604 . . 9, fn 3

*National Environmental Policy Act*, 42 U.S.C. § 4321, et seq.  . . . . . 4-5

P.L. 103-272, 108 Stat. 1123 . . . . . . . . . . . . . . . . . . . . . . . . . . 9, fn 3

49 U.S.C. § 44705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

49 U.S.C. § 44714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

49 U.S.C. § 46110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

Plaintiffs and appellants, Bucks Residents For Responsible Airport Management (BRRAM) and Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, M. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard Wayne, file this reply to the brief of the Federal Aviation Administration (FAA; FAA Brief). The FAA Brief is an exercise in misinformation, misdirection, and ultimately, in futility. The District Court plainly had jurisdiction over the complaint and the proposed amended complaint, and its decision must be reversed.

Plaintiffs continue to be disappointed and mystified why the FAA would go to such faulty lengths to expressly break a promise it made in 2008 to prepare and review an environmental impact statement (EIS) in the event of low fare high frequency operations such as those now conducted by Frontier. (As we discuss below, the FAA's attempt in its brief to disavow that promise is especially futile.)

The FAA Brief contains a significant concession. Only two FAA actions concern its decision to permit Frontier Airlines to commence operations at Trenton-Mercer Airport (TTN). In what the FAA labels an

amendment to Frontier's Operating Specifications accomplished by an exchange of a non-public letter request dated September 19, 2012, JA90, and email approval dated September 25, 2012, JA102 (both referred to as the Ops Specs Amendment), the FAA gave permission to Frontier for two and only two identified flights per week out of TTN. The FAA incorrectly argues that this entirely non-public exchange of communications constitutes an "order" for purposes of judicial review. The second FAA action was a letter dated May 28, 2013, from the FAA Regional Administrator to counsel for BRRAM (May 28 Letter). The FAA now concedes that the May 28 Letter is not an "order" for purposes of judicial review. FAA Brief at 34, n.10. This concession helps narrow the jurisdictional issue and shows that this court did not have exclusive jurisdiction to review the absence of NEPA review for Frontier's extensive operations at TTN, and thus the case was properly before the District Court.

## ARGUMENT

### I. There Was No "Order" Issued By The FAA That Was Appealable To The Court Of Appeals

By law, all "orders" issued by the FAA, but only "orders," are

exclusively reviewable in the court of appeals, pursuant to 49 U.S.C. 46110. An "order" for purposes of this jurisdictional statute is not just anything the FAA does or does not do. As we set forth in considerable detail and analysis in our initial brief, there has never been any action by the FAA that would meet the well-settled test of what constitutes an "order." BRRAM Brief at 23-24, 42-43. We addressed both the Ops Specs amendment and the May 28 Letter, but the FAA Brief now agrees that the March 28 Letter was not in any legally cognizable sense final. FAA Brief at 34, n. 10. If there was any "order," then, it had to be the Ops Specs amendment, which consisted of a letter and an email never issued or published to anyone or made public until the FAA's motion in the lower court. The FAA does not in any way dispute that the Ops Specs amendment was never published in any manner, let alone in the Federal Register, never the subject of any announcement, never posted on any website available to the general public. The FAA does not dispute that there was no "proceeding" at the FAA, no notice or opportunity for comment by any interested party, no record compiled of the effects of Frontier's proposed expansion or actual expansion, no record compiled of

the environmental effects and alternatives including alternative routes and noise mitigation measures, nothing at all. The FAA does not dispute that there was no "Record Of Decision (ROD)," as the FAA itself styles its orders.

As it did not below, the FAA now tries to argue that the submission of a record comes after a case is properly filed, and that the FAA "did not have the opportunity to file an administrative record." FAA Brief at 33. The court will note that the FAA is careful not to say that any such record actually exists beyond the Ops Specs amendment itself. Since only four business days passed between the submission of the request and its approval, it is disingenuous to suggest that any "record" was complied beyond those two documents.

The FAA Brief simply asserts that the Ops Specs amendment was an "order," without closely analyzing the particulars of the caselaw addressing what constitutes an "order" that is exclusively appealable to this court. The FAA makes no real attempt to demonstrate that our analysis is in any way incorrect; it mostly just offers a string cite. FAA Brief at 23-25. Every single *National Environmental Policy Act* (NEPA),

42 U.S.C. § 4321, et seq., case cited by the FAA was a review of an FAA order that was the product of an proceeding at the FAA, in which a reviewable record was produced, and in which the agency explicitly declined to engage in NEPA analysis, usually offering its reasons for that omission. All of that is missing from this case. As we pointed out in our initial brief, there is no record for this court to review. Two private communications which are utterly silent on any NEPA analysis do not make a record.

The FAA tries to argue that the Ops Spec amendment was "final" for purposes of judicial review in this court, but we address that next.

## II. There Has Never Been Any <u>Final</u> Order Issued By The FAA That Was Appealable To The Court Of Appeals

In our initial brief, we demonstrated that the Ops Specs amendment is not "final" agency action, another bedrock requirement for an appealable action. BRRAM Initial Brief at 23-24, 41-43. There is a five-part test for deciding whether an agency action is "final" for purposes of judicial review, and we showed that the Ops Specs amendment was not final by any of the five criteria. The FAA makes no effort to legitimately contest this. Instead, it simply recites the five criteria and then baldly

asserts that Ops Specs amendment meets the test, without any elaboration or argument at all. FAA Brief at 31-32. "It is so because I say it is so" is not a valid basis for a decision denying a party its day in court.[1] The FAA Brief devotes the balance of its argument under this heading to arguments about whether the Ops Specs was an "order," which we have already addressed above. FAA Brief at 32-34.

The Ops Specs amendment does not complete the agency's process; it only permitted two flights per week. Nor was the process complete until the agency identified and documented according to its own regulations the categorical exclusion it was relying upon, and made that public. There is no definitive statement of the agency's position, because all the FAA said was that two flights per week were permitted. Since the FAA admitted in the 2008 ROD – an actual "order" by the agency – that operations of the current magnitude of Frontier's operations would require an EIS to comply with NEPA, the Ops Specs amendment did not constitute the agency's final statement on NEPA (or safety, for that matter) impacts

---

[1] "It is in fact comforting to witness the reality that he who lives by the ipse dixit dies by the ipse dixit." *Morrison v. Olson*, 487 U.S. 654, 726 (1988) (Scalia, J., dissenting).

beyond the two flights.  JA65, n3.

The FAA Brief at 10 argues that the 2008 ROD statement about the need for an EIS referred to a "Build Alternative 2" concept of terminal expansion, which is correct as far as it goes, but nonetheless highly misleading. The ROD itself says that '[t]he analysis of Build Alternative 2 revealed that [that] alternative <u>would likely cause sufficient noise impacts</u> that would require the preparation of an Environmental Impact Statement." (Emphasis added.) It is obviously not the terminal itself that would generate the "sufficient noise impacts," but the expanded air carrier operations made possible by the terminal expansion.

### III. The FAA Continues To Make Things Up About Its Authority To Control An Air Carrier's Operations

In its brief, the FAA says that once the two flights a week in the Ops Specs Amendment were approved, then "Frontier was free to determine .. the number of flights it would provide." The <u>sole</u> authority cited for this is a declaration of unknown and unstated authority by an FAA official filed in the District Court. FAA Brief at 7-8.[2] No regulation or case is

---

[2] The official is one Bruce A. Montigney, who gives his title as "manager of the Indianapolis Flight Standards District Office," and says that he is "responsible for overseeing the administration of

cited. In the District Court, the FAA relied heavily on the claim that –

notwithstanding NEPA – it had no control over the number and extent of

operations by Frontier, because certain language in the "Airline

Deregulation Act" tied its hands. In our initial brief, we demonstrated that

this claim was a complete sham. The cited language was not in the Airline

Deregulation Act, but dated back to the Federal Aviation Act of 1958, and

was never intended to apply to the FAA and does not apply to the FAA

today.  BRRAM Brief at 53.

The FAA now admits to having misled the District Court. It admits

that the language it relied upon below was not in the Airline Deregulation

Act and has never applied to the FAA. But it unapologetically argues that

this claim was "not material" because the lower court did not expressly

rely upon it in its decision. It also now argues that its argument about not

---

Frontier's Air Carrier Certificate." JA88. He does not further elaborate
on the scope of his responsibilities, does not state that he has personal
knowledge of the facts in the declaration, and does not state that he is
in a position to bind the FAA on the factual or legal issues in this case.
Mr. Montigney is not the FAA official who approved the Ops Specs
Amendment at issue here (one Dale Snider), and the court has never
been told if Mr. Snider reports to Mr. Montigney or vice versa, or not.
The FAA has been, to say the least, very coy about what actually
happened and the authority of these FAA officials.

being able to limit an air carrier's operations "is not grounded in ["Airline Deregulation Act" language it cited below], as the applicable statute is 49 U.S.C. § 44705." FAA Brief at 8. N. 4. The FAA did not cite this section for this proposition in the District Court, and it is no more helpful to the agency's arguments than that phantom "Airline Deregulation Act" language. The FAA is just making things up.

The FAA does not provide the court with the actual language of Section 44705, for the obvious reason that the statute doesn't support its argument. Section 44705 provides in relevant part that

> The Administrator of the [FAA] shall issue an air carrier operating certificate to a person ... when the Administrator finds, after investigation, that the person properly and adequately is equipped to operate safely under this part and regulations and standards prescribed under this part. An air carrier operating certificate shall –
> (1) contains terms necessary to ensure air safety in air transportation; and
> (2) specify the places to and from which, and the airways of the United States over which a person may operate as an air carrier.[3]

There isn't the slightest suggestion that this generalized

---

[3] This provision is a recodification "without substantive change" of Section 604 of the Federal Aviation Act of 1958, which created the FAA. See Pub. L. 103-272, 108 Stat. 1123 (1994), recodifying Pub.L. 85-726, 72 Stat. 731, Sec 604.

authorization contains a mysteriously unstated permission for the FAA to ignore the mandates of NEPA.

Notwithstanding this unsuccessful attempt to save face, the FAA does admit that it has the authority to actually limit aircraft operations. FAA Brief at 8. It claims that such authority is limited to the needs of safety, but no such limitation is set forth in any of the statutes or case law cited b y the FAA.

The FAA admits that it can limit air carrier operations, as we set forth at some length in our initial brief. The FAA does not deny that it is charged with controlling aircraft noise. 49 U.S.C. § 44714. The FAA also admits that any change to an air carrier's Ops Specs amendment is a major federal action subject to NEPA. FAA Brief at 4. The critical point, then, is that <u>at some point</u> either at initial Ops Specs amendment approval, if it permitted virtually unlimited operations, or at the point at which those operations passed the NEPA EIS threshold, an EIS was by law required to be prepared.

## IV. The FAA's Argument About Its Failure To Conduct A NEPA Analysis Is Circular

The FAA Brief continues the misdirection argument on NEPA that

it made in the District Court. The FAA correctly admits that an Ops Specs amendment is a federal action subject to NEPA. FAA Brief at 4. But it's all wrong after that. Correctly summed up, the FAA argues that (1) although an Ops Specs amendment is a major federal action subject to NEPA, the Ops Specs approval was subject to a categorical exclusion, apparently because it was seemingly limited to two flights a week, FAA Brief at 5-6, but that (2) it had no authority over any increase in the frequency of those flights, no matter how substantial, FAA Brief at 7, and therefore no NEPA analysis is needed.

This argument is entirely circular. If a categorical exclusion was properly identified and analyzed when the Ops Specs amendment was made, which it clearly was not, it would have been noted at the time. But if the agency anticipated that Frontier could have expanded the number of flights, even exponentially, then a categorical exclusion could not have applied, and the full NEPA analysis should have been then carried out. That's because, as we noted in our initial brief, the FAA's own language for a categorical exclusion states that any possibility of a categorical exclusion must consider whether "extraordinary circumstances"

nonetheless exist to bar the exclusion. The FAA Brief acknowledges this at 6. But the FAA Brief omits the _most_ pertinent language, which defines "extraordinary circumstances" in part as "factors or circumstances in which a normally categorically excluded action may have a significant environmental impact that then requires further analysis in an EA or an EIS." Here, the FAA determined in its 2008 order that operations of the scope of Frontier's are such circumstances and an EIS was required. That is true today.

The agency says, quite incorrectly, that the FAA "considered how to evaluate [the approval of two flights per week in an Ops Specs amendment] under NEPA (concluding that it was categorically excluded." FAA Brief at 25. There is nothing in the exchange of emails that constituted the OPS Specs amendment to indicate that any NEPA analysis of any kind was ever carried out. Since those emails constitute the entire "record" of the Ops Specs amendment, if it's not in those emails, it never happened.

The FAA Brief cites not to the Ops Specs amendment emails, but to the post hoc rationalization offered by the FAA Regional Office in the May

28 Letter, issued six months later and also based on no record of any kind. However, the FAA concedes that the May 28 Letter was not an order, nor part of the Ops Specs amendment, and therefore this "post hoc rationalization" can not constitute any part of any "record" of the FAA's Ops Specs amendment.[4]

In any event, that letter proves nothing. It asserts without any foundation or record support that "[a]t the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion." (Emphasis added.) But the Ops Specs amendment says nothing of the kind. No such finding by any other part of the FAA exists, so far as we know. As we noted in our initial brief, the District Court correctly labeled this FAA position as "curious, because the FAA does not state the date of the alleged approval of the categorical exclusion, and it only acknowledges that 'the FAA believed' that the approval of the categorical exclusion occurred in September, but the letter

---

[4] Such post hoc rationalizations can not be used to justify agency action, a principle that goes back as far as *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943)("[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

does not state who, or why the FAA has such a 'belief' — nor does it state that any public communication notifying the public of the categorical exclusion decision had occurred." JA12-13. This, at least, the District Court got right.

The court should consider the natural and logical consequences of the FAA's argument. So long as any air carrier requests permission for a de minimis number of flights at any location, and is free to expand to any density of operations that it cares to perform thereafter, the FAA has effectively written NEPA out of the law.

## V. The District Court Erred In Dismissing BRRAM's Motion To Amend Its Complaint

The District Court committed reversible error by declaring the first amended complaint "moot" without considering whether it cured any alleged defects in the original complaint and without providing any reasons for the determination of mootness. The purpose of the amendment was to <u>clarify</u> that plaintiffs were not contesting the validity of the Ops Specs amendment itself, but the failure and refusal of the FAA to perform any environmental or safety analysis pursuant to NEPA of the effects of Frontier Airlines expansion of flights beyond that de minimis two flights

per week.

The FAA Brief does not dispute that leave to amend should be freely granted but instead argues that the amendment would be "futile." The argument is premised on the mistake that a challenge of Frontier's expansion beyond the two permitted flights is nonetheless a challenge to the original Ops Specs amendment. FAA Brief at 46. This argument ignores the agency' failure to analyze and properly document any claimed categorical exclusion. It is also based on the agency's circular argument about when, if ever, NEPA analysis should have been conducted, which we have already refuted in both our initial brief and this brief.

## VI. The Complaint Was Not Time-Barred

The FAA argues that the complaint was time barred. Since the complaint was properly filed in the District Court, the 60 day limit of 49 U.S.C. §46110 does not apply.

Respectfully submitted,

/s/ R. William Potter
R. William Potter

CERTIFICATE OF COMPLIANCE
WITH Fed. R. App. P. 32 and 3d Cir. Lar 32.1(c)

R. WILLIAM POTTER certifies as follows:

1. This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A) because this reply brief does not exceed 15 pages in length.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using WordPerfect 6-X7 in 14-point Century font.

3. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date:  June 1, 2016

/s/ R. William Potter

R. William Potter

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

R. WILLIAM POTTER certifies as follows:

1. The text of the electronic and hard copy forms of this reply brief are identical.

2.  Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date:  June 1, 2016

/s/ R. William Potter

R. William Potter

## CERTIFICATE OF ADMISSION TO THE BAR

R. WILLIAM POTTER certifies as follows:

1. I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. Peter Dickson is also a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: June 1, 2016

/s/ R. William Potter

R. William Potter

CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2016, two copies of the foregoing

Appellants' Reply Brief were sent by UPS overnight delivery to:

Paul J. Fishman, United States Attorney
Attention: J. Andrew Ruymann, Assistant U.S. Attorney
402 East State Street, Room 430
Trenton, New Jersey 08608

On the same date, an electronic copy of the Appellants' Reply

Brief was electronically transmitted to the Clerk of the United State

Court of Appeals for the Third Circuit and simultaneously to J. Andrew

Ruymann, Assistant U.S. Attorney.

An additional ten copies of the Appellants' Reply Brief were sent

by USP overnight delivery to:

Office of the Clerk
United States Court of Appeals for the Third Circuit
601 Market Street. 21400 U.S. Courthouse
Philadelphia, PA 19106-2790

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury

that the foregoing is true and correct.

Date: June 1, 2016

/s/ R. William Potter
R. William Potter

## CERTIFICATE OF VIRUS CHECK

R. WILLIAM POTTER certifies as follows:

1. I caused the electronic version of this brief to be checked for computer viruses using Adobe Acrobat Version XI.  No computer virus was found.

2.  Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: June 1, 2016

/s/ R. William Potter

R. William Potter